No. 23-7090

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

———————————

PERRY CLINE, on behalf of himself and all others similarly situated,

*Plaintiff-Appellee*,

v.

SUNOCO, INC. (R&M); SUNOCO PARTNERS MARKETING & TERMINALS L.P.,

*Defendants-Appellants*.

———————————

On Appeal from the United States District Court for the
Eastern District of Oklahoma,
No. 17-cv-00313

———————————

## APPENDIX FOR APPELLANTS
## Vol. I of II (pgs. App.1-App.273)

———————————

R. PAUL YETTER
ROBERT D. WOODS
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, TX 77002

DANIEL M. MCCLURE
NORTON ROSE
  FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, TX 77010

PAUL D. CLEMENT
ERIN E. MURPHY
MATTHEW D. ROWEN[*]
ZACHARY J. LUSTBADER[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900

[*] Supervised by principals of the firm who are
members of the Virginia bar

*Counsel for Appellants*

March 14, 2024

# TABLE OF CONTENTS

## Volume I

District Court Docket, Eastern District of Oklahoma, No. 17-cv-00313 ..........App.1

Defendants' Notice of Removal (Aug. 14, 2017) (Dkt.2) ...............................App.65

Plaintiff's Original Petition (Aug. 14, 2017) (Dkt.2-2) ...................................App.78

Defendants' Answer to Original Petition (Aug. 21, 2017) (Dkt.23)...............App.94

Scheduling Order (Oct. 25, 2017) (Dkt.33)....................................................App.113

Plaintiff's Motion to Amend Scheduling Order (June 4, 2018)
(Dkt.36) ..........................................................................................................App.115

Amended Scheduling Order (June 27, 2018) (Dkt.40)...................................App.135

Plaintiff's Motion to Modify Amended Scheduling Order
(Oct. 31, 2018) (Dkt.82) ................................................................................App.137

Second Amended Scheduling Order (Nov. 1, 2018) (Dkt.83)........................App.143

Plaintiff's Motion to Modify Second Amended Scheduling Order
(Jan. 11, 2019) (Dkt.84) .................................................................................App.145

Third Amended Scheduling Order (Jan. 14, 2019) (Dkt.85) ..........................App.151

Plaintiff's Motion for Extension of Time (Apr. 26, 2019) (Dkt.86)..............App.153

Fourth Amended Scheduling Order (May 6, 2019) (Dkt.90) .........................App.160

Pretrial Order (Aug. 5, 2019) (Dkt.102) ........................................................App.162

Defendants' Response to Plaintiff's Motion to Certify Class
(Aug. 14, 2019) (Dkt.105) ..............................................................................App.168

Declaration of Eric Koelling (Aug. 14, 2019) (Dkt.106-3) ...........................App.213

Opinion re Class Certification (Oct. 3, 2019) (Dkt.126) ...............................App.236

Defendants' Response to Motion for Partial Summary Judgment
(Nov. 1, 2019) (Dkt.160)................................................................................App.253

i

## Volume II

Defendants' Motion to Clarify (Nov. 15, 2019) (Dkt.172)............................App.274

Memorandum Order re Motion to Clarify (Nov. 26, 2019) (Dkt.186).........App.306

Declaration of Daniel M. McClure (Dec. 9, 2019) (Dkt.230-3)....................App.312

Opinion re Partial Summary Judgment (Dec. 10, 2019) (Dkt.231)...............App.321

Transcript Excerpts of Trial Held Dec. 16, 2019 (Jan. 27, 2020)
(Dkt.266) (pgs. 1, 36-37, 85, 135-37, 171-78, 193-202, 215-16, 221-
22, 236-37, 241-42, 253, 262, 268, 275, 280-81, 297) .................................App.334

Transcript Excerpts of Trial Held Dec. 17, 2019 (Jan. 27, 2020)
(Dkt.268) (pgs. 484, 519-20, 573-74) ...........................................................App.374

Transcript Excerpts of Trial Held Dec. 18, 2019 (Jan. 27, 2020)
(Dkt.269) (pgs. 597, 649-52, 673, 695-96, 698-701, 706, 772-75, 778-
79, 783-84, 800, 866-869) ..............................................................................App.379

Opinion (Aug. 17, 2020) (Dkt.298) ...............................................................App.405

Judgment Order (Aug. 27, 2020) (Dkt.308) ...................................................App.453

Plan of Allocation Order (Oct. 30, 2020) (Dkt.339)......................................App.454

Notice of Appeal (Oct. 30, 2020) (Dkt.340)...................................................App.459

Opinion re Motion for a New Trial and to Alter Judgment
(Dec. 9, 2020) (Dkt.349)................................................................................App.463

Notice of Appeal (Dec. 9, 2020) (Dkt.351) ...................................................App.477

Amended Plan of Allocation Order (Oct. 17, 2023) (Dkt.643) .....................App.481

Amended Award of Actual Damages (Oct. 19, 2023) (Dkt.645)....................App.487

Judgment Order (Oct. 19, 2023) (Dkt.646) ...................................................App.489

Defendants' Motion to Alter or Amend Judgment (Nov. 15, 2023)
(Dkt.651) ........................................................................................................App.490

Defendants' Motion for a New Trial (Nov. 15, 2023) (Dkt.652)...................App.523

Order re Motions to Alter or Amend Judgment and for a New Trial
(Nov. 20, 2023) (Dkt.655)...............................................................App.550

Notice of Appeal (Dec. 15, 2023) (Dkt.662) .................................................App.551

# U.S. District Court
## Eastern District of Oklahoma (Muskogee)
## CIVIL DOCKET FOR CASE #: 6:17-cv-00313-JAG

Cline et al v. Sunoco, Inc. (R&M) et al

Assigned to: Judge John A. Gibney, Jr

Demand: $5,000,000

Related Case: 6:23-cv-00432-JAG

Case in other court:  Seminole County District Court, 17-CJ-75

           10th Circuit, 20-07055

           10th Circuit, 20-07064

           10th Circuit, 20-07072

           10th Circuit, 21-07063

           10th Circuit, 22-07017

           10th Circuit, 22-07018

           10th Circuit, 22-07030

           Circuit Court, 23-07090

Cause: 28:1441 Petition for Removal- Breach of Contract

Date Filed: 08/14/2017

Date Terminated: 10/19/2023

Jury Demand: None

Nature of Suit: 190 Contract: Other

Jurisdiction: Diversity

**Plaintiff**

**Perry Cline**
*on behalf of himself*

represented by **Andrew G. Pate**
Nix Patterson, LLP (Austin)
8701 Bee Cave Rd, Bldg 1, Ste 500
Austin, TX 78746
512-328-5333
Email: dpate@nixlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley E. Beckworth**
Nix Patterson, LLP (Austin)
8701 Bee Cave Rd, Bldg 1, Ste 500
Austin, TX 78746
512-328-5333
Email: bbeckworth@nixlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason A. Ryan**
Ryan Whaley, PLLC
400 N Walnut Ave
Oklahoma City, OK 73104
405-239-6040
Fax: 405-239-6766
Email: jryan@ryanwhaley.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Jeffrey J. Angelovich**
Nix Patterson, LLP (Austin)
8701 Bee Cave Rd, Bldg 1, Ste 500
Austin, TX 78746
512-328-5333
Fax: 512-328-5335
Email: jangelovich@nixlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lawrence R. Murphy , Jr.**
18401 E 100th Court N
Owasso, OK 74055
918-430-4584
Email: larry@hamiltonmurphylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lisa P. Baldwin**
Nix Patterson, LLP (Austin)
8701 Bee Cave Rd, Bldg 1, Ste 500
Austin, TX 78746
512-328-5333
Email: lbaldwin@nixlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Burrage**
Whitten Burrage
512 N Broadway, Ste 300
Oklahoma City, OK 73102
405-516-7800
Fax: 405-516-7859
Email: mburrage@whittenburragelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick M. Ryan**
Ryan Whaley, PLLC
400 N Walnut Ave
Oklahoma City, OK 73104
405-239-6040
Fax: 405-239-6766
Email: pryan@ryanwhaley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paula M. Jantzen**
Ryan Whaley, PLLC
400 N Walnut Ave
Oklahoma City, OK 73104
405-239-6040

Fax: 405-239-6766
Email: pjantzen@ryanwhaley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phillip G. Whaley**
Ryan Whaley, PLLC
400 N Walnut Ave
Oklahoma City, OK 73104
405-239-6040
Fax: 405-239-6766
Email: pwhaley@ryanwhaley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Randa Reeves**
Whitten Burrage
512 N Broadway, Ste 300
Oklahoma City, OK 73102
405-516-7800
Fax: 405-516-7859
Email: rreeves@whittenburragelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ross Leonoudakis**
Nix Patterson, LLP (Austin)
8701 Bee Cave Rd, Bldg 1, Ste 500
Austin, TX 78746
512-328-5333
Email: rossl@nixlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Susan R. Whatley**
Nix Patterson, LLP (Linden)
PO Box 178
Linden, TX 75563
903-215-8310
Email: swhatley@nixlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Winn Cutler**
Nix Patterson, LLP (Austin)
8701 Bee Cave Rd, Bldg 1, Ste 500
Austin, TX 78746
512-328-5333
Email: winncutler@nixlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brooke A. Churchman**
Nix Patterson, LLP (Austin)
8701 Bee Cave Rd, Bldg 1, Ste 500
Austin, TX 78746
512-328-5333
Fax: 512-328-5335
Email: mgomez@nixlaw.com
*ATTORNEY TO BE NOTICED*

**Emily Nash Kitch**
Barnes & Lewis, LLP
4501 N Cooper Ave
Oklahoma City, OK 73118
405-843-0363
Fax: 405-832-1007
Email: ekitch@barneslewis.com
*ATTORNEY TO BE NOTICED*

**Nathan Hall**
Nix Patterson, LLP (Austin)
8701 Bee Cave Rd, Bldg 1, Ste 500
Austin, TX 78746
512-328-5333
Email: nhall@nixlaw.com
*ATTORNEY TO BE NOTICED*

**Patranell Lewis**
Barnes & Lewis, LLP
4501 N Cooper Ave
Oklahoma City, OK 73118
405-843-0363
Email: plewis@barneslewis.com
*ATTORNEY TO BE NOTICED*

**Robert N. Barnes**
Barnes & Lewis, LLP
4501 N Cooper Ave
Oklahoma City, OK 73118
405-843-0363
Email: rbarnes@barneslewis.com
*ATTORNEY TO BE NOTICED*

**Trey Duck**
Nix Patterson, LLP (Austin)
8701 Bee Cave Rd, Bldg 1, Ste 500
Austin, TX 78746
512-328-5333
Fax: 512-328-5335
Email: tduck@nixlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Perry Cline**
*on behalf of all others similarly situated*

represented by **Andrew G. Pate**
(See above for address)

App.4

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley E. Beckworth**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jason A. Ryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey J. Angelovich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lawrence R. Murphy , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lisa P. Baldwin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Burrage**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick M. Ryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paula M. Jantzen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phillip G. Whaley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ross Leonoudakis**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Susan R. Whatley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Winn Cutler**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brooke A. Churchman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Nash Kitch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan Hall**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patranell Lewis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert N. Barnes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Trey Duck**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Sunoco, Inc. (R&M)**                 represented by **Daniel M. McClure**
Norton Rose Fulbright US, LLP (Houston)
1301 McKinney, Ste 5100
Houston, TX 77010-3095
713-651-5151
Fax: 713-651-5246
Email:
dan.mcclure@nortonrosefulbright.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin E. Murphy**
Kirkland & Ellis, LLP (DC)
1301 Pennsylvania Ave, NW
Washington, DC 20004

202-389-5000
Fax: 202-389-5200
Email: erin.murphy@clementmurphy.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin W. Yankowsky**
Norton Rose Fulbright US, LLP (Houston)
1301 McKinney, Ste 5100
Houston, TX 77010-3095
713-651-5151
Fax: 713-651-5246
Email:
kevin.yankowsky@nortonrosefulbright.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark D. Christiansen**
McAfee & Taft, PC (OKC)
211 N Robinson, 8th Flr
Oklahoma City, OK 73102-7103
405-552-2235
Fax: 405-228-7435
Email: Mark@MDChristiansen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark T. Emery**
Norton Rose Fulbright US, LLP (DC)
799 9th St NW, Ste 1000
Washington, DC 20001
202-662-0210
Fax: 202-662-4643
Email:
mark.emery@nortonrosefulbright.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew A. Dekovich**
Norton Rose Fulbright US, LLP (Houston)
1301 McKinney, Ste 5100
Houston, TX 77010-3095
713-651-5147
Email:
matt.dekovich@nortonrosefulbright.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**R. Paul Yetter**
Yetter Coleman, LLP

811 Main St, Ste 4100
Houston, TX 77002
713-632-8000
Fax: 713-632-8002
Email: pyetter@yettercoleman.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert D. Woods**
Yetter Coleman, LLP
811 Main St, Ste 4100
Houston, TX 77002
713-632-8000
Fax: 713-632-8002
Email: rwoods@yettercoleman.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy S. McConn**
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, TX 77002
713-632-8019
Fax: 713-632-8002
Email: tmcconn@yettercoleman.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma W. Perry**
Robinson Bradshaw, PA
1450 Raleigh Rd, Ste 100
Chapel Hill, NC 27517
919-328-8828
Email: eperry@robinsonbradshaw.com
*TERMINATED: 03/24/2022*
*PRO HAC VICE*

**Rebecca J. Cole**
Norton Rose Fulbright US, LLP (Houston)
1301 McKinney, Ste 5100
Houston, TX 77010-3095
713-651-5151
Fax: 713-651-5246
Email:
rebecca.cole@nortonrosefulbright.com
*TERMINATED: 03/04/2022*
*PRO HAC VICE*

<u>**Defendant**</u>

**Sunoco Partners Marketing & Terminals, LP**   represented by   **Daniel M. McClure**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin E. Murphy**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin W. Yankowsky**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark D. Christiansen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark T. Emery**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew A. Dekovich**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**R. Paul Yetter**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert D. Woods**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy S. McConn**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma W. Perry**
(See above for address)
*TERMINATED: 03/24/2022*
*PRO HAC VICE*

Rebecca J. Cole
(See above for address)
*TERMINATED: 03/04/2022*
*PRO HAC VICE*

**Defendant**

**Saratoga RP East LLC**  represented by  **Johnny R. Blassingame**
Rudnicki Firm
6305 Waterford Blvd, Ste 325
Oklahoma City, OK 73102
405-445-7422
Email: johnny@rudnickifirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Castleton Commodities Merchant Trading, L.P.**  represented by  **Jason A. McVicker**
*Garnishee*  Baum Glass Jayne Carwile & Peters, PLLC
401 S Boston Ave, Ste 2000
Tulsa, OK 74103
918-938-7944
Fax: 918-938-7966
Email: jmcvicker@bgjclaw.com
*ATTORNEY TO BE NOTICED*

**John J. Carwile**
Baum Glass Jayne Carwile & Peters, PLLC
401 S Boston Ave, Ste 2000
Tulsa, OK 74103
918-938-7944
Email: jcarwile@bgjclaw.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Truman Arnold Co**
*Garnishee*

**Interested Party**

**Motiva Enterprises LLC**  represented by  **Jayne Jarnigan Robertson**
*Garnishee*  Jayne Jarnigan Robertson, PC
211 N Robinson Ave, Ste 1360
Oklahoma City, OK 73102
405-319-0400
Fax: 405-232-6515
Email: jayne@jjrpc.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Phillips 66 Company**  represented by  **Patrick L. Stein**
*Garnishee*  McAfee & Taft, PC (OKC)
211 N Robinson, 8th Flr
Oklahoma City, OK 73102-7103

**App.10**

405-552-2238
Fax: 405-228-7438
Email: patrick.stein@mcafeetaft.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

| | | |
|---|---|---|
| **Marathon Petroleum Supply and Trading LLC** *Garnishee* | represented by | **Paige N. Shelton** Conner & Winters -TUL 15 E Fifth St, Ste 4100 Tulsa, OK 74103 918-586-5711 Email: pshelton@cwlaw.com *TERMINATED: 12/21/2022* |

**Interested Party**

| | | |
|---|---|---|
| **Marathon Petroleum Logistics Services LLC** *Garnishee* | represented by | **Paige N. Shelton** (See above for address) *TERMINATED: 12/21/2022* |

**Interested Party**

| | | |
|---|---|---|
| **Marathon Petroleum Company LP** *Garnishee* | represented by | **Paige N. Shelton** (See above for address) *TERMINATED: 12/21/2022* |

| Date Filed | # | Docket Text |
|---|---|---|
| 07/07/2017 | | PETITION filed in State Court against Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) by Perry Cline (on behalf of himself), Perry Cline (on behalf of all others similarly situated) (pjw, Deputy Clerk) (Entered: 08/15/2017) |
| 08/14/2017 | 1 | CIVIL COVER SHEET by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (pjw, Deputy Clerk) (Entered: 08/15/2017) |
| 08/14/2017 | 2 | NOTICE of Removal from Seminole County District Court, case number 17-CJ-75 by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) (pjw, Deputy Clerk) (Entered: 08/15/2017) |
| 08/15/2017 | 3 | MINUTE ORDER by Court Clerk. Defendants are directed to pay the $400 filing fee within 7 days. Failure to comply with this directive will subject this action to immediate dismissal by the Court without prejudice to refiling. Consent forms provided to filing party (Filing Fee due by 8/22/2017) (pjw, Deputy Clerk) (Entered: 08/15/2017) |
| 08/15/2017 | | FILING FEES Paid in Full on 8/15/2017 in the amount of $400, receipt number 1086-1110002 (Re: 2 Notice of Removal ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (Christiansen, Mark) (Entered: 08/15/2017) |
| 08/15/2017 | 4 | ATTORNEY APPEARANCE by Mark D. Christiansen on behalf of Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (Christiansen, Mark) (Entered: 08/15/2017) |
| 08/16/2017 | 5 | CORPORATE DISCLOSURE STATEMENT (identifying: Corporate Parent Heritage Holdings, Inc., Corporate Parent Sunoco, Inc., Corporate Parent ETP Holdco Corporation for Sunoco, Inc. (R&M)), Other Affiliate Energy Transfer Partners L.P. by Sunoco, Inc. (R&M) (Christiansen, Mark) Modified on 8/17/2017 to add other affiliate(nsb, Deputy Clerk). (Entered: 08/16/2017) |

| 08/16/2017 | 6 | CORPORATE DISCLOSURE STATEMENT (identifying Other Affiliate Energy Transfer Partners L.P.) by Sunoco Partners Marketing & Terminals, LP (Christiansen, Mark) Modified on 8/17/2017 to add other affiliate (nsb, Deputy Clerk). (Entered: 08/16/2017) |
|---|---|---|
| 08/16/2017 | 7 | MOTION for Attorney Daniel Mead McClure to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number 1086-1110729) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 8/30/2017(Christiansen, Mark) (Entered: 08/16/2017) |
| 08/16/2017 | 8 | MOTION for Attorney Rebecca Jane Cole to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number 1086-1110733) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 8/30/2017(Christiansen, Mark) (Entered: 08/16/2017) |
| 08/17/2017 | 9 | ATTORNEY APPEARANCE by Patrick M. Ryan on behalf of Perry Cline(on behalf of himself) (Ryan, Patrick) (Entered: 08/17/2017) |
| 08/17/2017 | 10 | MINUTE ORDER by Magistrate Judge Steven P. Shreder GRANTING 7 Motion for Admission Pro Hac Vice of attorney Daniel M. McClure for defendants Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, LP, provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (ndd, Deputy Clerk) (Entered: 08/17/2017) |
| 08/17/2017 | 11 | ATTORNEY APPEARANCE by Phillip G. Whaley on behalf of Perry Cline(on behalf of himself) (Whaley, Phillip) (Entered: 08/17/2017) |
| 08/17/2017 | 12 | ATTORNEY APPEARANCE by Jason A. Ryan on behalf of Perry Cline(on behalf of himself) (Ryan, Jason) (Entered: 08/17/2017) |
| 08/17/2017 | 13 | MINUTE ORDER by Magistrate Judge Steven P. Shreder GRANTING 8 Motion for Admission Pro Hac Vice of attorney Rebecca J. Cole for defendants Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, LP, provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (ndd, Deputy Clerk) (Entered: 08/17/2017) |
| 08/17/2017 | 14 | ATTORNEY APPEARANCE by Paula M. Jantzen on behalf of Perry Cline(on behalf of himself) (Jantzen, Paula) (Entered: 08/17/2017) |
| 08/17/2017 | 15 | ATTORNEY APPEARANCE by Michael Burrage on behalf of Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Burrage, Michael) (Entered: 08/17/2017) |
| 08/17/2017 | 16 | ATTORNEY APPEARANCE by Lawrence R. Murphy, Jr on behalf of Perry Cline(on behalf of himself) (Murphy, Lawrence) (Entered: 08/17/2017) |
| 08/17/2017 | 17 | ORDER SETTING SCHEDULING CONFERENCE by Magistrate Judge Steven P. Shreder setting Scheduling Conference for 9/15/2017 at 11:00 a.m. in Chambers, Room 425, US Courthouse, 5th & Okmulgee, Muskogee, OK before Magistrate Judge Steven P. Shreder. Parties directed to file Joint Status Report by 9/11/2017. (Attachments: # 1 Consent or Reassignment Form) (ndd, Deputy Clerk) (Entered: 08/17/2017) |
| 08/18/2017 | 18 | ATTORNEY APPEARANCE by Daniel M. McClure on behalf of Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: |

| | | |
|---|---|---|
| | | 08/18/2017) |
| 08/18/2017 | 19 | ATTORNEY APPEARANCE by Rebecca J. Cole on behalf of Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (Cole, Rebecca) (Entered: 08/18/2017) |
| 08/21/2017 | 20 | ATTORNEY APPEARANCE by Bradley E. Beckworth on behalf of All Plaintiffs (Beckworth, Bradley) (Entered: 08/21/2017) |
| 08/21/2017 | 21 | ATTORNEY APPEARANCE by Jeffrey J. Angelovich on behalf of All Plaintiffs (Angelovich, Jeffrey) (Entered: 08/21/2017) |
| 08/21/2017 | 22 | ATTORNEY APPEARANCE by Andrew G. Pate on behalf of All Plaintiffs (Pate, Andrew) (Entered: 08/21/2017) |
| 08/21/2017 | 23 | ANSWER to Petition/Complaint filed in State Court (Re: State Court Petition/Complaint ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (Christiansen, Mark) (Entered: 08/21/2017) |
| 09/01/2017 | 24 | MINUTE ORDER by Court Clerk: Pursuant to receipt of an election of the District Judge Option and in accordance with LCvR 40.1(c), this case is reassigned to District Judge Ronald A. White. Magistrate Judge Steven P. Shreder no longer assigned to case. All documents filed in this case in the future shall reflect the new case number CIV-17-313-RAW. The Scheduling Conference set 9/15/2017 at 11:00 a.m. before Magistrate Judge Steven P. Shreder, and all related deadlines, are STRICKEN. (ndd, Deputy Clerk) (Entered: 09/01/2017) |
| 09/05/2017 | 25 | MINUTE ORDER by Court Clerk : Pursuant to the recusal of Judge Ronald A. White and at the direction of the Court, this case is hereby randomly reassigned to District Judge James H. Payne. All documents filed in this case in the future shall reflect the new case number CIV-17-313-JHP.(lal, Deputy Clerk) (Entered: 09/05/2017) |
| 09/27/2017 | 26 | MINUTE ORDER by Court Clerk: Status and Scheduling Conference set for 10/12/2017 at 02:00 PM in Chambers, Room 201, US Courthouse, 5th & Okmulgee, Muskogee, OK before District Judge James H. Payne; Joint Status Report due by 10/11/2017 (cjt, Deputy Clerk) (Entered: 09/27/2017) |
| 10/10/2017 | 27 | ATTORNEY APPEARANCE by Patranell Lewis on behalf of All Plaintiffs (Lewis, Patranell) (Entered: 10/10/2017) |
| 10/10/2017 | 28 | ATTORNEY APPEARANCE by Robert N. Barnes on behalf of All Plaintiffs (Barnes, Robert) (Entered: 10/10/2017) |
| 10/12/2017 | 29 | JOINT STATUS REPORT by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(Christiansen, Mark) (Entered: 10/12/2017) |
| 10/12/2017 | 30 | MINUTES of Proceedings - held before District Judge James H. Payne: Status and Scheduling Conference held on 10/12/2017 (cjt, Deputy Clerk) (Entered: 10/13/2017) |
| 10/23/2017 | 31 | NOTICE Proposed Schedule (Re: 30 Minutes of Scheduling Conference ) by Perry Cline(on behalf of himself) (With attachments)(Ryan, Jason) (Entered: 10/23/2017) |
| 10/23/2017 | 32 | NOTICE of Revised Proposed Scheduling Order (Re: 30 Minutes of Scheduling Conference ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 10/23/2017) |
| 10/25/2017 | 33 | SCHEDULING ORDER by District Judge James H. Payne: regarding class certification (cjt, Deputy Clerk) (Entered: 10/25/2017) |
| 11/07/2017 | 34 | Joint MOTION for Protective Order by All Defendants (With attachments) Responses due by 11/21/2017(McClure, Daniel) (Entered: 11/07/2017) |

| | | |
|---|---|---|
| 11/08/2017 | 35 | AGREED PROTECTIVE ORDER by District Judge James H. Payne: granting 34 Joint Motion for Protective Order (cjt, Deputy Clerk) (Entered: 11/08/2017) |
| 06/04/2018 | 36 | MOTION to Amend Scheduling Order by Perry Cline(on behalf of himself) (With attachments) Responses due by 6/18/2018(Ryan, Patrick) (Entered: 06/04/2018) |
| 06/18/2018 | 37 | RESPONSE in Opposition to Motion (Re: 36 MOTION to Amend Scheduling Order ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments) (McClure, Daniel) (Entered: 06/18/2018) |
| 06/26/2018 | 38 | MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support by Perry Cline(on behalf of himself) (With attachments) Responses due by 7/10/2018(Ryan, Patrick) (Entered: 06/26/2018) |
| 06/27/2018 | 39 | MINUTE ORDER by District Judge James H. Payne: granting 36 Plaintiff's Motion to Amend Scheduling Order. Amended Scheduling Order to follow. (cjt, Deputy Clerk) (Entered: 06/27/2018) |
| 06/27/2018 | 40 | AMENDED SCHEDULING ORDER by District Judge James H. Payne: regarding class certification (cjt, Deputy Clerk) (Entered: 06/27/2018) |
| 06/27/2018 | 41 | MINUTE ORDER by District Judge James H. Payne: Pursuant to 28 U.S.C. Section 636(b)(1), the following motion is referred for disposition to Magistrate Judge Steven P. Shreder: 38 Plaintiff's MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege. (cjt, Deputy Clerk) (Entered: 06/27/2018) |
| 06/27/2018 | 42 | MINUTE ORDER by Magistrate Judge Steven P. Shreder directing Defendants to file an expedited Response to 38 Plaintiff's MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support by 7/9/2018 AND setting Motion Hearing for 7/10/2018 at 10:30 AM in Courtroom 4, Room 420, US Courthouse, 5th & Okmulgee, Muskogee, OK before Magistrate Judge Steven P. Shreder. (Re: 38 MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support ) (tls, Deputy Clerk) (Entered: 06/27/2018) |
| 06/28/2018 | 43 | NOTICE Request to Vacate July 10 Hearing and to Strike Plaintiff's Motion to Strike Defendants' Privilege Log and to Declare Defendants have Waived Privilege (Re: 38 MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 06/28/2018) |
| 06/28/2018 | 44 | MINUTE ORDER by Magistrate Judge Steven P. Shreder: Plaintiffs are directed to provide supplemental briefing no later than Tuesday, 7/3/2018, certifying compliance with this Court's local rules, particularly Loc. Civ. R. 7.1(f). Defendants are instructed that their expedited Response remains due Monday, 7/9/2018. Additionally, the Motion Hearing remains set for Tuesday, 7/10/2018 at 10:30 a.m. (Re: 43 Notice, 38 MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support ) (tls, Deputy Clerk) (Entered: 06/28/2018) |
| 06/28/2018 | 45 | Unopposed MOTION for Leave to File Exhibits Under Seal (re Doc. No. 38) (Re: 38 MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support ) by All Plaintiffs Responses due by 7/12/2018(Ryan, Patrick) (Entered: 06/28/2018) |
| 06/29/2018 | 46 | ORDER by District Judge James H. Payne: granting 45 Motion for Leave to File Exhibits Under Seal (Re: 38 MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support) (cjt, Deputy Clerk) (Entered: 06/29/2018) |

| | | |
|---|---|---|
| 06/29/2018 | 47 | SEALED EXHIBITS 6-13 (Re: 38 MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support) by Plaintiffs (cjt, Deputy Clerk) (Entered: 06/29/2018) |
| 07/03/2018 | 48 | Supplemental BRIEF in Support of Motion (Re: 38 MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (With attachments)(Ryan, Patrick) (Entered: 07/03/2018) |
| 07/09/2018 | 49 | RESPONSE in Opposition to Motion (Re: 38 MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(McClure, Daniel) (Entered: 07/09/2018) |
| 07/10/2018 | 50 | MINUTES of Proceedings held before Magistrate Judge Steven P. Shreder: Motion Hearing held on 7/10/2018 (Re: 38 MOTION to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege and Integrated Brief in Support). (Court Reporter: Ken Sidwell) (ndd, Deputy Clerk) (Entered: 07/11/2018) |
| 07/10/2018 | 51 | MINUTE ORDER by Magistrate Judge Steven P. Shreder GRANTING 38 Plaintiff's to Strike Defendants' Privilege Log and to Declare Defendants Have Waived Privilege, to the extent that the original privilege log produced by Defendant is stricken in light of the filing of the amended privilege log, and DENIED, to the extent Plaintiff seeks an order declaring the privilege has been waived. Plaintiff is granted an additional four witnesses to deal with "discovery on discovery" issues as discussed at the hearing before Magistrate Judge Steve P. Shreder held July 10, 2018. (ndd, Deputy Clerk) (Entered: 07/11/2018) |
| 07/12/2018 | 52 | MOTION for Reconsideration or Modification (Re: 51 Ruling on Motion to Strike) by All Defendants Responses due by 7/26/2018(McClure, Daniel) (Entered: 07/12/2018) |
| 07/13/2018 | 53 | MINUTE ORDER by Magistrate Judge Steven P. Shreder GRANTING IN PART and DENYING IN PART 52 Sunoco Defendants' Request for Reconsideration or Modification of Magistrate Judge Shreder's Minute Order of July 11, 2018 (Re: 51 Ruling on Motion to Strike). Said motion is GRANTED to the extent the number of "discovery on discovery" depositions are reduced to two (in addition to the ten depositions permitted by Fed. R. Civ. P. 30(a)(2)(i) without leave of the Court), which additional depositions may only be utilized for purposes of "discovery on discovery," and are the only ones that may be utilized for this purpose. Said depositions are subject to the same rules governing any other depositions including, e. g., the assertion of privilege. The motion to reconsider is in all other respects DENIED. (ndd, Deputy Clerk) (Entered: 07/13/2018) |
| 07/16/2018 | 54 | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 7/10/18 before Magistrate Judge Steven P. Shreder (Court Reporter: Ken Sidwell) (Pages: 1-34). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 50 Minutes of Motion Hearing, ) (kns, Court Reporter) (Entered: 07/16/2018) |
| 09/10/2018 | 55 | MOTION to Compel by Perry Cline(on behalf of himself) (With attachments) Responses due by 9/24/2018(Ryan, Patrick) (Entered: 09/10/2018) |
| 09/11/2018 | 56 | MINUTE ORDER by District Judge James H. Payne: Pursuant to 28 U.S.C. Section 636(b)(1), the following motion is referred for disposition to Magistrate Judge Steven P. |

| | | Shreder: 55 Plaintiff's MOTION to Compel. (cjt, Deputy Clerk) (Entered: 09/11/2018) |
|---|---|---|
| 09/11/2018 | 57 | Unopposed MOTION for Extension of Time to Respond to Motion to Compel and Integrated Brief in Support (Re: 55 MOTION to Compel) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) Responses due by 9/25/2018(McClure, Daniel) (Entered: 09/11/2018) |
| 09/12/2018 | 58 | MINUTE ORDER by Magistrate Judge Steven P. Shreder GRANTING 57 Unopposed Motion for Extension of Time to Respond to Motion. Defendants' Response due by 10/1/2018. (Re: 55 MOTION to Compel). (ndd, Deputy Clerk) (Entered: 09/12/2018) |
| 09/12/2018 | 59 | MINUTE ORDER by Magistrate Judge Steven P. Shreder setting Motion Hearing for 10/5/2018 at 10:00 a.m. in Courtroom 4, Room 420, US Courthouse, 5th & Okmulgee, Muskogee, OK before Magistrate Judge Steven P. Shreder (Re: 55 MOTION to Compel by Perry Cline. (ndd, Deputy Clerk) (Entered: 09/12/2018) |
| 09/12/2018 | 60 | Unopposed MOTION for Leave to File Exhibits Under Seal (Re: 55 MOTION to Compel ) by Perry Cline(on behalf of himself) Responses due by 9/26/2018(Ryan, Patrick) (Entered: 09/12/2018) |
| 09/12/2018 | 61 | MINUTE ORDER by Magistrate Judge Steven P. Shreder GRANTING 60 Unopposed Motion for Leave to File Exhibits Under Seal. (ndd, Deputy Clerk) (Entered: 09/12/2018) |
| 09/12/2018 | 62 | SEALED EXHIBITS 4, 5, 6, 7, 9, 18, 19 to 55 Plaintiff's MOTION to Compel. (ndd, Deputy Clerk) (Attachment 5 - Exhibit 9 replaced on 9/13/2018. Exhibit 9 was missing final page - page 114) (ndd, Deputy Clerk). (Entered: 09/12/2018) |
| 09/21/2018 | 63 | MOTION for Attorney Kevin William Yankowsky to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number 1086-1208861) by All Defendants (With attachments) Responses due by 10/5/2018(Christiansen, Mark) (Entered: 09/21/2018) |
| 09/24/2018 | 64 | MINUTE ORDER by District Judge James H. Payne: granting 63 Motion for Admission Pro Hac Vice of attorney Kevin W. Yankowsky for Sunoco Partners Marketing & Terminals, LP and Sunoco, Inc. (R&M), provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (cjt, Deputy Clerk) (Entered: 09/24/2018) |
| 09/25/2018 | 65 | ATTORNEY APPEARANCE by Kevin W. Yankowsky on behalf of Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (Yankowsky, Kevin) (Entered: 09/25/2018) |
| 09/26/2018 | 66 | NOTICE of Change of Address by Bradley E. Beckworth by on behalf of Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 09/26/2018) |
| 09/28/2018 | 67 | MOTION for Leave to File Motion for Leave to File Brief in Excess of Page Limitations (Re: 55 MOTION to Compel) by All Defendants Responses due by 10/12/2018(McClure, Daniel) (Entered: 09/28/2018) |
| 10/01/2018 | 68 | MINUTE ORDER by Magistrate Judge Steven P. Shreder GRANTING 67 Unopposed Motion for Leave to File Brief in Excess of Page Limitations (Re: 55 MOTION to Compel). (ndd, Deputy Clerk) (Entered: 10/01/2018) |
| 10/01/2018 | 69 | RESPONSE in Opposition to Motion (Re: 55 MOTION to Compel ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(McClure, Daniel) (Entered: 10/01/2018) |

| 10/01/2018 | 70 | Unopposed MOTION to Seal Document *Exhibits G and H* (Re: 69 Response in Opposition to Motion ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) Responses due by 10/15/2018(McClure, Daniel) (Entered: 10/01/2018) |
|---|---|---|
| 10/02/2018 | 71 | MINUTE ORDER by Magistrate Judge Steven P. Shreder GRANTING 70 Unopposed Motion to Seal Document Exhibits G and H (Re: 69 Response in Opposition to Motion). (ndd, Deputy Clerk) (Entered: 10/02/2018) |
| 10/03/2018 | 72 | SEALED EXHIBITS G and H to 69 Defendants' Response in Opposition to Motion. (ndd, Deputy Clerk) (Entered: 10/04/2018) |
| 10/05/2018 | 75 | MINUTES of Proceedings held before Magistrate Judge Steven P. Shreder: Motion Hearing held on 10/5/2018 (Re: 55 MOTION to Compel by Perry Cline) (Court Reporter: Karla McWhorter) (ndd, Deputy Clerk) (Entered: 10/09/2018) |
| 10/08/2018 | 73 | ATTORNEY APPEARANCE by Brooke A. Churchman on behalf of All Plaintiffs (Churchman, Brooke) (Entered: 10/08/2018) |
| 10/08/2018 | 74 | MOTION Approval of Confidential Designations by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 10/22/2018(McClure, Daniel) (Entered: 10/08/2018) |
| 10/09/2018 | 76 | ORDER by Magistrate Judge Steven P. Shreder GRANTING IN PART and DENYING IN PART 55 Motion to Compel by Perry Cline. (ndd, Deputy Clerk) (Entered: 10/09/2018) |
| 10/11/2018 | 77 | MINUTE ORDER by District Judge James H. Payne: Pursuant to 28 U.S.C. Section 636(b)(1), the following motion is referred for disposition to Magistrate Judge Steven P. Shreder: 74 MOTION for Approval of Confidential Designations. (cjt, Deputy Clerk) (Entered: 10/11/2018) |
| 10/22/2018 | 78 | RESPONSE in Opposition to Motion (Re: 74 MOTION Approval of Confidential Designations ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (With attachments)(Ryan, Patrick) (Attachment 2 replaced on 10/23/2018 to add sealed exhibit per docket entry no. 80) (ndd, Deputy Clerk). (Entered: 10/22/2018) |
| 10/22/2018 | 79 | Unopposed MOTION Motion for Leave to File Exhibit Under Seal (Re: 78 Response in Opposition to Motion ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) Responses due by 11/5/2018(Ryan, Patrick) (Entered: 10/22/2018) |
| 10/23/2018 | 80 | MINUTE ORDER by Magistrate Judge Steven P. Shreder GRANTING 79 Unopposed Motion for Leave to File Exhibit Under Seal (Re: 78 Response in Opposition to Motion). (ndd, Deputy Clerk) (Entered: 10/23/2018) |
| 10/24/2018 | 81 | MINUTE ORDER by Magistrate Judge Steven P. Shreder GRANTING 74 MOTION for Approval of Confidential Designations. Any issues regarding admissibility will be addressed by the Court at a later date. (ndd, Deputy Clerk) (Entered: 10/24/2018) |
| 10/31/2018 | 82 | Unopposed MOTION to Extend Scheduling Order Dates by Perry Cline(on behalf of himself) Responses due by 11/14/2018(Ryan, Patrick) (Entered: 10/31/2018) |
| 11/01/2018 | 83 | SECOND AMENDED SCHEDULING ORDER by District Judge James H. Payne: granting 82 Plaintiff's Unopposed Motion to Modify Amended Scheduling Order (cjt, Deputy Clerk) (Entered: 11/01/2018) |
| 01/11/2019 | 84 | Unopposed MOTION to Extend Scheduling Order Dates by Perry Cline(on behalf of himself) Responses due by 1/25/2019(Ryan, Patrick) (Entered: 01/11/2019) |

| | | |
|---|---|---|
| 01/14/2019 | 85 | THIRD AMENDED SCHEDULING ORDER by District Judge James H. Payne: granting 84 Unopposed Motion to Modify Second Amended Scheduling Order (cjt, Deputy Clerk) (Entered: 01/14/2019) |
| 04/26/2019 | 86 | MOTION to Extend Deadlines by Plaintiff (With attachments) Responses due by 5/10/2019(Burrage, Michael) (Entered: 04/26/2019) |
| 05/02/2019 | 87 | MINUTE ORDER by District Judge James H. Payne: Directing an expedited response by 5/6/2019 (Re: 86 Plaintiff's MOTION for Extension of Time) (cjt, Deputy Clerk) (Entered: 05/02/2019) |
| 05/06/2019 | 88 | RESPONSE to Motion (Re: 86 MOTION to Extend Deadlines) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) Modified on 5/9/2019 to edit event and text (dma, Deputy Clerk). (Entered: 05/06/2019) |
| 05/06/2019 | 89 | Amended RESPONSE in Opposition to Motion (Re: 86 MOTION to Extend Deadlines ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(McClure, Daniel) (Entered: 05/06/2019) |
| 05/06/2019 | 90 | FOURTH AMENDED SCHEDULING ORDER by District Judge James H. Payne: granting in part 86 Plaintiff's Motion for Extension of Time of Third Amended Scheduling Order (cjt, Deputy Clerk) (Entered: 05/06/2019) |
| 06/14/2019 | 91 | MOTION to Certify Class, To Appoint Class Representative, and to Appoint Class Counsel and Brief in Support by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments) Responses due by 6/28/2019(Ryan, Patrick) (Entered: 06/14/2019) |
| 06/14/2019 | 92 | Unopposed MOTION for Leave to File Exhibits Under Seal (Re: 91 MOTION to Certify Class, To Appoint Class Representative, and to Appoint Class Counsel) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) Responses due by 6/28/2019(Ryan, Patrick) (Entered: 06/14/2019) |
| 06/17/2019 | 93 | MINUTE ORDER by District Judge James H. Payne: Pursuant to 90 Fourth Amended Scheduling Order, the Response is due by 8/14/2019, and Reply is due by 9/16/2019. (Re: 91 MOTION to Certify Class, To Appoint Class Representative, and to Appoint Class Counsel) (cjt, Deputy Clerk) (Entered: 06/17/2019) |
| 06/17/2019 | 94 | MINUTE ORDER by District Judge James H. Payne: granting 92 Plaintiff's Unopposed Motion for Leave to File Exhibits Under Seal. (Re: 91 MOTION to Certify Class, To Appoint Class Representative, and to Appoint Class Counsel) (cjt, Deputy Clerk) (Entered: 06/17/2019) |
| 06/18/2019 | 95 | SEALED EXHIBITS 2, 3, 4, 11, 12, 13, 15, 16, 18 and 19 (Re: 91 MOTION to Certify Class, to Appoint Class Representative, and to Appoint Class Counsel) by Perry Cline (cjt, Deputy Clerk) Modified on 6/20/2019 to reflect CD received for EXHIBIT 15.1 (Re: 96 Notice of Conventional Filing) and stored in file cabinet in vault on 2nd floor Court Clerk's Office (cjt, Deputy Clerk). (Entered: 06/18/2019) |
| 06/19/2019 | 96 | NOTICE of Conventional Filing (Re: 91 MOTION to Certify Class, 95 Sealed Exhibit(s) in Support of Document(s) ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Ryan, Patrick) Modified on 6/20/2019 to reflect CD received for EXHIBIT 15.1 and stored in file cabinet in vault on 2nd floor Court Clerk's Office (cjt, Deputy Clerk). (Entered: 06/19/2019) |
| 07/18/2019 | 97 | MINUTE ORDER by Court Clerk: At the direction of the Court, this case is reassigned to United States District Judge John A. Gibney, Jr. of the Eastern District of Virginia, serving in this case be designation pursuant to 28 U.S.C. 292(d). All documents filed in |

| | | |
|---|---|---|
| | | this case in the future shall reflect the new case number CIV-17-313-JAG. (tls, Deputy Clerk) (Entered: 07/18/2019) |
| 07/31/2019 | 98 | MINUTE ORDER by Judge John A. Gibney, Jr. setting hearing: Telephonic Status Conference set for 8/5/2019 at 2:30 PM **EASTERN TIME** before Judge John A. Gibney Jr. (tls, Deputy Clerk) (Entered: 07/31/2019) |
| 07/31/2019 | 99 | MOTION for Leave to File Sunoco Defendants' Motion for Leave to File Brief in Excess of Page Limitations (Re: 91 MOTION to Certify Class ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 8/14/2019(McClure, Daniel) (Entered: 07/31/2019) |
| 08/05/2019 | 100 | ATTORNEY APPEARANCE by Emily Nash Kitch on behalf of All Plaintiffs (Kitch, Emily) (Entered: 08/05/2019) |
| 08/05/2019 | 101 | ORDER by Judge John A. Gibney, Jr granting in part 99 Defendants' Motion for Leave to File Brief in Excess of Page Limitations. (tls, Deputy Clerk) (Entered: 08/06/2019) |
| 08/05/2019 | 102 | PRETRIAL ORDER by Judge John A. Gibney, Jr. amending 90 Fourth Amended Scheduling Order and setting scheduling order dates: Discovery due by 10/18/2019; Motions for Summary Judgment due by 11/1/2019; Plaintiff's Exhibit List due by 11/6/2019; Defendants' Exhibit List due by 11/16/19; Plaintiff's Witness List due by 11/6/2019; Defendants' Witness List due by 11/16/19; Voir Dire & Proposed FFCL due by 12/11/2019; Non-Jury Trial set for 12/16/2019 at 9:00 AM in Courtroom 1, Room 230, US Courthouse, 5th & Okmulgee, Muskogee, OK before Judge John A. Gibney Jr.) Additionally, Plaintiff's deadline to file a reply brief regarding class certification is now set for 8/28/2019. (Re: 91 MOTION to Certify Class) (tls, Deputy Clerk) (Entered: 08/06/2019) |
| 08/08/2019 | 103 | MOTION to Dismiss for Lack of Jurisdiction and Brief in Support by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 8/22/2019(McClure, Daniel) (Entered: 08/08/2019) |
| 08/14/2019 | 104 | Unopposed MOTION for Leave to File Appendix of Exhibits Under Seal by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 8/28/2019(McClure, Daniel) (Entered: 08/14/2019) |
| 08/14/2019 | 105 | RESPONSE to Motion (Re: 91 MOTION to Certify Class ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ;(McClure, Daniel) (Entered: 08/14/2019) |
| 08/14/2019 | 106 | EXHIBIT(S) (Re: 105 Response to Motion ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 08/14/2019) |
| 08/14/2019 | 107 | MOTION to Exclude Plaintiff's Expert Barbara Ley by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) Responses due by 8/28/2019(McClure, Daniel) (Entered: 08/14/2019) |
| 08/16/2019 | 108 | ORDER by Judge John A. Gibney, Jr directing defendants to file a response within fourteen (14) days as to why the selected exhibits should be filed under seal (Re: 104 Unopposed MOTION for Leave to File Appendix of Exhibits Under Seal) (dma, Deputy Clerk) (Entered: 08/16/2019) |
| 08/22/2019 | 109 | RESPONSE in Opposition to Motion (Re: 103 MOTION to Dismiss for Lack of Jurisdiction) by Perry Cline(on behalf of himself) ; (With attachments)(Beckworth, Bradley) Modified on 8/27/2019 to add link: See 110 for Exhibits B and D) (cjt, Deputy Clerk). (Entered: 08/22/2019) |

| 08/23/2019 | 110 | NOTICE to the Court by Perry Cline(on behalf of himself) (With attached Exhibits B and D to 109 Plaintiff's Response in Opposition to Motion to Dismiss (Re: 103 Defendants' Motion to Dismiss) (Beckworth, Bradley) Modified on 8/27/2019 to add links to documents (cjt, Deputy Clerk). (Entered: 08/23/2019) |
|---|---|---|
| 08/27/2019 | 111 | Unopposed MOTION for Leave to Exceed Page Limitation *to File Oversized Reply Brief* by All Plaintiffs Responses due by 9/10/2019(Ryan, Patrick) (Entered: 08/27/2019) |
| 08/28/2019 | 112 | ORDER by Judge John A. Gibney, Jr. GRANTING 111 Plaintiff's Unopposed Motion for Leave to File an Oversized Reply Brief. (tls, Deputy Clerk) (Entered: 08/28/2019) |
| 08/28/2019 | 113 | RESPONSE to Motion (Re: 107 MOTION to Exclude Plaintiff's Expert Barbara Ley ) by Perry Cline(on behalf of himself) ; (With attachments)(Beckworth, Bradley) (Entered: 08/28/2019) |
| 08/28/2019 | 114 | REPLY to Response to Motion (Re: 91 MOTION to Certify Class ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (With attachments)(Ryan, Patrick) (Entered: 08/28/2019) |
| 08/30/2019 | 115 | RESPONSE in Support of Motion (Re: 104 Unopposed MOTION for Leave to File Appendix of Exhibits Under Seal ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(McClure, Daniel) (Entered: 08/30/2019) |
| 09/03/2019 | 116 | NOTICE to the Court by Perry Cline (on behalf of himself) (With attachments) (Beckworth, Bradley) (Entered: 09/03/2019) |
| 09/05/2019 | 117 | REPLY to Response to Motion (Re: 103 MOTION to Dismiss for Lack of Jurisdiction ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ;(McClure, Daniel) Modified on 9/6/2019 to edit event (tls, Deputy Clerk). (Entered: 09/05/2019) |
| 09/10/2019 | 118 | REPLY to Response to Motion (Re: 107 MOTION to Exclude Plaintiff's Expert Barbara Ley ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ;(McClure, Daniel) (Entered: 09/10/2019) |
| 09/11/2019 | 119 | MOTION for Leave to File Sur-Reply to Plaintiff's Reply Brief in Support of Motion to Certify Class by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 9/25/2019(McClure, Daniel) (Entered: 09/11/2019) |
| 09/12/2019 | 120 | RESPONSE in Opposition to Motion (Re: 119 MOTION for Leave to File Sur-Reply to Plaintiff's Reply Brief in Support of Motion to Certify Class ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (With attachments) (Ryan, Patrick) (Entered: 09/12/2019) |
| 09/16/2019 | 121 | REPLY to Response to Motion (Re: 119 MOTION for Leave to File Sur-Reply to Plaintiff's Reply Brief in Support of Motion to Certify Class ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ;(McClure, Daniel) (Entered: 09/16/2019) |
| 10/03/2019 | 122 | OPINION by Judge John A. Gibney, Jr. (Re: 103 MOTION to Dismiss) (tls, Deputy Clerk) (Entered: 10/03/2019) |
| 10/03/2019 | 123 | ORDER by Judge John A. Gibney, Jr denying 103 Motion to Dismiss. (Re: 122 Opinion) (tls, Deputy Clerk) (Entered: 10/03/2019) |
| 10/03/2019 | 124 | OPINION by Judge John A. Gibney, Jr. (Re: 107 MOTION to Exclude Plaintiff's Expert Barbara Ley) (tls, Deputy Clerk) (Entered: 10/03/2019) |
| 10/03/2019 | 125 | ORDER by Judge John A. Gibney, Jr. denying 107 Motion to Exclude the Reports and Opinions of Plaintiff's Proposed Expert, Barbara A. Ley. (Re: 124 Opinion) (tls, Deputy |

| | | |
|---|---|---|
| | | Clerk) (Entered: 10/03/2019) |
| 10/03/2019 | 126 | OPINION by Judge John A. Gibney, Jr. (Re: 91 MOTION to Certify Class) (tls, Deputy Clerk) (Entered: 10/03/2019) |
| 10/03/2019 | 127 | ORDER by Judge John A. Gibney, Jr. granting 91 Plaintiff's Motion to Certify Class AND 119 Defendants' Motion to File Sur-Reply. (Re: 126 Opinion) (tls, Deputy Clerk) (Entered: 10/03/2019) |
| 10/03/2019 | 128 | Defendant's SUR-REPLY to Plaintiff's Reply Brief in Support of Motion to Certify Class, to Appoint Class Representative and to Appoint Class Counsel by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M). (Re: 91 MOTION to Certify Class) (tls, Deputy Clerk) (Entered: 10/03/2019) |
| 10/03/2019 | 129 | ORDER by Judge John A. Gibney, Jr. directing Plaintiff to submit a proposed Notice Form by 10/11/2019. (Re: 91 Motion for Class Certification) (tls, Deputy Clerk) (Entered: 10/03/2019) |
| 10/04/2019 | 130 | MINUTE ORDER by Judge John A. Gibney, Jr.: Telephone Conference set for 10/9/2019 at 2:00 PM **EASTERN TIME** before Judge John A. Gibney Jr. (Re: 129 Order) (tls, Deputy Clerk) (Entered: 10/04/2019) |
| 10/08/2019 | 131 | MOTION to Stay Case Pending Rule 23(f) Appeal by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 10/22/2019(McClure, Daniel) (Entered: 10/08/2019) |
| 10/10/2019 | 132 | ATTORNEY APPEARANCE by Susan R. Whatley on behalf of Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Whatley, Susan) (Entered: 10/10/2019) |
| 10/10/2019 | 133 | ORDER by Judge John A. Gibney, Jr: directing counsel to confer no later than 10/14/2019. (Re: 130 Minute Order setting teleconference) (tls, Deputy Clerk) (Entered: 10/10/2019) |
| 10/10/2019 | 134 | ORDER by Judge John A. Gibney, Jr directing parties to file briefs about the proposed class notification process by 10/15/2019. Briefs may not exceed seven (7) pages. (Re: 130 Minute Order setting Telephone Conference) (tls, Deputy Clerk) (Entered: 10/10/2019) |
| 10/11/2019 | 135 | RESPONSE in Opposition to Motion (Re: 131 MOTION to Stay Case Pending Rule 23(f) Appeal ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (With attachments)(Beckworth, Bradley) (Entered: 10/11/2019) |
| 10/11/2019 | 136 | MOTION to Approve the Form and Manner of Class Notice by Perry Cline (on behalf of himself), Perry Cline (on behalf of all others similarly situated) (With attachments) Responses due by 10/25/2019(Beckworth, Bradley) (Entered: 10/11/2019) |
| 10/14/2019 | 137 | Status Report Regarding Class Notice (Re: 133 Order) by Perry Cline (on behalf of himself), Perry Cline (on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 10/14/2019) |
| 10/14/2019 | 138 | REPLY to Response to Motion (Re: 131 MOTION to Stay Case Pending Rule 23(f) Appeal ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (McClure, Daniel) (Entered: 10/14/2019) |
| 10/15/2019 | 139 | BRIEF Regarding Proposed Class Notification Process and Necessary Data (Re: 134 Order) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 10/15/2019) |
| 10/15/2019 | 140 | BRIEF Regarding Class Member Data in Response to Court Order of October 10, 2019 (Re: 134 Order) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) |

| | | |
|---|---|---|
| | | (With attachments)(McClure, Daniel) (Entered: 10/15/2019) |
| 10/17/2019 | 141 | Petition by Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, LP filed in Circuit Court (case number 19-608) for Permission to Appeal Class Certification. (Re: 127 Ruling on Motion to Certify Class 126 Opinion and Order) (tls, Deputy Clerk) (Entered: 10/18/2019) |
| 10/18/2019 | 142 | MOTION for Partial Summary Judgment and Brief in Support by All Plaintiffs (With attachments) Responses due by 11/1/2019(Ryan, Patrick) (Entered: 10/18/2019) |
| 10/18/2019 | 143 | MOTION for Leave to File to File Exhibits Under Seal (Re: 142 MOTION for Partial Summary Judgment *and Brief in Support* ) by All Plaintiffs Responses due by 11/1/2019(Ryan, Patrick) (Entered: 10/18/2019) |
| 10/25/2019 | 144 | RESPONSE to Motion (Re: 136 MOTION to Approve the Form and Manner of Class Notice ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(McClure, Daniel) (Entered: 10/25/2019) |
| 10/28/2019 | 145 | STATUS REPORT and MOTION for Status Conference by Perry Cline(on behalf of himself); Response due by 11/12/2019 (Beckworth, Bradley) Modified on 10/29/2019 to edit event (dma, Deputy Clerk). (Entered: 10/28/2019) |
| 10/29/2019 | 146 | MOTION to Strike Document or Continue Class Representative's (Re: 142 MOTION for Partial Summary Judgment) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 11/12/2019(McClure, Daniel) (Entered: 10/29/2019) |
| 10/30/2019 | 147 | MOTION for Attorney Ross Leonoudakis to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number AOKEDC-1313269) by All Plaintiffs (With attachments) Responses due by 11/13/2019(Burrage, Michael) (Entered: 10/30/2019) |
| 10/30/2019 | 148 | MINUTE ORDER by Judge John A. Gibney, Jr. GRANTING 145 Motion for Status Conference. Accordingly, Telephone Conference set for 10/31/2019 at 11:00 AM **EASTERN TIME** before Judge John A. Gibney Jr. (Re: 136 MOTION to Approve the Form and Manner of Class Notice) (tls, Deputy Clerk) (Entered: 10/30/2019) |
| 10/30/2019 | 149 | OPINION by Judge John A. Gibney, Jr. (Re: 131 Defendants' MOTION to Stay Case Pending Rule 23(f) Appeal) (tls, Deputy Clerk) (Entered: 10/30/2019) |
| 10/30/2019 | 150 | ORDER by Judge John A. Gibney, Jr denying 131 Defendants' Motion to Stay Pending Rule 23(f) Appeal (Re: 149 Opinion) (tls, Deputy Clerk) (Entered: 10/30/2019) |
| 10/30/2019 | 151 | MOTION for Attorney Robert D. Woods to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number AOKEDC-1313348) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 11/13/2019(Christiansen, Mark) (Entered: 10/30/2019) |
| 10/30/2019 | 152 | MOTION for Attorney R. Paul Yetter to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number AOKEDC-1313350) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 11/13/2019(Christiansen, Mark) (Entered: 10/30/2019) |
| 10/30/2019 | 153 | ORDER by Judge John A. Gibney, Jr denying 146 Defendants' Motion to Strike or Continue Class Representative's Motion for Partial Summary Judgment. (tls, Deputy Clerk) (Entered: 10/30/2019) |
| 10/30/2019 | 154 | MINUTE ORDER by Judge John A. Gibney, Jr. GRANTING 147 Motion for Admission Pro Hac Vice of attorney Ross Leonoudakis for Plaintiff, Perry Cline, provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is |

| | | |
|---|---|---|
| | | conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (tls, Deputy Clerk) (Entered: 10/30/2019) |
| 10/31/2019 | 155 | MINUTE ORDER by Judge John A. Gibney, Jr.: GRANTING 151 Motion for Admission Pro Hac Vice of attorney Robert D. Woods for Defendants Sunoco Partners Marketing & Terminals, LP and Sunoco, Inc. (R&M), provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (tls, Deputy Clerk) (Entered: 10/31/2019) |
| 10/31/2019 | 156 | MINUTE ORDER by Judge John A. Gibney, Jr.: GRANTING 152 Motion for Admission Pro Hac Vice of attorney R. Paul Yetter for Defendants Sunoco Partners Marketing & Terminals, LP, and Sunoco, Inc. (R&M), provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (tls, Deputy Clerk) (Entered: 10/31/2019) |
| 10/31/2019 | 157 | ATTORNEY APPEARANCE by Ross Leonoudakis on behalf of All Plaintiffs (Leonoudakis, Ross) (Entered: 10/31/2019) |
| 10/31/2019 | 158 | ORDER by Judge John A. Gibney, Jr. (Re: 136 Plaintiff's MOTION to Approve the Form and Manner of Class Notice; 148 Minute Order setting 10/31/2019 Telephone Conference) (tls, Deputy Clerk) (Entered: 10/31/2019) |
| 11/01/2019 | 159 | ORDER by Judge John A. Gibney, Jr granting 136 Motion to Approve the Form and Manner of Class Notice. Accordingly, Plaintiff is directed to file the revised class notice form, notice plan, and exclusion request form electronically by 11/05/2019. (tls, Deputy Clerk) (Entered: 11/01/2019) |
| 11/01/2019 | 160 | RESPONSE in Opposition to Motion (Re: 142 MOTION for Partial Summary Judgment) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) (McClure, Daniel) (Entered: 11/01/2019) |
| 11/05/2019 | 161 | Supplemental NOTICE Regarding Motion to Approve the Form and Manner of Class Notice (Re: 159 Ruling on Motion for Miscellaneous Relief) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments) (Beckworth, Bradley) (Entered: 11/05/2019) |
| 11/06/2019 | 162 | Proposed EXHIBIT LIST by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Ryan, Patrick) (Entered: 11/06/2019) |
| 11/06/2019 | 163 | Initial WITNESS LIST by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Ryan, Patrick) (Entered: 11/06/2019) |
| 11/07/2019 | 164 | ORDER by Judge John A. Gibney, Jr. (Re: 158 Order) (tls, Deputy Clerk) (Entered: 11/07/2019) |
| 11/07/2019 | 165 | REPLY to Response to Motion (Re: 142 MOTION for Partial Summary Judgment ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (With attachments)(Beckworth, Bradley) (Entered: 11/07/2019) |
| 11/11/2019 | 166 | Agreed MOTION to Modify Pretrial Order (Re: 102 Scheduling Order) by All Plaintiffs; Responses due by 11/25/2019(Beckworth, Bradley) Modified on 11/12/2019 to edit text and event. (tls, Deputy Clerk). (Entered: 11/11/2019) |

| | | |
|---|---|---|
| 11/11/2019 | 167 | ATTORNEY APPEARANCE by Robert D. Woods on behalf of Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (Woods, Robert) (Entered: 11/11/2019) |
| 11/12/2019 | 168 | ORDER by Judge John A. Gibney, Jr. granting 166 Plaintiff's Agreed Motion to Modify Pretrial Order for the limited purpose of modifying the dates on which the parties must exchange demonstrative exhibits and lists of demonstrative exhibits. (tls, Deputy Clerk) (Entered: 11/12/2019) |
| 11/13/2019 | 169 | ATTORNEY APPEARANCE by Richard Paul Yetter on behalf of All Defendants (Yetter, Richard) (Entered: 11/13/2019) |
| 11/13/2019 | 170 | ORDER from Circuit Court (case number 19-608) DENYING 141 Petition by Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, LP for Permission to Appeal Class Certification. (With attachments)(tls, Deputy Clerk) (Entered: 11/14/2019) |
| 11/15/2019 | 171 | Joint MOTION to Relocate Trial by All Plaintiffs; Responses due by 12/2/2019 (Beckworth, Bradley) (Entered: 11/15/2019) |
| 11/15/2019 | 172 | MOTION to Clarify Class Definition by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 12/2/2019(McClure, Daniel) (Entered: 11/15/2019) |
| 11/16/2019 | 173 | Initial WITNESS LIST by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 11/16/2019) |
| 11/16/2019 | 174 | Proposed EXHIBIT LIST by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 11/16/2019) |
| 11/16/2019 | 175 | STIPULATION of Facts by Perry Cline(on behalf of himself) (Ryan, Patrick) (Entered: 11/16/2019) |
| 11/18/2019 | 176 | ORDER by Judge John A. Gibney, Jr. directing Plaintiff to file a Response to 172 MOTION to Clarify the Class Definition by 11/22/2019. (tls, Deputy Clerk) (Entered: 11/18/2019) |
| 11/19/2019 | 177 | RESPONSE in Opposition to Motion (Re: 172 MOTION to Clarify Class Definition) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 11/19/2019) |
| 11/19/2019 | 178 | MOTION for Leave to File Exhibits Under Seal (Re: 177 Response in Opposition to Motion) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) Responses due by 12/3/2019(Beckworth, Bradley) (Entered: 11/19/2019) |
| 11/20/2019 | 179 | NOTICE of Filing Response to Defendant's Motion to Clarify or Decertify the Class (Re: 177 Response in Opposition to Motion, 178 MOTION for Leave to File Exhibits Under Seal ) AND Motion for Telephonic Hearing by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) Modified on 11/20/2019 to add Motion for Hearing and edit text. (tls, Deputy Clerk). (Entered: 11/20/2019) |
| 11/21/2019 | 180 | MINUTE ORDER by Judge John A. Gibney, Jr. granting 179 Motion for Hearing AND setting Telephonic Hearing for 11/25/2019 at 1:30 PM **EASTERN TIME** before Judge John A. Gibney Jr. (Re: 172 MOTION to Clarify Class Definition) (tls, Deputy Clerk) (Entered: 11/21/2019) |
| 11/21/2019 | 181 | Class Representative's Proposed Rebuttal EXHIBIT LIST by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Pate, Andrew) (Entered: 11/21/2019) |

| | | |
|---|---|---|
| 11/22/2019 | 182 | MOTION for Leave to File Defendants' Reply in Support of Motion to Clarify That Class Definition Does Not Include Escheat Payments to States, Or Alternatively, to Decertify the Class or Exclude Escheat Payments from Class by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 12/6/2019(McClure, Daniel) (Entered: 11/22/2019) |
| 11/25/2019 | 183 | ORDER by Judge John A. Gibney, Jr: granting 182 Sunoco Defendants' Motion for Leave to File Brief in Excess of Page Limitations in Reply (Re: 172 MOTION to Clarify Class Definition) (cjt, Deputy Clerk) (Entered: 11/25/2019) |
| 11/25/2019 | 184 | REPLY to Response to Motion (Re: 172 MOTION to Clarify Class Definition ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments) (McClure, Daniel) (Entered: 11/25/2019) |
| 11/26/2019 | 185 | TRANSCRIPT of Proceedings (Unredacted) of Motions Hearing held on October 5, 2018 before Magistrate Judge Steven P. Shreder (Court Reporter: Karla McWhorter) (Pages: 1-56). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 75 Minutes of Motion Hearing ) (ksm, Court Reporter) (Entered: 11/26/2019) |
| 11/26/2019 | 186 | ORDER by Judge John A. Gibney, Jr: denying 172 Sunoco Defendants' Motion to Clarify. Court clarifies that it considers escheat payments, as defined by Sunoco, as part of the class definition. Court declines to decertify the class. (cjt, Deputy Clerk) (Entered: 11/26/2019) |
| 11/26/2019 | 187 | OBJECTION to Exhibit List by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) Modified on 12/2/2019 to edit event (dma, Deputy Clerk). (Entered: 11/26/2019) |
| 11/26/2019 | 188 | OBJECTION to Deposition Designations re: depo of Holland, Warren, Lanceslin, Redding, Oakley by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 11/26/2019) |
| 11/26/2019 | 189 | Class Representative's Objections to Witness List by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) Modified on 12/2/2019 to edit event (dma, Deputy Clerk). (Entered: 11/26/2019) |
| 11/26/2019 | 190 | OBJECTION to Exhibits by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 11/26/2019) |
| 11/26/2019 | 191 | OBJECTION to Proposed Exhibit List by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 11/26/2019) |
| 11/26/2019 | 192 | OBJECTION to Deposition Designations re: depo of Demi Lanceslin, Alice Holland and Kathy Lynn Warren by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Ryan, Patrick) (Entered: 11/26/2019) |
| 11/26/2019 | 193 | OBJECTIONS to Witness List (Re: 163 Witness List) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) Modified on 12/2/2019 to edit event (dma, Deputy Clerk). (Entered: 11/26/2019) |
| 12/02/2019 | 194 | SUBPOENA returned Executed as to Eric Koelling by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Ryan, Jason) (Entered: 12/02/2019) |

| 12/02/2019 | 195 | MINUTE ORDER by Judge John A. Gibney, Jr: At the Telephonic Hearing held on 11/25/2019 (Re: 172 MOTION to Clarify Class Definition) Plaintiff offered into evidence a PRSA Compliance Summary Chart (Plaintiffs Exhibit 1). Defendants did not object; Plaintiffs Exhibit 1 was ADMITTED. (tls, Deputy Clerk) (Entered: 12/02/2019) |
|---|---|---|
| 12/02/2019 | 196 | MOTION for Leave to File Defendants' Sur-Reply to Class Representative's Reply in Support of Motion for Partial Summary Judgment (Re: 142 MOTION for Partial Summary Judgment ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 12/16/2019(McClure, Daniel) (Entered: 12/02/2019) |
| 12/03/2019 | 197 | MINUTE ORDER by Judge John A. Gibney, Jr. setting Telephonic Motion Hearing for 12/6/2019 at 10:30 AM **EASTERN TIME** before Judge John A. Gibney Jr. (Re: 142 MOTION for Partial Summary Judgment) (tls, Deputy Clerk) (Entered: 12/03/2019) |
| 12/03/2019 | 198 | ORDER by Judge John A. Gibney, Jr: DENYING 171 Joint Motion to Relocate Trial. (tls, Deputy Clerk) (Entered: 12/03/2019) |
| 12/03/2019 | 199 | RESPONSE to Motion (Re: 196 MOTION for Leave to File Defendants' Sur-Reply to Class Representative's Reply in Support of Motion for Partial Summary Judgment ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (Beckworth, Bradley) (Entered: 12/03/2019) |
| 12/04/2019 | 200 | REPLY to Response to Motion (Re: 196 MOTION for Leave to File Defendants' Sur-Reply to Class Representative's Reply in Support of Motion for Partial Summary Judgment ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (McClure, Daniel) (Entered: 12/04/2019) |
| 12/04/2019 | 201 | MOTION for Attorney Winn Cutler to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number AOKEDC-1322166) by All Plaintiffs (With attachments) Responses due by 12/18/2019(Burrage, Michael) (Entered: 12/04/2019) |
| 12/05/2019 | 202 | MOTION for Attorney Emma W. Perry to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number AOKEDC-1322479) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 12/19/2019(Christiansen, Mark) (Entered: 12/05/2019) |
| 12/05/2019 | 203 | MOTION for Attorney Emma W. Perry to be Admitted Pro Hac Vice *(CORRECTED)* (paid $50 filing fee; receipt number AOKEDC-1322566) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 12/19/2019(Christiansen, Mark) (Entered: 12/05/2019) |
| 12/05/2019 | 204 | MINUTE ORDER by Judge John A. Gibney, Jr: GRANTING 201 Motion for Admission Pro Hac Vice of attorney Robert Cutler for Plaintiff, Perry Cline, provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (tls, Deputy Clerk) (Entered: 12/05/2019) |
| 12/05/2019 | 205 | MINUTE ORDER by Judge John A. Gibney, Jr: finding as MOOT 202 Motion for Admission Pro Hac Vice and GRANTING 203 Motion for Admission Pro Hac Vice of attorney Emma W. Perry for Defendants Sunoco Partners Marketing & Terminals, LP, and Sunoco, Inc. (R&M), provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) |

| | | |
|---|---|---|
| | | days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (tls, Deputy Clerk) (Entered: 12/05/2019) |
| 12/05/2019 | 206 | ATTORNEY APPEARANCE by Robert Cutler on behalf of All Plaintiffs (Cutler, Robert) (Entered: 12/05/2019) |
| 12/05/2019 | 207 | MOTION to Strike Sunoco's Expert Eric Krause by Perry Cline (on behalf of himself), Perry Cline (on behalf of all others similarly situated) (With attachments) Responses due by 12/19/2019(Beckworth, Bradley) (Entered: 12/05/2019) |
| 12/05/2019 | 208 | PRETRIAL BRIEF Regarding the Burden of Proof on Applicable Interest Rate by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 12/05/2019) |
| 12/06/2019 | 209 | ATTORNEY APPEARANCE by Emma W. Perry on behalf of All Defendants (Perry, Emma) (Entered: 12/06/2019) |
| 12/06/2019 | 210 | ATTORNEY APPEARANCE by Lisa P. Baldwin on behalf of Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Baldwin, Lisa) (Entered: 12/06/2019) |
| 12/06/2019 | 211 | ORDER by Judge John A. Gibney, Jr: Defendants directed to file their opposition brief by 12/9/2019. If the plaintiff intends to file a reply brief, he must do so by 12/10/2019 (Re: 207 Class Representative's MOTION to Strike Sunoco's Expert, Eric Krause). (ndd, Deputy Clerk) (Entered: 12/06/2019) |
| 12/06/2019 | 212 | MINUTE ORDER by Judge John A. Gibney, Jr: At the Telephonic Motion Hearing held on 12/6/2019 (Re: 142 MOTION for Partial Summary Judgment) the Court heard argument and took the motion under advisement; the Court also set a final pretrial conference date. Accordingly, a Final Pretrial Conference is now set for 12/11/2019 at 9:00 a.m. **EASTERN TIME** before Judge John A. Gibney Jr. The hearing will be conducted by telephone. (ndd, Deputy Clerk) (Entered: 12/06/2019) |
| 12/06/2019 | 213 | PRETRIAL BRIEF on Burden of Proof by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/06/2019) |
| 12/06/2019 | 214 | PRETRIAL BRIEF on Individual Liability Issues by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/06/2019) |
| 12/06/2019 | 215 | PRETRIAL BRIEF of Interest on Interest by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/06/2019) |
| 12/06/2019 | 216 | PRETRIAL BRIEF on Punitive Damages by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/06/2019) |
| 12/06/2019 | 217 | PRETRIAL BRIEF on Fraud by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/06/2019) |
| 12/06/2019 | 218 | DESIGNATIONS (DEPOSITION) re: Deposition Testimony and COUNTER-DESIGNATIONS of Deposition Testimony of Alice Holland, Demi Lanceslin, Terry Oakley, Patricia Redding, and Kathy Lynn Warren by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Ryan, Patrick) (Entered: 12/06/2019) |
| 12/06/2019 | 219 | Amended OBJECTION to Deposition Designations re: depo of Demi Lanceslin and Kathy Lynn Warren by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Ryan, Patrick) (Entered: 12/06/2019) |
| 12/06/2019 | 220 | Amended OBJECTION to Deposition Designations re: depo of Alice Holland, Kathy Warren, Demi Lanceslin and Terry Oakley by Sunoco Partners Marketing & Terminals, |

| | | LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 12/06/2019) |
|---|---|---|
| 12/06/2019 | 221 | DESIGNATIONS (DEPOSITION) re: deposition of Alice Holland, Kathy Warren, Demi Lanceslin, Patricia Redding, Terry Oakley, Eric Koelling and Perry Cline by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/06/2019) |
| 12/06/2019 | 222 | PRETRIAL BRIEF on Standing, Ripeness and Prohibitions Against Fluid Recovery of Damages by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/06/2019) |
| 12/06/2019 | 223 | PRETRIAL BRIEF Regarding Plaintiff's Claims on Behalf of Owners of Unclaimed Proceeds Paid to the States by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 12/06/2019) |
| 12/06/2019 | 224 | PRETRIAL BRIEF Regarding Compounding Interest by Perry Cline (on behalf of himself), Perry Cline (on behalf of all others similarly situated) (With attachments) (Beckworth, Bradley) (Entered: 12/06/2019) |
| 12/06/2019 | 225 | PRETRIAL BRIEF Regarding Plaintiff's Certified Fraud Claim by Perry Cline (on behalf of himself), Perry Cline (on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 12/06/2019) |
| 12/06/2019 | 226 | PRETRIAL BRIEF Regarding the Amount of Statutory Interest Sunoco is Required to Pay on Unclaimed Proceeds by Perry Cline (on behalf of himself), Perry Cline (on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 12/06/2019) |
| 12/06/2019 | 227 | PRETRIAL BRIEF Regarding Punitive Damages by Perry Cline (on behalf of himself), Perry Cline (on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 12/06/2019) |
| 12/09/2019 | 228 | TRANSCRIPT of Proceedings (Unredacted) of Telephonic Motion Hearing held on 12/6/19 before Judge John A. Gibney, Jr (Court Reporter: Gilbert Frank Halasz) (Pages: 35). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 212 Minute Order re: Motion Hearing) (tls, Deputy Clerk) (Entered: 12/09/2019) |
| 12/09/2019 | 229 | Amended Proposed EXHIBIT LIST by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 12/09/2019) |
| 12/09/2019 | 230 | RESPONSE to Motion (Re: 207 MOTION to Strike Sunoco's Expert Eric Krause) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) (McClure, Daniel) (Entered: 12/09/2019) |
| 12/09/2019 | 237 | LETTER from Betty Loraine Oakes Muka (With attachments)(tls, Deputy Clerk) (Entered: 12/11/2019) |
| 12/10/2019 | 231 | OPINION by Judge John A. Gibney, Jr (Re: 142 MOTION for Partial Summary Judgment) (tls, Deputy Clerk) (Entered: 12/10/2019) |
| 12/10/2019 | 232 | ORDER by Judge John A. Gibney, Jr granting 142 Plaintiff's Motion for Partial Summary Judgment AND Defendants' Motion for Leave to File Sur-Reply. (tls, Deputy Clerk) (Entered: 12/10/2019) |

| | | |
|---|---|---|
| 12/10/2019 | 233 | Amended Trial WITNESS LIST by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/10/2019) |
| 12/10/2019 | 234 | REPLY to Response to Motion (Re: 207 MOTION to Strike Sunoco's Expert Eric Krause ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ;(Beckworth, Bradley) (Entered: 12/10/2019) |
| 12/11/2019 | 235 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: At the Final Pretrial Conference held on 12/11/2019 the Court discussed various pretrial matters with the parties and advised counsel that each side may have up to 45 minutes for opening statements. Accordingly, the Non-Jury Trial is date certain of 12/16/2019, beginning at 9:00 a.m., to last 5 days. Parties shall report by 8:30 a.m. on the day of trial. (Court Reporter: Gilbert F. Halasz) (tls, Deputy Clerk) Modified on 10/2/2020 to add court reporter; NEF regenerated (tls, Deputy Clerk) (Entered: 12/11/2019) |
| 12/11/2019 | 236 | TRANSCRIPT of Proceedings (Unredacted) of Telephonic Hearing held on 11/25/19 before Judge John A. Gibney, Jr (Court Reporter: Gilbert F. Halasz) (Pages: 37). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 195 Minute Order re: Telephonic Hearing) (tls, Deputy Clerk) Modified on 12/13/2019 to reflect correct docket entry no. (tls, Deputy Clerk). (Entered: 12/11/2019) |
| 12/11/2019 | 238 | ORDER by Judge John A. Gibney, Jr (Re: 237 Letter) (tls, Deputy Clerk) (Entered: 12/11/2019) |
| 12/11/2019 | 239 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/11/2019) |
| 12/11/2019 | 240 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW by Perry Cline(on behalf of himself) (Ryan, Patrick) (Entered: 12/11/2019) |
| 12/13/2019 | 241 | MOTION for Attorney Mark Thomas Emery to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number AOKEDC-1324766) by All Defendants (With attachments) Responses due by 12/27/2019(Christiansen, Mark) (Main Document 241 replaced on 12/13/2019) (pjw, Deputy Clerk). (Entered: 12/13/2019) |
| 12/13/2019 | 242 | MOTION for Attorney Matthew Alexander Dekovich to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number AOKEDC-1324772) by All Defendants (With attachments) Responses due by 12/27/2019(Christiansen, Mark) (Main Document 242 replaced on 12/13/2019) (pjw, Deputy Clerk). (Entered: 12/13/2019) |
| 12/13/2019 | 243 | MINUTE ORDER by Judge John A. Gibney, Jr: GRANTING 241 Motion for Admission Pro Hac Vice of attorney Mark T. Emery for Defendants Sunoco Partners Marketing & Terminals, LP and Sunoco, Inc. (R&M), provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (tls, Deputy Clerk) (Entered: 12/13/2019) |
| 12/13/2019 | 244 | ORDER by Judge John A. Gibney, Jr. granting 104 Defendants' Unopposed Motion for Leave to File Appendix of Exhibits Under Seal. (tls, Deputy Clerk) (Entered: 12/13/2019) |

| 12/13/2019 | 245 | ORDER by Judge John A. Gibney, Jr DENYING 143 Class Representative's Motion for Leave to File Exhibits Under Seal. (tls, Deputy Clerk) (Entered: 12/13/2019) |
|---|---|---|
| 12/13/2019 | 246 | ORDER by Judge John A. Gibney, Jr. DENYING 178 Plaintiff's Motion for Leave to File Exhibits Under Seal. (tls, Deputy Clerk) (Entered: 12/13/2019) |
| 12/13/2019 | 247 | Joint Trial Calendar by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 12/13/2019) |
| 12/15/2019 | 248 | DECLARATION of Jennifer M. Keough Regarding Notice Administration by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 12/15/2019) |
| 12/16/2019 | 249 | ATTORNEY APPEARANCE by Trey Duck on behalf of All Plaintiffs (Duck, Trey) (Entered: 12/16/2019) |
| 12/16/2019 | 250 | MINUTE ORDER by Judge John A. Gibney, Jr granting 242 Motion for Admission Pro Hac Vice of attorney Matthew A. Dekovich for Defendants Sunoco Partners Marketing & Terminals, LP, and Sunoco, Inc. (R&M), provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (tls, Deputy Clerk) (Entered: 12/16/2019) |
| 12/16/2019 | 251 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: Nonjury Trial (Day 1) held on 12/16/2019. (Court Reporter: Ken Sidwell) (tls, Deputy Clerk) (Entered: 12/16/2019) |
| 12/16/2019 | 252 | MINUTE ORDER by Judge John A. Gibney, Jr. setting continuation of Non-Jury Trial for 12/17/2019 at 8:30 AM in Courtroom 1, Room 230, US Courthouse, 5th & Okmulgee, Muskogee, OK before Judge John A. Gibney Jr. (tls, Deputy Clerk) (Entered: 12/16/2019) |
| 12/16/2019 | 253 | ATTORNEY APPEARANCE by Mark T. Emery on behalf of Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (Emery, Mark) (Entered: 12/16/2019) |
| 12/17/2019 | 254 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: Non-jury Trial held on 12/17/2019. (Court Reporters: Ken Sidwell and Karla McWhorter) (tls, Deputy Clerk) (Entered: 12/17/2019) |
| 12/17/2019 | 255 | MINUTE ORDER by Judge John A. Gibney, Jr. setting continuation of Non-Jury Trial for 12/18/2019 at 8:30 AM in Courtroom 1, Room 230, US Courthouse, 5th & Okmulgee, Muskogee, OK before Judge John A. Gibney Jr.(tls, Deputy Clerk) (Entered: 12/17/2019) |
| 12/18/2019 | 256 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: Non-jury Trial (Day 3) held on 12/18/2019. (Court Reporter: Ken Sidwell) (tls, Deputy Clerk) (Entered: 12/18/2019) |
| 12/18/2019 | 257 | MINUTE ORDER by Judge John A. Gibney, Jr. setting continuation of Non-Jury Trial for 12/19/2019 at 8:30 AM in Courtroom 1, Room 230, US Courthouse, 5th & Okmulgee, Muskogee, OK before Judge John A. Gibney Jr. (tls, Deputy Clerk) (Entered: 12/18/2019) |
| 12/18/2019 | 258 | ATTORNEY APPEARANCE by Matthew A. Dekovich on behalf of All Defendants (Dekovich, Matthew) (Entered: 12/18/2019) |
| 12/19/2019 | 259 | Offer of Objected-To Trial Exhibits on EXHIBIT LIST by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/19/2019) |
| 12/19/2019 | 260 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: Non-jury Trial completed on 12/19/2019. (Court Reporter: Ken Sidwell) (Attachments: # 1 Class Rep Initial Witness List, # 2 Defendants' Amended Trial Witnesses List, # 3 Class Rep Exhibit |

| | | |
|---|---|---|
| | | List, # 4 Defs Amended Prop Exh List, # 5 Defs Offer of Obj-To Trial Exhs)(tls, Deputy Clerk) (Entered: 12/19/2019) |
| 12/30/2019 | 261 | ORDER by Judge John A. Gibney, Jr: In the parties' proposed findings of facts and conclusions of law, the parties shall support each proposed finding of fact and, if necessary, conclusion of law by citing to the relevant portion of the trial record. This includes citations to both the deposition transcripts introduced at trial and the trial transcript. (ndd, Deputy Clerk) (Entered: 12/30/2019) |
| 01/07/2020 | 262 | NOTICE of Change of Address by Jason A. Ryan by on behalf of Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Ryan, Jason) (Entered: 01/07/2020) |
| 01/14/2020 | 263 | MINUTE ORDER by Judge John A. Gibney, Jr. setting Joint Telephone Conference for 1/15/2020 at 1:30 PM **EASTERN TIME** before Judge John A. Gibney Jr. (tls, Deputy Clerk) (Entered: 01/14/2020) |
| 01/15/2020 | 264 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: At the Joint Telephone Conference held on 1/15/2020 the Court discussed dates for Oral Closing Argument with the parties. Accordingly, Oral Closing Arguments are set for 3/31/2020 at 9:00 AM in Courtroom 1, Room 230, US Courthouse, 5th & Okmulgee, Muskogee, OK before Judge John A. Gibney Jr. (Court Reporter: Gail Halasz) (tls, Deputy Clerk) (Entered: 01/15/2020) |
| 01/24/2020 | 265 | NOTICE of Filing of Exhibits (Re: 244 Ruling on Motion for Leave to File Document) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Additional attachment(s) added on 1/27/2020: #(1) Exhibit 39, #(2) Exhibit 40, #(3) Exhibit 41, #(4) Exhibit 42, #(5) Exhibit 43, #(6) Exhibit 44, #(7) Exhibit 45, #(8) Exhibit 51, #(9) Exhibit 55, #(10) Exhibit 59, #(11) Exhibit 65, #(12) Exhibit 67, #(13) Exhibit 72) (tls, Deputy Clerk). (Entered: 01/24/2020) |
| 01/27/2020 | 266 | TRANSCRIPT of Proceedings (Unredacted) of Nonjury Trial, Volume I of V held on 12/16/19 before Judge John A. Gibney, Jr (Court Reporter: Ken Sidwell) (Pages: 1-317). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 251 Minutes of Nonjury Trial ) (kns, Court Reporter) (Entered: 01/27/2020) |
| 01/27/2020 | 267 | TRANSCRIPT of Proceedings (Unredacted) of Nonjury Trial, Volume II of V held on 12/17/19 before Judge John A. Gibney, Jr (Court Reporter: Ken Sidwell) (Pages: 318-483). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 254 Minutes of Nonjury Trial ) (kns, Court Reporter) (Entered: 01/27/2020) |
| 01/27/2020 | 268 | TRANSCRIPT of Proceedings (Unredacted) of Nonjury Trial, Volume III of V held on December 17, 2019 before Judge John A. Gibney, Jr (Court Reporter: Karla McWhorter) (Pages: 484-596). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy |

| | | |
|---|---|---|
| | | from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 254 Minutes of Nonjury Trial ) (ksm, Court Reporter) (Entered: 01/27/2020) |
| 01/27/2020 | 269 | TRANSCRIPT of Proceedings (Unredacted) of Nonjury Trial, Volume IV of V held on 12/18/19 before Judge John A. Gibney, Jr (Court Reporter: Ken Sidwell) (Pages: 597-916). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 256 Minutes of Nonjury Trial ) (kns, Court Reporter) (Entered: 01/27/2020) |
| 01/27/2020 | 270 | TRANSCRIPT of Proceedings (Unredacted) of Nonjury Trial, Volume V of V held on 12/19/19 before Judge John A. Gibney, Jr (Court Reporter: Ken Sidwell) (Pages: 917-1021). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 260 Minutes of Nonjury Trial, ) (kns, Court Reporter) (Entered: 01/27/2020) |
| 02/18/2020 | 271 | Supplemental DECLARATION of Jennifer M. Keough Regarding Notice of Administration by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 02/18/2020) |
| 02/18/2020 | 272 | Class Representative's Post-Trial Brief by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 02/18/2020) |
| 02/18/2020 | 273 | Amended PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 02/18/2020) |
| 02/18/2020 | 274 | Defendants' Post-Trial Brief by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 02/18/2020) |
| 02/18/2020 | 275 | Amended PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 02/18/2020) |
| 02/20/2020 | 276 | MINUTE ORDER by Judge John A. Gibney, Jr advising parties that Briefs in response to the Post Trial Briefs may not exceed twenty-five (25) pages. (Re: 274 Brief, 272 Brief) (tls, Deputy Clerk) (Entered: 02/20/2020) |
| 02/28/2020 | 277 | TRANSCRIPT of Proceedings (Unredacted) of Phone Conference held on 12/11/2019 before Judge John A. Gibney, Jr (Court Reporter: Gilbert F. Halasz) (Pages: 26). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 235 Minutes of Final Pretrial Conference) (tls, Deputy Clerk) (Entered: 02/28/2020) |

| | | |
|---|---|---|
| 02/28/2020 | 278 | RESPONSE (Re: 274 Brief ) by Perry Cline(on behalf of himself) (Ryan, Patrick) (Entered: 02/28/2020) |
| 02/28/2020 | 279 | RESPONSE (Re: 272 Brief) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) Modified on 3/2/2020 to edit text (dma, Deputy Clerk). (Entered: 02/28/2020) |
| 03/10/2020 | 280 | Unopposed MOTION for Leave to File Sunoco Defendants' Supplemental Post-Trial Brief by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 3/24/2020(McClure, Daniel) (Entered: 03/10/2020) |
| 03/11/2020 | 281 | ORDER by Judge John A. Gibney, Jr granting 280 Sunoco Defendants' Unopposed Motion for Leave to File Supplemental Post-Trial Brief. (tls, Deputy Clerk) (Entered: 03/11/2020) |
| 03/11/2020 | 282 | Supplemental BRIEF (Re: 274 Brief ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 03/11/2020) |
| 03/16/2020 | 283 | MINUTE ORDER by Judge John A. Gibney, Jr resetting hearing: Oral Closing Arguments previously set for 3/31/2020 at 9:00 am are hereby RESET for 6/17/2020 at 9:00 AM in Courtroom 1, Room 230, US Courthouse, 5th & Okmulgee, Muskogee, OK before Judge John A. Gibney Jr. (tls, Deputy Clerk) (Entered: 03/16/2020) |
| 03/17/2020 | 284 | Unopposed MOTION for Leave to File Response to Sunoco's Supplemental Post-Trial Brief by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments) Responses due by 3/31/2020(Ryan, Patrick) (Entered: 03/17/2020) |
| 03/23/2020 | 285 | ORDER by Judge John A. Gibney, Jr granting 284 Class Representative's Unopposed Motion for Leave to File a Response to Sunoco's Supplemental Post-Trial Brief. (tls, Deputy Clerk) (Entered: 03/23/2020) |
| 03/23/2020 | 286 | RESPONSE (Re: 282 Brief ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Ryan, Patrick) (Entered: 03/23/2020) |
| 05/05/2020 | 287 | NOTICE Regarding Reconsideration and Reversal of Opinion in the Case Sunoco Relied Upon for Its Supplemental Post-Trial Brief (Re: 282 Brief) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments) (Beckworth, Bradley) (Entered: 05/05/2020) |
| 05/05/2020 | 288 | MINUTE ORDER by Judge John A. Gibney, Jr: Telephonic Conference set for 5/6/2020 at 10:00 AM **EASTERN TIME** before Judge John A. Gibney Jr. (tls, Deputy Clerk) (Entered: 05/05/2020) |
| 05/06/2020 | 289 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: At the Telephone Conference held on 5/6/2020 the Court discussed the current setting date for Oral Closing Argument with the parties. Accordingly, Oral Closing Arguments previously set for 6/17/2020 at 9:00 AM in Courtroom 1, Room 230, US Courthouse, 5th & Okmulgee, Muskogee, OK before Judge John A. Gibney Jr. will proceed as scheduled. (Court Reporter: Gil Halasz) (tls, Deputy Clerk) (Entered: 05/06/2020) |
| 05/14/2020 | 290 | RESPONSE to Class Representatives Notice of Reconsideration and Reversal of Opinion (Re: 287 Notice) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) Modified on 5/15/2020 to edit text and add link (dma, Deputy Clerk). (Entered: 05/14/2020) |
| 05/27/2020 | 291 | ORDER by Judge John A. Gibney, Jr. (tls, Deputy Clerk) (Entered: 05/27/2020) |

| 06/15/2020 | 292 | MINUTE ORDER by Judge John A. Gibney, Jr. providing the below dial in information to all interested parties that wish to attend via teleconference, the Closing Oral Argument hearing set in this case on Wednesday, 6/17/2020 at 9:00 a.m.: Phone Number: 669-254-5252 OR 646-828-7666, Meeting ID: 160 609 9750, Participant ID: #, Password: 546899. (tls, Deputy Clerk) (Entered: 06/15/2020) |
|---|---|---|
| 06/17/2020 | 293 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: Oral Closing Arguments Hearing held on 6/17/2020. (Court Reporter: Shelley Ottwell) (tls, Deputy Clerk) (Entered: 06/17/2020) |
| 06/18/2020 | 294 | NOTICE of Filing of Demonstratives by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 06/18/2020) |
| 06/19/2020 | 295 | NOTICE of Filing Demonstratives by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 06/19/2020) |
| 07/06/2020 | 296 | TRANSCRIPT of Proceedings (Unredacted) of Closing Arguments held on June 17, 2020 before Judge John A. Gibney, Jr (Court Reporter: Shelley Ottwell) (Pages: 1 - 214). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 293 Minutes of Miscellaneous Hearing) (Ottwell, Shelley) (Entered: 07/06/2020) |
| 08/07/2020 | 297 | Second NOTICE of Filing of Exhibits (Re: 106 Exhibits in Support of Documents) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) (McClure, Daniel) (Entered: 08/07/2020) |
| 08/17/2020 | 298 | OPINION by Judge John A. Gibney, Jr. (tls, Deputy Clerk) (Entered: 08/17/2020) |
| 08/17/2020 | 299 | ORDER by Judge John A. Gibney, Jr. (tls, Deputy Clerk) (Entered: 08/17/2020) |
| 08/24/2020 | 300 | NOTICE Regarding Total Updated Damages Pursuant to Court Order (Dkt. No. 299) (Re: 299 Order) by Perry Cline (on behalf of himself and on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 08/24/2020) |
| 08/24/2020 | 301 | NOTICE and Objections Regarding Post-Trial Damages Claim (Re: 299 Order) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) (McClure, Daniel) (Entered: 08/24/2020) |
| 08/25/2020 | 302 | MINUTE ORDER by Judge John A. Gibney, Jr. setting hearing: Video Conference Hearing set for 8/27/2020 at 10:00 AM (EST) by Zoom before Judge John A. Gibney Jr. The Court will send invitations to Counsel for their participation and will publish dial-in information on the Court's website for the public. Counsel are directed to submit their email addresses for this hearing to Teka_Stephens@oked.uscourts.gov no later than 3:00 p.m on 8/26/2020. (Re: 300 Notice, 301 Notice) (tls, Deputy Clerk) (Entered: 08/25/2020) |
| 08/25/2020 | 303 | ORDER by Judge John A. Gibney, Jr. (tls, Deputy Clerk) (Entered: 08/25/2020) |
| 08/26/2020 | 304 | Supplemental NOTICE and Objections Regarding Post-Trial Damages Claim (Re: 303 Order ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 08/26/2020) |
| 08/27/2020 | 305 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: Video Conference Hearing held on 8/27/2020 (Court Reporter: Shelley Ottwell) (tls, Deputy Clerk) |

| | | (Entered: 08/27/2020) |
|---|---|---|
| 08/27/2020 | 306 | NOTICE OF APPEAL to Circuit Court (paid $505 appeal fee; receipt number COKEDC-1395879) (Re: 299 Order) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 08/27/2020) |
| 08/27/2020 | 307 | Transmission of Notice of Appeal and Docket Sheet to U.S. Court of Appeals (Re: 306 Notice of Appeal - Final Judgment ) (With attachments)(jcb, Deputy Clerk) (Entered: 08/27/2020) |
| 08/27/2020 | 308 | JUDGMENT by Judge John A. Gibney, Jr entering judgment against Defendants as to Count One. (terminates case) (tls, Deputy Clerk) (Entered: 08/27/2020) |
| 08/27/2020 | 309 | Amended NOTICE OF APPEAL (Re: 308 Judgment ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 08/27/2020) |
| 08/27/2020 | 310 | Transmission of Amended Notice of Appeal and Docket Sheet to U.S. Court of Appeals (Re: 309 Amended/Subsequent Notice of Appeal, 306 Notice of Appeal - Final Judgment ) (With attachments)(jcb, Deputy Clerk) (Entered: 08/27/2020) |
| 08/27/2020 | 311 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 20-7055 (Re: 309 Amended/Subsequent Notice of Appeal, 306 Notice of Appeal - Final Judgment ) (jcb, Deputy Clerk) (Entered: 08/27/2020) |
| 08/28/2020 | 312 | Joint MOTION to Prepare Additional Trial Transcript to Reflect Deposition Testimony (Re: 305 Minutes of Miscellaneous Hearing ) by All Defendants (With attachments) Responses due by 9/11/2020(McClure, Daniel) (Entered: 08/28/2020) |
| 09/02/2020 | 313 | Joint MOTION Approve Stipulation Regarding Deposition Testimony Played at Trial by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 9/16/2020(McClure, Daniel) (Entered: 09/02/2020) |
| 09/02/2020 | 314 | ORDER by Judge John A. Gibney, Jr. GRANTING 313 Joint Motion to Approve Stipulation Regarding Deposition Testimony Played at Trial and finding as MOOT 312 Joint Motion to Prepare Additional Trial Transcript to Reflect Deposition Testimony. (tls, Deputy Clerk) (Entered: 09/02/2020) |
| 09/04/2020 | 315 | TRANSCRIPT of Proceedings (Unredacted) of Miscellaneous held on August 27, 2020 before Judge John A. Gibney, Jr (Court Reporter: Shelley Ottwell) (Pages: 1-12). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 305 Minutes of Miscellaneous Hearing ) (Ottwell, Shelley) (Entered: 09/04/2020) |
| 09/08/2020 | 316 | Joint MOTION to Stay Proceedings on Attorney Fees and Costs Pending Appeal by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) Responses due by 9/22/2020(Beckworth, Bradley) (Entered: 09/08/2020) |
| 09/08/2020 | 317 | Class Counsel's Proposed Plan for Distribution of Damages Award Pursuant to Court Order (Re: 299 Order) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 09/08/2020) |
| 09/10/2020 | 318 | ORDER by Judge John A. Gibney, Jr granting 316 Joint Motion to Stay Proceedings on Attorneys' Fees and Costs. (tls, Deputy Clerk) (Entered: 09/10/2020) |

| | | |
|---|---|---|
| 09/11/2020 | 319 | TRANSCRIPT ORDER FORM (Transcripts are not necessary or are already on file ) (Re: 309 Amended/Subsequent Notice of Appeal ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 09/11/2020) |
| 09/11/2020 | 320 | Notice advising the record is complete for the purposes of appeal (re: Circuit Appeal No. 20-7055). A Transcript Order Form has been filed stating no transcripts are necessary (Re: 309 Amended/Subsequent Notice of Appeal, 306 Notice of Appeal - Final Judgment ) (jcb, Deputy Clerk) (Entered: 09/11/2020) |
| 09/22/2020 | 321 | RESPONSE (Re: 317 Brief ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 09/22/2020) |
| 09/24/2020 | 322 | MOTION for New Trial and Brief in Support by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 10/8/2020(McClure, Daniel) (Entered: 09/24/2020) |
| 09/24/2020 | 323 | MOTION to Alter Order/Judgment and Brief in Support (Re: 308 Judgment) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 10/8/2020(McClure, Daniel) (Entered: 09/24/2020) |
| 09/28/2020 | 324 | REPLY (Re: 321 Response ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 09/28/2020) |
| 09/28/2020 | 325 | MOTION for Leave to File Under Seal Exhibit 5 to Class Representatives Reply in Further Support of the Proposed Plan for Distribution of Damages Award (Re: 324 Reply) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) Responses due by 10/13/2020(Beckworth, Bradley) (Entered: 09/28/2020) |
| 09/29/2020 | 326 | ORDER by Judge John A. Gibney, Jr granting 325 Motion to Seal Exhibit 5 to Class Representative's Reply in Further Support of the Proposed Plan for Distribution of Damages Award. (tls, Deputy Clerk) (Entered: 09/29/2020) |
| 09/30/2020 | 327 | SEALED EXHIBIT 5 to Class Representatives Reply in Further Support of the Proposed Plan for Distribution of Damages Award (Re: 324 Reply) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 09/30/2020) |
| 10/01/2020 | 328 | MOTION for Leave to File Defendants' Sur-Reply to Plaintiffs' Reply in Further Support of Plan for Distribution of Damages by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 10/15/2020(McClure, Daniel) (Entered: 10/01/2020) |
| 10/01/2020 | 329 | RESPONSE to Motion (Re: 328 MOTION for Leave to File Defendants' Sur-Reply to Plaintiffs' Reply in Further Support of Plan for Distribution of Damages ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (With attachments)(Beckworth, Bradley) (Entered: 10/01/2020) |
| 10/02/2020 | 330 | ORDER by Judge John A. Gibney, Jr granting 328 Defendant's Motion for Leave to File Sur-Reply. (tls, Deputy Clerk) (Entered: 10/02/2020) |
| 10/02/2020 | 331 | REPLY (Re: 324 Reply ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 10/02/2020) |
| 10/08/2020 | 332 | RESPONSE to Motion (Re: 322 MOTION for New Trial ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ;(Beckworth, Bradley) (Entered: 10/08/2020) |

| | | |
|---|---|---|
| 10/08/2020 | 333 | RESPONSE to Motion (Re: 323 MOTION to Alter Order/Judgment ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ;(Beckworth, Bradley) (Entered: 10/08/2020) |
| 10/13/2020 | 334 | ORDER by Judge John A. Gibney, Jr directing the Parties to file a statement no later than 10/16/2020. (tls, Deputy Clerk) (Entered: 10/13/2020) |
| 10/16/2020 | 335 | RESPONSE by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 10/16/2020) |
| 10/16/2020 | 336 | Class Representative's Statement Pursuant to Court Order (Dkt. No. 334) (Re: 334 Order) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 10/16/2020) |
| 10/22/2020 | 337 | REPLY to Response to Motion (Re: 323 MOTION to Alter Order/Judgment) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) Modified on 10/27/2020 to edit event (dma, Deputy Clerk). (Entered: 10/22/2020) |
| 10/22/2020 | 338 | REPLY to Response to Motion (Re: 322 MOTION for New Trial) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) Modified on 10/27/2020 to edit event (dma, Deputy Clerk). (Entered: 10/22/2020) |
| 10/30/2020 | 339 | PLAN OF ALLOCATION ORDER by Judge John A. Gibney, Jr (tls, Deputy Clerk) (Entered: 10/30/2020) |
| 10/30/2020 | 340 | NOTICE OF APPEAL to Circuit Court (paid $505 appeal fee; receipt number AOKEDC-1420483) (Re: 339 Order ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 10/30/2020) |
| 10/30/2020 | 341 | Transmission of Notice of Appeal and Docket Sheet to U.S. Court of Appeals (Re: 340 Notice of Appeal - Final Judgment ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(jcb, Deputy Clerk) (Main Document 341 replaced on 11/3/2020) (jcb, Deputy Clerk). (Entered: 10/30/2020) |
| 10/30/2020 | 342 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 20-7064 (Re: 340 Notice of Appeal - Final Judgment ) (jcb, Deputy Clerk) (Entered: 10/30/2020) |
| 11/03/2020 | 343 | DECISION from Circuit Court dismissing the Appeal (No. 20-7055) (Re: 309 Amended/Subsequent Notice of Appeal, 306 Notice of Appeal - Final Judgment) (With attachments)(tls, Deputy Clerk) (Entered: 11/03/2020) |
| 11/18/2020 | 344 | TRANSCRIPT ORDER FORM (Transcripts are not necessary or are already on file ) (Re: 340 Notice of Appeal - Final Judgment ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 11/18/2020) |
| 11/18/2020 | 345 | Notice advising the record is complete for the purposes of appeal (re: Circuit Appeal No. 20-7064). A Transcript Order Form has been filed stating the necessary transcripts are already on file (Re: 340 Notice of Appeal - Final Judgment ) (jcb, Deputy Clerk) (Entered: 11/18/2020) |
| 11/24/2020 | 346 | ORDER from Circuit Court proceedings in the appeal (20-7064) are ABATED (Re: 340 Notice of Appeal - Final Judgment ) (tls, Deputy Clerk) (Entered: 11/24/2020) |
| 11/25/2020 | 347 | MOTION for New Trial by Sunoco Partners Marketing & Terminals, LP (With attachments) Responses due by 12/9/2020(McClure, Daniel) (Entered: 11/25/2020) |
| 11/25/2020 | 348 | MOTION to Alter Order/Judgment (Re: 308 Judgment ) by All Defendants (With attachments) Responses due by 12/9/2020(McClure, Daniel) (Entered: 11/25/2020) |

| | | |
|---|---|---|
| 12/09/2020 | 349 | OPINION by Judge John A. Gibney, Jr (Re: 348 MOTION to Alter Order/Judgment, 322 MOTION for New Trial, 347 MOTION for New Trial, 323 MOTION to Alter Order/Judgment) (tls, Deputy Clerk) (Entered: 12/09/2020) |
| 12/09/2020 | 350 | ORDER by Judge John A. Gibney, Jr. DENYING 322 Motion for New Trial, 323 Motion to Alter Order/Judgment, 347 Motion for New Trial and 348 Motion to Alter Order/Judgment. (tls, Deputy Clerk) (Entered: 12/09/2020) |
| 12/09/2020 | | ***Remark: Copies of 350 Ruling on Motion for New Trial, Ruling on Motion to Alter Order/Judgment and 349 Opinion and Order forwarded to 10th Circuit Court of Appeals electronically. (jcb, Deputy Clerk) (Entered: 12/09/2020) |
| 12/09/2020 | 351 | NOTICE OF APPEAL to Circuit Court (paid $505 appeal fee; receipt number AOKEDC-1435258) (Re: 350 Ruling on Motion for New Trial, Ruling on Motion to Alter Order/Judgment, 349 Opinion and Order) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/09/2020) |
| 12/09/2020 | 352 | Transmission of Notice of Appeal and Docket Sheet to U.S. Court of Appeals (Re: 351 Notice of Appeal - Final Judgment ) (With attachments)(jcb, Deputy Clerk) (Entered: 12/09/2020) |
| 12/09/2020 | 353 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 20-7072 (Re: 351 Notice of Appeal - Final Judgment ) (jcb, Deputy Clerk) (Entered: 12/09/2020) |
| 12/21/2020 | 354 | TRANSCRIPT ORDER FORM (Transcripts are not necessary or are already on file ) (Re: 351 Notice of Appeal - Final Judgment, ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 12/21/2020) |
| 12/21/2020 | 355 | Notice advising the record is complete for the purposes of appeal (re: Circuit Appeal No. 20-7072). A Transcript Order Form has been filed stating no transcripts are necessary (Re: 351 Notice of Appeal - Final Judgment ) (jcb, Deputy Clerk) (Entered: 12/21/2020) |
| 03/23/2021 | 356 | Joint STIPULATION Regarding Interest Payments by Sunoco Partners Marketing & Terminals, LP (McClure, Daniel) (Entered: 03/23/2021) |
| 11/01/2021 | 357 | DECISION from Circuit Court dismissing the Appeal (Re: 340 Notice of Appeal - Final Judgment, 351 Notice of Appeal - Final Judgment) (kch, Deputy Clerk) (Entered: 11/02/2021) |
| 12/01/2021 | 358 | LETTER from Circuit Court attaching Petition for Writ of Mandamus filed with the USCA on 12/1/2021 and assigning Case Number 21-7063. (kch, Deputy Clerk) Modified on 12/8/2021 to edit file date (dma, Deputy Clerk). Modified on 12/27/2021 to include info on Writ (sms, Deputy Clerk). (Entered: 12/03/2021) |
| 12/13/2021 | 359 | Opposed MOTION Class Representative's Opposed Motion to Set January 12, 2022 as the Deadline for Class Representative and Class Counsel to File Motions for Attorneys' Fees and Costs by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) Responses due by 12/27/2021(Beckworth, Bradley) (Entered: 12/13/2021) |
| 12/13/2021 | 360 | MOTION for Order Requiring Judgment Debtor to Appear and Answer Concerning Property and Assets by All Plaintiffs (With attachments) Responses due by 12/27/2021(Beckworth, Bradley) Modified on 12/15/2021 to edit event (dma, Deputy Clerk). Added MOTION for Hearing per Chambers direction on 2/7/2022 (adw, Deputy Clerk). (Entered: 12/13/2021) |
| 12/21/2021 | 361 | ORDER from Circuit Court directing Plaintiff in the underlying lawsuit to respond to the Petition by Friday, January 7, 2022. (Re: 358 Letter from Circuit Court) (adw, Deputy |

| | | |
|---|---|---|
| | | Clerk) (Entered: 12/27/2021) |
| 12/27/2021 | 362 | RESPONSE in Opposition to Motion (Re: 360 MOTION for Leave to Appear ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments) (McClure, Daniel) (Entered: 12/27/2021) |
| 12/27/2021 | 363 | RESPONSE in Opposition to Motion (Re: 359 Opposed MOTION Class Representative's Opposed Motion to Set January 12, 2022 as the Deadline for Class Representative and Class Counsel to File Motions for Attorneys' Fees and Costs ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(McClure, Daniel) (Entered: 12/27/2021) |
| 01/10/2022 | 364 | REPLY to Response to Motion (Re: 359 Opposed MOTION Class Representative's Opposed Motion to Set January 12, 2022 as the Deadline for Class Representative and Class Counsel to File Motions for Attorneys' Fees and Costs ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ;(Beckworth, Bradley) (Entered: 01/10/2022) |
| 01/10/2022 | 365 | REPLY to Response to Motion (Re: 360 MOTION for Leave to Appear ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (Beckworth, Bradley) (Entered: 01/10/2022) |
| 01/11/2022 | 366 | ORDER by Judge John A. Gibney, Jr deferring disposition of the Plaintiff's Motions 359 Opposed MOTION Class Representative's Opposed Motion to Set January 12, 2022 as the Deadline for Class Representative and Class Counsel to File Motions for Attorneys' Fees and Costs and 360 MOTION for Leave to Appear until the Tenth Circuit rules on the Petition. (kch, Deputy Clerk) (Entered: 01/11/2022) |
| 02/02/2022 | 369 | ORDER from Circuit Court denying the Petition for Writ of Mandamus (Re: 358 Letter from Circuit Court ) (jcb, Deputy Clerk) Modified on 2/8/2022 to edit file date (dma, Deputy Clerk). (Entered: 02/04/2022) |
| 02/03/2022 | 367 | NOTICE to the Court (Re: 359 Opposed MOTION Class Representative's Opposed Motion to Set January 12, 2022 as the Deadline for Class Representative and Class Counsel to File Motions for Attorneys' Fees and Costs , 360 MOTION for Leave to Appear ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 02/03/2022) |
| 02/03/2022 | 368 | ORDER by Judge John A. Gibney, Jr. granting 359 MOTION for Class Representative's Opposed Motion to Set January 12, 2022 as the Deadline for Class Representative and Class Counsel to File Motions for Attorneys' Fees; Class Representative and Class Counsel shall file motions (set forth in Order) on or before March 7, 2022. (kch, Deputy Clerk) (Entered: 02/03/2022) |
| 02/07/2022 | 370 | ORDER by Judge John A. Gibney, Jr. granting IN PART 360 Motion for Order Requiring Judgment Debtor to Appear and Answer Concerning Property and Assets by All Plaintiffs. In accordance with 21 U.S.C. § 636(b)(3), the Court ORDERS that the remainder of the class representative's motion, (ECF No. 360 ), and the 12 O.S. § 842 and Fed. R. Civ. P. 69 proceedings are referred to US Magistrate Judge Kimberly West. Magistrate Judge West will decide the remainder of the class representative's motion and will make findings and recommendation for this Court as to the 12 O.S. § 842 and Fed. R. Civ. P. 69 proceedings. (adw, Deputy Clerk) (Entered: 02/07/2022) |
| 02/09/2022 | 371 | MINUTE ORDER by Magistrate Judge Kimberly E. West: In accordance with the referral by the presiding United States District Judge, this Court will conduct a telephonic status conference with counsel of record in regard to the Motion for Order Requiring Judgment Debtor to Appear and Answer Concerning Property and Assets (Docket Entry 360 ) on FEBRUARY 10, 2022 AT 3:30 P.M. The Court will initiate the telephone call utilizing the |

| | | |
|---|---|---|
| | | telephone numbers which are of record for counsel. Should counsel wish to be reached at a different number, they should e-mail the information to Rachel_Keeling@oked.uscourts.gov by the close of business on February 9, 2022. (rak, Deputy Clerk) (Entered: 02/09/2022) |
| 02/10/2022 | 372 | Opposed MOTION to Modify the Plan of Allocation Order and Issue a Rule 58 Judgment and Brief in Support (Re: 339 Order) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 2/24/2022(McClure, Daniel) (Entered: 02/10/2022) |
| 02/10/2022 | 373 | MINUTES of Proceedings held before Magistrate Judge Kimberly E. West: Telephonic Status Conference held on 2/10/2022. (rak, Deputy Clerk) (Entered: 02/10/2022) |
| 02/10/2022 | 374 | MINUTE ORDER by Magistrate Judge Kimberly E. West: In accordance with the discussions at the telephonic status conference conducted on this date, Defendant shall file its brief in opposition to the production of the documents attached as "Exhibit A" to Plaintiff's Motion for Order Requiring Judgment Debtor to Appear and Answer Concerning Property and Assets (Docket Entry 360 ) no later than FEBRUARY 17, 2022. Thereafter, Plaintiff shall file its responsive brief by FEBRUARY 22, 2022. (rak, Deputy Clerk) (Entered: 02/10/2022) |
| 02/16/2022 | 375 | SUPPLEMENT (Re: 372 MOTION to Alter Order/Judgment, 339 Order ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 02/16/2022) |
| 02/16/2022 | 376 | MOTION to Enjoin Enforcement of the Judgment and any Actions in Support Thereof and Brief in Support by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 3/2/2022(McClure, Daniel) (Entered: 02/16/2022) |
| 02/17/2022 | 377 | RESPONSE to Motion (Re: 360 MOTION for Leave to Appear MOTION for Hearing ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(McClure, Daniel) (Entered: 02/17/2022) |
| 02/22/2022 | 378 | Response BRIEF Regarding the Production of Documents for the Hearing on Defendants' Assets (Re: 377 Response to Motion) by Plaintiff (With attachments) (Burrage, Michael) (Entered: 02/22/2022) |
| 02/24/2022 | 379 | MOTION to Strike Document(s) (Re: 372 MOTION to Alter Order/Judgment ) by All Plaintiffs (With attachments) Responses due by 3/10/2022(Beckworth, Bradley) (Entered: 02/24/2022) |
| 02/28/2022 | 380 | Opposed MOTION for Leave to File Reply in Opposition to Document Discovery Concerning Defendants' Property and Assets (Re: 378 Brief, ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 3/14/2022(McClure, Daniel) (Entered: 02/28/2022) |
| 03/01/2022 | 381 | MINUTE ORDER by Magistrate Judge Kimberly E. West: Defendant's Opposed Motion for Leave to File Reply Brief (Docket Entry 380 ) is hereby GRANTED. Defendant shall file its reply on an expedited basis on MARCH 4, 2022. (rak, Deputy Clerk) (Entered: 03/01/2022) |
| 03/02/2022 | 382 | MOTION to Strike Document and Brief in Support (Re: 376 MOTION for Preliminary Injunction) by All Plaintiffs (With attachments) Responses due by 3/16/2022(Beckworth, Bradley) (Entered: 03/02/2022) |
| 03/02/2022 | 383 | ORDER by Judge John A. Gibney, Jr: Court DIRECTS the defendants to file any response to 379 MOTION to Strike Document(s) (Re: 372 MOTION to Alter |

| | | |
|---|---|---|
| | | Order/Judgment ) on or before March 7, 2022. (kch, Deputy Clerk) (Entered: 03/03/2022) |
| 03/04/2022 | 384 | MOTION to Withdraw Attorney Rebecca J. Cole by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 3/18/2022(McClure, Daniel) (Entered: 03/04/2022) |
| 03/04/2022 | 385 | ORDER by Judge John A. Gibney, Jr. granting 384 Motion to Withdraw and deeming Attorney Rebecca J. Cole withdrawn as counsel of record for Defendants, Sunoco, Inc. (R&M) and Sunoco Partners Marking & Terminals, L.P. (kch, Deputy Clerk) (Entered: 03/04/2022) |
| 03/04/2022 | 386 | ORDER by Judge John A. Gibney, Jr. Court DIRECTS the defendants to file any response to 382 MOTION to Strike Document and Brief in Support (Re: 376 MOTION for Preliminary Injunction) on or before March 8, 2022. (kch, Deputy Clerk) (Entered: 03/04/2022) |
| 03/04/2022 | 387 | RESPONSE in Opposition to Motion (Re: 360 MOTION for Leave to Appear MOTION for Hearing) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 03/04/2022) |
| 03/07/2022 | 388 | REPLY to Response to Motion (Re: 372 MOTION to Alter Order/Judgment ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ;(McClure, Daniel) (Entered: 03/07/2022) |
| 03/07/2022 | 389 | MOTION for Statutory Costs and Fees Pursuant to 52 O.S. Section 570.14 in the Stipulated Amount of $5,000,000.00 by All Plaintiffs (With attachments) Responses due by 3/21/2022(Beckworth, Bradley) Modified on 3/8/2022 to edit event (dma, Deputy Clerk). (Entered: 03/07/2022) |
| 03/07/2022 | 390 | MOTION to: (1) Approve Form and Manner of Notice to the Certified Class of Class Counsel's Motion for Attorney's Fees and Litigation Expenses, and Class Representative's Motion for Case Contribution Award Pursuant to Rule 23(H); and (2) Approve Proposed Schedule by All Plaintiffs (With attachments) Responses due by 3/21/2022(Beckworth, Bradley) Modified on 3/8/2022 to edit event (dma, Deputy Clerk). (Entered: 03/07/2022) |
| 03/07/2022 | 391 | RESPONSE to Motion (Re: 379 MOTION to Strike Document(s) ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(McClure, Daniel) (Entered: 03/07/2022) |
| 03/07/2022 | 392 | RESPONSE to Motion (Re: 379 MOTION to Strike Document(s) ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(McClure, Daniel) (Entered: 03/07/2022) |
| 03/08/2022 | 393 | REPLY to Response to Motion (Re: 376 MOTION for Preliminary Injunction ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ;(McClure, Daniel) (Entered: 03/08/2022) |
| 03/08/2022 | 394 | RESPONSE to Motion (Re: 382 MOTION to Strike Document(s) ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(McClure, Daniel) (Entered: 03/08/2022) |
| 03/08/2022 | 395 | REPLY to Response to Motion (Re: 379 MOTION to Strike Document(s) ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (Beckworth, Bradley) (Entered: 03/08/2022) |
| 03/09/2022 | 396 | REPLY to Response to Motion (Re: 382 MOTION to Strike Document(s) ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) ; (Beckworth, Bradley) (Entered: 03/09/2022) |

| 03/22/2022 | 397 | MINUTE ORDER by Judge John A. Gibney, Jr.: Motion Hearing set for 3/31/2022 at 2:00 PM **(3:00 PM EASTERN TIME)** via Video Conference before Judge John A. Gibney Jr. A separate email with the Zoom link access will be sent to counsel prior to the Motion Hearing. (Re: 372 MOTION to Alter Order/Judgment, 376 MOTION for Preliminary Injunction, 379 MOTION to Strike Document(s) , 382 MOTION to Strike Document(s)) (kch, Deputy Clerk) Modified on 3/24/2022 to add text(kch, Deputy Clerk). (Entered: 03/22/2022) |
|---|---|---|
| 03/23/2022 | 398 | MOTION to Withdraw Attorney Emma W. Perry by All Defendants Responses due by 4/6/2022(Woods, Robert) (Entered: 03/23/2022) |
| 03/24/2022 | 399 | ORDER by Judge John A. Gibney, Jr. granting 398 Motion to Withdraw Attorney; Emma W. Perry is withdrawn as counsel of record for Defendants Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, L.P. (kch, Deputy Clerk) (Entered: 03/24/2022) |
| 03/28/2022 | 400 | MOTION for Attorney Erin E. Murphy to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number AOKEDC-1637256) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 4/11/2022(McClure, Daniel) (Entered: 03/28/2022) |
| 03/29/2022 | 401 | ORDER by Judge John A. Gibney, Jr. granting 400 Motion for Admission Pro Hac Vice of attorney Erin E. Murphy for Sunoco Partners Marketing & Terminals, LP and Sunoco, Inc. (R&M), provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (kch, Deputy Clerk) (Entered: 03/29/2022) |
| 03/29/2022 | 402 | LETTER from United States Court of Appeals for the Tenth Circuit (Re: 342 Appeal Number Information from Circuit Court assigning Case Number 20-7064 (Re: 340 Notice of Appeal - Final Judgment); 353 Appeal Number Information from Circuit Court assigning Case Number 20-7072 (Re: 351 Notice of Appeal - Final Judgment)) (kch, Deputy Clerk) (Entered: 03/30/2022) |
| 03/30/2022 | 403 | ATTORNEY APPEARANCE by Erin E. Murphy on behalf of Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (Murphy, Erin) (Entered: 03/30/2022) |
| 03/31/2022 | 404 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: Based on the Motion Hearing held on 3/31/2022 372 Motion to Alter Order/Judgment is DENIED; 376 Motion for Preliminary Injunction is GRANTED IN PART; 379 Motion to Strike Document(s) is DENIED ; 382 Motion to Strike Document(s) is DENIED. (Court Reporter: Karla McWhorter) (kch, Deputy Clerk) (Entered: 03/31/2022) |
| 03/31/2022 | 405 | ORDER by Judge John A. Gibney, Jr: The Court GRANTS IN PART 376 Motion to Enjoin Enforcement of the Judgment and any Actions in Support and STAYS all enforcement actions for sixty days after the date of this Order. (kch, Deputy Clerk) (Entered: 03/31/2022) |
| 04/04/2022 | 406 | TRANSCRIPT of Proceedings (Unredacted) of Video Conference Motion Hearing held on March 31, 2022 before Judge John A. Gibney, Jr (Court Reporter: Karla McWhorter) (Pages: 1-33). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 404 Minutes of Motion Hearing) (ksm, Court Reporter) (Entered: 04/04/2022) |

| | | |
|---|---|---|
| 04/06/2022 | 407 | ORDER by Judge John A. Gibney, Jr. denying 372 Motion to Modify the Plan of Allocation Order and Issue a Rule 58 Judgment; 379 Motion to Strike Document(s); 382 Motion to Strike Document(s) (kch, Deputy Clerk) (Entered: 04/06/2022) |
| 04/29/2022 | 408 | NOTICE OF APPEAL to Circuit Court (Interlocutory) (paid $505 appeal fee; receipt number AOKEDC-1651853) (Re: 405 Order) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 04/29/2022) |
| 04/29/2022 | 409 | NOTICE OF APPEAL to Circuit Court (paid $505 appeal fee; receipt number AOKEDC-1651874) (Re: 407 Order) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 04/29/2022) |
| 04/29/2022 | 410 | Transmission of Notice of Appeal and Docket Sheet to U.S. Court of Appeals (Re: 408 Notice of Appeal - Interlocutory ) (With attachments) (jls, Deputy Clerk) (Entered: 04/29/2022) |
| 04/29/2022 | 411 | Transmission of Notice of Appeal and Docket Sheet to U.S. Court of Appeals (Re: 409 Notice of Appeal - Final Judgment ) (With attachments) (jls, Deputy Clerk) (Entered: 04/29/2022) |
| 04/29/2022 | 412 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 22-7017 (Re: 408 Notice of Appeal - Interlocutory ) (jcb, Deputy Clerk) (Entered: 04/29/2022) |
| 04/29/2022 | 413 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 22-7018 (Re: 409 Notice of Appeal - Final Judgment ) (jcb, Deputy Clerk) (Entered: 05/02/2022) |
| 05/03/2022 | 414 | LETTER from Circuit Court stating that the Petition for Writ of Certiorari has been (U.S. Supreme Court Case Number: 21-1404) (Re: 340 Notice of Appeal - Final Judgment, 351 Notice of Appeal - Final Judgment, ) (jcb, Deputy Clerk) (Entered: 05/04/2022) |
| 05/16/2022 | 415 | TRANSCRIPT ORDER FORM (Transcripts are not necessary or are already on file ) (Re: 409 Notice of Appeal - Final Judgment, 408 Notice of Appeal - Interlocutory ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) (Murphy, Erin) (Entered: 05/16/2022) |
| 05/16/2022 | 416 | Notice advising the record is complete for the purposes of appeal (re: Circuit Appeal No. 22-7017). A Transcript Order Form has been filed stating the necessary transcripts are already on file (Re: 408 Notice of Appeal - Interlocutory ) (jcb, Deputy Clerk) (Entered: 05/16/2022) |
| 05/16/2022 | 417 | Notice advising the record is complete for the purposes of appeal (re: Circuit Appeal No. 22-7018). A Transcript Order Form has been filed stating the necessary transcripts are already on file (Re: 409 Notice of Appeal - Final Judgment ) (jcb, Deputy Clerk) (Entered: 05/16/2022) |
| 06/03/2022 | 418 | NOTICE to the Court by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 06/03/2022) |
| 06/09/2022 | 419 | RESPONSE (Re: 418 Notice (Other) ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 06/09/2022) |
| 06/14/2022 | 420 | ORDER by Judge John A. Gibney, Jr.: The defendants shall file any response to the motions, (ECF Nos. 389 . 390 ), and to any supplemental briefing on or before July 6, 2022. The plaintiff shall file any reply on or before July 13, 2022. (kch, Deputy Clerk) (Entered: 06/14/2022) |

| | | |
|---|---|---|
| 06/21/2022 | 421 | SUPPLEMENT (Re: 390 MOTION for Attorney Fees ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 06/21/2022) |
| 06/24/2022 | 422 | NOTICE OF APPEAL to Circuit Court (Interlocutory) (paid $505 appeal fee; receipt number AOKEDC-1674066) (Re: 420 Order) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 06/24/2022) |
| 06/24/2022 | 423 | Transmission of Notice of Appeal and Docket Sheet to U.S. Court of Appeals (Re: 422 Notice of Appeal - Interlocutory) (With attachments) (jls, Deputy Clerk) (Entered: 06/24/2022) |
| 06/24/2022 | 424 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 22-7030 (Re: 422 Notice of Appeal - Interlocutory). (jls, Deputy Clerk) (Main Document 424 replaced on 6/28/2022) (jls, Deputy Clerk). (Entered: 06/24/2022) |
| 07/06/2022 | 425 | RESPONSE (Re: 421 Supplement, 389 MOTION for Costs, 390 MOTION for Attorney Fees ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 07/06/2022) |
| 07/08/2022 | 426 | TRANSCRIPT ORDER FORM (Transcripts are not necessary or are already on file ) (Re: 422 Notice of Appeal - Interlocutory ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (Murphy, Erin) (Entered: 07/08/2022) |
| 07/11/2022 | 427 | Notice advising the record is complete for the purposes of appeal (re: Circuit Appeal No. 22-7030). A Transcript Order Form has been filed stating the necessary transcripts are already on file (Re: 422 Notice of Appeal - Interlocutory ) (jcb, Deputy Clerk) (Entered: 07/11/2022) |
| 07/13/2022 | 428 | REPLY (Re: 421 Supplement, 389 MOTION for Costs, 390 MOTION for Attorney Fees ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 07/13/2022) |
| 08/04/2022 | 429 | DECISION from Circuit Court dismissing the Appeal (Re: 422 Notice of Appeal - Interlocutory, 408 Notice of Appeal - Interlocutory). (adw, Deputy Clerk) (Entered: 08/05/2022) |
| 08/09/2022 | 430 | ORDER FOR PRODUCTION OF DOCUMENTS AND FOR ASSET HEARING by Magistrate Judge Kimberly E. West: Motion for Order Requiring Judgment Debtor to Appear and Answer Concerning Property and Assets (Docket Entry 360 ) be GRANTED. Defendants shall provide a representative with substantive knowledge regarding the assets available to satisfy Plaintiff's judgment and to answer inquiry into the same on 9/12/2022 at 10:00 AM in Courtroom 3, Room 432, US Courthouse, 5th & Okmulgee, Muskogee, OK before Magistrate Judge Kimberly E. West. (rak, Deputy Clerk) (Entered: 08/09/2022) |
| 08/23/2022 | 431 | OBJECTION to Defendants' Objections to Magistrate Judge's Order for Production of Documents and Asset Hearing (Re: 430 Ruling on Motion to Appear) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 08/23/2022) |
| 08/24/2022 | 432 | RESPONSE (Re: 431 Brief) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Beckworth, Bradley) (Entered: 08/24/2022) |
| 08/25/2022 | 433 | NOTICE to Court by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 08/25/2022) |
| 08/26/2022 | 434 | REPLY in Support of Objections to Magistrate Judge's Order for Production (Re: 431 Brief) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, |

| | | Daniel) (Entered: 08/26/2022) |
|---|---|---|
| 08/30/2022 | 435 | NOTICE - Recent development in Sunoco Partners & Term., et al v. Cline (U.S. Supreme Court) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 08/30/2022) |
| 08/31/2022 | 436 | RESPONSE (Re: 435 Notice (Other) ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 08/31/2022) |
| 08/31/2022 | 437 | ORDER by Judge John A. Gibney, Jr. (Re: 435 Notice Recent development in Sunoco Partners & Term., et al v. Cline (U.S. Supreme Court) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (kch, Deputy Clerk) (Entered: 08/31/2022) |
| 09/02/2022 | 438 | NOTICE of Non-Compliance With Court Order (Re: 430 Ruling on Motion to Appear) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 09/02/2022) |
| 09/02/2022 | 439 | MOTION for Leave to File Sealed Document by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments) Responses due by 9/16/2022(Beckworth, Bradley) (Entered: 09/02/2022) |
| 09/07/2022 | 440 | RESPONSE (Re: 438 Notice (Other) ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McClure, Daniel) (Entered: 09/07/2022) |
| 09/09/2022 | 441 | ATTORNEY APPEARANCE by Randa Reeves on behalf of Perry Cline(on behalf of himself) (Reeves, Randa) (Entered: 09/09/2022) |
| 09/12/2022 | 442 | ATTORNEY APPEARANCE by Nathan Hall on behalf of Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 09/12/2022) |
| 09/12/2022 | 443 | MINUTES of Proceedings held before Magistrate Judge Kimberly E. West: Asset Hearing held on 9/12/2022. (tjm, Deputy Clerk) (Entered: 09/13/2022) |
| 09/12/2022 | 444 | MINUTE ORDER by Magistrate Judge Kimberly E. West: At the conclusion of the asset hearing conducted in this matter on September 12, 2022, Plaintiff's counsel orally moved for this Court to enter a proposed Report and Recommendation directing that Defendant deposit funds with the Court Clerk to satisfy the judgment entered in this case. Plaintiff's counsel provided Defendant's counsel with the proposed Report and Recommendation just prior to making the motion for the entry of the document. Defendant has not had adequate time to digest the proposed Report and Recommendation. Accordingly, Defendant shall advise the Court by written filing of its position on the entry of the proposed Report and Recommendation no later than SEPTEMBER 19, 2022. Thereafter, Plaintiff may respond to Defendants filing by SEPTEMBER 22, 2022. (tjm, Deputy Clerk) (Entered: 09/13/2022) |
| 09/19/2022 | 445 | RESPONSE to Plaintiff's Draft Report & Recommendation by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments)(McClure, Daniel) (Entered: 09/19/2022) |
| 09/19/2022 | 446 | MOTION for Leave to File Sealed Document by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 10/3/2022(McClure, Daniel) (Entered: 09/19/2022) |
| 09/22/2022 | 448 | SEALED TRANSCRIPT of Proceedings of Sealed Hearing held on September 12, 2022 (Court Reporter: Karla McWhorter) (Pages: 84-135; Volume II of II) (Re: 443 Minutes of Asset Hearing ) (ksm, Court Reporter) (Entered: 09/22/2022) |

| 09/22/2022 | 449 | REPLY (Re: 445 Brief ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 09/22/2022) |
|---|---|---|
| 09/26/2022 | 450 | Opposed MOTION for Leave to File Sunoco Defendants' Sur-Reply in Response to Plaintiff's Draft Report and Recommendation by Sunoco, Inc. (R&M) (With attachments) Responses due by 10/11/2022(Woods, Robert) (Entered: 09/26/2022) |
| 09/27/2022 | 451 | MINUTE ORDER by Magistrate Judge Kimberly E. West: Sunoco Defendants' Opposed Motion for Leave to File Sur-Reply (Docket Entry 450 ) is hereby GRANTED. Defendants shall file their sur-reply by OCTOBER 4, 2022. Because he is entitled to the last word in the briefing, Plaintiff may, but is not required, to file a response to Defendants' sur-reply by OCTOBER 7, 2022. (tjm, Deputy Clerk) (Entered: 09/27/2022) |
| 10/03/2022 | 452 | SEALED TRANSCRIPT of Proceedings of Sealed Hearing held on 9-12-2022 (Court Reporter: Shelley Ottwell,) (Pages: 1-83) (Re: 443 Minutes of Asset Hearing ) (sdo, Court Reporter) (Entered: 10/03/2022) |
| 10/03/2022 | 453 | GARNISHMENT AFFIDAVIT re Atlantic Trading & Marketing, Inc. by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 454 | GARNISHMENT AFFIDAVIT re BP Products North America Inc. by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 455 | GARNISHMENT AFFIDAVIT re Castelton Commodities Merchant Trading, L.P. by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 456 | GARNISHMENT AFFIDAVIT re Energy Transfer Crude Marketing, LLC by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 457 | GARNISHMENT AFFIDAVIT re Energy Transfer Crude Trucking, LLC by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 458 | GARNISHMENT AFFIDAVIT re Guvnor USA, LLC by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 459 | GARNISHMENT AFFIDAVIT re Marathon Petroleum Company LP by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 460 | GARNISHMENT AFFIDAVIT re Marathon Petroleum Logistics Services LLC by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 461 | GARNISHMENT AFFIDAVIT re Marathon Petroleum Supply and Trading LLC by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 462 | GARNISHMENT AFFIDAVIT re Motiva Enterprises, LLC by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 463 | GARNISHMENT AFFIDAVIT re Phillips 66 Company by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Entered: |

| | | |
|---|---|---|
| | | 10/03/2022) |
| 10/03/2022 | 464 | GARNISHMENT AFFIDAVIT re Range Resources Corporation by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 465 | GARNISHMENT AFFIDAVIT re Saratoga RP East, LLC by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 466 | GARNISHMENT AFFIDAVIT re Truman Arnold Companies by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 467 | GARNISHMENT AFFIDAVIT re Valero Marketing & Supply Company by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 468 | MOTION for Garnishment Summons as to Atlantic Trading & Marketing, Inc. by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 469 | MOTION for Garnishment Summons as to BP Products North America Inc. by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 470 | MOTION for Garnishment Summons as to Castelton Commodities Merchant Trading, L.P. by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 471 | MOTION for Garnishment Summons as to Energy Transfer Crude Marketing, LLC by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 472 | MOTION for Garnishment Summons as to Energy Transfer Crude Trucking, LLC by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 473 | MOTION for Garnishment Summons as to Guvnor USA, LLC by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 474 | MOTION for Garnishment Summons as to Marathon Petroleum Company LP by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 475 | MOTION for Garnishment Summons as to Marathon Petroleum Logistics Services LLC by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 476 | MOTION for Garnishment Summons as to Marathon Petroleum Supply and Trading LLC by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 477 | MOTION for Garnishment Summons as to Motiva Enterprises, LLC by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 478 | MOTION for Garnishment Summons as to Phillips 66 Company by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |

| | | |
|---|---|---|
| 10/03/2022 | 479 | MOTION for Garnishment Summons as to Range Resources Corporation by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 480 | MOTION for Garnishment Summons as to Saratoga RP East, LLC by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 481 | MOTION for Garnishment Summons as to Truman Arnold Companies by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/03/2022 | 482 | MOTION for Garnishment Summons as to Valero Marketing & Supply Company by All Plaintiffs (With attachments) Responses due by 10/17/2022(Hall, Nathan) (Entered: 10/03/2022) |
| 10/04/2022 | 483 | REPLY (Re: 451 Ruling on Motion for Leave to File Document(s), 449 Reply ) by Sunoco, Inc. (R&M) (Woods, Robert) (Entered: 10/04/2022) |
| 10/05/2022 | 484 | MINUTE ORDER by Court Clerk granting 469 MOTION for Garnishment Summons as to BP Products North America Inc. , 470 MOTION for Garnishment Summons as to Castleton Commodities Merchant Trading, L.P. , 471 MOTION for Garnishment Summons as to Energy Transfer Crude Marketing, LLC , 472 MOTION for Garnishment Summons as to Energy Transfer Crude Trucking, LLC , 473 MOTION for Garnishment Summons as to Guvnor USA, LLC , 474 MOTION for Garnishment Summons as to Marathon Petroleum Company LP , 475 MOTION for Garnishment Summons as to Marathon Petroleum Logistics Services LLC , 476 MOTION for Garnishment Summons as to Marathon Petroleum Supply and Trading LLC , 477 MOTION for Garnishment Summons as to Motiva Enterprises, LLC , 478 MOTION for Garnishment Summons as to Phillips 66 Company , 479 MOTION for Garnishment Summons as to Range Resources Corporation , 480 MOTION for Garnishment Summons as to Saratoga RP East, LLC , 481 MOTION for Garnishment Summons as to Truman Arnold Companies , 482 MOTION for Garnishment Summons as to Valero Marketing & Supply Company . Plaintiffs' Counsel are directed to submit Garnishment Summonses and supporting documents to the Clerk's email intake box at CM-ECFIntake_oked@oked.uscourts.gov so that Garnishment Summonses may be issued by the Clerk of Court. (adw, Deputy Clerk) (Entered: 10/05/2022) |
| 10/05/2022 | 485 | RESPONSE (Re: 483 Reply ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Pate, Andrew) (Entered: 10/05/2022) |
| 10/06/2022 | 486 | GARNISHMENT SUMMONS Issued by Court Clerk for Atlantic Trading & Marketing, Inc. (Re: 453 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 487 | GARNISHMENT SUMMONS Issued by Court Clerk for BP Products North America Inc. (Re: 454 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 488 | GARNISHMENT SUMMONS Issued by Court Clerk for Castleton Commodities Merchant Trading, L.P. (Re: 455 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 489 | GARNISHMENT SUMMONS Issued by Court Clerk for Energy Transfer Crude Marketing, LLC. (Re: 456 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 490 | GARNISHMENT SUMMONS Issued by Court Clerk for Energy Transfer Crude Trucking, LLC. (Re: 457 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 491 | GARNISHMENT SUMMONS Issued by Court Clerk for Gunvor USA, LLC. (Re: 458 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |

| 10/06/2022 | 492 | GARNISHMENT SUMMONS Issued by Court Clerk for Marathon Petroleum Company LP. (Re: 459 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
|---|---|---|
| 10/06/2022 | 493 | GARNISHMENT SUMMONS Issued by Court Clerk for Marathon Petroleum Logistics Services LLC. (Re: 460 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 494 | GARNISHMENT SUMMONS Issued by Court Clerk for Marathon Petroleum Supply and Trading LLC. (Re: 461 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 495 | GARNISHMENT SUMMONS Issued by Court Clerk for Motiva Enterprises, LLC. (Re: 462 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 496 | GARNISHMENT SUMMONS Issued by Court Clerk for Phillips 66 Company. (Re: 463 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 497 | GARNISHMENT SUMMONS Issued by Court Clerk for Range Resources Corporation. (Re: 464 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 498 | GARNISHMENT SUMMONS Issued by Court Clerk for Saratoga RP East, LLC. (Re: 465 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 499 | GARNISHMENT SUMMONS Issued by Court Clerk for Truman Arnold Companies. (Re: 466 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/06/2022 | 500 | GARNISHMENT SUMMONS Issued by Court Clerk for Valero Marketing & Supply Company. (Re: 467 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/06/2022) |
| 10/11/2022 | 501 | AFFIDAVIT/CERTIFICATE/PROOF/RETURN of Service of Post-Judgment General Garnishment Summons; Garnishment Affidavit; Claim for Exemption and Request for Hearing Form; Notice of Garnishment and Exemptions Form; Non-Continuing Earnings and General Garnishee's Answer/Affidavit Form; and Calculation for Non-Continuing Garnishment of Earnings Form to Corporation Service Company, as Registered Agent for Atlantic Trading & Marketing Inc.; Castleton Commodities Merchant Trading L.P.; Energy Transfer Crude Marketing, LLC; Energy Transfer Crude Trucking, LLC; Phillips 66 Company; Range Resources Corporation; and Truman Arnold Companies served on 10/07/2022 by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Ryan, Patrick) (Entered: 10/11/2022) |
| 10/11/2022 | 502 | AFFIDAVIT/CERTIFICATE/PROOF/RETURN of Service of Post-Judgment General Garnishment Summons; Garnishment Affidavit; Claim for Exemption and Request for Hearing Form; Notice of Garnishment and Exemptions Form; Non-Continuing Earnings and General Garnishee's Answer/Affidavit Form; and Calculation for Non-Continuing Garnishment of Earnings Form to CT Corporation, as Registered Agent for BP Products North America Inc.; Gunvor USA LLC; Marathon Petroleum Company LP; Marathon Petroleum Logistic Services LLC; Marathon Petroleum Supply and Trading LLC; Motiva Enterprises, LLC; Saratoga RP East LLC; and Valero Marketing & Supply Co. served on 10/07/2022 by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Ryan, Patrick) (Entered: 10/11/2022) |
| 10/11/2022 | 503 | Emergency MOTION for Leave to Deposit Funds in the Court's Registry by Sunoco, Inc. (R&M) Responses due by 10/25/2022(Yetter, R.) (Entered: 10/11/2022) |
| 10/12/2022 | 504 | RESPONSE to Motion (Re: 503 MOTION to Deposit/Invest Funds ) by Perry Cline(on behalf of himself) ; (With attachments)(Beckworth, Bradley) (Entered: 10/12/2022) |
| 10/13/2022 | 505 | REPLY to Response to Motion (Re: 503 MOTION to Deposit/Invest Funds) by Sunoco, Inc. (R&M) (With attachments)(Yetter, R.) Modified on 10/14/2022 to edit text (dma, |

| | | |
|---|---|---|
| | | Deputy Clerk). (Entered: 10/13/2022) |
| 10/14/2022 | 506 | GARNISHEE'S ANSWER by Castleton Commodities Merchant Trading, L.P. (Re: 455 Garnishment Affidavit) (adw, Deputy Clerk) (Entered: 10/14/2022) |
| 10/14/2022 | 507 | ATTORNEY APPEARANCE by Jason A. McVicker on behalf of Castleton Commodities Merchant Trading, L.P. (McVicker, Jason) (Entered: 10/14/2022) |
| 10/14/2022 | 508 | ATTORNEY APPEARANCE by John J. Carwile on behalf of Castleton Commodities Merchant Trading, L.P. (Carwile, John) (Entered: 10/14/2022) |
| 10/14/2022 | 509 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 453 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 510 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 454 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 511 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 455 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 512 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 456 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 513 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 457 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 514 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 458 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 515 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 459 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 516 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 460 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 517 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 461 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 518 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 462 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 519 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 463 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 520 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 464 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |

| 10/14/2022 | 521 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 465 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
|---|---|---|
| 10/14/2022 | 522 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 466 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/14/2022 | 523 | AFFIDAVIT of Sunoco Defendants' Verified Answer Pusuant to 12 O.S. Section 1181 (Re: 467 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/14/2022) |
| 10/17/2022 | 524 | GARNISHEE'S ANSWER by Truman Arnold Companies (Re: 466 Garnishment Affidavit) (With attachments) (eaw, Deputy Clerk). (Main Document 524 replaced on 10/18/2022) (eaw, Deputy Clerk). (Main Document 524 replaced on 10/18/2022) (eaw, Deputy Clerk). (Entered: 10/17/2022) |
| 10/17/2022 | 525 | ATTORNEY APPEARANCE by Jayne Jarnigan Robertson on behalf of Motiva Enterprises LLC (Robertson, Jayne) (Entered: 10/17/2022) |
| 10/17/2022 | 526 | GARNISHEE'S ANSWER (Re: 462 Garnishment Affidavit) by Motiva Enterprises LLC (Robertson, Jayne) Modified on 10/18/2022 to edit text (dma, Deputy Clerk). (Entered: 10/17/2022) |
| 10/19/2022 | 527 | GARNISHMENT AFFIDAVIT re Range Resources - Appalachia, LLC by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (Hall, Nathan) (Entered: 10/19/2022) |
| 10/19/2022 | 528 | MOTION for Garnishment Summons as to Range Resources - Appalachia, LLC by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments) Responses due by 11/2/2022(Hall, Nathan) (Entered: 10/19/2022) |
| 10/21/2022 | 529 | Unopposed MOTION for Hearing (Re: 503 MOTION to Deposit/Invest Funds ) by Sunoco, Inc. (R&M) Responses due by 11/4/2022(Yetter, R.) (Entered: 10/21/2022) |
| 10/24/2022 | 530 | MINUTE ORDER by Magistrate Judge Kimberly E. West: The Unopposed Motion for a Video Hearing by Sunoco Defendants (Docket Entry 529 ) is hereby GRANTED to the extent that the Sunoco Defendants' Emergency Motion for Leave to Deposit Funds in Court's Registry (Docket Entry 503 ) is hereby set for a TELEPHONIC HEARING on OCTOBER 25, 2022, at 12:00 P.M. All counsel wishing to participate in the hearing, not to exceed six parties, shall provide a telephone number where they may be reached at the time of the hearing by e-mailing the number to Toni_Moore@oked.uscourts.gov by 9:00 A.M. on OCTOBER 25, 2022. The Court will initiate the telephone call at the appointed time. (Re: 529 Unopposed MOTION for Hearing) (tjm, Deputy Clerk) (Entered: 10/24/2022) |
| 10/25/2022 | 531 | NOTICE to the Court (Re: 503 MOTION to Deposit/Invest Funds ) by Perry Cline(on behalf of himself), Perry Cline(on behalf of all others similarly situated) (With attachments)(Beckworth, Bradley) (Entered: 10/25/2022) |
| 10/25/2022 | 532 | MINUTES of Proceedings held before Magistrate Judge Kimberly E. West: Telephonic Hearing on Motion ( 503 MOTION to Deposit Funds) held on 10/25/2022. (Court Reporter: Joanna Smith) (tjm, Deputy Clerk) Modified on 10/26/2022 to add link (dma, Deputy Clerk). (Entered: 10/25/2022) |
| 10/31/2022 | 533 | ATTORNEY APPEARANCE by Patrick L. Stein on behalf of Phillips 66 Company (Stein, Patrick) (Entered: 10/31/2022) |

| | | |
|---|---|---|
| 10/31/2022 | 534 | GARNISHEE'S ANSWER by Phillips 66 Company (Stein, Patrick) Modified on 11/1/2022 to edit event (dma, Deputy Clerk). (Entered: 10/31/2022) |
| 11/02/2022 | 535 | MOTION for Entry of Order and Notice of Default Under 12 Okla. Stat. 1179 by Perry Cline(on behalf of all others similarly situated), Perry Cline(on behalf of himself) Responses due by 11/16/2022(Hall, Nathan) (Entered: 11/02/2022) |
| 11/02/2022 | 536 | NOTICE of Sunoco Defendants' Notice of Payment to Claims Administrator, Withdrawal of Motion for Leave to Deposit Funds into the Court Registry, and Request to Dissolve Garnishment Proceedings (Re: 531 Notice (Other), 503 MOTION to Deposit/Invest Funds) by Sunoco, Inc. (R&M) (Woods, Robert) (Entered: 11/02/2022) |
| 11/04/2022 | 537 | ATTORNEY APPEARANCE by Paige N. Shelton on behalf of Marathon Petroleum Supply and Trading LLC (Shelton, Paige) (Entered: 11/04/2022) |
| 11/04/2022 | 538 | ATTORNEY APPEARANCE by Paige N. Shelton on behalf of Marathon Petroleum Logistics Services LLC (Shelton, Paige) (Entered: 11/04/2022) |
| 11/04/2022 | 539 | ATTORNEY APPEARANCE by Paige N. Shelton on behalf of Marathon Petroleum Company LP (Shelton, Paige) (Entered: 11/04/2022) |
| 11/04/2022 | 540 | GARNISHEE'S ANSWER (Re: 492 Garnishment Summons Issued) by Marathon Petroleum Company LP (Shelton, Paige) (Entered: 11/04/2022) |
| 11/04/2022 | 541 | GARNISHEE'S ANSWER (Re: 494 Garnishment Summons Issued) by Marathon Petroleum Supply and Trading LLC (Shelton, Paige) (Entered: 11/04/2022) |
| 11/04/2022 | 542 | GARNISHEE'S ANSWER (Re: 493 Garnishment Summons Issued) by Marathon Petroleum Logistics Services LLC (Shelton, Paige) (Entered: 11/04/2022) |
| 11/04/2022 | 543 | FINDINGS AND RECOMMENDATION by Magistrate Judge Kimberly E. West (Re: 503 MOTION to Deposit/Invest Funds) Objections to R&R due by 11/18/2022. (tjm, Deputy Clerk) (Entered: 11/04/2022) |
| 11/08/2022 | 544 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 453 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 545 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 454 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 546 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 455 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 547 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 456 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 548 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 457 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 549 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 458 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 550 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 459 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) |

| | | |
|---|---|---|
| | | (Entered: 11/08/2022) |
| 11/08/2022 | 551 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 460 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 552 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 461 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 553 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 462 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 554 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 463 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 555 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 464 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 556 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 465 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 557 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 466 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 558 | AFFIDAVIT of Sunoco Defendants' Verified Amended Answer Pursuant to 12 O.S. Section 1181 (Re: 467 Garnishment Affidavit ) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/08/2022) |
| 11/08/2022 | 559 | MOTION to Dismiss Garnishment Proceeding, RESPONSE in Opposition to 535 MOTION for Entry of Order and Notice of Default and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) Modified on 11/9/2022 to edit text and add link (dma, Deputy Clerk). (Entered: 11/08/2022) |
| 11/08/2022 | 560 | MOTION to Dismiss Garnishment Proceeding and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022(Woods, Robert) (Entered: 11/08/2022) |
| 11/08/2022 | 561 | MOTION to Dismiss Garnishment Proceeding and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022(Woods, Robert) (Entered: 11/08/2022) |
| 11/08/2022 | 562 | MOTION to Dismiss Garnishment Proceeding, RESPONSE in Opposition to 535 Motion for Entry of Order and Notice of Default and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) Modified on 11/9/2022 to edit text and add link (dma, Deputy Clerk). (Entered: 11/08/2022) |
| 11/08/2022 | 563 | MOTION to Dismiss Garnishment Proceeding, RESPONSE in Opposition to 535 MOTION for Entry of Order and Notice of Default and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) Modified on 11/9/2022 to edit text and add link (dma, Deputy Clerk). (Entered: 11/08/2022) |
| 11/08/2022 | 564 | MOTION to Dismiss Garnishment Proceeding, RESPONSE in Opposition to 535 MOTION for Entry of Order and Notice of Default and MOTION for Hearing by Sunoco, |

| | | |
|---|---|---|
| | | Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) Modified on 11/9/2022 to edit text and add link (dma, Deputy Clerk). (Entered: 11/08/2022) |
| 11/08/2022 | 565 | MOTION to Dismiss Garnishment Proceeding and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) (Entered: 11/08/2022) |
| 11/08/2022 | 566 | MOTION to Dismiss Garnishment Proceeding and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) (Entered: 11/08/2022) |
| 11/08/2022 | 567 | ***WITHDRAWN DUPLICATE ENTRY***MOTION to Dismiss Garnishment Proceeding and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) Modified on 11/9/2022 to reflect withdrawn (kch, Deputy Clerk). (Entered: 11/08/2022) |
| 11/08/2022 | 568 | MOTION to Dismiss Garnishment Proceeding and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) (Entered: 11/08/2022) |
| 11/08/2022 | 569 | MOTION to Dismiss Garnishment Proceeding and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) (Entered: 11/08/2022) |
| 11/08/2022 | 570 | MOTION to Dismiss Garnishment Proceeding and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) (Entered: 11/08/2022) |
| 11/08/2022 | 571 | MOTION to Dismiss Garnishment Proceeding and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) (Entered: 11/08/2022) |
| 11/08/2022 | 572 | MOTION to Dismiss Dismiss Garnishment Proceeding, RESPONSE in Opposition to 535 MOTION for Entry of Order and Notice of Default and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) Modified on 11/9/2022 to correct text (kch, Deputy Clerk). Modified on 11/9/2022 to add link (dma, Deputy Clerk). (Entered: 11/08/2022) |
| 11/08/2022 | 573 | MOTION to Dismiss Garnishment Proceeding and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) (Entered: 11/08/2022) |
| 11/08/2022 | 574 | MOTION to Dismiss Garnishment Proceeding, RESPONSE in Opposition to 535 MOTION for Entry of Order and Notice of Default and MOTION for Hearing by Sunoco, Inc. (R&M) (With attachments) Responses due by 11/22/2022 (Woods, Robert) Modified on 11/9/2022 to edit text and add link (dma, Deputy Clerk). (Entered: 11/08/2022) |
| 11/09/2022 | 575 | MINUTE ORDER by Magistrate Judge Kimberly E. West : An in-person hearing to consider Docket Entry Nos. 535 and 559 through 574 shall be conducted by this Court on DECEMBER 1, 2022 AT 10:00 A.M. in Courtroom 3, Room 432, US Courthouse, 5th & Okmulgee, Muskogee, OK before Magistrate Judge Kimberly E. West. (tjm, Deputy Clerk) (Entered: 11/09/2022) |
| 11/18/2022 | 576 | MOTION for Leave to Appear via telephone by Marathon Petroleum Company LP Responses due by 12/2/2022(Shelton, Paige) (Entered: 11/18/2022) |
| 11/18/2022 | 577 | RESPONSE in Opposition to Motion (Re: 572 MOTION to Dismiss, 560 MOTION to Dismiss, 561 MOTION to Dismiss, 573 MOTION to Dismiss, 559 MOTION to Dismiss, 574 MOTION to Dismiss, 571 MOTION to Dismiss, 562 MOTION to Dismiss, 565 |

| | | |
|---|---|---|
| | | MOTION to Dismiss, [569] MOTION to Dismiss, [568] MOTION to Dismiss, [564] MOTION to Dismiss, [570] MOTION to Dismiss, [566] MOTION to Dismiss, [563] MOTION to Dismiss) by All Plaintiffs (With attachments) (Beckworth, Bradley) (Entered: 11/18/2022) |
| 11/18/2022 | [578] | OBJECTION to Report and Recommendation (Re: [543] REPORT AND RECOMMENDATION by Magistrate Judge Kimberly E. West ) by Sunoco, Inc. (R&M) (With attachments)(Yetter, R.) (Entered: 11/18/2022) |
| 11/18/2022 | [579] | Supplemental DECLARATION of Jennifer M. Keough on Behalf of Judgment Administrator, JND Legal Administration LLC, Regarding Establishment of Judgment Fund Account (Re: [531] Notice (Other)) by All Plaintiffs (Beckworth, Bradley) (Entered: 11/18/2022) |
| 11/18/2022 | [580] | MOTION to Enjoin Garnishments and any Further Enforcement Efforts and MOTION for Hearing and Brief in Support by Sunoco, Inc. (R&M) Responses due by 12/2/2022 (Yetter, R.) (Entered: 11/18/2022) |
| 11/22/2022 | 581 | MINUTE ORDER by Magistrate Judge Kimberly E. West: Garnishee Marathon Petroleum Company, LP's Motion to Attend the December 1, 2022 Hearing Via Telephone (Docket Entry [576] ) is hereby GRANTED. The Court will initiate the telephone call. Marathon's counsel wishing to attend the hearing shall provide telephone contact information to the Court's courtroom deputy clerk at Toni_moore@oked.uscourts.gov by NOVEMBER 29, 2022. (Re: [576] MOTION for Leave to Appear via telephone ) (tjm, Deputy Clerk) (Entered: 11/22/2022) |
| 11/22/2022 | [582] | MOTION for Attorney Timothy S. McConn to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number BOKEDC-1729630) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (With attachments) Responses due by 12/6/2022(McClure, Daniel) (Entered: 11/22/2022) |
| 11/23/2022 | [583] | ATTORNEY APPEARANCE by Johnny R. Blassingame on behalf of Saratoga RP East LLC (Blassingame, Johnny) (Entered: 11/23/2022) |
| 11/23/2022 | [584] | TRANSCRIPT of Proceedings (Unredacted) of Telephonic Motion Hearing held on 10/25/2022 before Magistrate Judge Kimberly E. West (Court Reporter: Joanna Smith) (Pages: 1-15). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: [532] Minutes of Telephone Conference) (js, Court Reporter) (Entered: 11/23/2022) |
| 11/29/2022 | 585 | MINUTE ORDER by Magistrate Judge Kimberly E. West: In an effort to expedite a resolution to all pending matters associated with the collection of the judgment entered in this case, Defendants' Request for Hearing on the Verified Motion to Enjoin Garnishments and Any Further Enforcement Efforts (contained as a part of Docket Entry [580] ) is hereby GRANTED. A hearing on the Motion will be conducted on DECEMBER 1, 2022 AT 10:00 A.M. together with the other matters previously set. This Court will strive to assist in the resolution of this Motion given the limited referral jurisdiction provided to the Court. (Re: [580] MOTION for Hearing ) (tjm, Deputy Clerk) (Entered: 11/29/2022) |
| 11/29/2022 | [586] | AFFIDAVIT/CERTIFICATE/PROOF/RETURN of Service of Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action to Robert M. Ricciuti served on 11/29/2022 |

| | | |
|---|---|---|
| | | by Perry Cline(on behalf of all others similarly situated), Perry Cline(on behalf of himself) (Pate, Andrew) (Entered: 11/29/2022) |
| 11/29/2022 | 587 | Unopposed Emergency MOTION for Witness to Appear Via Zoom (Re: 585 Ruling on Motion for Hearing, 580 MOTION for Hearing) by Sunoco, Inc. (R&M) Responses due by 12/13/2022(Yetter, R.) Modified on 11/30/2022 to edit event (dma, Deputy Clerk). (Entered: 11/29/2022) |
| 11/29/2022 | 588 | MOTION to Quash Subpoena of Robert M. Ricciuti by Sunoco, Inc. (R&M) (With attachments) Responses due by 12/13/2022(Yetter, R.) (Entered: 11/29/2022) |
| 11/29/2022 | 589 | Emergency MOTION for Witness to Appear Via Zoom (Re: 585 Ruling on Motion for Hearing, 580 MOTION for Hearing) by Sunoco, Inc. (R&M) Responses due by 12/13/2022(Yetter, R.) Modified on 11/30/2022 to edit event (dma, Deputy Clerk). (Entered: 11/29/2022) |
| 11/29/2022 | 590 | REPLY to Response to Motion (Re: 572 MOTION to Dismiss, 560 MOTION to Dismiss, 561 MOTION to Dismiss, 573 MOTION to Dismiss, 559 MOTION to Dismiss, 574 MOTION to Dismiss, 571 MOTION to Dismiss, 567 MOTION to Dismiss, 562 MOTION to Dismiss, 565 MOTION to Dismiss, 569 MOTION to Dismiss, 568 MOTION to Dismiss, 564 MOTION to Dismiss, 570 MOTION to Dismiss, 566 MOTION to Dismiss, 563 MOTION to Dismiss) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 11/29/2022) |
| 11/29/2022 | 591 | RESPONSE (Re: 578 Objection to Report and Recommendation ) ) by Perry Cline(on behalf of all others similarly situated), Perry Cline(on behalf of himself) (Beckworth, Bradley) (Entered: 11/29/2022) |
| 11/29/2022 | 592 | MOTION to Strike Document Defendants' Motion to Enjoin Garnishments and Any Further Enforcement Efforts (Re: 580 MOTION for Hearing) by Perry Cline (on behalf of all others similarly situated), Perry Cline (on behalf of himself) Responses due by 12/13/2022(Beckworth, Bradley) (Entered: 11/29/2022) |
| 11/29/2022 | 593 | RESPONSE in Opposition to Motion (Re: 580 MOTION for Hearing) by Perry Cline (on behalf of all others similarly situated), Perry Cline (on behalf of himself) (Beckworth, Bradley) (Entered: 11/29/2022) |
| 11/29/2022 | 594 | ORDER by Judge John A. Gibney, Jr., referring 580 Motion to Enjoin Garnishments and any Further Enforcement Efforts and MOTION for Hearing and Brief in Support to Judge Kimberly E. West for findings and recommendations as to the Fed. R. Civ. P. 65 proceedings. (kch, Deputy Clerk) (Entered: 11/30/2022) |
| 11/29/2022 | 595 | ORDER by Judge John A. Gibney, Jr. granting 582 Motion for Admission Pro Hac Vice of attorney Timothy S. McConn for Sunoco Partners Marketing & Terminals, LP,Timothy S. McConn for Sunoco, Inc. (R&M), provided that local counsel is present at all proceedings, unless otherwise ordered by the Court. This is conditioned on the filing of an entry of appearance and registration for electronic case filing by the applicant within seven (7) days from entry of this Order. See LCvR 83.4 and CM/ECF Administrative Guide of Policies and Procedures. (Re: 582 MOTION for Attorney Timothy S. McConn to be Admitted Pro Hac Vice (paid $50 filing fee; receipt number BOKEDC-1729630) ) (kch, Deputy Clerk) (Entered: 11/30/2022) |
| 11/30/2022 | 596 | MINUTE ORDER by Magistrate Judge Kimberly E. West: Defendants' Unopposed Emergency Request for Witness to Appear Via Zoom (Docket Entry 587 ) is hereby GRANTED. Witness Robert Ricciuti is permitted to appear at the December 1, 2022 hearing by video. As a result, Defendants' Motion to Quash Subpoena of Witness Robert Ricciuti (Docket Entry 588 ) is deemed MOOT. (Re: 587 MOTION for Leave to Appear, 588 MOTION to Quash ) (tjm, Deputy Clerk) (Entered: 11/30/2022) |

| 11/30/2022 | 597 | MINUTE ORDER by Magistrate Judge Kimberly E. West: Defendants' Emergency Request for Witness to Appear Via Zoom (Docket Entry 589 ) pertaining to witness Peter Chen is GRANTED so long as Plaintiff does not file an objection by 5:00 p.m. on this date, since the Motion did not state that Plaintiff's counsel had been consulted prior to its filing. (Re: 589 MOTION for Leave to Appear ) (tjm, Deputy Clerk) (Entered: 11/30/2022) |
|---|---|---|
| 11/30/2022 | 598 | ATTORNEY APPEARANCE by Timothy S. McConn on behalf of Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (McConn, Timothy) (Entered: 11/30/2022) |
| 11/30/2022 | 599 | MINUTE ORDER by Magistrate Judge Kimberly E. West: Plaintiff's Motion to Strike Defendants' Motion to Enjoin Garnishments and Any Further Enforcement Efforts (Docket Entry 592 ) shall be considered at the hearing on other matters set in this case on DECEMBER 1, 2022 AT 10:00 A.M. (Re: 592 MOTION to Strike Document(s) ) (tjm, Deputy Clerk) (Entered: 11/30/2022) |
| 12/01/2022 | 600 | MINUTES of Proceedings held before Magistrate Judge Kimberly E. West: Motion Hearing held on 12/1/2022. (Re: 562 MOTION to Dismiss, 572 MOTION to Dismiss, 560 MOTION to Dismiss, 565 MOTION to Dismiss, 561 MOTION to Dismiss, 569 MOTION to Dismiss, 568 MOTION to Dismiss, 564 MOTION to Dismiss, 570 MOTION to Dismiss, 566 MOTION to Dismiss, 573 MOTION to Dismiss, 559 MOTION to Dismiss, 574 MOTION to Dismiss, 563 MOTION to Dismiss, 535 MOTION for Entry of Order and Notice of Default Under 12 Okla. Stat. 1179 , 580 MOTION MOTION for Hearing, 592 MOTION to Strike Document(s), 571 MOTION to Dismiss ) (Court Reporter: Shelley Ottwell) (tjm, Deputy Clerk) (Entered: 12/01/2022) |
| 12/05/2022 | 601 | FINDINGS AND RECOMMENDATION by Magistrate Judge Kimberly E. West. (Re: 562 MOTION to Dismiss, 572 MOTION to Dismiss, 560 MOTION to Dismiss, 565 MOTION to Dismiss, 561 MOTION to Dismiss, 569 MOTION to Dismiss, 568 MOTION to Dismiss, 564 MOTION to Dismiss, 570 MOTION to Dismiss, 566 MOTION to Dismiss, 573 MOTION to Dismiss, 559 MOTION to Dismiss, 574 MOTION to Dismiss, 563 MOTION to Dismiss, 535 MOTION for Entry of Order and Notice of Default Under 12 Okla. Stat. 1179 , 580 MOTION MOTION for Hearing, 592 MOTION to Strike Document(s), 571 MOTION to Dismiss ) Objections to F&R due by 12/19/2022. (tjm, Deputy Clerk) (Entered: 12/05/2022) |
| 12/06/2022 | 602 | TRANSCRIPT of Proceedings (Unredacted) of Motions Hearing held on December 1, 2022, before Magistrate Judge Kimberly E. West (Court Reporter: Shelley Ottwell) (Pages: 29). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 600 Minutes of Motion Hearing) (sdo, Court Reporter) (Entered: 12/06/2022) |
| 12/14/2022 | 603 | Agreed Statement of No Objection Subject to Clarification (Re: 601 REPORT AND RECOMMENDATION by Magistrate Judge Kimberly E. West) by Sunoco, Inc. (R&M) (McConn, Timothy) (Entered: 12/14/2022) |
| 12/19/2022 | 604 | NOTICE Regarding Proposed Schedule for Class Counsel's Notice and Motion for Attorney's Fees, Litigation Expenses, and Case Contribution Award (Re: 577 Response in Opposition to Motion, 601 REPORT AND RECOMMENDATION by Magistrate Judge Kimberly E. West ) by Perry Cline(on behalf of all others similarly situated), Perry Cline(on behalf of himself) (Beckworth, Bradley) (Entered: 12/19/2022) |

| | | |
|---|---|---|
| 12/20/2022 | 605 | ORDER by Judge John A. Gibney, Jr adopting REPORT AND RECOMMENDATION (Docket Entry 601 ) by Magistrate Judge Kimberly E. West. (rak, Deputy Clerk) (Entered: 12/20/2022) |
| 12/21/2022 | 606 | NOTICE of Voluntary Dismissal of Garnishment Proceedings Without Prejudice (Re: 487 Garnishment Summons Issued, 455 Garnishment Affidavit, 497 Garnishment Summons Issued, 490 Garnishment Summons Issued, 486 Garnishment Summons Issued, 493 Garnishment Summons Issued, 457 Garnishment Affidavit, 458 Garnishment Affidavit, 454 Garnishment Affidavit, 491 Garnishment Summons Issued, 492 Garnishment Summons Issued, 494 Garnishment Summons Issued, 464 Garnishment Affidavit, 466 Garnishment Affidavit, 461 Garnishment Affidavit, 528 MOTION for Garnishment Summons as to Range Resources - Appalachia, LLC, 459 Garnishment Affidavit, 495 Garnishment Summons Issued, 465 Garnishment Affidavit, 499 Garnishment Summons Issued, 500 Garnishment Summons Issued, 462 Garnishment Affidavit, 489 Garnishment Summons Issued, 498 Garnishment Summons Issued, 460 Garnishment Affidavit, 488 Garnishment Summons Issued, 456 Garnishment Affidavit, 463 Garnishment Affidavit, 467 Garnishment Affidavit, 484 Ruling on Motion for Garnishment Summons, 527 Garnishment Affidavit, 453 Garnishment Affidavit, 496 Garnishment Summons Issued) by Perry Cline (on behalf of all others similarly situated), Perry Cline(on behalf of himself) (Pate, Andrew) (Entered: 12/21/2022) |
| 12/21/2022 | 607 | NOTICE of Withdrawal (Re: 535 MOTION for Entry of Order and Notice of Default Under 12 Okla. Stat. 1179) by Perry Cline(on behalf of all others similarly situated), Perry Cline(on behalf of himself) (Pate, Andrew) (Entered: 12/21/2022) |
| 01/03/2023 | 608 | NOTICE of Withdrawal of Opposition (Re: 590 Reply, 363 Response in Opposition to Motion) by Sunoco, Inc. (R&M) (McConn, Timothy) (Entered: 01/03/2023) |
| 01/06/2023 | 609 | MINUTE ORDER by Judge John A. Gibney, Jr.: Motion Hearing (Re: 390 MOTION for Attorney Fees) set for 2/28/2023 at 10:00 a.m. (11:00 a.m. EASTERN TIME) via Video Conference before Judge John A. Gibney Jr. A separate email with the Zoom link access will be sent to counsel prior to the Motion Hearing. (kch, Deputy Clerk) (Entered: 01/06/2023) |
| 01/06/2023 | 610 | ORDER by Judge John A. Gibney, Jr.: The Court SCHEDULES a hearing on the (ECF No. 390 ) Motion for Fees and Costs for February 28, 2023, at 10:00 a.m. Court GRANTS (ECF No. 604 ), the proposed schedule shall be the parties' new schedule for notice and briefing on the Motion for Fees and Costs. (kch, Deputy Clerk) (Entered: 01/06/2023) |
| 01/10/2023 | 611 | Unopposed MOTION for Clarification of Order Adopting Report and Recommendation (Re: 605 Ruling on Report and Recommendation) by Sunoco, Inc. (R&M) (With attachments) Responses due by 1/24/2023(McConn, Timothy) Modified on 1/12/2023 to edit event (dma, Deputy Clerk). (Entered: 01/10/2023) |
| 01/12/2023 | 612 | ORDER by Judge John A. Gibney, Jr. granting 611 Motion for Clarification of Order Adopting Report and Recommendation (Re: 605 Ruling on Report and Recommendation) (kch, Deputy Clerk) (Entered: 01/12/2023) |
| 01/31/2023 | 613 | MOTION for Attorney Fees by Perry Cline (on behalf of all others similarly situated), Perry Cline (on behalf of himself) (With attachments) Responses due by 2/14/2023 (Beckworth, Bradley) (Entered: 01/31/2023) |
| 01/31/2023 | 614 | BRIEF in Support of Motion (Re: 613 MOTION for Attorney Fees) by Perry Cline (on behalf of all others similarly situated), Perry Cline (on behalf of himself) (Beckworth, Bradley) (Entered: 01/31/2023) |

| 01/31/2023 | [615](#) | MOTION for Approval of Reimbursement of Litigation Expenses and Administration, Notice and Distribution Costs by Perry Cline (on behalf of all others similarly situated), Perry Cline (on behalf of himself) Responses due by 2/14/2023 (Beckworth, Bradley) (Entered: 01/31/2023) |
|---|---|---|
| 01/31/2023 | [616](#) | BRIEF in Support of Motion (Re: [615](#) MOTION for Approval of Reimbursement of Litigation Expenses and Administration, Notice and Distribution Costs) by Perry Cline (on behalf of all others similarly situated), Perry Cline(on behalf of himself) (Beckworth, Bradley) (Entered: 01/31/2023) |
| 01/31/2023 | [617](#) | MOTION for Approval of Case Contribution Award by Perry Cline (on behalf of all others similarly situated), Perry Cline (on behalf of himself) Responses due by 2/14/2023 (Beckworth, Bradley) (Entered: 01/31/2023) |
| 01/31/2023 | [618](#) | BRIEF in Support of Motion (Re: [617](#) MOTION for Approval of Case Contribution Award) by Perry Cline (on behalf of all others similarly situated), Perry Cline (on behalf of himself) (Beckworth, Bradley) (Entered: 01/31/2023) |
| 02/14/2023 | [619](#) | Letters Regarding Settlement (kch, Deputy Clerk) (Entered: 02/14/2023) |
| 02/21/2023 | [620](#) | RESPONSE (Re: [619](#) Letter ) by Perry Cline(on behalf of all others similarly situated), Perry Cline(on behalf of himself) (With attachments)(Beckworth, Bradley) (Entered: 02/21/2023) |
| 02/23/2023 | [621](#) | Letters Regarding Settlement (kch, Deputy Clerk) (Entered: 02/23/2023) |
| 02/27/2023 | [622](#) | Letters Regarding Settlement (kch, Deputy Clerk) (Entered: 02/27/2023) |
| 02/28/2023 | [623](#) | MINUTES of Proceedings held before Judge John A. Gibney, Jr.: Motion Hearing held on 2/28/2023 (Re: [390](#) , [613](#) , [615](#) , [617](#) Motions for Fees and Costs) (Court Reporter: Karla McWhorter) (kch, Deputy Clerk) (Entered: 02/28/2023) |
| 03/22/2023 | [624](#) | Letter Regarding Settlement (With attachments)(kch, Deputy Clerk) (Entered: 03/22/2023) |
| 03/22/2023 | [625](#) | TRANSCRIPT of Proceedings (Unredacted) of Video Conference Motion Hearing Via Zoom, Motion for Fees and Costs held on February 28, 2023 before Judge John A. Gibney, Jr (Court Reporter: Karla McWhorter) (Pages: 1-38). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: [623](#) Minutes of Motion Hearing ) (ksm, Court Reporter) (Entered: 03/22/2023) |
| 03/23/2023 | [626](#) | OPINION by Judge John A. Gibney, Jr. (Re: Motions for attorneys' fees for reimbursement of litigation expenses and for a case contribution award [389](#) , [390](#) , [613](#) , [615](#) and [617](#) ) (kch, Deputy Clerk) (Entered: 03/23/2023) |
| 03/23/2023 | [627](#) | ORDER by Judge John A. Gibney, Jr. GRANTING IN PART Motions for attorneys' fees for reimbursement of litigation expenses and for a case contribution award [389](#) , [390](#) , [613](#) , [615](#) , and [617](#) (kch, Deputy Clerk) (Entered: 03/23/2023) |
| 04/03/2023 | [628](#) | ORDER by Judge John A. Gibney, Jr. denying [503](#) Motion to Deposit/Invest Funds; adopting in part [543](#) Report and Recommendation (Re: [503](#) MOTION to Deposit/Invest Funds, [543](#) REPORT AND RECOMMENDATION by Magistrate Judge Kimberly E. West) (kch, Deputy Clerk) (Entered: 04/03/2023) |

| | | |
|---|---|---|
| 08/03/2023 | 630 | DECISION from Circuit Court remanding the Decision of the District Court (awaiting mandate) (Re: 409 Notice of Appeal - Final Judgment) (With attachments) (kch, Deputy Clerk) Modified on 8/28/2023 to edit file date (dma, Deputy Clerk). (Entered: 08/25/2023) |
| 08/04/2023 | 629 | SEALED DOCUMENT [Document sent to Judgment Administrator & counsel of record] (kch, Deputy Clerk) (Entered: 08/04/2023) |
| 08/25/2023 | 631 | MANDATE letter from Circuit Court reopening case (Re: 409 Notice of Appeal - Final Judgment, 630 USCA Decision ) (kch, Deputy Clerk) (Entered: 08/25/2023) |
| 08/29/2023 | 632 | ORDER by Judge John A. Gibney, Jr. directing the parties to contact chambers within 7 (seven) days to propose dates for status hearing. (Re: 631 USCA Mandate, 630 USCA Decision) (kch, Deputy Clerk) (Entered: 08/29/2023) |
| 09/05/2023 | 633 | Unopposed MOTION to Return Judgment Funds on Deposit by Sunoco, Inc. (R&M) Responses due by 9/19/2023(Yetter, R.) (Entered: 09/05/2023) |
| 09/13/2023 | 634 | MINUTE ORDER by Judge John A. Gibney, Jr. setting Status Conference for 9/28/2023 at 2:00 p.m. [3:00 p.m. EASTERN TIME] via Video Conference in Courtroom 4 before Judge John A. Gibney Jr. A separate email with the Zoom link access will be sent to counsel prior to the conference. (kch, Deputy Clerk) (Entered: 09/13/2023) |
| 09/28/2023 | 635 | MINUTES of Proceedings held before Judge John A. Gibney, Jr.: Status Conference held on 9/28/2023 via Zoom. (Court Reporter: Shelley Ottwell) (kch, Deputy Clerk) (Entered: 09/28/2023) |
| 10/02/2023 | 636 | ORDER by Judge John A. Gibney, Jr. setting deadline(s): Plaintiff to submit briefing no later than 10/6/2023; Defendants' response due by 10/13/2023; Court directs parties to submit a revised allocation plan and confer about joint availability to chambers by 10/6/2023 (Re: 635 Minutes of Status Hearing, 630 USCA Decision). (kch, Deputy Clerk) (Entered: 10/02/2023) |
| 10/04/2023 | 637 | ORDER by Judge John A. Gibney, Jr granting 633 Motion to Return Judgment Funds on Deposit (kch, Deputy Clerk) (Entered: 10/04/2023) |
| 10/06/2023 | 638 | BRIEF Submitted in Response to Order at Dkt. 636 Regarding an Amended Award of Actual Damages and Addressing Whether Additional Notice Should be Provided to the Class by Plaintiff (Ryan, Patrick) (Entered: 10/06/2023) |
| 10/10/2023 | 639 | MINUTE ORDER by Judge John A. Gibney, Jr. setting Status Conference for 10/17/2023 at 9:00 a.m. [10:00 a.m. EASTERN TIME] in Courtroom 4 - Video Conference before Judge John A. Gibney Jr. A separate email with the Zoom link access will be sent to counsel prior to the conference. (kch, Deputy Clerk) Modified on 10/10/2023 to correct time(kch, Deputy Clerk). (Entered: 10/10/2023) |
| 10/13/2023 | 640 | RESPONSE to Class Representative Request for an Amended Award of Actual Damages (Re: 638 Brief) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/13/2023) |
| 10/17/2023 | 641 | MINUTES of Proceedings held before Judge John A. Gibney, Jr.: Status Hearing via Zoom held on 10/17/2023 (Court Reporter: Shelley Ottwell) (kch, Deputy Clerk) (Entered: 10/17/2023) |
| 10/17/2023 | 642 | ORDER by Judge John A. Gibney, Jr. directing the parties to submit revised damages calculations by October 19, 2023 at 1:00 p.m. Eastern Time (12:00 p.m. Central Time) (kch, Deputy Clerk) (Entered: 10/18/2023) |
| 10/17/2023 | 643 | AMENDED PLAN OF ALLOCATION ORDER by Judge John A. Gibney, Jr. (kch, Deputy Clerk) (Additional attachment(s) added on 10/19/2023: Exhibit #1, Regenerated |

| | | |
|---|---|---|
| | | NEF) (kch, Deputy Clerk) (Entered: 10/18/2023) |
| 10/19/2023 | 644 | RESPONSE (Re: 642 Order) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 10/19/2023) |
| 10/19/2023 | 645 | AMENDED AWARD OF ACTUAL DAMAGES by Judge John A. Gibney, Jr. (kch, Deputy Clerk) (Entered: 10/19/2023) |
| 10/19/2023 | 646 | RULE 58 JUDGMENT ORDER by Judge John A. Gibney, Jr. (Attachments: # 1 Exhibit A)(kch, Deputy Clerk) (Entered: 10/19/2023) |
| 11/06/2023 | 647 | Emergency MOTION to Approve $25 Million Supersedeas Bond by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) Responses due by 11/20/2023 (Yetter, R.) (Entered: 11/06/2023) |
| 11/07/2023 | 648 | ORDER by Judge John A. Gibney, Jr.: Court directs the parties to submit expedited briefing on the amount of the requested bond. Plaintiffs shall respond by 11/13/2023 at 5:00 p.m.; Defendants shall reply 11/16/2023 by 5:00 p.m. (Re: 647 MOTION to Approve $25 Million Supersedeas Bond) (kch, Deputy Clerk) (Entered: 11/07/2023) |
| 11/13/2023 | 649 | RESPONSE in Opposition to Motion (Re: 647 MOTION for Bond) by Plaintiff (Beckworth, Bradley) (Entered: 11/13/2023) |
| 11/13/2023 | 650 | MOTION for Hearing (Re: 649 Response in Opposition to Motion, 647 MOTION for Bond) by Plaintiff; Responses due by 11/27/2023 (Beckworth, Bradley) (Entered: 11/13/2023) |
| 11/15/2023 | 651 | MOTION to Alter or Amend the Judgment and Brief in Support (Re: 646 Order) by Sunoco, Inc. (R&M) Responses due by 11/29/2023 (Yetter, R.) (Entered: 11/15/2023) |
| 11/15/2023 | 652 | MOTION for New Trial and Brief in Support by Sunoco, Inc. (R&M) Responses due by 11/29/2023 (Yetter, R.) (Entered: 11/15/2023) |
| 11/16/2023 | 653 | REPLY to Response to Motion (Re: 647 MOTION for Bond) by Sunoco, Inc. (R&M) (With attachments) (Yetter, R.) (Entered: 11/16/2023) |
| 11/20/2023 | 654 | MINUTE ORDER by Judge John A. Gibney, Jr. setting Motion for Bond Hearing for 11/28/2023 at 1:00 PM [2:00 PM Eastern Time] in Courtroom 4 - Video Conference before Judge John A. Gibney Jr. A separate email with the Zoom link access will be sent to counsel prior to the hearing. (kch, Deputy Clerk) (Entered: 11/20/2023) |
| 11/20/2023 | 655 | ORDER by Judge John A. Gibney, Jr. denying 651 Motion to Alter Order/Judgment; 652 Motion for New Trial. (kch, Deputy Clerk) (Entered: 11/20/2023) |
| 11/20/2023 | 656 | MINUTE ORDER by Judge John A. Gibney, Jr. granting 650 Motion for Hearing. (Doc. Entry #654) (kch, Deputy Clerk) (Entered: 11/20/2023) |
| 11/28/2023 | 657 | MINUTES of Proceedings held before Judge John A. Gibney, Jr.: Motion Hearing (Re: 647 MOTION for Bond) held on 11/28/2023. (Court Reporter: Karla McWhorter) (kch, Deputy Clerk) (Entered: 11/28/2023) |
| 11/28/2023 | 658 | ORDER by Judge John A. Gibney, Jr. granting in part and denying in part 647 Motion for Bond. (kch, Deputy Clerk) (Entered: 11/28/2023) |
| 11/30/2023 | 659 | TRANSCRIPT of Proceedings (Unredacted) of Video Conference Motion Hearing Via Zoom held on November 28, 2023 before Judge John A. Gibney, Jr (Court Reporter: Karla McWhorter) (Pages: 1-32). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There |

| | | | |
|---|---|---|---|
| | | | is no charge to view the transcript at the court public terminal. (Re: 657 Minutes of Motion Hearing ) (ksm, Court Reporter) (Entered: 11/30/2023) |
| 12/12/2023 | 660 | | Unopposed MOTION to Extend Deadline for Supersedeas Bond by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) Responses due by 12/26/2023 (Yetter, R.) (Entered: 12/12/2023) |
| 12/12/2023 | 661 | | ORDER by Judge John A. Gibney, Jr. granting 660 Motion to Extend Deadline(s). Stay of the execution of the Judgment Deadline set for 12/22/2023. (kch, Deputy Clerk) (Entered: 12/12/2023) |
| 12/15/2023 | 662 | | NOTICE OF APPEAL to Circuit Court (paid $605 appeal fee; receipt number AOKEDC-1883232) (Re: 125 Ruling on Motion to Exclude, 124 Opinion and Order, 231 Opinion and Order, 232 Ruling on Motion for Partial Summary Judgment, Ruling on Motion for Leave to File Document(s), 126 Opinion and Order, 308 Judgment, 299 Ruling on Objection to Exhibits, Ruling on Objection to Deposition Designations, Ruling on Motion to Strike, 646 Order, 655 Ruling on Motion to Alter Order/Judgment, Ruling on Motion for New Trial, 298 Opinion and Order, 645 Order, 127 Ruling on Motion to Certify Class, Ruling on Motion for Leave to File Document(s), 186 Ruling on Motion to Clarify, 643 Order, 339 Order) by Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 12/15/2023) |
| 12/15/2023 | 663 | | Transmission of Notice of Appeal and Docket Sheet to U.S. Court of Appeals. (Re: 662 Notice of Appeal - Final Judgment) (With attachments)(rak, Deputy Clerk) (Entered: 12/15/2023) |
| 12/15/2023 | 664 | | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 23-7090. (Re: 662 Notice of Appeal - Final Judgment) (rak, Deputy Clerk) (Entered: 12/15/2023) |
| 12/20/2023 | 665 | | Class Representative's NOTICE Regarding Supersedeas Bond by Plaintiff (With attachments) (Beckworth, Bradley) (Entered: 12/20/2023) |
| 12/20/2023 | 666 | | Emergency Second MOTION to Approval Supersedeas Bond (Re: 658 Ruling on Motion for Bond) by Sunoco, Inc. (R&M) (With attachments) Responses due by 1/3/2024 (Yetter, R.) (Entered: 12/20/2023) |
| 12/21/2023 | 667 | | ORDER by Judge John A. Gibney, Jr. setting deadline(s): Plaintiff SHALL either file a motion or indicate his intent not to do so (Re: 665 Notice, 666 Emergency Second MOTION to Approve Supersedeas Bond) due by 1/10/2024. Defendant's Response is set for 1/17/2024. (kch, Deputy Clerk) (Entered: 12/21/2023) |
| 12/29/2023 | 668 | | TRANSCRIPT ORDER FORM (Transcripts are not necessary or are already on file) (Re: 662 Notice of Appeal - Final Judgment) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) (Yetter, R.) (Entered: 12/29/2023) |
| 01/02/2024 | 669 | | Notice advising the record is complete for the purposes of appeal (re: Circuit Appeal No. 23-7090). A Transcript Order Form has been filed stating the necessary transcripts are already on file. (Re: 662 Notice of Appeal - Final Judgment) (rak, Deputy Clerk) (Entered: 01/04/2024) |
| 01/10/2024 | 670 | | MOTION Regarding Dkt. No. 658 and Response to Defendants' Second Emergency Motion to Approve Supersedeas Bond (Re: 667 Order, 666 MOTION for Bond) by All Plaintiffs; Responses due by 1/24/2024 (Pate, Andrew) (Entered: 01/10/2024) |
| 01/12/2024 | 671 | | TRANSCRIPT of Proceedings (Unredacted) of Status Conference held on September 28, 2023, before Judge John A. Gibney, Jr (Court Reporter: Shelley Ottwell) (Pages: 8). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the |

| | | transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 635 Minutes of Status Hearing ) (sdo, Court Reporter) (Entered: 01/12/2024) |
|---|---|---|
| 01/12/2024 | 672 | TRANSCRIPT of Proceedings (Unredacted) of Status Conference held on October 17, 2023, before Judge John A. Gibney, Jr (Court Reporter: Shelley Ottwell) (Pages: 15). A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or may view the transcript at the court public terminal. There is no charge to view the transcript at the court public terminal. (Re: 641 Minutes of Status Hearing ) (sdo, Court Reporter) (Entered: 01/12/2024) |
| 01/16/2024 | 673 | MINUTE ORDER by Judge John A. Gibney, Jr. setting Motion Hearing for 1/25/2024 at 9:00 AM [10:00 AM EASTERN TIME] in Courtroom 4 - Video Conference before Judge John A. Gibney Jr. A separate email with the Zoom link access will be sent to counsel prior to the hearing. (Re: 670 MOTION, 666 MOTION for Bond) (kch, Deputy Clerk) (Entered: 01/16/2024) |
| 01/17/2024 | 674 | RESPONSE to Motion (Re: 670 MOTION ) by Sunoco Partners Marketing & Terminals, LP, Sunoco, Inc. (R&M) ; (With attachments)(Yetter, R.) (Entered: 01/17/2024) |
| 01/24/2024 | 675 | MINUTE ORDER by Judge John A. Gibney, Jr. : Motion Hearing (Re: 670 MOTION, 666 MOTION for Bond) set for 1/25/2024 at 9:00 AM [10:00 AM EASTERN TIME] is RESET for set for 2/8/2024 at 9:00 AM [10:00 AM EASTERN TIME] in Courtroom 4 - Video Conference before Judge John A. Gibney Jr. A separate email with the Zoom link access will be sent to counsel prior to the hearing. (kch, Deputy Clerk) (Entered: 01/24/2024) |
| 01/24/2024 | 676 | ORDER by Judge John A. Gibney, Jr. extending the Rule 62(a) stay of the judgment to March 1, 2024 (Re: 670 MOTION, 666 MOTION for Bond). (kch, Deputy Clerk) (Entered: 01/24/2024) |
| 02/08/2024 | 677 | MINUTES of Proceedings held before Judge John A. Gibney, Jr: Motion Hearing (Re: 670 Class Representative's Motion regarding [Doc. Entry 658 ]; 666 Emergency Motion to Approve Supersedes Bond) held on 2/8/2024. (Court Reporter: Karla McWhorter) (kch, Deputy Clerk) (Entered: 02/08/2024) |
| 02/22/2024 | 678 | ORDER by Judge John A. Gibney, Jr. denying as moot 666 Emergency Second Motion to Approval Supersedeas Bond (Re: 658 Ruling on Motion for Bond); granting 670 Cline's Motion to reconsider the Bond. (kch, Deputy Clerk) (Entered: 02/22/2024) |
| 02/26/2024 | 679 | Unopposed Third MOTION to Approval Supersedeas Bond and Parent Guaranty by Sunoco, Inc. (R&M) (With attachments) Responses due by 3/11/2024 (Yetter, R.) (Entered: 02/26/2024) |
| 02/27/2024 | 680 | ORDER by Judge John A. Gibney, Jr. granting 679 Unopposed Third Motion to Approve Supersedeas Bond and Parent Guaranty (kch, Deputy Clerk) (Entered: 02/27/2024) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/12/2024 07:04:39 | | |
| **PACER Login:** | clementmurphy | **Client Code:** | Sunoco |

| Description: | Docket Report | Search Criteria: | 6:17-cv-00313-JAG |
|---|---|---|---|
| Billable Pages: | 30 | Cost: | 3.00 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) PERRY CLINE, on behalf of himself, and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. <u>17-CV-313-SPS</u> |
| v. | ) ) ) | (Removed from the District Court of Seminole County, Oklahoma, formerly state case No. CJ-2017-75) |
| (1) SUNOCO, INC. (R&M); and (2) SUNOCO PARTNERS MARKETING & TERMINALS, L.P., | ) ) ) ) | |
| Defendants. | ) ) | |

<u>**NOTICE OF REMOVAL**</u>

Please take notice that Defendants Sunoco, Inc. (R&M), now Sunoco (R&M), LLC and

Sunoco Partners Marketing & Terminals, L.P. (collectively "Defendants"), notify this Court of

the removal of this action from the District Court of Seminole County, Oklahoma, to this Court,

and states as follows:

**I.      PLAINTIFF'S CLASS ACTION CLAIMS**

1.      On July 17, 2017, Defendants were served with summons and a copy of an

original class action petition filed in in the district court of Seminole County, Oklahoma. *See*

Summons, Ex. 1; Plaintiff's Original Petition ("Petition"), Ex. 2; Seminole County Docket Sheet,

Ex. 3. Plaintiff Perry Cline purports to sue individually and on behalf of a putative class of

"thousands" of unnamed individual class members who Plaintiff alleges received untimely

payments from Defendants for oil and gas proceeds from wells in the State of Oklahoma.

Petition, ¶ 21-22. The Petition asserts claims that make the case removable under the Class

Action Fairness Act ("CAFA"), as set forth below. *See* 28 U.S.C. §§1446(b)(3), 1453(b).

2.      Plaintiff claims that Defendants, as alleged first purchasers of oil and gas

production in the State of Oklahoma, "routinely" delayed making payments to Plaintiff and

**App.65**

putative class members and "consistently" ignored an obligation to pay statutory interest on such payments allegedly in accordance with the Oklahoma Production Revenue Standards Act ("PRSA"). Plaintiff alleges that Defendants' conduct is part of an ongoing fraudulent scheme to avoid paying money to him and to the putative class he says put special trust and confidence in Defendants. And Plaintiff alleges that Defendants have taken advantage of that trust and intentionally suppressed from him and the putative class members that PRSA interest was not correctly paid. Plaintiff asserts that Defendants' alleged practice is intentional, willful, and grossly negligent and constitutes a breach of the PRSA and fraud.

3.      Plaintiff seeks for himself and each of the alleged "thousands" of putative class members:

- actual damages to fully compensate for losses sustained, including the statutory interest due under the PRSA on all delayed oil and gas payments;

- punitive damages as provided by Oklahoma law;

- disgorgement of any gains Defendants allegedly derived because it had available to it monies allegedly not paid to Plaintiff and putative class members;

- an equitable accounting to determine the allegedly proper amount of each of the potentially millions of individual royalty payments and ascertain the PRSA interest to be paid on each of those payments;

- an injunction requiring Defendants to pay interest in a specified manner in the future;

- all amounts recoverable under the PRSA as attorney fees and litigation costs; and

- costs and other relief deemed appropriate.

4.      Plaintiff seeks to represent a class defined as all persons or entities (except those specifically excluded) who received untimely payments from Defendants (or Defendants' designees) for oil and gas proceeds from Oklahoma Wells, and whose payments did not include the alleged statutory interest. Petition, ¶ 21.

5.      Entries of Appearance filed by Plaintiff's counsel in Seminole County are attached as Exhibits 4 through 7. The Special and Limited Appearance and Unopposed Motion to Extend Time to Answer or otherwise Respond to Plaintiff's Petition filed by Defendants in Seminole County is attached Exhibit 8.[1] Defendants are unaware of the existence of any process, pleadings, or orders other than the documents included in Exhibits 1-8. Nor are Defendants aware of any motions pending before the Seminole County District Court in this matter, or any currently set hearings regarding the same other than the documents included in Exhibits 1-8. *See* Seminole County Docket Sheet, Ex. 2.

## II.      JURISDICTION OF THE FEDERAL COURT

6.      This Court has original jurisdiction over this class action because the matter in controversy exceeds the sum or value of $5,000,000.00, a member of the putative class of plaintiffs is a citizen of a State different from any defendant, and the number of members of the putative class exceeds 100. *See* Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

### A.      There Is a Diversity of Citizenship

7.      As Plaintiff alleged in the Petition, Defendants together are citizens of Texas and Pennsylvania. *See* Petition, ¶¶ 13-14; *see also* 28 U.S.C. § 1332(d)(10) (indicating that a limited partnership is a citizen of the states where it is organized and where it has its principal place of

---

[1] Exhibit 8 includes a corrected certificate of service.

business for purposes of CAFA). The named Plaintiff is an individual who resides in (and is therefore a citizen of) Oklahoma. Members of the putative class, as defined in the Petition, are individuals who reside in (and are therefore citizens of) every state in the U.S. and many foreign countries.

8.    Because members of the putative class, as defined by the Petition, are citizens of states different from those of which any Defendant is a citizen, the minimum diversity required by CAFA is satisfied. 28 U.S.C. § 1332(d)(2)(A)(B) & (10) (CAFA diversity exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant" or "any member of a class of plaintiffs is a…citizen or subject of a foreign state and any defendant is a citizen of a State"); *see also Weber v. Mobil Oil Corp.*, 506 F.3d 1311, 1313 (10th Cir. 2007) (indicating that § 1332(d)(2)(A) "extends the subject matter jurisdiction of the federal courts to encompass putative class actions in which at least one plaintiff class member is diverse from one defendant and where the amount in controversy exceeds $5 million").

### B.    The Amount in Controversy Exceeds Five Million Dollars

9.    For CAFA purposes, the claims of each individual class member are "aggregated" to determine if the amount in controversy requirement is met. 28 U.S.C. § 1332(d)(6). A defendant's "plausible allegation in the notice of removal that the matter in controversy exceeds the jurisdictional threshold" suffices to invoke federal jurisdiction. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).[2] As in this case, when the plaintiff

---

[2] *Dart* established that no evidentiary submission need accompany the notice of removal. *Id.* at 554. Evidentiary submissions are not required unless the material jurisdictional facts alleged in the notice of removal are contested. *McPhail v. Deere & Co.,* 529 F.3d 947, 954 (10th Cir. 2008). Uncertainty about whether the plaintiff can actually obtain the sum or value alleged at issue will not defeat federal jurisdiction unless it is "legally certain" that the plaintiff cannot recover them. *Id.*; *see also Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). *Brill*'s articulation of the rule the Tenth Circuit likewise adopted is compelling:

does not specify the amount of damages claimed, the defendant may rely, among other things, on an estimate of potential damages from the allegations in the complaint to support its plausible allegations and even to establish that the jurisdictional threshold is exceeded. *McPhail v. Deere & Co.*, 529 F.3d 947, 956-57 (10th Cir. 2008).

10.     Here, the allegations on the face of Plaintiff's Petition establish beyond doubt that federal jurisdiction exists. Plaintiff alleges that the amount in controversy exceeds $10,000 and that his claims in particular are for an unspecified amount less than $75,000 "exclusive of attorneys' fees, litigation expenses, costs and interest." Petition ¶ 19. Plaintiff claims there are "thousands" of others just like him with similar claims. *Id.* ¶ 22. He seeks a broad array of legal and equitable relief described to remedy what he asserts is a pervasive, consistent scheme to obtain "interest free loans" and asks the Court to determine, in addition to the statutory interest amounts allegedly owed, the amount of any benefits Defendants obtained from this alleged scheme. *Id.* ¶¶ 31-36, 62.

11.     Plaintiff also seeks to compel Defendants to pay for the accounting of potentially millions of individual payment transactions, related to perhaps as many sales of oil and gas produced from thousands of wells for thousands of alleged class members. He seeks a perpetual injunction to impose on every future transaction. *Id.* ¶ 60-61. And although his amount-in-controversy allegation purports to be exclusive of litigation expenses and attorneys' fees,

---

> When the plaintiff prefers to be in state court, however, the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy. A defendant's notice of removal then serves the same function as the complaint would in a suit filed in federal court. The complication is that a removing defendant can't make the plaintiff's claim for him. . . . The demonstration [in the notice of removal] concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.

Plaintiff seeks to recover them for himself and the class based on a claimed statutory right. *Id.* at

Prayer ¶ 7. On these allegations alone, it is indisputable that the sum or value of more than

$5,000,000, exclusive of interest or costs, is in controversy.

### a.     Actual Damages

12.     Plaintiff seeks to recover compensatory damages reflecting the statutory interest

allegedly due on any untimely royalty payments Defendants made. Petition, Prayer ¶ 2

(requesting order "requiring Defendant to pay Plaintiff and Class members. . . the compounded

interest on Untimely Payments as required by law"). These interest amounts may be considered

in determining the CAFA jurisdictional amount because Plaintiff claims that they are his and the

putative class's actual damages. Plaintiff's equitable accounting claim is predominantly aimed at

compelling the determination and payment of these statutory interest amounts, and his Petition

makes clear that they are not ancillary to some other underlying amount in dispute. *Cf. State*

*Farm Mut. Auto. Ins. Co. v. Narvaez,* 149 F.3d 1269, 1271 (10th Cir. 1998).

13.     Plaintiff contends that Defendants "consistently ignored their obligations to pay

interest" and "knowingly and intentionally suppressed the fact that interest was owed." Petition*,*

¶¶ 7, 53. Plaintiff thus apparently seeks to litigate the claims of thousands of individual claimants

over a twenty-four year period running from the enactment of the PRSA in 1992 to the present

under some theory of fraudulent concealment, despite the fact that the statute of limitations is

5 years under the PRSA. *See* Petition, ¶¶ 21, 23, 54 (class definition not limited in time, and class

claims include alleged "knowing and intentional" suppression and deception of the fact that

interest was owed).[3] Defendants vigorously dispute the merits of Plaintiffs' claims, the propriety

of any relief to Plaintiff or the proposed class, and any implication that Defendants have

---

[3] Defendants in no manner concede that its potential liability extends back to the statute's
inception in 1992, but reference this point only because Plaintiff's class definition and other
pleadings do not reference a relevant time period.

fraudulently concealed the alleged wrongful conduct. If taken as true, however, Plaintiff's allegations demonstrate that the amount in controversy exceeds the CAFA jurisdictional threshold.

14.     Indeed, in the last 5 years (without going back to 1992, as presumably alleged in the Petition), Defendants have remitted payments for oil and gas proceeds received for production from Oklahoma wells to over 135,000 payees. The magnitude of payees, the millions of individual royalty payments made over theses years to payees, and the alleged PRSA interest rates allegedly due on the payments Plaintiff says Defendants "routinely" delayed (12% or 6%, depending on the reason for withholding) plausibly supports Defendants' allegation that the amount in controversy exceeds the CAFA $5,000,000 jurisdictional amount, exclusive of interest and costs.

> **b.     Attorneys' Fees, Expert Fees, Disgorgement, and Punitive Damages**

15.     Even assuming the compensatory damages claim alone did not meet CAFA's amount in controversy requirement, the $5,000,000 threshold is most certainly met when those potential damages are considered with the other relief Plaintiff seeks in this case. First, Plaintiff alleges a right to recover attorney and expert fees, which the PRSA allows to a prevailing party. Okla. Stat. tit. 52, § 570.14(A)(2). Plaintiff's attorney has testified in support of attorneys' fee applications in other royalty owner class litigation that an award of forty percent of the class recovery is customary and reasonable. Under Plaintiff's allegations and his attorney's testimony in other royalty cases, if Plaintiff prevails in this case, attorneys' fees alone could easily be several million dollars. *See McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741, at * 46-47 (W.D. Okla. Oct. 27, 2008) (citing *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*, 1993 U.S. Dist. LEXIS 19969 at *2 (W.D. Okla.

June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

16.     In addition, expert fees in class action royalty-related litigation are usually substantial given the complexity of the issues involved and the volume of complex data that must be analyzed to determine compliance with lease, division order, statutory, and other obligations. In this particular case, those complexities are magnified by the sheer size of the proposed class, the decades of millions of royalty payments involved, and the title issues attendant to determining which interest rate under the PRSA applies. It is thus reasonable to conclude that expert witness fees that would be incurred to analyze the relevant instruments and the payment, production, and sales records would result in at least several hundreds of thousands of dollars in expert fees recoverable under the PRSA if Plaintiff prevails.

17.     Furthermore, it is settled that "'[p]unitive damages may be considered in determining the requisite jurisdictional amount.'" *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) (quoting *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003)).[4] Similarly, if a plaintiff seeks disgorgement, the amount

---

[4] In order to include punitive damages, the defendant is not required to prove that the plaintiff is more likely than not to recover punitive damages, but need only show that "(1) state law permits a punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages, could exceed $5,000,000." *Frederick* v. *Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012); *see also Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) ("the question…is not whether the class is more likely than not to recover punitive damages, but whether [state] law disallows such a recovery"). Oklahoma's 23 O.S. § 9.1(C) may allow recovery of punitive damages for the fraud claim pleaded here and recovery could include up to twice the amount of actual damages. When, as here, Plaintiff has alleged purported tortious acts and associated punitive damages for thousands of putative class members, the Court is entitled to make "effortless mathematical calculations" and conclude based on the face of the Petition that the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See Plummer v. Farmers Grp., Inc.*, 388 F. Supp. 2d 1310, 1318 (E.D. Okla. 2005) (holding that defendants' notice of removal showed, by preponderance of evidence, that amount in controversy exceeded

to be disgorged is correctly considered part of the amount in controversy. *Cox v. Allstate Ins. Co.*, CIV-07-1449-L, 2008 WL 2167027, at *2 (W.D. Okla. May 22, 2008). Given the size of the proposed class, the alleged twenty-four year claim period, and the millions of individual royalty payments at issue, the punitive damages and disgorgement (alleged to be the amount of any benefits to Defendants derived from use over time of interest owed to Plaintiff and the putative class) in this case likely will be several million dollars.

### c.   Accounting

18.   The value of the matter in controversy in suits requesting equitable relief such as an accounting includes the cost of performing that relief if granted. *See, e.g.*, *Okla. Retail Grocers Ass'n v. Wal-mart Stores, Inc.*, 605 F.2d 1155, 1155 (10th Cir. 1979). An accounting with respect to the claims of the thousands of putative class members in this matter would not be a simple task. One would need to identify and analyze voluminous ownership, production, payment, and sales records with respect to each individual class claimant and each of their individual monthly royalty payments to determine compliance with the PRSA and, if there is no compliance, what amount is due. This monumental project would require the work of qualified oil and gas accountants and, assuming a full accounting can be accomplished in light of the complexities and individual analyses that must be done, could take over a year to accomplish. Because of the number of claimants, payments, wells, and complexities involved, the cost to perform an accounting by itself and in the form Plaintiff requests will likely exceed $5,000,000.

19.   It is therefore apparent that the amount in controversy exceeds the jurisdictional amount in controversy for removal under CAFA, without even considering Plaintiff's additional claim for injunctive relief, which would necessarily add to the amount in controversy.

---

$5,000,000 where plaintiff requested unspecified actual damages and punitive damages for each of "thousands" of class members).

**C.** **There Are No Defendants Who Are Government Entities and the Putative Class Members Exceed One Hundred**

20.    CAFA does not apply to any class action in which the primary defendants are States, State officials, or other governmental entities or the number of members of the class is less than 100. 28 U.S.C. § 1332(d)(5). Here, there are no governmental entity defendants, and the number of putative class members exceeds 100.

21.    Neither of the Defendants is a State, State official, or governmental entity.

22.    The number of putative members of the class exceeds 100. Plaintiff alleges that there are "thousands" of putative class members. Petition, ¶ 22. Therefore CAFA's requirement that the proposed plaintiff class as at least 100 members is met.

23.    Defendants do not believe Plaintiff has defined a proper class, and the Petition does not allege the exact number of purported class members. However, based on the allegations included in the Petition, Plaintiff's proposed class, if certified, would include at least 100 members as required by 28 U.S.C. § 1332(d)(5)(B). *See generally supra* at ¶ 14.

**D.** **Removal Is Timely**

24.    Defendants were served with the Summons and Petition on July 17, 2017. *See* Ex. 1. This Notice of Removal is timely because it is filed within 30 days after such service. 28 U.S.C. §§1446(b), 1453.

**E.** **State Court Docket Sheet/ Notice of Filing in the State Court**

25.    In accordance with 28 U.S.C. 1446(d), this pleading certifies that this Notice of Removal is being filed in the District Court of Seminole County, Oklahoma within 30 days of the service of the Summons and Petitions on Defendants. Also, in accordance with Local Rule 81.2, a copy of all documents filed or served and a copy of the docket sheet in the District Court of Seminole County, Oklahoma, is being filed concurrently herewith.

26.     Under 28 U.S.C. § 1446(a), the United States District Court for the Eastern District of Oklahoma is the appropriate court for filing this Notice of Removal from the District Court of Seminole County, State of Oklahoma. See 28 U.S.C. § 116(b). Venue is proper for purposes of removal only pursuant to 28 U.S.C. § 1441(a).

27.     Defendants reserve the right to amend or supplement this Notice of Removal.

28.     Defendants reserve all defenses, including, without limitation, those set forth in Federal Rule of Civil Procedure 12(b).

Based on these facts, Defendants remove the above-captioned action to the United States District Court for the Eastern District of Oklahoma.

Dated: August 14, 2017                              Respectfully submitted,


                                                   s/Mark D. Christiansen
                                                   Mark D. Christiansen OBA # 1675
                                                   **MCAFEE & TAFT**
                                                   **A PROFESSIONAL CORPORATION**
                                                   10th Floor, Two Leadership Square
                                                   211 N. Robinson Ave.
                                                   Oklahoma City, OK 73102-7103
                                                   Telephone: (405) 552-2235
                                                   Fax: (405) 228-7435
                                                   mark.christiansen@mcafeetaft.com

                                                   Daniel M. McClure (*pro hac vice pending*)
                                                   dan.mcclure@nortonrosefulbright.com
                                                   Rebecca J. Cole (*pro hac vice pending*)
                                                   rebecca.cole@nortonrosefulbright.com
                                                   **NORTON ROSE FULBRIGHT US LLP**
                                                   1301 McKinney, Suite 5100
                                                   Houston, TX 77010-3095
                                                   Telephone (713) 651-5151
                                                   Fax (713) 651-5246

                                                   **ATTORNEYS FOR DEFENDANTS**

**App.75**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August, 2017, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to the following:

Michael Burrage
WHITTEN BURRAGE
512 N. Broadway, Suite 300
Oklahoma, City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com

Susan R. Whatley
Andrew G. Pate
NIX, PATTERSON & ROACH, L.P.
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415
swhatley@nixlaw.com
dpate@nixlaw.com

Patrick M. Ryan
Philip G. Whaley
Jason A. Ryan
Paula M. Jantzen
RYAN WHALEY COLDIRON JANTZEN
   PETERS & WEBBER PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 239-6040
Facsimile: (405) 239-6766
pryan@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Bradley E. Beckworth
Jeffrey J. Angelovich
Lisa P. Baldwin
Trey Duck
Cody L. Hill
NIX, PATTERSON & ROACH, LLP
3600 North Capitol of Texas Highway
Suite 350B
Austin, Texas 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5332
bbeckworth@nixlaw.com
jangelovich@npraustin.com
lbaldwin@nixlaw.com
tduck@nixlaw.com
codyhill@nixlaw.com

Lawrence R. Murphy, Jr.
Mariann M. Robison
RICHARDS & CONNOR
ParkCentre Building
525 South Main Street
Twelfth Floor
Tulsa, OK 74103-4509
Telephone: (918) 585-2394
Facsimile: (918) 585-1449
lmurphy@richardsconnor.com
mrobison@richardsconnor.com

**App.76**

I hereby certify that on the 15th day of August, 2017, I will notify the District Court of Seminole County, Oklahoma, where this case was pending, of this removal, and will include a copy of this Notice of Removal.

s/Mark D. Christiansen
Mark D. Christiansen

# EXHIBIT 2

# NOTICE OF REMOVAL

IN THE DISTRICT COURT OF SEMINOLE COUNTY
STATE OF OKLAHOMA

SEMINOLE COUNTY, OKLAHOMA
**FILED**
IN DISTRICT COURT

JUL 0 7 2017

KIM A. DAVIS, COURT CLERK
BY _____ DEPUTY

PERRY CLINE, on behalf of himself         )
and all others similarly situated         )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )       Case No. CJ-2017- 75
                                          )
                                          )
SUNOCO, INC (R&M); and                    )
SUNOCO PARTNERS                           )
MARKETING & TERMINALS, L.P.,              )
                                          )
        Defendants.                       )

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff, PERRY CLINE ("Plaintiff"), for himself and all others similarly situated (hereinafter, Plaintiff and the putative Class members are referred to collectively as the "Class"), files this Original Petition (the "Petition") and hereby alleges and states as follows in support of the claims asserted against Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, L.P. (collectively, the "Defendants"):

### SUMMARY OF THE ACTION

1.      This class action suit concerns Defendants' willful and ongoing violations of Oklahoma law related to payment of oil and gas production proceeds ("O&G Proceeds") to persons with a legal interest in the acreage under a well which entitles such person(s) (*i.e.*, the "Owner") to payments of O&G Proceeds.

2.      Plaintiff is an Owner in one or more oil and/or gas wells in Oklahoma in which Defendants have incurred an obligation to pay O&G Proceeds pursuant to leases and/or pooling orders (the "Oklahoma Wells"). Specifically, Plaintiff is an Owner in an Oklahoma Well, Boss

1
**App.79**

Hogg 1-14H, which is located in Section 14-19N-9W, Kingfisher County, Oklahoma. Defendants are the first purchaser of production from the Boss Hogg 1-14H Well, and pays revenue to Plaintiff and is obligated to pay interest to Plaintiff.

3.      Plaintiff is an Owner in said Section 14-19N-9W, and his mineral interest is subject to a lease dated 10/5/2011 covering an undivided mineral interest in all the SE/4 Sec. 14-19N-9W, Kingfisher County, Oklahoma.

4.      The oil and gas industry has historically been rife with abuse by lessees, operators, and entities responsible for paying O&G Proceeds. Such companies routinely delay and/or suspend payments to Owners to, among others things, obtain interest free loans at the expense of Owners. Because of their control over the relationship, they are able to easily and successfully employ such schemes.

5.      Oklahoma law attempts to redress and/or prevent such abuses by requiring companies, including Defendants, to pay interest on "proceeds from the sale of oil or gas production or some portion of such proceeds [that] are not paid prior to the end of the applicable time periods provided" by statute ("Untimely Payments"). OKLA. STAT. tit. 52, §570.10(D); *see generally*, OKLA. STAT. tit. 52, § 570, *et. seq.* (the "Production Revenue Standards Act" or the "Act").

6.      The Act gives Owners a uniform, absolute right to interest on Untimely Payments, regardless of whether such payments were previously suspended to address title marketability issues, or any other reason such payments were not made within the time limits required by the Act. The plain language of the Act imposes an obligation to include interest on Untimely Payments. Compliance with this statutory requirement is not optional and does not require a prior written or oral demand by Owners.

**App.80**

7.     Defendants are well aware of their obligations to pay the required interest on Untimely Payments.  Nevertheless, in violation of Oklahoma law, Defendants consistently ignored their obligations to pay interest on Untimely Payments made to Plaintiff.  Indeed, on information and belief, Defendants routinely delay payment of production proceeds and deny Owners the interest payments to which they are entitled as part of an overarching scheme to avoid Defendants' obligations under Oklahoma law.

8.     Accordingly, Plaintiff files this class action lawsuit against Defendants to obtain relief on behalf of all similarly situated Owners who received any Untimely Payments for which Defendants did not include payment of interest as required by the Act.

9.     Plaintiff files this class action lawsuit against Defendants for breach of their statutory obligation to pay interest and fraud.  Additionally, Plaintiff seeks an accounting, disgorgement, and injunctive relief against Defendants.

## PARTIES

10.    Plaintiff Perry Cline is a resident and citizen of the State of Oklahoma.

11.    Plaintiff is an Owner in Oklahoma Wells and is entitled to payment of O&G Proceeds therefrom.

12.    Defendants are a group of affiliated, foreign entities doing business in the State of Oklahoma.

13.    Defendant Sunoco, Inc. (R&M) ("The Parent Defendant"), on information and belief, is the parent corporation of the affiliated Sunoco entities.  The Parent Defendant is a foreign corporation formed under the laws of the State of Pennsylvania that, on information and belief, maintains its principal place of business in Philadelphia, Pennsylvania.  The Parent Defendant is registered to conduct business in the State of Oklahoma and may be served through its registered

3

**App.81**

agent for service of process in Oklahoma: Corporation Service Company, 10300 Greenbriar Place, Oklahoma City, Oklahoma 73159.

14. Defendant Sunoco Partners Marketing & Terminals, L.P. ("The L.P. Defendant") is a foreign limited partnership formed under the laws of the State of Texas that, on information and belief, maintains its principal place of business in Philadelphia, Pennsylvania. The L.P. Defendant is registered to conduct business in the State of Oklahoma and may be served through its registered agent for service of process in Oklahoma: Corporation Service Company, 10300 Greenbriar Place, Oklahoma City, Oklahoma 73159.

15. At all times relevant to the claims asserted herein, Defendants were/are the first purchasers of production from oil and/or gas wells in the State of Oklahoma. Defendants are obligated to pay O&G Proceeds to Plaintiff and the putative class.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction to hear these matters pursuant to OKLA. STAT. tit. 52, § 570.14 (A).

17. This Court has jurisdiction over Defendants because Defendants are foreign entities registered with the Oklahoma Secretary of State that regularly transact business in Oklahoma and otherwise distribute O&G Proceeds from the subject oil and/or gas well(s), including in Seminole, Hughes, Okmulgee, Okfuskee, and Pontotoc Counties, Oklahoma.

18. Venue is proper in this District pursuant to OKLA. STAT. tit. 12, § 137 because Defendants, as foreign entities, may be found in Seminole County, own and/or operate property in Seminole County, and owe debts to Owners arising from Defendants' oil and gas operations in Seminole County.

4

**App.82**

19.     Jurisdiction is properly laid in the District Court of Seminole County, Oklahoma because the amount in controversy, exclusive of attorneys' fees, litigation expenses, costs, and interest, exceeds the sum of $10,000.00. However, the claims of the named Plaintiff are less than $75,000.00.

## CLASS ACTION ALLEGATIONS

20.     The allegations set forth above are incorporated herein by reference.

21.     Plaintiff brings this action as the representative of a Class pursuant to OKLA. STAT. tit. 12, §2023(B)(2) and §2023(B)(3). The Class is comprised of:

> All non-excluded persons or entities who: (1) received Untimely Payments from Defendants (or Defendants' designees) for O&G Proceeds from Oklahoma Wells; and (2) whose payments did not include the statutory interest.

> The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (2) publicly traded oil and gas companies and their affiliates; (3) persons or entities that Plaintiff's counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; and (4) officers of the court.

22.     Upon information and belief, absent Class members entitled to interest owing on Defendants' Untimely Payments number in the thousands. Therefore, the Class is so numerous that joinder of all members is impracticable.

23.     The questions of fact and law common to the Class, include:

> a.  Whether Plaintiff and the Class own legal interests in the Oklahoma acreages upon which Defendants have an obligation to pay O&G Proceeds;

> b.  Whether, under Oklahoma law, Defendants owed interest to Plaintiff and the Class on any Untimely Payments;

> c.  Whether Defendants' failure to pay interest to Plaintiff and the Class on any Untimely Payments constitutes a violation of the Act;

5

**App.83**

d. Whether Defendants defrauded Plaintiff and the Class by knowingly withholding statutory interest; and

e. Whether Defendants are obligated to pay interest on future Untimely Payments.

24. Plaintiff's claims are typical of the Class' claims because the claims are identical for each Class member.

25. Defendants treated Plaintiff and the Class in the same way by failing to pay the required interest on Untimely Payments.

26. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with the interests of the Class. Plaintiff is represented by counsel who are skilled and experienced in oil and gas matters, accounting, and complex civil litigation, including oil and gas royalty class actions.

27. The averments of fact and questions of law herein, which are common to the members of the Class, predominate over any questions affecting only individual members.

28. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a. The questions of law and fact are so uniform across the Class that there is no reason why individual members of the Class would want to control the prosecution of their own actions, at their own expense;

b. To Plaintiff's knowledge, there is no pending litigation by any individual Class member, with the same scope of Class membership sought herein, against Defendants relating to Defendants' failure to pay interest owing on the Untimely Payments of O&G Proceeds as required by law;

c. The interests of all parties and the judiciary in resolving these matters in one forum without the need for multiplicity of actions is great;

d. The difficulties in managing this case as a class action will be slight in relation to the personal benefits to be achieved on behalf of each and every Class member, and not just those who can afford to bring their own actions; and

6

**App.84**

e. Absent a class action, Plaintiff and the Class members may never discover the wrongful acts of Defendants, the extent of their respective financial losses, or the financial benefit they are unwittingly providing to Defendants.

## GENERAL ALLEGATIONS AND FACTUAL BACKGROUND

29. The allegations set forth above are incorporated herein by reference.

30. Defendants, as first purchasers, distribute O&G Proceeds from numerous oil and/or gas wells throughout Oklahoma. Defendants owed payments of O&G Proceeds to Plaintiff and Class members as a result of the mineral production from such wells.

31. "For decades, oil and gas producers or first purchasers would for various reasons delay or decline to distribute the proceeds from the first sale to interest owners and use those funds for their own purposes until they were ultimately distributed, if at all." 2015 OK AG 6 at ¶2 (Sept. 1, 2015) (*citing* Si M. Bondurant, *To Have and to Hold: The Use and Abuse of Oil and Gas Suspense Accounts*, 31 Okla. City U. L. Rev. 1, 4 (2006)). Holders of the production proceeds, however, frequently and intentionally avoided making any reasonable efforts to locate interest owners or notify them of their interest. *See id.* Instead, they would "suspend" their revenue payments until demanded and, in the meanwhile, gain the benefit of the possession of those funds. *See id.* Moreover, even when they eventually made the revenue payments, the holders often would not pay interest. *See id.* "[T]here was a great incentive to delay royalty payments" and "many producers routinely suspended royalties and delayed payment for many months and even years to take advantage of the interest earned during the float between the receipt of sales proceeds and disbursement of royalties." *See id.* (*citing* Bondurant at 18). This not only deprived interest owners of the time-value of the money owed to them, it also gave rise to "an ever increasing case load of litigation between royalty owners and purchasers . . . precipitated by the use of suspense accounts." *Id.* (*citing Hull v. Sun Refining & Mktg. Co.*, 1989 OK 168, ¶ 9, 789 P.2d 1272, 1277).

7

**App.85**

32.     As a result of this conduct, many states, including Oklahoma, enacted statutes to curtail this abuse.  In Oklahoma, the Act requires Defendants to make payments within certain time periods.  Further, the Act requires Defendants to pay interest on any Untimely Payments, regardless of the reasons why such payments were delayed.  The Act gives Owners an absolute right to interest on Untimely Payments.  The plain language of this statute imposes an obligation to include interest on Untimely Payments.  Compliance with this statute is not optional and does not require a prior written or oral demand by Owners.

33.     Plaintiff and Class members were entitled to payment of O&G Proceeds from Defendants and, pursuant to the Act, were further entitled to interest on any Untimely Payments from Defendants.

34.     Plaintiff and Class members placed their trust and confidence in Defendants to pay them the O&G Proceeds to which they were entitled, including any interest owed thereon.  Defendants had superior access to information regarding O&G Proceeds and the amounts Defendants owed to Plaintiff and the Class, including interest, on Untimely Payments.

35.     When Defendants made Untimely Payments to Plaintiff and Class Members, Defendants failed to pay the interest owed pursuant to the Act.  Indeed, on information and belief, Defendants' failure to pay the statutorily required interest on Untimely Payments continues to this day as part of an ongoing scheme to avoid paying money clearly owed under Oklahoma law.

36.     Defendants are not permitted to take advantage of their relationships with Plaintiff and Class members to realize unauthorized benefits or profits at the expense of Plaintiff and the Class.  Defendants have used their position as the holder of Plaintiff's and the Class' O&G Proceeds to avoid Defendants' statutory obligation to pay the statutory interest due to Plaintiff and

the Class in the event of Untimely Payments. As such, Defendants have improperly treated Plaintiff's and the Class' O&G Proceeds as an interest-free loan without their consent.

37.    Upon information and belief, Defendants ignored their obligation under the Act to regard the O&G Proceeds Defendants owed to Plaintiff and the Class as separate and distinct from Defendants' other cash assets. Rather, these proceeds were comingled with Defendants' other cash assets. As such, Defendants improperly, unfairly, and in violation of the law profited from its deliberate refusal to pay statutory interest to Plaintiff and the Class.

38.    In short, Defendants blatantly ignored Oklahoma law regarding the payment of interest on Untimely Payments. Further, Defendants did not hold the O&G Proceeds for the benefit of the owners legally entitled thereto (*i.e.* Plaintiff and the Class) and, instead, held the O&G Proceeds for Defendants' own benefit. Defendants have abused their position with Plaintiff and the Class.

39.    Plaintiff and the Class have been damaged by Defendants' unlawful acts and omissions.

40.    Defendants' wrongdoing—which is in clear violation of Oklahoma law—is ongoing and continues to this day.

## CAUSES OF ACTION

### I.    BREACH OF STATUTORY OBLIGATION TO PAY INTEREST

41.    The allegations set forth above are incorporated herein by reference.

42.    Plaintiff brings this cause of action on behalf of himself and the Class.

43.    Plaintiff and the Class were legally entitled to the payment of O&G Proceeds from Defendants, as first purchasers, for production from wells owned and/or operated in Oklahoma.

44. Section 570.10 of the Act requires Defendants to hold O&G Proceeds from the sale of oil and/or gas production for the benefit of the Owners legally entitled thereto.

45. Section 570.10 of the Act requires payment of O&G Proceeds to be made in a timely manner according to the applicable time periods set forth in the Act.

46. If the holder of any O&G Proceeds subject to the Act fails, for any reason, to make timely payments to persons entitled to receive such O&G Proceeds, the holder must pay interest on such O&G Proceeds when the payment is eventually made.

47. Defendants held O&G Proceeds belonging to Plaintiff and the Class, and Defendants failed to timely pay O&G Proceeds owing to Plaintiff and the Class.

48. In violation of the Act, when Defendants ultimately made their Untimely Payments to Plaintiff and the Class, Defendants did not pay the interest owing on the Untimely Payments.

49. Defendants' failure to pay interest owing on its Untimely Payments of O&G Proceeds was knowing and intentional and/or the result of Defendants' gross negligence.

50. Defendants' failure to pay interest owing on their Untimely Payments of O&G Proceeds has caused Plaintiff and the Class to suffer harm.

**II.    FRAUD**

51. The allegations set forth above are incorporated herein by reference.

52. Plaintiff brings this cause of action on behalf of himself and the Class.

53. Defendants, as first purchasers, were responsible for distributing O&G Proceeds from numerous oil and/or gas wells throughout Oklahoma. Thus, Defendants knowingly and intentionally took on the duties associated with such interests, including the duty to pay O&G Proceeds to Owners in accordance with Oklahoma law.

54.     Defendants, however, took on such duties with the intent to deceive Owners and not pay the full O&G Proceeds owed.  Specifically, Defendants knew they owed interest on Untimely Payments, but knowingly and intentionally suppressed the fact that interest was owed to Plaintiff and the Class members.  Further, Defendants intended to avoid their obligation to pay the statutorily mandated interest and only pay when an Owner specifically requests payment of the statutory interest.

55.     Plaintiff and the Class relied on and trusted Defendants to pay them the full O&G Proceeds to which they were entitled under Oklahoma law.

56.     Plaintiff and the Class have been damaged by Defendants' actions and violations of law.

57.     Defendants' failure to pay the interest it owes to Plaintiff and the Class is a result of Defendants' actual knowing and willful intent:  (a) to deceive the members of the Class, and/or (b) to deprive such interest from persons the Defendants know, or are aware, are legally entitled thereto.  Thus, Defendants should be required to pay punitive damages as a method of punishing Defendants and setting an example for others.

## III.    ACCOUNTING AND DISGORGEMENT

58.     The allegations set forth above are incorporated herein by reference.

59.     Plaintiff requests an accounting on behalf of himself and the Class.

60.     Plaintiff requests the Court enter an order directing Defendants to provide an accounting to Plaintiff and Class members which discloses:  (a) the amount of accrued interest that Plaintiff and each Class member should have been paid by Defendants, and (b)  the method for calculating such amounts.

11
**App.89**

61.     Defendants' payment of interest owed to Plaintiff and the Class does not provide an adequate legal remedy for the wrongs committed by Defendants because it will not deprive Defendants of the ill-gotten gains Defendants have obtained through their unlawful behavior.

62.     The principles of equity and good conscience do not permit Defendants to retain the benefits derived from Defendants' improper and unlawful use of interest owed on Untimely Payments made to Plaintiff and the Class.

63.     Therefore, Plaintiff requests the Court enter an order directing Defendants to disgorge themselves of any benefits derived from Defendants' improper and unlawful use of Plaintiff's and the Class' interest payments, including interest that has accrued on such interest since the time in which Defendants made the Disputed Payments to Plaintiff and the Class.

## IV.    INJUNCTIVE RELIEF

64.     The allegations set forth above are incorporated herein by reference.

65.     Plaintiff seeks injunctive relief on behalf of himself and the Class.

66.     Unless enjoined by this Court, Defendants will continue their pattern and practice of failing to pay interest owed on Untimely Payments to Plaintiff and the Class members.

67.     Defendants have utilized their superior knowledge and control of information regarding Plaintiff's and the Class' entitlement to interest on Untimely Payments to engage in a fraudulent scheme with regard to Defendants' willful and intentional failure to pay such interest. As such, Defendants' wrongdoing is ongoing, and injuries in the future by Plaintiff and the Class are irreparable in that the vast majority of Class members are unaware of their right to be paid interest.

68.     There is no adequate and complete remedy at law for continuing violations of the Act by Defendants.

69.     Plaintiff requests the Court enter a permanent injunction, ordering Defendants to pay interest as required by law when Defendants make future Untimely Payments to Plaintiff, the Class, and Owners.

70.     Defendants will not suffer any harm as a result of granting the Class members' request for injunctive relief because Defendants' compliance with the Court's order will be consistent with Defendants' legal obligations and duties to Plaintiff and the Class.

## PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiff seeks:

1.     An order certifying and allowing this case to proceed as a class action with Plaintiff as class representative and the undersigned counsel as class counsel;

2.     An order requiring Defendants to pay Plaintiff and Class members actual damages to fully compensate them for losses sustained as a direct, proximate, and/or producing cause of Defendants' breaches and/or unlawful conduct including, without limitation, the compounded interest on Untimely Payments as required by law;

3.     An order requiring Defendants to provide Plaintiff and the Class with an accounting;

4.     An order requiring Defendants to disgorge themselves of the ill-gotten gains Defendants have obtained through the unlawful use of interest owed to Plaintiff and the Class;

5.     An order requiring Defendants to pay interest in the future, as required by law, to Plaintiff and the Class;

6.    An order awarding punitive damages as determined by the jury and in accordance with Oklahoma law on each of Defendants' wrongful acts, as alleged in this Petition;

7.    An order requiring Defendants to pay the Class attorneys' fees and litigation costs as provided by statute; and

8.    Such costs and other relief as this Court deems appropriate.

Dated: July 12, 2017.

Michael Burrage, OBA No. 1350
WHITTEN BURRAGE
512 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com


Bradley E. Beckworth, OBA No. 19982
Jeffrey J. Angelovich, OBA No. 19981
Lisa P. Baldwin, OBA No. 32947
Trey Duck
Cody L. Hill
NIX, PATTERSON & ROACH, LLP
3600 N Capital of Texas Hwy
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5332
bbeckworth@nixlaw.com
jangelovich@npraustin.com
lbaldwin@nixlaw.com
tduck@nixlaw.com
codyhill@nixlaw.com

14

**App.92**

Susan R. Whatley, OBA No. 30960
Andrew G. Pate
NIX, PATTERSON & ROACH, LLP
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415
swhatley@nixlaw.com
dpate@nixlaw.com

Patrick M. Ryan, OBA No. 7864
Phillip G. Whaley, OBA No. 13371
Jason A. Ryan, OBA No. 18824
Paula M. Jantzen, OBA No. 20464
RYAN WHALEY COLDIRON
JANTZEN PETERS & WEBBER PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK  73102
Telephone:  (405) 239-6040
Facsimile:  (405) 239-6766
pryan@ryanwhaley.com
pwhaley@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Lawrence R. Murphy, Jr., OBA No. 17681
Mariann M. Robison, OBA No. 30475
RICHARDS & CONNOR
ParkCentre Building
525 South Main Street
Twelfth Floor
Tulsa, OK 74103-4509
Telephone: (918) 585-2394
Facsimile: (918) 585-1449
lmurphy@richardsconnor.com
mrobison@richardsconnor.com

**ATTORNEYS FOR PLAINTIFF**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PERRY CLINE, on behalf of himself, and all others similarly situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>SUNOCO, INC. (R&M); and<br>SUNOCO PARTNERS<br>MARKETING & TERMINALS, L.P.,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Case No: 6:17-cv-00313-SPS |

**SUNOCO DEFENDANTS' ANSWER TO ORIGINAL PETITION**

Defendants, Sunoco, Inc. (R&M), now Sunoco (R&M), LLC ("Sunoco") and Sunoco Partners Marketing & Terminals, L.P. ("SPMT") (collectively "Defendants"), for their Answer to Plaintiff's Original Petition ("Petition"), deny each and every allegation contained therein except any allegation which may be hereinafter admitted and, for further answer, utilizing the same paragraph numbering as utilized in the Petition, alleges and states as follows:

**ANSWER TO ALLEGATIONS REGARDING "SUMMARY OF THE ACTION"**

1.　　The allegations in paragraph 1 of the Petition are denied.

2.　　Admitted only on information and belief that Plaintiff owns an interest in the Boss Hogg 1-14H well in Oklahoma, and that SPMT has purchased oil production from the Boss Hogg 1-14H Well, and makes payments to Plaintiff.  Otherwise, Defendants lack knowledge or information sufficient to admit or deny the allegations in paragraph 2 of the Petition and, therefore, the remaining allegations in paragraph 2 are denied.

3.　　Defendants are without knowledge or information sufficient to admit or deny the allegations in paragraph 3 of the Petition and, therefore, the allegations are denied.

4.　　The allegations in paragraph 4 of the Petition are denied.

28611553.4

5.      The allegations in paragraph 5 of the Petition contain a purported conclusion of law, rather than an allegation of fact and, therefore, no answer is required. To the extent further answer is required, Defendants deny that the allegations completely and accurately characterize "Oklahoma law" including all pertinent terms of the Production Revenue Standards Act ("PRSA") and, therefore, Defendants deny the allegations in paragraph 5.

6.      The allegations in paragraph 6 of the Petition contain a purported conclusion of law, rather than an allegation of fact and, therefore, no answer is required. To the extent further answer is required, Defendants deny that the allegations completely and accurately characterize all pertinent terms of the Production Revenue Standards Act ("PRSA") and, therefore, Defendants deny the allegations in paragraph 6.

7.      The allegations in paragraph 7 of the Petition are denied.

8.      Admitted only that Plaintiff purports to bring claims against Defendants individually and on behalf of a putative class of interest owners who he alleges received untimely payments which did not include interest.  Otherwise, the allegations in paragraph 8 of the Petition are denied.

9.      Admitted only that Plaintiff purports to bring numerous claims against Defendants individually and on behalf of a putative class.  Otherwise, the allegations in paragraph 9 of the Petition are denied.

10.     Admitted on information and belief.

11.     Admitted on information and belief that Plaintiff has an interest in one or more wells in Oklahoma and is paid proceeds for the sale of oil therefrom.  Otherwise, the allegations in paragraph 11 of the Petition are denied.

12.     The allegation in paragraph 12 of the Petition regarding a "group" of affiliated, foreign entities is misleading and unclear.  To the extent further answer is required, Defendants deny the remaining allegations in paragraph 12 of the Petition.

13.     As to the allegations in the first sentence of paragraph 13 of the Petition, Defendants deny that Sunoco is the "parent corporation" of SPMT.  As to the remaining allegations in the first sentence of paragraph 13 of the Petition, the term "affiliated Sunoco entities" is undefined, unclear and vague.  Sunoco is organized under the laws of Pennsylvania, with its principal place of business in Pennsylvania.  Admitted that Sunoco was served through its registered agent for service of process in Oklahoma City, Oklahoma.  To the extent further answer is required, the remaining allegations in paragraph 13 of the Petition are denied.

14.     Admitted that SPMT is organized under the laws of the State of Texas; SPMT has its principal place of business in in Newtown Square, Pennsylvania.  Admitted that SPMT was served through its registered agent for service of process in Oklahoma City, Oklahoma.

15.     As to the allegations in paragraph 15 of the Petition, the phrase "at all times relevant to the claims asserted" is undefined, unclear and vague.  Defendant admits that SPMT is a purchaser of oil in the State of Oklahoma.  Defendants further admit that SPMT pays Plaintiff certain proceeds from the sale of oil.  Defendants are without knowledge or information sufficient to admit or deny the allegations in paragraph 15 of the Petition regarding the alleged putative class.  Defendants deny the remaining allegations in paragraph 15 of the Petition.

**ANSWER TO ALLEGATIONS REGARDING "JURISDICTION AND VENUE"**

16.     Admitted that this federal court has jurisdiction to hear these matters. To the extent further answer is required, the allegations in paragraph 16 of the Petition are denied.

17.     Admitted that this federal court has jurisdiction over Defendants.  To the extent further answer is required, the allegations in paragraph 17 of the Petition are denied.

18.     Defendants are without knowledge or information sufficient to admit or deny the allegations in paragraph 18 of the Petition and, therefore, the allegations are denied.

19.     In response to the allegations in paragraph 19 of the Petition, Defendants assert, as set forth more fully in the Notice of Removal Defendants have filed in this action, that the amount in controversy in this action exceeds the requirements for application of the Class Action Fairness Act of 2005 (CAFA), and Defendants deny any allegations in paragraph 19 that deny or suggest that the amount in controversy required under CAFA is not satisfied in this action.

### ANSWER TO "CLASS ACTION ALLEGATIONS"

20.     Defendants incorporate and reasserts their answers to paragraphs 1-19.

21.     Defendants admit only that Plaintiff purports to bring this action individually and on behalf of the class described in paragraph 21 of the Petition. Defendants deny that this action is properly brought as a class action, denies that the class pled is a proper class, denies that a class should be certified under the Federal Rules of Civil Procedure, and denies that Plaintiff would be a proper representative of a purported class.

22.     The allegations in paragraph 22 of the Petition are denied.

23.     The allegation in paragraph 23 of the Petition, including subparagraphs a-e, are denied.

24.     The allegation in paragraph 24 of the Petition are denied.

25.     The allegations in paragraph 25 of the Petition are denied.

26.     The allegations in paragraph 26 of the Petition are denied.

27.     The allegations in paragraph 27 of the Petition are denied.

28.     The allegations in paragraph 28 of the Petition, including subparagraphs a-e, are denied.

### ANSWER TO "GENERAL ALLEGATIONS AND FACTUAL BACKGROUND"

29.     Defendants incorporate and reassert their answers to paragraphs 1-28.

30.     Admitted that STMP distributes oil proceeds from wells in Oklahoma, including to Plaintiff.  Otherwise, the allegations in paragraph 30 of the Petition are denied.

31.     The allegations in paragraph 31 of the Petition contain purported conclusions of law, rather than allegations of fact and, therefore, no answer is required. Further, the allegations in paragraph 31 of the Petition are not specific factual allegations pertaining to Defendants, but are broad generalizations and, therefore, no answer is required.  To the extent further answer is required, Defendants deny that the allegations completely and accurately characterize all the alleged authorities cited and, therefore, Defendants deny the allegations in paragraph 31.

32.     The allegations in paragraph 32 of the Petition are not specific factual allegations pertaining to Defendants, but are broad generalizations and, therefore, no answer is required. Moreover, the allegations in paragraph 32 of the Petition contain a purported conclusion of law, rather than an allegation of fact and, therefore, no answer is required. To the extent further answer is required, Defendants deny that the allegations completely and accurately characterize all pertinent terms of the Production Revenue Standards Act ("PRSA") or statutes in other states and, therefore, Defendants deny the allegations in paragraph 32.

33.     The allegations in paragraph 33 of the Petition are denied.

34.     The allegations in paragraph 34 of the Petition are denied.

35.     The allegations in paragraph 35 of the Petition are denied.

36.     The allegations in paragraph 36 of the Petition are denied.

37.     The allegations in paragraph 37 of the Petition are denied.

38.     The allegations in paragraph 38 of the Petition are denied.

39.     The allegations in paragraph 39 of the Petition are denied.

40.     The allegations in paragraph 40 of the Petition are denied.

### ANSWER TO ALLEGATIONS REGARDING "BREACH OF STATUTORY OBLIGATION TO PAY INTEREST"

41.     Defendants incorporate and reassert their answers to paragraphs 1-40.

42.     Admitted only that Plaintiff purports to bring this cause of action on behalf of himself and a putative class.  Otherwise, the allegations in of paragraph 42 of the Petition are denied.

43.     The allegations in paragraph 43 of the Petition are denied.

44.     The allegations in paragraph 44 of the Petition contain a purported conclusion of law, rather than an allegation of fact and, therefore, no answer is required. To the extent further answer is required, Defendants deny that the allegations completely and accurately characterize all pertinent terms of the Production Revenue Standards Act ("PRSA") and, therefore, Defendants deny the allegations in paragraph 44.

45.     The allegations in paragraph 45 of the Petition contain a purported conclusion of law, rather than an allegation of fact and, therefore, no answer is required. To the extent further answer is required, Defendants deny that the allegations completely and accurately characterize all pertinent terms of the Production Revenue Standards Act ("PRSA") and, therefore, Defendants deny the allegations in paragraph 45.

46.     The allegations in paragraph 46 of the Petition contain a purported conclusion of law, rather than an allegation of fact and, therefore, no answer is required. To the extent further answer is required, Defendants deny that the allegations completely and accurately characterize

28611553.4

6

**App.99**

all pertinent terms of the Production Revenue Standards Act ("PRSA") and, therefore, Defendants deny the allegations in paragraph 46.

47.     The allegations in paragraph 47 of the Petition are denied.

48.     The allegations in paragraph 48 of the Petition are denied.

49.     The allegations in paragraph 49 of the Petition are denied.

50.     The allegations in paragraph 50 of the Petition are denied.

**ANSWER TO ALLEGATIONS REGARDING "FRAUD" CAUSE OF ACTION**

51.     Defendants incorporate and reassert their answers to paragraphs 1-50.

52.     Admitted only that Plaintiff purports to bring this cause of action on behalf of himself and a putative class.  Otherwise, the allegations in of paragraph 52 of the Petition are denied.

53.     The allegations in paragraph 53 of the Petition contains purported conclusions of law regarding Defendants' duties, rather than allegations of fact and, therefore, no answer is required. To the extent necessary, Defendants deny that the allegations completely and accurately characterize all pertinent terms of the Production Revenue Standards Act ("PRSA") and, therefore, Defendants deny the allegations in paragraph 53.

54.     The allegations in paragraph 54 of the Petition are denied.

55.     The allegations in paragraph 55 of the Petition are denied.

56.     The allegations in paragraph 56 of the Petition are denied.

57.     The allegations in paragraph 57 of the Petition are denied.

**ANSWER TO "ACCOUNTING AND DISGORGEMENT" CAUSE OF ACTION**

58.     Defendants incorporate and reassert their answers to paragraphs 1-57.

59.     Admitted only that Plaintiff purports to bring this cause of action on behalf of himself and a putative class.  Otherwise, the allegations in of paragraph 59 of the Petition are denied.

60.     The allegations in paragraph 60 of the Petition are denied.

61.     The allegations in paragraph 61 of the Petition are denied.

62.     The allegations in paragraph 62 of the Petition are denied.

63.     The allegations in paragraph 63 of the Petition are denied.

**ANSWER TO ALLEGATIONS REGARDING "INJUNCTIVE RELIEF"**

64.     Defendants incorporate and reassert their answers to paragraphs 1-63.

65.     Admitted only that Plaintiff purports to bring this cause of action on behalf of himself and a putative class.  Otherwise, the allegations in of paragraph 65 of the Petition are denied.

66.     The allegations in paragraph 66 of the Petition are denied.

67.     The allegations in paragraph 67 of the Petition are denied.

68.     The allegations in paragraph 68 of the Petition are denied.

69.     The allegations in paragraph 69 of the Petition are denied.

70.     The allegations in paragraph 70 of the Petition are denied.

71.     The allegations in the Prayer for Relief following paragraph 70 are denied.

72.     Defendants deny all allegations in the Petition that are not specifically admitted herein.

**AFFIRMATIVE AND ADDITIONAL DEFENSES**

For further answer, Defendants assert the following defenses:

73.     Plaintiff has failed, in whole or in part, to state a claim upon which relief can be granted.

74.     The claims of the Plaintiff are barred in part by Oklahoma's Energy Litigation Reform Act.

75.     The claims in this case may be barred by prior settlement(s) and release(s).

76.     Plaintiff's claims are barred in whole or in part by the applicable statute of limitations or contractual limitations periods.

77.     Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel and/or waiver and/or ratification and/or acquiescence, and/or course of performance.

78.     Because of the unreasonable and unexplained passage of time and the staleness of the claims before the suit was filed, prejudicing Defendants, Plaintiff's claims are barred by laches.

79.     Plaintiff's claims for equitable relief are barred because Plaintiff has an adequate remedy at law.

80.     The claims in this case are barred, in whole or in part, by the doctrines of settlement, release and/or accord and satisfaction.

81.     The claims in this case are barred, in whole or in part, by the doctrine of payment and by the legal consequences that follow from an owner accepting payment of the principal sum owed without interest having been included in the payment.

82.     The claims in this case are barred, in whole or in part, by the express terms of the written oil and gas leases, division orders, agreements, transfer orders, unit agreements, regulatory or agency orders (e.g., compulsory pooling orders of the Oklahoma Corporation

Commission) and/or communitization agreements applicable to the properties at issue in this lawsuit.

83.     The claims in this case are barred, in whole or in part, by the doctrine of performance.

84.     Defendants have paid all sums due.

85.     The claims in this case are barred, in whole or in part, by the doctrines of course of dealing, trade usage and/or custom and/or usage in the industry.

86.     The claims in this case are barred in whole or in part by the omission of claimants to meet the pre-conditions and/or other required elements, conduct or other circumstances required in order for them to assert the claims alleged in this suit.

87.     To the extent any claims are asserted under compulsory pooling orders of the Oklahoma Corporation Commission rather than under oil and gas leases, such claims are barred by virtue of the different nature and scope of the rights derived under Corporation Commission pooling orders.

88.     At all times, Defendants have acted in good faith and in accordance with the applicable law in effect at the time.

89.     Requiring Defendants to account under the theories of payment liability alleged by Plaintiff would be inequitable, would constitute an unconstitutional and illegal taking of Defendants' property, and would constitute an excessive and unconstitutional penalty against Defendants.

90.     To the extent Plaintiff seeks to recover interest under 52 O.S. § 570.10 (formerly codified as 52 O.S. § 540) based on any alleged breach of a lease entered into prior to the effective date of the statute, application of the statute to such pre-existing leases would impair

28611553.4

**App.103**

Defendants' then-existing contractual rights in violation of the United States Constitution and the Oklahoma Constitution.

91.     Insofar as Plaintiff seeks to recover interest under 52 O.S. § 570.10 (formerly codified as 52 O.S. § 540), that statute violates Article 5, Sections 46 and 59 of the Oklahoma Constitution. Such statute also impermissibly deprives Defendants' of equal protection and due process of the laws in violation of both the Oklahoma and United States Constitutions.

92.     The claims asserted in this case are subject to reduction to the extent of the claimant's failure to mitigate any alleged damages.

93.     Plaintiff's claims are barred to the extent of his failure and/or the failure of proposed class members to have and/or show marketable title.

94.     Plaintiff's claims are barred to the extent of his failure and/or the failure of proposed class members to provide Defendants with notice of assignments of interests as required in order for them to begin to receive payments.

95.     Plaintiff's claims are barred to the extent of their refusal to accept royalty and/or overriding royalty payments that were tendered.

96.     Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands and impossibility of performance.

97.     The claims in this case are barred (to the extent of):

    a     due to questions and/or doubts as to the quality of ownership and title possessed by proposed class members and/or due to their failure to establish the quality of title required in the applicable jurisdiction;

    b     due to the inability to locate with reasonable efforts proposed class members;

c        due to express provisions in the statutes relied upon by Plaintiff that exclude from the rights and provisions of those statutes the factual circumstances applicable to proposed class members; and/or

d        due to the express provisions in the statutes relied upon by Plaintiff that recognize the conduct of Defendants as being permissible and proper under such statutes.

98.     Defendants are not liable for non-payments or delayed payments that are the responsibility of third parties.

99.     The Complaint fails to meet the pleading requirements of Federal Rule 9(b) for a fraud claim.  The Complaint fails to plead fraud with sufficient particularity.

100.     The Plaintiff's claims are barred in whole or in part by the doctrines of *res judicata*, collateral estoppel and/or claim splitting.

101.     Defendants conducted their activities at all times in accordance with the oil and gas leases and other applicable agreements, applicable laws, industry standards, practices, customs and usage.

102.     Plaintiff's proposed class fails to meet the requirements of Federal Rule 23.

103.     Plaintiff is not entitled to the remedy of disgorgement.

104.     Plaintiff cannot satisfy the requirements for injunctive relief.

105.     Plaintiff is not entitled to an accounting and has not alleged the prerequisites that are needed to be entitled to the remedy of an accounting.

106.     Plaintiff has proposed a non-certifiable and  improper fail-safe class definition. The members of the class are not reasonable ascertainable.

107.     Plaintiff is asserting claims under an Oklahoma Statute with the result that Plaintiff is not entitled to exemplary or punitive damages.

108.   The imposition of exemplary or punitive damages in this case would violate Defendants' due process rights secured by the United States Constitution, the Oklahoma Constitution and the constitutions of other States whose interests are implicated by Plaintiff's allegations.

109.   The punitive damages sought by Plaintiff are limited by constitutional due process, which requires that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that can be imposed.

110.   Defendants affirmatively plead that any award of punitive or exemplary damages violates the Due Process Clause of the Fifth Amendment and Fourteenth Amendment to the United States Constitution, in addition to the due process clause of the Oklahoma Constitution, because:

a       Defendants are without effective and adequate procedural protections against arbitrary or erroneous awards of such damages;

b       Defendants are being denied the requirement of adequate notice of the type of conduct or elements of the offense that could warrant such an award or the amount of such damages that could be awarded;

c       such an award does not bear a close relationship to appropriate civil fines or penalties established by the legislature, or by administrative agencies under authority delegated by the legislature;

d       such an award would impermissibly discriminate against corporate defendants, including Defendants, that are organized under the laws of other states and that maintain their principal places of business in other states;

e        evidence of Defendants' net worth would invite the jury to award an arbitrary amount of punitive damages based on Defendants' status as an industrial enterprise; and

f        Defendants' conduct that is alleged to warrant punitive or exemplary damages is unrelated to Plaintiff's harm and, therefore, such damages are unlawfully intended to punish and deter Defendants.

111.    Defendants affirmatively plead that Plaintiff's claim for punitive damages is barred by the Due Process Clause and the Commerce Clause of the United States Constitution and by principles of federalism embodied in the United States Constitution, to the extent that any claim is based on conduct by Defendants that occurred outside the State of Oklahoma.

112.    Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Oklahoma, because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to each of the five reprehensibility factors set out in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521 (2003). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

113.    Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Oklahoma, because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the

constitutional factors that govern the permissible ratio of punitive damages to compensatory damages. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 425, 123 S. Ct. 1513, 1524 (2003) (holding that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process"). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001).

114.    Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Oklahoma, because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the comparable civil fine that could be imposed on Defendants for the conduct in question. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408,428 123 S. Ct. 1513, 1531 (2003) (holding that civil fines are more appropriate benchmarks for punitive damages than criminal penalties); *BMW of N Am., Inc. v. Gore,* 517 U.S. 559, 583, 116 S. Ct. 1589, 1603 (1996) (holding that courts "should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue."); (O'Connor, J., concurring in part and dissenting in part) (quoting *Browning-Ferris Industries of Vt., Inc. v. Kelso Disposal, Inc.,* 492 U.S. 257, 301, 109 S. Ct. 2909, 2934 (1989)); *Clark v. Chrysler Corp.,* 436 F. 3d 594, 607 (6th Cir. 2006) (rejecting potential for punitive damages award as a basis for comparison in favor of potential civil penalties under applicable federal statute). Such specific jury instructions and specific findings of fact on the comparable civil penalties are necessary for purposes of Due Process in order to

permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436, 121 S. Ct. 1678, 1685 1686 (2001).

115.    Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Oklahoma, because the law of this State governing punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the direct relationship between Defendants' conduct and the specific injury suffered by Plaintiff.  *Phillip Morris USA v. Williams,* 549 U.S. 346, 355, 127 S. Ct. 1057, 1064 (2007) (holding that "the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, *i.e.*, seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers"); *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 423, 123 S. Ct. 1513, 1523 (2003) (holding that "[D]ue process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under guise of the reprehensibility analysis."). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review of the quantum of any award of punitive damages required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436, 121 S. Ct. 1678, 1685-1686 (2001), to ensure that the award is based solely on the conduct that caused specific injury to the plaintiffs).

116.    Plaintiff's claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV, § 1) and by the Due Process Clause of Oklahoma, because the law of this State governing. punitive damages does not require that the jury be instructed upon, and make specific findings of fact with respect to, the exclusion

of all items of compensatory damage from the quantum of punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 426, 123 S. Ct. 1513, 1525 (2003) (noting that "[t]he compensatory damages for the injury suffered here . . . likely were based on a component that was duplicated in the punitive award"). Such specific jury instructions and specific findings of fact are necessary for purposes of Due Process in order to permit the de novo review required by *Cooper Indus. Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424 (2001), to ensure that items of compensatory damages are not impermissibly 'double-counted' in the quantum of punitive damages.

117.    Defendants reserve the right to plead additional defenses that may become known during the course of discovery and fact development and other work, and as the claims being asserted in this case are clarified.

118.    Defendants reserve the right to amend to plead additional affirmative defenses as discovery is conducted in this matter.


Wherefore, Defendants request that Plaintiff take nothing from this suit, that judgment be entered in favor of Defendants, and that Defendants be awarded their costs, attorney's fees, and such other and further relief to which it may be entitled.

Dated: August 21, 2017                          Respectfully submitted,


                                                s/*Mark D. Christiansen*
                                                Mark D. Christiansen OBA # 1675
                                                **MCAFEE & TAFT**
                                                **A PROFESSIONAL CORPORATION**
                                                10th Floor, Two Leadership Square
                                                211 N. Robinson Ave.
                                                Oklahoma City, OK 73102-7103
                                                Telephone: (405) 552-2235
                                                Fax:  (405) 228-7435
                                                mark.christiansen@mcafeetaft.com

                                                Daniel M. McClure (*pro hac vice pending*)
                                                dan.mcclure@nortonrosefulbright.com
                                                Rebecca J. Cole (*pro hac vice pending*)
                                                rebecca.cole@nortonrosefulbright.com
                                                **NORTON ROSE FULBRIGHT US LLP**
                                                1301 McKinney, Suite 5100
                                                Houston, TX  77010-3095
                                                Telephone (713) 651-5151
                                                Fax (713) 651-5246

                                                **ATTORNEYS FOR DEFENDANTS**

28611553.4

**App.111**

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, 2017, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to the following:

Michael Burrage
WHITTEN BURRAGE
512 N. Broadway, Suite 300
Oklahoma, City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com

Susan R. Whatley
Andrew G. Pate
NIX, PATTERSON & ROACH, L.P.
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415
swhatley@nixlaw.com
dpate@nixlaw.com

Patrick M. Ryan
Philip G. Whaley
Jason A. Ryan
Paula M. Jantzen
RYAN WHALEY COLDIRON JANTZEN
    PETERS & WEBBER PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 239-6049
Facsimile: (405) 239-6766
pryan@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Bradley E. Beckworth
Jeffrey J. Angelovich
Lisa P. Baldwin
Trey Duck
Cody L. Hill
NIX, PATTERSON & ROACH, LLP
3600 North Capitol of Texas Highway
Suite 350B
Austin, Texas 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5332
bbeckworth@nixlaw.com
jangelovich@npraustin.com
lbaldwin@nixlaw.com
tduck@nixlaw.com
codyhill@nixlaw.com

Lawrence R. Murphy, Jr.
Mariann M. Robison
RICHARDS & CONNOR
ParkCentre Building
525 South Main Street
Twelfth Floor
Tulsa, OK 74103-4509
Telephone: (918) 585-2394
Facsimile: (918) 585-1449
lmurphy@richardsconnor.com
mrobison@richardsconnor.com

s/*Mark D. Christiansen*
Mark D. Christiansen

28611553.4

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself, and all    )
others similarly situated,    )
   )
                  Plaintiff,    )
   )
v.    )      Case No: CIV-17-313-JHP
   )
SUNOCO, INC. (R&M); and    )
SUNOCO PARTNERS    )
MARKETING & TERMINALS, L.P.,    )
   )
             Defendants.    )

## SCHEDULING ORDER

On October 12, 2017, this Court conducted a Status and Scheduling Conference with counsel for the litigants present.  As a result of the discussions with counsel, the following schedule is established to govern the parties' actions in this case until a ruling on plaintiff's motion for class certification.

| | | |
|---|---|---|
| 1. | Joinder of additional parties or amendments to pleadings without leave of Court | October 20, 2017 |
| 2. | Fact discovery for class certification to be completed by | July 2, 2018 |
| | Note: This deadline does not require any party to conduct merits discovery by this date, but does not preclude any party from taking merits discovery by this date. A deadline for all merits discovery will be set after a court decision on class certification. | |
| 3. | Plaintiff's expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Plaintiff's expert reports due | August 1, 2018 |
| 4. | Defendants' expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Defendants' expert reports due | October 1, 2018 |
| 5. | Expert depositions to be completed by | November 1, 2018 |
| 6. | Plaintiff's deadline to file class certification motion and briefing | December 3, 2018 |

**App.113**

7.    Defendants' deadline to file response to                    February 1, 2019
      class certification motion

8.    Plaintiff's deadline to file reply brief                    March 1, 2019
      regarding class certification

9.    Defendants reserve the right to seek leave to file a sur-reply brief

10.   Deadline for motions by either party regarding whether a class      March 22, 2019
      certification hearing should be held and, if so, the form of hearing

      Either party may subsequently apply to the Court to establish
      additional deadlines if the parties are unable to resolve further
      deadlines by agreement (e.g., deadlines for witness and exhibit
      exchange, if an evidentiary hearing is held)


      IT IS THE FURTHER THE ORDER OF THE COURT that
      following a decision on plaintiffs' motion for class certification that
      the Court will schedule a status conference for entry of a scheduling
      order to control the remainder of the litigation, including  further
      fact and expert discovery, expert disclosures for trial, dispositive
      motions, pretrial, and trial deadlines.


      **IT IS THE FURTHER ORDER OF THE COURT** no date set by this Order may be
changed except for good cause and upon motion by a party and written Order of this Court prior
to the scheduled date.

      **IT IS SO ORDERED** this 25th day of October, 2017.


                                        James H. Payne
                                        United States District Judge
                                        Eastern District of Oklahoma

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DSTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself   )
and all others similarly situated,   )
  )
          Plaintiff,   )
  )
vs.   )     Case No. 17-cv-00313-JHP
SUNOCO, INC. (R&M); and   )
SUNOCO PARTNERS MARKETING   )
& TERMINALS, L.P.,   )
  )
          Defendants.   )

## PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER

## **TABLE OF CONTENTS**

I.      INTRODUCTION………………………………………………………...2

II.     FACTUAL BACKGROUND………………………………………………4

III.    ARGUMENT AND AUTHORITIES……………………………………14

      A.      Legal Standard for Demonstrating Good Cause…………………………14

      B.      Plaintiff Has Demonstrated Good Cause to Amend the Scheduling Order……...14

      C.      The Current Scheduling Order…………………………………………...16

IV.     CONCLUSION……………………………………………………………17

## **TABLE OF AUTHORITIES**

### **Cases**

*Colo. Visionary Acad. V. Medtronic, Inc*., 194 F.R.D. 684, 687 (D. Colo. 2000)………………14

*Minter v. Prime Equip. Co*., 451 F.3d 1196, 1205, n. 4 (10th Cir. 2006)……………………14, 15

*SIL-FIO v. SFHC, Inc*. 917 F.2d 1507, 1519 (10th Cir. 1990)…………………………………..14

*Summers v. Mo. Pac. R.R. Sys*., 132 F.3d 599, 604 (10th Cir. 1997)……………………………14

*Wolf v. Schadegg*, 2016 U.S. Dist. LEXIS 54844, *9 (D. Colo. April 22, 2016)………………14

### **Rules**

Fed. R. Civ. P. 16(b)(4)………………………………………………………………2

Fed. R. Civ. P. 26……………………………………………………………………4

Fed. R. Civ. P. 30(b)(6)…………………………………………………………7, 8

Fed. R. Civ. P. 34……………………………………………………………………5, 7

LCvR. 7.1…………………………………………………………………………..2, 16

LCvR 26.2……………………………………………………………………………5

**App.116**

Pursuant to Fed. R. Civ. P. 16(b)(4) and LCvR. 7.1, Plaintiff Perry Cline ("Plaintiff") respectfully moves this Court to enter an order extending all remaining deadlines in the current *Scheduling Order* (Doc. No. 33) by 120 days.  In conformance with LCvR 7.1(f), Plaintiff states that his counsel have conferred with counsel for Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, L.P. (collectively, "Defendants") and that he is authorized to represent that Defendants oppose this request to amend the *Scheduling Order*.

## I.    INTRODUCTION

Defendants' litigation strategy in this case is now clear:  withhold and delay production of substantial relevant documents for months—until the eve of the close of fact discovery—then refuse to give Plaintiff a meaningful opportunity to depose witnesses and to take further discovery on the documents produced. Plaintiff has patiently and diligently attempted to work with Defendants despite their delays, but Defendants have now forced Plaintiff to seek a modest extension of the schedule. When Plaintiff approached Defendants about this extension, Defendants outright refused any modification of the schedule, despite delaying until the last 30 days of discovery to produce relevant documents in the case that Defendants appear to have possessed since October of 2017; documents which comprise more than 60% of Defendants' entire production to date.  This sort of gamesmanship should not be allowed.  Plaintiff seeks a modest extension so that he can review and utilize the documents produced to date, and the documents Defendants have yet to produce, but still claim they will.

Under the *Scheduling Order* governing this case, the parties must complete fact discovery for class certification by July 2, 2018.  *See* Doc. No. 33.  After Defendants removed this case from Seminole County on August 14, 2017, Plaintiff timely served his *First Set of Requests for Production of Documents, Requests for Admission, and Interrogatories to Defendants* ("*First Set*

2

**App.117**

*of Discovery Requests*") on September 15, 2017.  Over the course of the past eight months, Plaintiff has diligently pursued adequate responses to this discovery but Defendants have delayed and resisted discovery on virtually every level.  For example, Defendants took more than seven (7) months to make their <u>first</u> partial production of e-mails and other electronically stored information ("ESI") resulting from electronic searches, and Defendants waited until last Friday to produce approximately 2/3 of the documents they have produced to date.

Specifically, Defendants produced 6,785 pages of documents last Friday and this represents 63% of Defendants' entire production of documents in response to Plaintiff's *First Set of Discovery Requests* from last September.  These are not newly-generated documents.  Instead, these are documents that Defendants have had all along and finally agreed to produce in response to Plaintiff's *First Set of Discovery Requests* after Plaintiff has engaged in extensive negotiations and communications with Defendants over the course of the last eight months.  *See* Section II, *infra*, for a chronology of these communications and associated Exhibits to this *Motion*.

Although Plaintiff requested Defendants' agreement to extend the schedule in this matter to allow a reasonable time to complete discovery under these circumstances, Defendants refuse to agree to <u>any</u> extension of <u>any</u> deadline in the Court's *Scheduling Order*.  Instead, Defendants have taken the position that Plaintiff must be forced to accept their "eleventh hour" production of documents, await even more documents expected to be produced in mid- to late-June, scramble to take depositions of Defendants' employees during the last half of June, and forego any opportunity for additional written discovery on these late-produced documents.  As Plaintiff will demonstrate in the materials to follow, and as clearly evidenced by the Exhibits to this *Motion*, Plaintiff has diligently pursued discovery in this matter but, as a result of Defendants' delays, Plaintiff cannot complete discovery before the current July 2, 2018 deadline.  Therefore, Plaintiff respectfully

3

**App.118**

submits that good cause exists for modifying the current *Scheduling Order* and requests the Court

to enter an amended *Scheduling Order* extending all remaining deadlines by 120 days.

## II.      FACTUAL BACKGROUND

### *July 2017*

Plaintiff filed his *Original Petition* in Seminole County on July 7, 2017.  *See* Exh. 2 to Doc.

No. 2.

### *August 2017*

Defendants filed their *Notice of Removal* to this Court on August 14, 2017.  *See* Doc. No.

2.  In their *Notice of Removal*, Defendants assert that in the last five (5) years, they have "remitted

payments for oil and gas proceeds received for production from Oklahoma wells to over 135,000

payees" and that the $5,000,000 jurisdiction amount required for this Court to exercise subject

matter jurisdiction over this case is met because of the "magnitude of payees, the millions of

individual royalty payments made over these years to payees, and the alleged PRSA interest rates

allegedly due on the payments" that form the basis for Plaintiff's claims.  *See* Doc. No. 2 at p. 7.

### *September 2017*

After the Parties engaged in the required Rule 26(f) conference, Plaintiff issued his *First

Set of Discovery Requests* on September 15, 2017.

### *October 2017*

On October 16, 2017, Defendants served their *Objections, Responses, and Answers*

("*Discovery Responses*") to Plaintiff's *First Set of Discovery Requests* ("*Discovery Responses*").

*See* Exhibit 1.  However, Defendants did not produce any documents with their October 16

*Discovery Responses* because Defendants made a general objection to producing documents before

entry of a confidentiality agreement and protective order.  *See id.* at p. 12.

4

**App.119**

In their *Discovery Responses*, Defendants asserted attorney-client and work product privileges to RFP Nos. 1-8, 10, 13-19, 21, 22, 26, and 28.  As of the date of this *Motion*, Defendants have not produced a Privilege Log in accordance with LCvR. 26.2.   Only after Plaintiff made demand on Defendants last week, did Defendants state their intent to produce Privilege Logs by June 8.  Defendants have never supplemented their *Discovery Responses* to state whether any responsive materials are being withheld on the basis of any of their objections.  *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").  Despite Plaintiff's request for Defendants to cure this defect, Defendants' *Discovery Responses* remain non-compliant under the Federal Rules.

In response to each of Plaintiff's 29 *Requests for Production of Documents*, Defendants assert that the requested information seeks information that is "not proportional to the needs of the case."  However, despite Plaintiff's request, Defendants have never quantified their asserted burden of responding to Plaintiff's *Discovery Requests* (*e.g*., number of documents, hours to review, etc.).  *See, e.g*., May 3, 2018 e-mail from Paula Jantzen to Daniel McClure, attached hereto as Exhibit 2.

In their October 16, 2017 *Discovery Responses* and October 27, 2017 *Initial Disclosures*, Defendants identified two Sunoco employees as persons who may have discoverable information upon which Defendants may use to support their claims or defenses: (1) Eric Koelling, and (2) Alice Holland.  *See* Exhibit 1 at pp. 28-29 and Exhibit 3, respectively.  Defendants identified Mr. Koelling and Ms. Holland as persons with "primary responsibility" for one or more of the following areas of inquiry:  suspending or otherwise withholding payments of O&G Proceeds to Owners; determining marketability of title for purposes of making payments of O&G Proceeds to Owners; advising Owners in Oklahoma Wells of their entitlement to interest when Defendants

**App.120**

make Untimely Payments; calculating the interest due to an Owner in an Oklahoma Well upon issuance of an Untimely Payment; ensuring that interest payments are made in accordance with the Act; overseeing compliance with the Act; identifying Owners to whom payments of O&G Proceeds are owed; and escheating or otherwise making payments of O&G Proceeds to the State of Oklahoma.  *See* Exhibit 1 at pp. 28-29.

### *November 2017*

After receiving Defendants' *Discovery Responses* on October 16, 2017, including Defendants' declaration that they would not produce any documents until the Parties agreed on the terms of a protective order, Plaintiff's counsel prepared a draft protective order for review by Defendants.  Plaintiff's counsel then worked with Defendants' counsel to agree on the final terms for such an order.  The Parties filed their proposed protective order on November 7, 2017 and on November 8, 2017, the Court entered the Parties' agreed *Protective Order*.  *See* Doc. No. 35.

On November 21, 2017, Plaintiff's counsel wrote to Defendants' counsel to inquire when Defendants planned to make their initial production of documents, in light of the fact that the Court had entered the Parties' agreed *Protective Order* two weeks earlier.  *See* November 21, 2017 e-mail chain between Drew Pate and Daniel McClure, attached hereto as Exhibit 4.  Plaintiff's counsel also asked to schedule a Rule 37 "meet and confer" so the parties could discuss Defendants' objections and responses to Plaintiff's *Discovery Requests*.  *See id.*  In response, Defendants stated that they thought it would be more appropriate to delay the meet and confer until after Defendants made their initial production of documents.  *See* November 21, 2018 e-mail from Daniel McClure to Drew Pate, attached hereto as Exhibit 4.

On that same day, Plaintiff's counsel responded with an e-mail reiterating Plaintiff's request to schedule a meeting and confer at Defendants' earliest convenience so the Parties could

**App.121**

discuss Defendants' intention to only produce limited documents in response to Requests for Production Nos. 10, 11, 12, 17, and 20 and Defendants' refusal to produce documents in response to other Requests for Production.  *See* November 21, 2018 e-mail from Drew Pate to Daniel McClure, attached hereto as Exhibit 4.

Defendants made their first production of documents on November 28, 2017.  This production consisted of 433 pages of materials.

### *December 2017*

The Parties conducted another meet and confer teleconference on December 4, 2017 to address outstanding discovery issues, and Defendants produced certain accounting data and 897 pages of documents with their December 12, 2017 production.

### *January 2018*

On January 17, 2018, Plaintiff's counsel wrote to follow-up on the Parties' prior teleconference on outstanding discovery issues; to address several deficiencies in Defendants' *Discovery Responses*; to inquire as to whether Defendants' intend to amend and/or supplement their answers to certain *Requests for Admission* and responses to *Requests for Production*; and to reiterate Plaintiff's request for Defendants to provide dates when Mr. Koelling and Ms. Holland could be available for deposition.  *See* January 17, 2018 letter from Drew Pate to Daniel McClure, attached hereto as Exhibit 5.  For example, Plaintiff sought resolution of Defendants' refusal to search its electronically stored information ("ESI") (outside of the production of certain accounting data) and Defendants' failure to comply with the requirements of Rule 34(b)(2)(B-C) by failing to state whether Defendants were withholding any documents based upon asserted objections to certain Requests for Production.  *See id*.  Plaintiff also provided a draft Rule 30(b)(6) Notice and requested that, in addition to those two witnesses, Defendants please provide dates during the week

of February 19 for a witness to provide corporate testimony in response to Topic Nos. 9-14 and 23-24 of the Rule 30(b)(6) notice.  *See* Exhibit 5 (at Exhibit A thereto).

Defendants responded to Plaintiff's January 17, 2018 letter on January 26, 2018, identifying several objections to Plaintiff's Rule 30(b)(6) deposition notice.  Defendants also informed Plaintiff of a "programming computer glitch" which caused payments to be omitted from Defendants' December 12, 2017 production of certain accounting data.  *See* January 26, 2018 letter from Daniel McClure to Drew Pate, attached hereto as Exhibit 6.

### *February 2018*

On February 1, 2018, Defendants produced "replacement" accounting data files for the data files previously produced on December 12, 2017.  *See* February 1, 2018 correspondence from Daniel McClure to Andrew Pate, attached hereto as Exhibit 7.

### *March 2018*

Plaintiff took the depositions of Mr. Koelling and Ms. Holland on March 1, 2018 and March 14, 2018, respectively.  On March 26, 2018, Plaintiff's counsel wrote to Defendants to address several unresolved discovery issues, including Plaintiff's Rule 30(b)(6) deposition request and Defendants' failure to conduct reasonable electronic searches for relevant ESI such as e-mails relating to statutory interest.  Based upon the deposition testimony given by Ms. Holland (*i.e.*, the primary employee responsible for statutory interest payments), Plaintiff's letter addressed the myriad ways in which Defendants' search for relevant ESI and other documents failed to satisfy the requirements of the Federal Rules.  *See* March 26, 2018 letter from Jason Ryan to Defendants' counsel, attached hereto as Exhibit 8.  Plaintiff was forced to take a deposition to reveal these deficiencies.

8

**App.123**

On March 13, 2018, Defendants made a supplemental production of 12 pages of documents, providing Defendants' calculation of the thousands of dollars in statutory interest owed to Plaintiff Perry Cline, two of his sisters, and his family trust.   *See* Bates Nos. SUN-CL-00001342 – 00001353, attached hereto as Exhibit 9.

### *April 2018*

On April 4, 2018, Defendants' counsel wrote to Plaintiff to address certain outstanding discovery issues and to declare that Defendants would be willing to "consider" conducting an electronic search of e-mails if Plaintiff identified the "custodians, date range, and search terms" Plaintiff proposes for such an effort.   *See* April 4, 2018 letter from Daniel McClure to Jason Ryan, attached hereto as Exhibit 10.   To be clear, this was a statement from Defendants, more than six months after Plaintiff served his Discovery Requests and following two depositions, whereby Defendants state that they will "consider" running an electronic search of e-mails.   Those searches should have been run, and the documents produced, long ago. The Parties conducted a teleconference on April 10, 2018 to discuss various outstanding discovery issues including, *inter alia*:   the time it would take for Defendants to review the division order files of putative class member payees who have been paid interest in the five (5) years before Plaintiff filed this litigation to locate communications related to payment of interest.   *See* April 13, 2018 e-mail from Daniel McClure to Drew Pate, attached hereto as Exhibit 11.

During the Parties' April 10, 2018 teleconference, they also discussed when Defendants would <u>begin</u> their electronic searches and production of ESI such as e-mails.   On April 12, Plaintiff wrote to Defendants to follow-up on certain issues discussed during their April 10 conference, including Plaintiff's identification of several deficiencies in Defendants' responses to Plaintiff's Requests for Production and Interrogatories.   *See* April 12, 2018 letter from Pat Ryan to Daniel

**App.124**

McClure and Mark Christiansen, attached hereto as Exhibit 12.  By separate communication on April 12, 2018, Plaintiff's counsel also wrote to Defendants' counsel to provide Defendants with the information they demanded prior to conducting any electronic searches for relevant e-mails. *See* April 12, 2018 e-mail from Paula Jantzen to Daniel McClure, attached hereto as Exhibit 13. Based upon the status of discovery at that time, Plaintiff identified a list of custodians likely to possess relevant ESI and provided a list of proposed search terms to conduct a search through the ESI maintained by those document custodians.  *See id*.

On April 25, 2018, Defendants' counsel wrote to Plaintiff's counsel to follow-up on several issues the Parties discussed during their April 10, 2018 teleconference and to further expand on Defendants' multiple objections to specific areas of inquiry identified in Plaintiff's Rule 30(b)(6) Notice to Defendants.  *See* April 25, 2018 letter from Daniel McClure to Drew Pate, attached hereto as Exhibit 14.

On April 26, 2018, counsel for Defendants wrote to Plaintiff's counsel to provide an update on Defendants' search for relevant ESI.  Defendants stated that the e-mail collection for Alice Holland and Eric Koelling resulted in 393,069 globally deduplicated records and 272,102 records after applying thread suppression.  *See* April 26, 2018 e-mail from Daniel McClure to Paula Jantzen, attached hereto in e-mail string as Exhibit 2.  Plaintiff notes that, in an effort to keep the discovery process moving forward, he took the depositions of Ms. Holland and Mr. Koelling in March without the benefit of having these e-mails because Defendants did not produce such e-mails until May 7.  Therefore, it may be necessary for Plaintiff to re-depose Ms. Holland and Mr. Koelling.

**App.125**

### _May 2018_

Plaintiff's counsel responded to Defendants' e-mail regarding initial searches of Ms. Holland's and Mr. Koelling's e-mail using Plaintiff's proposed electronic search terms, and Defendants' assertion that searching the records of any other custodians would cause Defendants to suffer an "undue burden." *See* May 3, 2018 e-mail from Paula Jantzen to Daniel McClure, attached hereto as Exhibit 2. To the extent Defendants asserted that the collection of relevant ESI is "not proportional to the needs of this case," Plaintiff asked Defendants to quantify Defendants' asserted burden in terms of costs, manhours, etc. because any determination of "proportionality" must necessarily be made in the context of Defendants' assertion in its *Notice of Removal* that this case easily satisfies CAFA's $5M jurisdictional amount because, in just the past five (5) years, Defendants have made millions of individual royalty payments on production from Oklahoma Wells to over 135,000 payees. *See id.*

On May 7, 2018, Defendants made a supplemental production consisting of 2,576 pages of documents, including Defendants' first production of 655 pages of e-mails from its electronic search of ESI. On May 9, counsel for the Parties participated in a teleconference to address several outstanding discovery issues and Defendants' counsel wrote to Plaintiff's counsel on May 16, 2018 to follow-up on some of those issues, as well as to respond to a May 15, 2018 e-mail from Plaintiff's counsel asking when Defendants anticipate completing their production of documents. *See* May 16, 2018 e-mail from Daniel McClure to Plaintiff's counsel, attached hereto as Exhibit 15. Defendants stated that they hoped to complete their production of communications related to interest payments in their division order files by May 31 and that they would "aim" for a May 31 or early June production of responsive e-mails. *See id.*

On May 22, 2018, Plaintiff's counsel wrote to Defendants' counsel to confirm Mr. Cline's availability for deposition on June 12 and to provide Defendants with notice of Plaintiff's intention to take the depositions of: (1) Kathy Warren; (2) Brad Stull (or another appropriate employee in Defendants' regulatory affairs division); (3) Demi Lanceslin; (4) Andrea Fuqua; and (5) Patricia Redding.  *See* May 22, 2018 e-mail from Patrick Ryan to Daniel McClure, attached hereto as Exhibit 16.   However, Mr. Ryan explained that Plaintiff cannot take these depositions until Defendants produce all of the documents they have agreed to produce, and until Plaintiff has a meaningful opportunity to review such documents.  *See id*.  Moreover, Mr. Ryan explained that, depending upon the information to eventually be produced by Defendants, and the information learned during these preliminary depositions, it may be necessary to take additional depositions in August or September.  *See id*.

On May 23, 2018, Plaintiff's counsel wrote to Defendants' counsel to again address several issues related to electronic discovery.  *See* May 23, 2018 e-mail from Paula Jantzen to Daniel McClure, attached hereto as Exhibit 17.  For example, Ms. Jantzen sought clarification with regard to Defendants' May 7, 2018 production of documents which Plaintiff understands to be Defendants' <u>first</u> production of ESI in this case (with the exception of certain accounting data files produced by Defendants) in response to Plaintiff's September 15, 2017 *Discovery Requests*.  *See id*.  With regard to that production, Defendants produced 655 pages of e-mails from the files of Ms. Holland and Mr. Koelling.  Based upon the depositions and Plaintiff's review of those 655 pages of e-mails, as well as the other 3,263 pages of documents produced by Defendants at that time, Plaintiff requested that Defendants search the e-mail of Demi Lanceslin, Andreq Fuqua, Sonja Widner, Brad Stull, Sandra Saibara, Cheryl Rankins, and Kathy Warren.  *See id*.  Plaintiff requested that Defendants search the e-mail of these individuals because they appear reasonably

**App.127**

likely to possess relevant information, and because review of Defendants' production of documents demonstrates that these individuals sent and/or received relevant e-mails that would not be captured by searching the e-mails of Ms. Holland or Mr. Koelling.  *See id.*

On May 29, 2018, Plaintiff's counsel wrote to Defendants' counsel to confirm Defendants' availability for a teleconference to discuss the remaining issues related to Defendants' search for relevant ESI and to reiterate the critical need for Defendants to complete their production of e-mails and other ESI that is responsive to Plaintiff's September 15, 2017 *Discovery Requests* so Plaintiff can have a reasonable opportunity to review those materials in advance of conducting any depositions.  *See* May 29, 2018 e-mail from Paula Jantzen to Daniel McClure, attached hereto as Exhibit 17.  The Parties participated in a teleconference on May 30, 2018 to discuss issues related to ESI and, that same afternoon, Plaintiff's counsel wrote to Defendants' counsel to provide a revised list of proposed electronic search terms and to request a slight modification of the list of document custodians Defendants agreed to search for relevant ESI.  *See* May 30, 2018 e-mail from Paula Jantzen to Daniel McClure, attached hereto as Exhibit 17.

### *June 2018*

On Friday, June 1, 2018, Defendants produced 6,785 pages of documents.  Prior to this "eleventh hour" production, Defendants had only produced six accounting files and 3,918 pages of documents since Plaintiff served his *Discovery Requests* last September.  This means that Defendants have waited until the last month of discovery to produce nearly 2/3 of the documents they have produced to date. Moreover, based upon Defendants' representations, Plaintiff understands Defendants are beginning to search for ESI in the records maintained by at least three other document custodians and that Defendants hope to produce documents from that review process sometime in mid-June, leaving Plaintiff with approximately 2 weeks to review those

13

**App.128**

documents and complete the multiple depositions Plaintiff has informed Defendants he intends to take.

### III.    ARGUMENT AND AUTHORITIES

**A.    Legal Standard for Demonstrating Good Cause**

Scheduling orders are modified in response to a movant's demonstration of good cause. Fed. R. Civ. P. 16(b)(4).  A party demonstrates good cause when he shows that he has been diligent in attempting to meet the deadlines and provides an adequate explanation for any delay.  *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205, n. 4 (10th Cir. 2006).  "Good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.  *See Colo. Visionary Acad. V. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000); *accord Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) (holding that "total inflexibility is undesirable" in the context of a motion to adopt a new scheduling order).  "While rigid adherence to a pretrial scheduling order is not advisable," the deadlines set in scheduling orders require that parties conduct discovery efficiently and promptly.  *SIL-FIO v. SFHC, Inc*., 917 F.2d 1507, 1519 (10th Cir. 1990).  A movant demonstrates good cause to modify a scheduling order when the movant provides details of efforts regarding his pursuit of written discovery, difficulty with depositions, and his diligent efforts to meet discovery deadlines.  *See Wolf v. Schadegg*, 2016 U.S. Dist. LEXIS 54844, *9 (D. Colo. April 22, 2016).

**B.    Plaintiff Has Demonstrated Good Cause to Amend the *Scheduling Order***

Plaintiff respectfully submits that there is good cause for modifying the current *Scheduling Order* in this case.  As demonstrated above in the chronology of the Parties' communications and the status of discovery at the time of this filing, Plaintiff has been diligently pursuing discovery from Defendants for more than eight months by means of written discovery, document production,

and depositions.  However, at every step of the way, Plaintiff has been met with Defendants' delayed, piecemeal production and outright refusal to permit discovery on matters that are clearly relevant to the claims Plaintiff is asserting on behalf of himself and the Class.

Moreover, it took Defendants almost eight months to produce 3,918 pages of documents and, yet during the last month of discovery, Defendants produced 6,785 pages of documents – *i.e.*, a production nearly twice the size of Defendants' prior production of documents.  These are not new documents responsive to new requests; these are plainly relevant documents responsive to Plaintiff's **first** *Requests* from September 2017.  Despite the clear need for Plaintiff to have a meaningful opportunity to review these documents – as well as Defendants' anticipated additional documents in June – Defendants refused to agree to any extension of any deadlines in the current *Scheduling Order*.  Instead, Defendants take the unreasonable position that they can delay production of potentially tens of thousands of e-mails and other relevant documents that they have had in their possession since Plaintiff served his *Discovery Requests* last September, and then force Plaintiff to review the vast majority of Defendants' documents, some yet to be produced, and take all of his requested depositions during the last few days of June.  Of course, all this assumes Plaintiff will not need further discovery, including other depositions, after Plaintiff reviews the newly-produced documents, the documents to be turned over at some time in the future, and the depositions of Sunoco personnel, yet to be taken.

The record clearly demonstrates that, despite Plaintiff's diligent attempts to complete discovery during the time period set forth in the current *Scheduling Order*, it is not reasonably possible for Plaintiff to do so.  Therefore, good cause exists to amend the Scheduling Order.  *See Minter*, 451 F.3d at 1205, n. 4 (10th Cir. 2006).

C.       **The Current** *Scheduling Order*

In conformance with LCvR 7.1(i)(2) and (6), Plaintiff states that he has not previously moved this Court for an extension of any deadline in this matter. Although Plaintiff requests the Court enter and Order modifying all remaining deadlines in this matter, granting this relief will not affect any trial date or any scheduled court proceedings. In accordance with LCvR 7.1(i)(1), Plaintiff further states that the following table accurately reflects the remaining deadlines in the Court's *Scheduling Order*, as well as Plaintiff's requested extension of deadlines:

| Activity | Current Deadline | Amended Deadline |
|---|---|---|
| Fact discovery for class certification to be completed.[1] | July 2, 2018 | October 30, 2018 |
| Plaintiff's expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Plaintiff's expert reports. | August 1, 2018 | November 29, 2018 |
| Defendants' expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Defendants' expert reports. | October 1, 2018 | January 29, 2019 |
| Expert depositions to be completed | November 1, 2018 | March 1, 2019 |
| Plaintiff's deadline to file class certification motion and briefing | December 3, 2018 | April 2, 2019 |
| Defendants' deadline to file response to class certification motion. | February 1, 2019 | June 3, 2019 |
| Plaintiff's deadline to file reply brief regarding class certification | March 1, 2019 | July 1, 2019 |
| Defendants reserve the right to seek leave to file a sur-reply brief. | | |

---

[1]       As set forth in the Court's *Scheduling Order*, this deadline does not require any party to conduct merits discovery by this date, but it does not preclude any party from taking merits discovery by this date. A deadline for all merits discovery will be set after a court decision on class certification.

| Activity | Current Deadline | Amended Deadline |
|---|---|---|
| Deadline for motions by either party regarding whether a class certification hearing should be held and, if so, the form of hearing. | | |

## IV.    CONCLUSION

The foregoing discussion and the attached Exhibits demonstrate that, despite Plaintiff's diligent efforts to complete discovery within the timeframe contemplated by the current *Scheduling Order*, Defendants' delayed and ongoing production of documents has prevented Plaintiff from being able to complete discovery before the current July 2, 2018 deadline. Therefore, Plaintiff respectfully submits that good cause exists to modify the existing deadlines set forth in the Court's *Scheduling Order* in the manner set forth in the table above.

Dated: June 4, 2018.

Respectfully Submitted,

 s/   *Patrick M. Ryan*
Patrick M. Ryan, OBA#7864
Phillip G. Whaley, OBA#13371
Jason A. Ryan, OBA # 18824
Paula M. Jantzen, OBA#20464
RYAN WHALEY COLDIRON
JANTZEN PETERS & WEBBER PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK  73102
Telephone:  405-239-6040
Facsimile:  405-239-6766
pryan@ryanwhaley.com
pwhaley@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

**App.132**

Michael Burrage, OBA No. 1350
WHITTEN BURRAGE
1215 Classen Drive
Oklahoma City, OK 73103
Telephone: (405) 516-7800
Facsimile: (405) 516-7800
mburrage@whittenburragelaw.com

Bradley E. Beckworth, OBA No. 19982
Jeffrey J. Angelovich, OBA No. 19981
Andrew G. Pate
Lisa P. Baldwin
Trey Duck
NIX, PATTERSON & ROACH, LLP
3600 N Capital of Texas Hwy
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5332
bbeckworth@nixlaw.com
jangelovich@npraustin.com
dpate@nixlaw.com
lbaldwin@nixlaw.com
tduck@nixlaw.com

Susan R. Whatley, OBA No. 30960
NIX, PATTERSON & ROACH, LLP
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415
swhatley@nixlaw.com

Lawrence R. Murphy, Jr., OBA No. 17681
Mariann M. Atkins, OBA No. 30475
RICHARDS & CONNOR
ParkCentre Building
525 South Main Street
Twelfth Floor
Tulsa, OK 74103-4509
Telephone: (918) 585-2394
Facsimile: (918) 585-1449
lmurphy@richardsconnor.com
matkins@richardsconnor.com

**ATTORNEYS FOR PLAINTIFF**

18

**App.133**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2018, I electronically transmitted the attached document to the clerk of this Court using the ECF system for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mark D. Christiansen – <u>mark.christiansen@mcafeetaft.com</u>
Daniel M. McClure - <u>dan.mcclure@nortonrosefulbright.com</u>
Rebecca J. Cole – <u>Rebecca.cole@nortonrosefulbright.com</u>

*s/Patrick M. Ryan*
Patrick M. Ryan

**App.134**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PERRY CLINE,<br>on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>SUNOCO, INC. (R&M) and<br>SUNOCO PARTNERS MARKETING &<br>TERMINALS, L.P.,<br><br>       Defendants. | Case No. 17-CV-313-JHP |

## <u>AMENDED SCHEDULING ORDER</u>

| | Amended Deadline |
|---|---|
| Fact discovery for class certification to be completed. | October 30, 2018 |
| Plaintiff's expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Plaintiff's expert reports. | November 29, 2018 |
| Defendants' expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Defendants' expert reports. | January 29, 2019 |
| Expert depositions to be completed | March 1, 2019 |
| Plaintiff's deadline to file class certification motion and briefing | April 2, 2019 |
| Defendants' deadline to file response to class certification motion | June 3, 2019 |
| Plaintiff's deadline to file reply brief regarding class certification | July 1, 2019 |
| Defendants reserve the right to seek leave to file a sur-reply brief. | |

| Deadline for motions by either party regarding whether a class certification hearing should be held and, if so, the form of hearing. | |

IT IS SO ORDERED.

Dated this 27th day of June, 2018.

James H. Payne
United States District Judge
Eastern District of Oklahoma

**App.136**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PERRY CLINE, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) | Case No. 17-cv-00313-JHP |
| SUNOCO, INC. (R&M); and SUNOCO PARTNERS MARKETING & TERMINALS, L.P., | ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S UNOPPOSED MOTION TO MODIFY
## AMENDED SCHEDULING ORDER (DOC. NO. 40)

Pursuant to Fed. R. Civ. P. 16(b)(4) and LCvR. 7.1, Plaintiff Perry Cline ("Plaintiff") respectfully moves this Court to enter an order extending all remaining deadlines in the current *Amended Scheduling Order* (Doc. No. 40) by forty-five (45) days, with the exception of the fact discovery deadline currently set for October 30, 2018.  In conformance with LCvR 7.1(f), Plaintiff states that his counsel have conferred with counsel for Sunoco, Inc. (R&M) and Sunoco Partners Marketing & Terminals, L.P. (collectively, "Defendants") and that he is authorized to represent that Defendants do not oppose this request to modify the *Amended Scheduling Order* as set forth in this *Motion*.  In support of his request for relief, Plaintiff states the following:

1.      In conformance with LCvR 7.1(i)(2) and (6), Plaintiff states that he has previously moved this Court for an extension of deadlines in this matter.  *See Motion to Amend Scheduling Order* (Doc. No. 36).  The Court granted Plaintiff's *Motion to Amend Scheduling Order* on June 27, 2018 (Doc. No. 39).

**App.137**

2.      Consistent with the Court's *Order Regarding Motion to Compel* (Doc. No. 76), Defendants made a supplemental production of their payment/accounting data on October 19, 2018.  Defendants estimate that they will be able to complete their final supplemental production of payment/accounting data on November 9, 2018.

3.      Plaintiff's expert will review Defendants' payment/accounting data during the development of her expert opinions in support of class certification.  The current deadline for Plaintiff to disclose his expert reports in support of class certification is November 29, 2018.  *See* Doc. No. 40.

4.      Plaintiff seeks an extension of the current deadline for his disclosures related to class certification, including Plaintiff's expert reports, by forty-five (45) days to allow his expert time to review Defendants' payment/accounting information.

5.      Because the remaining deadlines in the *Amended Scheduling Order* are sequenced in relation to the deadline for Plaintiff's expert disclosures related to class certification, including Plaintiff's expert reports, Plaintiff seeks a corresponding 45-day extension of all remaining deadlines to maintain the integrity of the current schedule.

6.      There is no trial date in this matter and there are no scheduled Court proceedings. Therefore, granting Plaintiff's request for entry of an *Order* modifying all remaining deadlines in this matter will not affect any trial date or any scheduled court proceedings.  In accordance with LCvR 7.1(i)(1), Plaintiff states that the following table accurately reflects the remaining deadlines in the Court's *Amended Scheduling Order*, as well as Plaintiff's requested extension of deadlines:

| Activity | Current Deadline | Amended Deadline |
|---|---|---|
| Plaintiff's expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Plaintiff's expert reports. | November 29, 2018 | January 14, 2019 |
| Defendants' expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Defendants' expert reports. | January 29, 2019 | March 15, 2019 |
| Expert depositions to be completed | March 1, 2019 | April 15, 2019 |
| Plaintiff's deadline to file class certification motion and briefing | April 2, 2019 | May 15, 2019 |
| Defendants' deadline to file response to class certification motion. | June 3, 2019 | July 15, 2019 |
| Plaintiff's deadline to file reply brief regarding class certification | July 1, 2019 | August 15, 2019 |
| Defendants reserve the right to seek leave to file a sur-reply brief. | | |
| Deadline for motions by either party regarding whether a class certification hearing should be held and, if so, the form of hearing. | | September 6, 2019[1] |

7.     Plaintiff respectfully submits that there is good cause for modifying the current *Scheduling Order* in this case because granting this requested relief will provide Plaintiff's expert a meaningful opportunity to review Defendants' payment/accounting data in the development of her expert opinions in support of Plaintiff's class certification efforts.  *See* Fed. R. Civ. P. 16(b)(4) (scheduling orders are modified in response to a movant's demonstration of good cause).

---

[1]     The June 27, 2018 *Amended Scheduling Order* at Doc. No. 40 does not identify a date for motions by either party regarding whether a class certification hearing should be held and, if so, the form of the hearing.  However, the Court's original *Scheduling Order* at Doc. No. 33 did include a date for this deadline which was approximately three (3) weeks after the deadline for Plaintiff to file a reply brief regarding class certification.  The proposed date of September 6, 2019 is consistent with the three-week time period found in the Court's original *Scheduling Order*.

8.      In conformance with LCvR 7.1(i), Plaintiff is providing the Court with a proposed order contemporaneous with the filing of this *Motion*.

9.      Therefore, for the reasons set forth herein, Plaintiff respectfully moves the Court to enter a new scheduling order with the following dates:

| Activity | Amended Deadline |
|---|---|
| Plaintiff's expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Plaintiff's expert reports. | January 14, 2019 |
| Defendants' expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Defendants' expert reports. | March 15, 2019 |
| Expert depositions to be completed | April 15, 2019 |
| Plaintiff's deadline to file class certification motion and briefing | May 15, 2019 |
| Defendants' deadline to file response to class certification motion. | July 15, 2019 |
| Plaintiff's deadline to file reply brief regarding class certification | August 15, 2019 |
| Defendants reserve the right to seek leave to file a sur-reply brief. | |
| Deadline for motions by either party regarding whether a class certification hearing should be held and, if so, the form of hearing. | September 6, 2019 |

Dated: October 31, 2018.

Respectfully Submitted,

*s/Patrick M. Ryan*
Patrick M. Ryan, OBA No. 7864
Phillip G. Whaley, OBA No. 13371
Jason A. Ryan, OBA No. 18824
Paula M. Jantzen, OBA No. 20464
RYAN WHALEY COLDIRON
JANTZEN PETERS & WEBBER PLLC
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK  73102
Telephone:  (405) 239-6040
Facsimile:  (405) 239-6766
pryan@ryanwhaley.com
pwhaley@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Michael Burrage, OBA No. 1350
WHITTEN BURRAGE
512 N. Broadway Avenue, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7800
mburrage@whittenburragelaw.com

Bradley E. Beckworth, OBA No. 19982
Jeffrey J. Angelovich, OBA No. 19981
Andrew G. Pate
Lisa P. Baldwin
NIX PATTERSON, LLP
3600 N Capital of Texas Hwy
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5332
bbeckworth@nixlaw.com
jangelovich@npraustin.com
dpate@nixlaw.com
lbaldwin@nixlaw.com

Susan R. Whatley, OBA No. 30960
NIX PATTERSON, LLP
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415
swhatley@nixlaw.com

Robert N. Barnes, OBA No. 537
Patranell Lewis, OBA No. 12279
BARNES & LEWIS, LLP
208 N.W. 60th Street
Oklahoma City, OK  73118
Telephone:  (405) 843-0363
Facsimile:  (405) 843-0790
rbarnes@barneslewis.com
plewis@barneslewis.com

Lawrence R. Murphy, Jr., OBA No. 17681
LAWRENCE R. MURPHY, JR., P.C.
624 South Boston, Floor 8
Tulsa, OK  74119
Telephone:  (918) 592-3699

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2018, I electronically transmitted the attached document to the clerk of this Court using the ECF system for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mark D. Christiansen – mark.christiansen@mcafeetaft.com
Daniel M. McClure - dan.mcclure@nortonrosefulbright.com
Rebecca J. Cole – rebecca.cole@nortonrosefulbright.com
Kevin Yankowsky - kevin.yankowsky@nortonrosefulbright.com

*s/Patrick M. Ryan*
Patrick M. Ryan

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PERRY CLINE, on behalf of himself and all others similarly situated, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SUNOCO, INC. (R&M); and SUNOCO PARTNERS MARKETING & TERMINALS, L.P., | ) ) ) |
| | ) |
| Defendants. | ) |

Case No. 17-cv-00313-JHP

**SECOND AMENDED SCHEDULING ORDER**

  This matter comes on for consideration before the Court on Plaintiff's Unopposed Motion to Modify Amended Scheduling Order (Doc. 82). The Court, having reviewed Plaintiff's Motion, finds that it should be and hereby is GRANTED.

  The Court hereby enters the following Second Amended Scheduling Order:

| | **Amended Deadline** |
|---|---|
| Plaintiff's expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Plaintiff's expert reports. | January 14, 2019 |
| Defendants' expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Defendants' expert reports. | March 15, 2019 |
| Expert depositions to be completed | April 15, 2019 |
| Plaintiff's deadline to file class certification motion and briefing | May 15, 2019 |
| Defendants' deadline to file response to class certification motion. | July 15, 2019 |
| Plaintiff's deadline to file reply brief regarding class certification | August 15, 2019 |

1

|  | **Amended Deadline** |
|---|---|
| Defendants reserve the right to seek leave to file a sur-reply brief. | |
| Deadline for motions by either party regarding whether a class certification hearing should be held and, if so, the form of hearing. | September 6, 2019 |

IT IS SO ORDERED this 1st day of November, 2018.


James H. Payne
United States District Judge
Eastern District of Oklahoma

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PERRY CLINE, on behalf of** | ) | |
| **himself and all others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-cv-313-JHP** |
| | ) | |
| **SUNOCO, INC. (R&M)** | ) | |
| **and SUNOCO PARTNERS** | ) | |
| **MARKETING & TERMINALS, L.P.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PLAINTIFF'S UNOPPOSED MOTION TO MODIFY
### SECOND AMENDED SCHEDULING ORDER

Pursuant to Fed. R. Civ. P. 16(b)(4) and LCvR. 7.1(i), Plaintiff Perry Cline ("Plaintiff") respectfully moves this Court to modify the Court's Second Amended Scheduling Order [Doc. No. 83]. In conformance with LCvR 7.1(i), Plaintiff states that his counsel has conferred with counsel for Defendants and he is authorized to state that Defendants have no objection to the relief requested herein. In support of his Motion, Plaintiff states as follows:

1.      Plaintiff has previously moved this Court for an extension of deadlines in this matter. *See* Motion to Amend Scheduling Order [Doc. No. 36] and Unopposed Motion to Modify Amended Scheduling Order [Doc. No. 82]. Both motions were granted. *See* Doc. Nos. 39 and 83.

2.      Consistent with the Court's Order Regarding Motion to Compel [Doc. No. 76], on October 19, 2018, Defendants made supplemental production of their payment/accounting data.

3.      Plaintiff experienced difficulties downloading some of the data provided in the supplemental production and notified Defendants of these issues on November 22, 2018.

4.      On January 2, 2019, Plaintiff received a flash drive from Defendants with new versions of the files that had experienced prior issues.

5.      Plaintiff's expert will review Defendants' supplemental production data during the development of her expert opinions in support of class certification.  The current deadline for Plaintiff to disclose his expert reports in support of class certification is January 14, 2019.  *See* Doc. No. 83.

6.      Plaintiff seeks a two-week extension of the current deadlines related to expert disclosures and expert depositions.

7.      There is no trial date in this matter and there are no scheduled Court proceedings. Therefore, granting Plaintiff's Motion will not affect any trial date or other deadlines. Plaintiff states the following table accurately reflects the remaining deadlines in the Court's Second Amended Scheduling Order, as well as Plaintiff's requested extension of deadlines:

| Activity | Current Deadline | Amended Deadline |
|---|---|---|
| Plaintiff's expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Plaintiff's expert reports | January 14, 2019 | January 28, 2019 |
| Defendants' expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Defendants' expert reports | March 15, 2019 | March 29, 2019 |
| Expert depositions to be completed | April 15, 2019 | April 29, 2019 |
| Plaintiff's deadline to file class certification motion and briefing | May 15, 2019 | May 15, 2019 |
| Defendants' deadline to file response to class certification motion | July 15, 2019 | July 15, 2019 |
| Plaintiff's deadline to file reply brief regarding class certification | August 15, 2019 | August 15, 2019 |

| | | |
|---|---|---|
| Defendants reserve the right to seek leave to file a sur-reply brief | | |
| Deadline for motions by either party regarding whether a class certification hearing should be held and, if so, the form of hearing | September 6, 2019 | September 6, 2019[1] |

8.     Good cause for modifying the current Second Amended Scheduling Order because granting this requested relief will provide Plaintiff's expert a meaningful opportunity to review Defendants' supplemental payment/accounting data in the development of her expert opinions in support of Plaintiff's class certification efforts. *See* Fed. R. Civ. P. 16(b)(4) (scheduling orders may be modified upon a showing of good cause).

9.     Therefore, for the reasons set forth herein, Plaintiff respectfully moves the Court to enter an amended scheduling order with the following deadlines:

| Activity | Amended Deadline |
|---|---|
| Plaintiff's expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Plaintiff's expert reports | January 28, 2019 |
| Defendants' expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Defendants' expert reports | March 29, 2019 |
| Expert depositions to be completed | April 29, 2019 |
| Plaintiff's deadline to file class certification motion and briefing | May 15, 2019 |

---

[1] The June 27, 2018 Amended Scheduling Order [Doc. No. 40] does not identify a date for motions by either party regarding whether a class certification hearing should be held and, if so, the form of the hearing.  However, the Court's original Scheduling Order [Doc. No. 33] did include a date for this deadline, which was approximately three (3) weeks after the deadline for Plaintiff to file a reply brief regarding class certification. The proposed date of September 6, 2019 is consistent with the three-week time period found in the Court's original Scheduling Order.

| | |
|---|---|
| Defendants' deadline to file response to class certification motion | July 15, 2019 |
| Plaintiff's deadline to file reply brief regarding class certification | August 15, 2019 |
| Defendants reserve the right to seek leave to file a sur-reply brief | |
| Deadline for motions by either party regarding whether a class certification hearing should be held and, if so, the form of hearing | September 6, 2019 |

DATED:  January 11, 2019.          Respectfully submitted,

_s/ Patrick M. Ryan_
Patrick M. Ryan, OBA No. 7864
Phillip G. Whaley, OBA No. 13371
Jason A. Ryan, OBA No. 18824
Paula M. Jantzen, OBA No. 20464
**RYAN WHALEY COLDIRON
JANTZEN PETERS & WEBBER PLLC**
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK  73102
Telephone: (405) 239-6040
Facsimile: (405) 239-6766
pryan@ryanwhaley.com
pwhaley@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Bradley E. Beckworth, OBA No. 19982
Jeffrey Angelovich, OBA No. 19981
Lisa P. Baldwin, OBA No. 32947
Andrew G. Pate, TX Bar No. 24079111
Trey Duck, OBA No. 33347
**NIX PATTERSON, LLP**
3600 North Capital of Texas Highway
Building B, Suite 350
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
bbeckworth@nixlaw.com

4
**App.148**

jangelovich@nixlaw.com
lbaldwin@nixlaw.com
dpate@nixlaw.com
tduck@nixlaw.com

Susan Whatley
**NIX PATTERSON, LLP**
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415
swhatley@nixlaw.com

Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com

Lawrence A. Murphy, OBA No. 17681
**LAWRENCE R. MURPHY, JR., P.C.**
624 S. Boston, Floor 8
Tulsa, OK 74119
Telephone: (918) 585-2394
Facsimile: (918) 585-1449
larrymurphypc@icloud.com

Robert Barnes, OBA No. 537
Patranell Lewis, OBA No. 12279
**BARNES & LEWIS, LLP**
208 N.W. 60th Street
Oklahoma City, OK 73118
Telephone: (405) 843-0363
Facsimile: (405) 843-0790
rbarnes@barneslewis.com
plewis@barneslewis.com

**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to all registered parties.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*s/ Patrick M. Ryan*
Patrick M. Ryan

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PERRY CLINE, on behalf of | ) | |
| himself and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-313-JHP |
| | ) | |
| SUNOCO, INC. (R&M) | ) | |
| and SUNOCO PARTNERS | ) | |
| MARKETING & TERMINALS, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

### THIRD AMENDED SCHEDULING ORDER

For good cause shown, and there being no objection, Plaintiff's Unopposed Motion to Modify Second Amended Scheduling Order [Doc. No. 84] is **GRANTED**. The Court's Scheduling Order is hereby amended as follows:

| Activity | Amended Deadline |
|---|---|
| Plaintiff's expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Plaintiff's expert reports | January 28, 2019 |
| Defendants' expert disclosures for class certification required by Fed. R. Civ. P. 26(a)(2), including Defendants' expert reports | March 29, 2019 |
| Expert depositions to be completed | April 29, 2019 |
| Plaintiff's deadline to file class certification motion and briefing | May 15, 2019 |
| Defendants' deadline to file response to class certification motion | July 15, 2019 |
| Plaintiff's deadline to file reply brief regarding class certification | August 15, 2019 |

| Defendants reserve the right to seek leave to file a sur-reply brief | |
| --- | --- |
| Deadline for motions by either party regarding whether a class certification hearing should be held and, if so, the form of hearing | September 6, 2019 |

**IT IS SO ORDERED** this 14th day of January, 2019.


_____
James H. Payne
United States District Judge
Eastern District of Oklahoma

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PERRY CLINE, on behalf of | ) | |
| himself and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-313-JHP |
| | ) | |
| SUNOCO, INC. (R&M) | ) | |
| and SUNOCO PARTNERS | ) | |
| MARKETING & TERMINALS, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR EXTENSION OF TIME

Plaintiff, by and through counsel, moves for a 90-day extension of all deadlines in this matter as set forth more fully below.

1.     Two law firms for Plaintiff in this case, Nix Patterson, LLP and Whitten Burrage, were selected by the Oklahoma Attorney General to serve as co-lead counsel in *State of Oklahoma v. Purdue Pharma, LP, et al*., Case No. CJ-2017-816, which is pending in the District Court of Cleveland County, Oklahoma (hereinafter "the Oklahoma Opioid Litigation"). The attorneys of record in this matter for Nix Patterson and Whitten Burrage are core members of the trial team in the Oklahoma Opioid Litigation.  In the Oklahoma Opioid Litigation, the State seeks relief on behalf of its residents for the unprecedented opioid crisis affecting the State.  *See generally*, Original Petition, attached hereto as Exhibit 1.

2.     The opioid crisis claims the lives of hundreds of Oklahomans every year.  Since 2009, more Oklahomans have died from opioids than from car accidents.  The opioid crisis has been declared a National Public Health Emergency and is a public health emergency in Oklahoma.

3.     The presiding judge in the Oklahoma Opioid Litigation, the Honorable Thad Balkman, recognized the urgency of the matter and set the matter for trial to begin on **May 28, 2019**.  This will make the Oklahoma Opioid Litigation the first case of its kind to proceed to trial. Judge Balkman, with the court-appointed Special Discovery Master (and former district and appellate court judge) Bill Hetherington, have efficiently managed the docket and discovery matters to ensure the case goes to trial by that date.  The trial date, however, overlaps with significant deadlines in this matter, such as the deadline for Plaintiff's class certification motion. Because of the overlapping schedules and the unique and exigent circumstances of the Oklahoma Opioid Litigation—as explained in more detail below—Plaintiff respectfully requests relief from the Court's current schedule until his counsel, Nix Patterson and Whitten Burrage, complete the trial in the Oklahoma Opioid Litigation.

4.     Discovery in the Oklahoma Opioid Litigation has been astronomical.  To date, between the State, the Opioid Defendants, and third-parties, approximately 89 million pages have been produced in discovery.  Over 150 depositions have been taken.

5.     Many pre-trial matters remain between now and the commencement of trial that require substantial labor resources from Nix Patterson and Whitten Burrage, including Daubert motions, motions in limine, and dispositive motion practice.  *See* Updated Scheduling Order (Apr. 18, 2019), attached as Exhibit 2.

6.     Prosecution of the Oklahoma Opioid Litigation has required massive resources from Nix Patterson and Whitten Burrage.  Several of the attorneys for Plaintiff in this case—who reside in Austin, Texas—spend significant time in Oklahoma City and work nearly around the clock on matters relating to: drafting motions and responses thereto, drafting discovery requests

and responses thereto, conducting/defending depositions, attending hearings, trial preparation, and much more.

7.     The current deadlines and Plaintiff's proposed deadlines for this case are as follows:

| Activity | Current Deadline | Proposed Deadline |
|---|---|---|
| Expert depositions to be completed | April 29, 2019 | July 29, 2019 |
| Plaintiff's deadline to file class certification motion and briefing | May 15, 2019 | August 13, 2019 |
| Defendants' deadline to file response to class certification motion | July 15, 2019 | October 14, 2019 |
| Plaintiff's deadline to file reply brief regarding class certification | August 15, 2019 | November 13, 2019 |
| Defendants reserve right to seek leave to file a sur-reply | TBD | TBD |
| Deadline for motions by either party regarding whether a class certification hearing should be held and, if so, the form of hearing | September 6, 2019 | December 5, 2019 |

Due to the unique nature of the Oklahoma Opioid Litigation, and counsel's obligations, Plaintiff requests a 90-day extension of the deadlines in this action pending the conclusion of the May 28th trial. Such extensions are necessary to allow counsel to fulfill its obligations in the Oklahoma Opioid Litigation and dedicate the resources necessary to this important matter.

8.     Pursuant to Rule 16(b)(4), amendment/modification of a scheduling order shall be granted upon a showing of good cause and the Court's consent. Fed. R. Civ. P. 16(b)(4).  To demonstrate good cause, the moving party must show it has been diligent in attempting to meet the scheduling order deadlines.  *Lehman Bros. Holdings Inc. v. Universal American Mortgage Co., LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014).

9.     Based on the facts and circumstances presented here, Plaintiff respectfully submits that good cause has been shown and a 90-day extension of deadlines is warranted.

10.     Although the Oklahoma Opioid Litigation has not thwarted Nix Patterson's or Whitten Burrage's duties in the present case, the overlapping schedule with this case warrants a modest extension here.  Nix Patterson and Whitten Burrage are counsel of record in this case and it would work an undue hardship on the firms were they required to simultaneously litigate this case while prosecuting one of the largest cases in the State's history.  In requesting the extension, counsel has been mindful of the parties' collective interest in seeing this case completed; accordingly, it selected a reasonable time frame that would not result in excessive delay if granted. Thus, whatever prejudice asserted by Defendants, in counsel's view, is non-existent or minimal at best.

11.     A third firm that has taken the leading role along with Nix Patterson is Ryan, Whaley, Coldiron, Jantzen, Peters & Webber.  Mr. Ryan has recently been appointed as the Special Counsel, on behalf of the Oklahoma Attorney General to supervise the investigation of President David Boren and Tripp Hall.  It is anticipated this obligation will be extremely time consuming over the next 60-90 days—though it is impossible to predict the duration of this matter.  Further, Mr. Ryan is counsel of record in Case No. 5:17-cv-00248-G, *Blocker, et al. v. ConocoPhillips Company*, in the United States District Court for the Western District of Oklahoma.  This case is set for trial on May 20, 2019.

12.     Counsel for Defendant has been contacted, and Defendant opposed the relief requested.

13.     A proposed order is submitted herewith.

**App.156**

**WHEREFORE**, for the reasons stated herein, Plaintiff requests that the Court grant its Motion, extending all deadlines in this matter for a period of 90 days, and award such further relief deemed equitable and just.

DATED: April 26, 2019.

<div align="right">

Respectfully submitted,

*/s/ Michael Burrage*
Michael Burrage, OBA No. 1350
**WHITTEN BURRAGE**
1215 Classen Dr.
Oklahoma City, OK 73103
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
mburrage@whittenburragelaw.com

Bradley E. Beckworth, OBA No. 19982
Jeffrey Angelovich, OBA No. 19981
Lisa P. Baldwin, OBA No. 32947
Andrew G. Pate, TX Bar No. 24079111
Trey Duck, OBA No. 33347
Brooke A. Churchman, OBA No. 31946
**NIX PATTERSON, LLP**
3600 North Capital of Texas Highway
Suite 350, Building B
Austin Texas, 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
bbeckworth@nixlaw.com
jangelovich@nixlaw.com
lbaldwin@nixlaw.com
dpate@nixlaw.com
tduck@nixlaw.com
bchurchman@nixlaw.com

Susan Whatley, OBA No. 30960
**NIX PATTERSON, LLP**
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415
swhatley@nixlaw.com

</div>

Patrick M. Ryan, OBA No. 7864
Phillip G. Whaley, OBA No. 13371
Jason A. Ryan, OBA No. 18824
Paula M. Jantzen, OBA No. 20464
**RYAN WHALEY COLDIRON**
**JANTZEN PETERS & WEBBER PLLC**
900 Robinson Renaissance
119 North Robinson
Oklahoma City, OK  73102
Telephone:  (405) 239-6040
Facsimile:  (405) 239-6766
pryan@ryanwhaley.com
pwhaley@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Robert N. Barnes, OBA No. 537
Patranell Lewis, OBA No. 12279
Emily Nash Kitch, OBA No. 22244
**BARNES & LEWIS, LLP**
208 N.W. 60th Street
Oklahoma City, OK  73118
Telephone:  (405) 843-0363
Facsimile:  (405) 832-1007
rbarnes@barneslewis.com
plewis@barneslewis.com
ekitch@barneslewis.com

Lawrence R. Murphy, Jr., OBA No. 17681
**LAWRENCE R. MURPHY, JR., P.C.**
624 South Boston, Floor 8
Tulsa, Oklahoma 74119
Telephone: (918) 585-2394
Facsimile: (918) 585-1449
larrymurphypc@icloud.com

**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to all registered parties.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: April 26, 2019.

<div align="right">

*/s/ Michael Burrage*
Michael Burrage

</div>

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **PERRY CLINE, on behalf of** | ) | |
| **himself and all others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-cv-313-JHP** |
| | ) | |
| **SUNOCO, INC. (R&M)** | ) | |
| **and SUNOCO PARTNERS** | ) | |
| **MARKETING & TERMINALS, L.P.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FOURTH AMENDED SCHEDULING ORDER

For good cause shown, Plaintiff's Motion for Extension of Time [Doc. No. 86] is

**GRANTED IN PART**. The Court's Third Amended Scheduling Order is hereby amended as

follows:

| Activity | Amended Deadline |
|---|---|
| Expert depositions to be completed | May 29, 2019 |
| Plaintiff's deadline to file class certification motion and briefing | June 14, 2019 |
| Defendants' deadline to file response to class certification motion | August 14, 2019 |
| Plaintiff's deadline to file reply brief regarding class certification | September 16, 2019 |
| Defendants reserve right to seek leave to file a sur-reply | TBD |
| Deadline for motions by either party regarding whether a class certification hearing should be held and, if so, the form of hearing | October 7, 2019 |

**App.160**

**IT IS SO ORDERED** this 6th day of May, 2019.

James H. Payne
United States District Judge
Eastern District of Oklahoma

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself
and all others similarly situated,
          Plaintiff,

v.                                 Civil Action No. 6:17-cv-313-JAG

SUNOCO, INC. (R&M), and,
SUNOCO PARTNERS MARKETING
& TERMINALS, L.P.,
          Defendants.

## PRETRIAL ORDER

The Court held a status conference call in this case on August 5, 2019. During the conference call, the Court set a trial date and imposed various deadlines, reflected in this Order. This case is scheduled for trial without a jury on **December 16, 2019, at 9:00 a.m.**

Additionally, the Court AMENDS the Fourth Amended Scheduling Order, (Dk. No. 90), as follows. The plaintiff's deadline to file a reply brief regarding class certification is **August 28, 2019**. In their briefing on class certification, the parties shall indicate whether the Court should hold a class certification hearing and, if so, the form of the hearing.

1.    **Discovery.**    All discovery shall be completed by **October 18, 2019**. The response time for all written discovery will be **twenty (20) days**.

No party shall take more than five (5) depositions of non-party witnesses. Parties must request leave of Court to take more than five non-party depositions. For purposes of this paragraph, a deposition of a non-party entity under Fed. R. Civ. P. 30(b)(6) shall count as one deposition, even if the entity designates multiple witnesses to testify.

Counsel shall serve all discovery requests by e-mail. In addition, a hard copy shall be served.

**App.162**

2.     **Expert Witnesses.**  The parties will disclose the information required under Rule 26(a)(2) on the following schedule:  Party with the burden of proof on an issue by **October 25, 2019**; opposing party by **November 1, 2019**; rebuttal expert(s) by **November 8, 2019**.  Motions, by either party, challenging the designation of experts shall be filed by at least **November 15, 2019**.

Each party may call only one expert per discipline absent Court order.

3.     **Settlement**.    Counsel shall notify the Court immediately of any settlement.  The parties must present a final order within fifteen (15) calendar days of notification.  If such an order is not timely submitted, the action will be dismissed by the Court with prejudice on the basis of the representation that the action has been settled.

4.     **Motions.**     Motions for summary judgment shall be filed by no later than **November 1, 2019**.

Motions in limine shall be filed so that they can be fully briefed before the final pretrial conference, at which time the Court will rule on them.  If no final pretrial conference is scheduled, motions in limine shall be filed so that they mature for hearing by no later than **December 6, 2019**.

The parties may request oral argument on any motion, but it is the Court's policy, pursuant to Local Civil Rule 7(J), not to hear oral argument if a motion may be decided without an oral hearing.  Local Civil Rule 7(E) is hereby abrogated insofar as it renders motions withdrawn for failure to set a hearing within thirty (30) days of filing.  A party need not contact the Court to schedule a hearing if it does not, in fact, desire a hearing on its motion.  Parties are encouraged to request oral argument in order to provide experience to relatively new lawyers.

Once filed with the Clerk, one (1) courtesy copy of all pleadings and motions longer than thirty (30) pages shall be delivered to Chambers by the next business day.

**App.163**

5.      **Stipulations.** Counsel shall meet or confer by telephone by no later than **November 6, 2019**, in an attempt to enter into stipulations of fact. Each plaintiff's counsel shall file the agreed upon stipulations with the Clerk of Court by no later than **November 16, 2019**. This paragraph shall not apply to pro se litigants.

6.      **Designation of Discovery.**   By **November 6, 2019**, each plaintiff shall designate any discovery, including deposition excerpts, the plaintiff intends to introduce at trial.   By **November 16, 2019**, each defendant shall designate any discovery the defendant intends to introduce, including "fairness" portions of deposition transcripts. Each plaintiff may designate any rebuttal discovery by **November 21, 2019**.

In designating portions of depositions for use at trial, the parties must indicate the page and line numbers of excerpts.

In non-jury cases, by **November 26, 2019**, the parties should deliver to chambers summaries of deposition testimony, pursuant to the Local Rules.

Any objections to the use of designated discovery shall be filed by **November 26, 2019**, with a copy of the discovery objected to. Objections shall state the basis of the objection, and shall include a citation to the appropriate Federal Rule of Evidence, Order of this Court, or other authority.

Discovery not designated pursuant to this paragraph shall not be admitted into evidence.

Parties need not designate discovery materials used solely for impeachment or cross-examination.

7.      **List of Witnesses.**   By **November 6, 2019**, each plaintiff shall file a list of witnesses who may be called. By **November 16, 2019**, each defendant shall file a list of witnesses. Each plaintiff shall file a list of rebuttal witnesses by **November 21, 2019**. Witnesses named in

3

**App.164**

the plaintiff's initial list of witnesses need not be listed as rebuttal witnesses. All parties' witness lists must include witnesses called exclusively for impeachment or rebuttal.

Any objections to witnesses identified shall be filed with the Court by **November 26, 2019**. Objections shall state the basis of the objection and shall include a citation to the appropriate Federal Rule of Evidence, Orders of this Court, or other authority.

Any witnesses not listed pursuant to this paragraph will not be allowed to testify.

8.      **List of Exhibits.**      Each plaintiff shall file a list of exhibits by **November 6, 2019**. Each defendant shall file a list of exhibits by **November 16, 2019**. Each plaintiff shall file a list of rebuttal exhibits by **November 21, 2019**. With each list, the parties will serve on opposing counsel copies of the exhibits. The exhibits shall be numbered and, if more than ten (10) in number or more than twenty (20) total pages, bound in notebooks. The parties shall include on the respective lists all exhibits that may be offered for demonstrative purposes.

Any objections to proposed exhibits shall be filed with the Court by **November 26, 2019**, with a copy of the exhibits objected to. Objections shall state the basis of the objection, and shall include a citation to the appropriate Federal Rule of Evidence, Orders of this Court, or other authority.

Any exhibit to which no objection is made shall be deemed admitted into evidence without further action by counsel.

Any exhibit not listed pursuant to this paragraph will not be admitted into evidence.

9.      **Final Pretrial Conference.**   At the final pretrial conference, the Court will rule on motions in limine and objections to exhibits and witnesses. In some cases, the Court may not schedule a final pretrial conference. In those cases, the parties should call chambers to set a date to argue motions in limine.

4

**App.165**

10. **Voir Dire.** If this is a jury case, the Court will conduct voir dire. The parties shall file proposed voir dire questions by **December 11, 2019**.

11. **Jury Instructions.** If this is a jury case, each party shall file proposed instructions by **December 11, 2019**. The parties shall submit two copies, one with authority at the bottom and one without authority. The parties shall email these copies to chambers in WORD format. The parties can call chambers to obtain the appropriate email address.

The parties need only submit jury instructions on the substantive claims, as the Court has standard introductory and procedural jury instructions that it uses. The parties may request a copy of these instructions by contacting chambers.

12. **Proposed Findings of Fact and Conclusions of Law.** If this case is tried without a jury, the parties shall file proposed findings of fact and conclusions of law by **December 11, 2019**. The parties shall email a copy of the proposed findings and conclusions to chambers in WORD format.

13. **Pretrial Briefs.** The parties may file pretrial bench briefs on material issues expected to arise at trial. Pretrial briefs are encouraged by the Court. Pretrial briefs are due by **December 6, 2019**.

14. **Copies at Trial.** Counsel shall provide the Court with four (4) copies of exhibits on the day of trial, one for the judge, one for the courtroom clerk, one for the law clerk, and one for the witness. If more than ten (10) in number or more than twenty (20) total pages, the exhibits shall be bound in a notebook. If counsel wishes to publish an exhibit to the jury, counsel shall display the exhibit electronically, provide a copy for each juror, or enlarge the exhibit so that all jurors can see it from the jury box.

**App.166**

15.   **Attorneys' Fees.**   Any motion for an award of attorneys' fees will be addressed after trial, pursuant to Fed. R. Civ. P. 54 and Local Rule 54 (if fees are treated as costs by statute or rule).   Such motions shall be governed by applicable statutory and/or decisional law.   In submitting a motion for an award of fees, a party must submit an affidavit or declaration itemizing time spent on the case, describing the work done, and the hourly rate of the person billing the case. In addition, a party must submit an affidavit or declaration from an expert to establish the reasonableness of the fees.   Motions for attorneys' fees shall be accompanied by a brief.

Date: _____5_____ August 2019
Richmond, VA

_____/s/_____
John A. Gibney, Jr.
United States District Judge

6

**App.167**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself, and all
others similarly situated,

      Plaintiff,

v.

SUNOCO, INC. (R&M); and
SUNOCO PARTNERS
MARKETING & TERMINALS, L.P.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No: 6:17-cv-313-JAG

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO CERTIFY CLASS

Mark D. Christiansen OBA # 1675
**EDINGER LEONARD & BLAKLEY PLLC**
6301 N. Western Avenue, Suite 250
Oklahoma City, OK 73118
Telephone: (405) 702-9900
Fax: (405) 605-8381
mchristiansen@elbattorneys.com

Daniel M. McClure OBA #20414
dan.mcclure@nortonrosefulbright.com
Kevin Yankowsky (*pro hac vice*)
kevin.yankowsky@nortonrosefulbright.com
Rebecca J. Cole (*pro hac vice*)
rebecca.cole@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone (713) 651-5151
Fax (713) 651-5246

**ATTORNEYS FOR DEFENDANTS**

# TABLE CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    BACKGROUND .................................................................................................3

    A.     Sunoco's Payments of Oil and Gas Proceeds. .........................................3

        1.     Sunoco Purchases from Producers and Makes Payments to
            Producers and Royalty Owners of Some Producers. ...................................3

        2.     Sunoco Uses Division Orders to Ensure the Right Payee Is Paid
            Properly.......................................................................................................4

        3.     The *Hull* Decision Does Not Render Sunoco's Use of Division
            Orders Illegal. ............................................................................................5

    B.     The PRSA. ................................................................................................6

    C.     Sunoco Almost Always Pays Timely, if Not *Early*. ................................8

    D.     Sunoco's Interest Payment Practices Focus on Determining Whether
        Interest Is Due in Each Individual Circumstance. ....................................9

    E.     The Oklahoma Supreme Court Has Not Declared Sunoco's "Business
        Policy" to Be "Unlawful." .....................................................................10

    F.     Sunoco's Accounting Data Is Not Capable of Identifying All Class
        Members, and Sunoco Did Not Admit That. ..........................................12

    G.     The Unique Circumstances of Late Payments to Perry Cline and Sunoco's
        Payment of Interest to Him. ...................................................................13

    H.     Plaintiff's Proposed Class Definition.....................................................14

III.   STANDARD OF REVIEW ...............................................................................16

IV.    ARGUMENT AND AUTHORITIES ...............................................................17

    A.     The Court Should Deny the Motion Because the Class Members Are Not
        Reasonably Ascertainable.......................................................................17

        1.     The Proposed Class Cannot Be Ascertained Objectively and
            Would Be an Impermissible Fail-Safe Class. ............................................19

        2.     The Class Is Not Clearly Identifiable by Potential Class Members...........21

    B.     Common Questions Do Not Predominate Over Individual Questions of
        Law and Fact, as Required For Certification Under Rule 23(b)(3). ......................22

        1.     Individual Rather Than Common Questions Predominate as to
            PRSA Liability............................................................................................23

        2.     Damages Are Individualized and Not Capable of Classwide
            Determination Using Any Classwide Methodology..................................25

        3.     Sunoco's Pleaded Defenses Create Individual Questions of Law
            and Fact That Will Predominate. ...............................................................26

- i -

4.  The Fraud Claim Should Not Be Certified Because of Individual Questions Including Knowledge and Reliance. ..........................................28

5.  The Equitable Claims for Accounting and Disgorgement and Injunctive Relief Create Innumerable Individual Questions of Balancing the Equities as to Each Putative Class Member.......................29

6.  Individual Questions Should Preclude Certifying a Class Prior to the Five-Year PRSA Statute Of Limitations...............................................30

C.  The Class Action Is Not "Superior" to Individual Resolutions of the Controversy, as Required by Rule 23(b)(3). ..........................................31

D.  The Prerequisites of Rule 23(a) for a Class Certification Have Not Been Satisfied...............................................................................................32

1.  The Claimed "Common" Questions of Law or Fact Will Not Generate Common Answers for All Members of the Putative Class.......................................................................................................32

2.  The Claims and Defenses for the Named Plaintiff Perry Cline Are Not "Typical of the Claims or Defenses of the Class." ............................33

3.  The Named Plaintiff Perry Cline Is Not an "Adequate" Class Representative...............................................................................................34

V.  CONCLUSION....................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Intern. Group, Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012).................................................................3

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................................................................3, 22

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1947)........................................................................20

*Bogosian v. Gulf Oil Corp.*,
561 F.2d 434 (3d Cir. 1977)...........................................................35

*Bradley v. Allstate Ins. Co.*,
620 F.3d 509 (5th Cir. 2010) .........................................................13

*Byrd v. Aaron's, Inc.*,
784 F.3d 154 (3d Cir. 2015)......................................................18, 21

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013).....................................................16, 18

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ...........................................................28

*CGC Holding Co. v. Broad & Cassel*,
773 F.3d 1076 (10th Cir. 2014) .....................................................23

*Cherokee Nation of Okla. v. United States*,
199 F.R.D. 357 (E.D. Okla. 2001)..................................................34

*Chieftain Royalty Co. v. BP Am. Prod. Co.*,
2017 WL 5012586 (E.D. Okla. Nov. 2, 2017)................................30

*Chieftain Royalty Co. v. XTO Energy, Inc.*,
528 F. App'x 938 (10th Cir. 2013) ...................................................2

*Cole v. ASARCO, Inc.*,
256 F.R.D. 690 (N.D. Okla. 2010)..................................................18

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013).............................................................17, 25

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..........................................................................22

*In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig.*,
2014 WL 104964 (W.D. Okla. Jan. 9, 2014)..................................18

*EQT Prod. Co. v. Adair,*
  764 F.3d 347 (4th Cir. 2014) ..................................................................2, 19

*Folks v. State Farm Mut. Auto. Ins. Co.,*
  281 F.R.D. 608 (D. Colo. 2012) ...................................................................26

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982) ....................................................................................33

*Georgine v. Amchem Prods.,*
  83 F.3d 610 (3d Cir. 1996) *aff'd sub nom., Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ....................................................................................32

*Hall v. Burger King Corp.,*
  1992 WL 372354 (S.D. Fla. Oct. 26, 1992)..................................................31

*Harper v. C.R. England, Inc.,*
  746 F. App'x 712 (10th Cir. 2018) ..............................................................17

*Hayes v. Wal–Mart Stores, Inc.,*
  725 F.3d 349 (3d Cir. 2013)....................................................................18, 22

*Henderson v. Trans Union LLC,*
  2016 WL 2344786 (E.D. Va. 2016) ..............................................................19

*Howell v. Texaco Inc.,*
  2004 OK 92, 112 P.3d 1154...........................................................................28

*Hull v. Sun Refining & Mktg. Co.,*
  1989 OK 168, 789 P.2d 1272.......................................................................5, 6

*Johnston v. HBO Film Mgmt.,*
  265 F.3d 178 (3d Cir. 2001).........................................................................33

*Kamar v. RadioShack Corp.,*
  375 F. App'x 734 (9th Cir. 2010) .................................................................21

*Langbecker v. Elec. Data Sys. Corp.,*
  476 F.3d 299 (5th Cir. 2007) .......................................................................35

*Marcus v. BMW of N. Am., LLC,*
  687 F.3d 583 (3d Cir. 2012)............................................................17, 18, 19

*McElhaney v. Eli Lilly & Co.,*
  93 F.R.D. 875 (D.S.D. 1982) ........................................................................22

*McKnight v. Linn Operating, Inc.,*
  2016 WL 756541 (W.D. Okla. Feb. 25, 2016) ............................................2, 19

*Messner v. Northshore Univ. HealthSystem,*
  669 F.3d 802 (7th Cir. 2012) ............................................................19, 21, 22

*Naylor Farms v. Chaparral Energy, LLC,*
  923 F.3d 779 (10th Cir. 2019) ......................................................................31

*Naylor Farms v. Chaparral Energy,*
   No. CIV-11-0634-HE (March 30, 2017) ........................................................31

*NBL Flooring, Inc. v. Trumbull Ins. Co.,*
   2014 WL 615967 (E.D. Pa. Feb. 12, 2014) ...................................................25

*In re Nexium Antitrust Litig.,*
   777 F.3d 9 (1st Cir. 2015)..............................................................................21

*O'Sullivan v. Countrywide Home Loans, Inc.,*
   319 F.3d 732 (5th Cir. 2003) .........................................................................26

*Polo v. Goodings Supermarkets, Inc.,*
   232 F.R.D. 399 (M.D. Fla. 2004)...................................................................16

*Pummill v. Hancock Exploration LLC,*
   2014 OK 97, 341 P.3d 69................................................................................10, 11

*Randleman v. Fidelity Nat'l Title Ins. Co.,*
   646 F.3d 347 (6th Cir. 2011) .........................................................................21

*Ray v. J.C. Penney Co.,*
   274 F.2d 519 (10th Cir. 1959) .......................................................................13

*Rector v. City & County of Denver,*
   348 F.3d 935 (10th Cir. 2003) .......................................................................34

*Reirdon v. Cimarex Energy Co.,*
   2019 WL 2610115 (E.D. Okla. June 25, 2019) .............................................30

*Securities and Exchange Commission v. Gilder,*
   2014 WL 1628474 (D. Colo. 2014)................................................................29

*Seeligson v. Devon Energy Prod. Co,*
   2019 WL 852060 (5th Cir. 2019) ....................................................................2

*Seeligson v. Devon Energy Prod. Co., L.P.,*
   761 F. App'x 329 (5th Cir. 2019) ..................................................................31

*Shook v. El Paso County,*
   386 F.3d 963 (10th Cir. 2004) .......................................................................17

*Slapikas v. First Am. Title Ins. Co.,*
   250 F.R.D. 232 (W.D. Pa. 2008) ...................................................................28

*In re St. Jude Med., Inc.,*
   522 F.3d 836 (8th Cir. 2008) .........................................................................28

*Sullivan v. DB Invs., Inc.,*
   667 F.3d 273 (3d Cir. 2011) (Scirica, J., concurring)......................................3

*TMBRS Prop. Holdings, LLC v. Conte,*
   2018 WL 2988663 (N.D. Okla. May 7, 2018)...............................................29

- v -

*In re Tulsa Energy, Inc.*,
    111 F.3d 88 (10th Cir. 1997) ...................................................................26

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .....................................................................28, 32, 33

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...........................................................................2

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
    725 F.3d 1213 (10th Cir. 2013) ..............................................................2

*Warnick* v. *Dish Network LLC*,
    301 F.R.D. 551 (D. Colo. 2014) ............................................................18

**Rules and Statutes**

52 O.S. § 540 ...............................................................................6, 27

52 O.S. § 570.10 ..............................................................................7

52 O.S. § 570.10(B)(1) .................................................................7, 8, 9, 20

52 O.S. § 570.10 (B)(1)(a) ...................................................................23

52 O.S. § 570.10(B)(3) ..............................................................7, 20, 24

52 O.S. § 570.10(C)(4) .............................................................8, 20, 25

52 O.S. § 570.10(D) ..........................................................................7

52 O.S. § 570.10(D)(1) ......................................................................12

52 O.S. §§ 570.10(D)(1), (E)(1) ..............................................................9

52 O.S. § 570.10(D)(2) .......................................................................7

52 O.S. § 570.10(D)(2)(a) ...................................................................23

52 O.S. § 570.10(E)(1) .......................................................................8

52 O.S. § 570.10 (E)(2)(d) ...............................................................8, 25

52 O.S. § 570.11 .............................................................................6

52 O.S. § 570.14(D) .........................................................................30

52 O.S. Supp. 1989, § 540(B) amendment to § 540 ...............................................6

52 Okla. Stat. § 903 ........................................................................29

Fed. R. Civ. P. 23(a)(2) ....................................................................32

Fed. R. Civ. P. 23(b)(3)(D) .................................................................32

Fed. R. Civ. P. 23 ...................................................................................................17, 34

Fed. R. Civ. P. 23(a) ................................................................16, 17, 18, 22, 32

Fed. R. Civ. P. 23(a)(3) ......................................................................................33

Fed. R. Civ. P. 23(a)(4) ..............................................................................34, 35

Fed. R. Civ. P. 23(b) ....................................................................................16, 18

Fed. R. Civ. P. 23(b)(3) ............................................................................. *passim*

Fed. R. Civ. P. 23(c)(2) ......................................................................................18

Okla. Sup. Ct. R. 1.200(d)(2) ...........................................................................11

**Other Authorities**

7A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §
    1768 (2nd ed. 1986) ......................................................................................35

Moore's Federal Practice, *Class Actions*, § 23.21[3][a] n.4 .......................................21

1 *Newberg on Class Actions* § 7:26, 139 (5th ed. 2013)...............................................21

2 *Newberg on Class Actions* § 4:63 (5th ed.)................................................................3

Defendants, Sunoco Partners Marketing & Terminals, L.P. and Sunoco Inc. (R&M) (now Sunoco (R&M), LLC) (collectively "Sunoco"), file this response to Plaintiff's Motion to Certify Class, to Appoint Class Representative, and to Appoint Class Counsel and Brief in Support (Doc. 91) ("Motion" or "Motion to Certify"). Exhibits to this response are contained in a separately filed Appendix. Citations to exhibits in the Appendix will take the form "Ex. __."

## I.   INTRODUCTION

Sunoco has purchased oil from wells in Oklahoma and made timely payment of more than 98% of all payments to royalty owners and working interest owners within two months of production. This case involves less than 2% of all payments, which Plaintiff alleges were "untimely" paid under the Oklahoma Production Revenue Standards Act ("PRSA"). There are many reasons why that 2% were not paid within two months of production, often because the funds were placed in "suspense" for a variety of reasons. But because of the complexity of the PRSA and its numerous exceptions to the general requirement to pay within two months, Sunoco has been unable to implement a system to automatically and accurately determine whether a payment is untimely under the PRSA, whether interest is owed, and whether the rate of interest should be 6% or 12% (based on whether the delay was due to unmarketable title). However, if a payee requests interest, Sunoco will investigate the individual circumstances and pay interest if owed. It is these same complexities in the provisions of the PRSA and the individual circumstances of each suspended and late payment that warrant denial of class certification in this case.

This case is also far more complex and less suitable for certification than other "interest" cases that have been brought recently in Oklahoma against oil and gas producers by royalty owners. Because Sunoco is a *purchaser* of oil and not an oil and gas producer, 90% of Sunoco's payments are made to producers and working interest owners, and only approximately 10% of payments to royalty owners of those producers. So, many of the putative class members are not

individuals, but knowledgeable oil and gas companies and their partners.  Further, because of the large number of producers from which Sunoco purchases oil, there is far more variety in the individual circumstances of payments than is the case for a single producer defendant that pays its own royalty owners.  Moreover, most producers and working interest owners are fully aware of the interest provisions of the PRSA but do not require Sunoco to  pay interest on late payments. This is so because those payments may fall within various exceptions to the PRSA or because payments that are technically "late" are the fault of the producers themselves, for example by providing untimely or inaccurate payment information to Sunoco.

Plaintiff Perry Cline alleges that he received untimely royalty payments from Sunoco for oil proceeds from a well in which he owns a royalty interest in Oklahoma, and that Sunoco owes him interest on alleged late payments under the PRSA.  Doc. 2-2.  Sunoco has actually tendered payment in full to Cline of interest on the oil proceeds that Cline alleges were late.  Plaintiff also purports to sue on behalf of a putative class of "thousands" of payees he alleges received untimely oil and gas payments from Sunoco, and which payments he alleges did not include interest.  *Id*. Sunoco vigorously maintains that class certification is inappropriate here; federal courts have often refused to certify classes of royalty owners claiming underpayment of royalties.[1]  Since the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011), few contested royalty classes have been certified, and most certifications have been agreed settlement classes

---

[1] *See, e.g.*, *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc*., 725 F.3d 1213, 1218-1220 (10th Cir. 2013) (vacating the district court's order certifying a class of Kansas royalty owners); *Chieftain Royalty Co. v. XTO Energy, Inc*., 528 F. App'x 938 (10th Cir. 2013) (vacating the district court's order certifying a class of Oklahoma royalty owners consistent with its opinion in *Roderick*); *McKnight v. Linn Operating, Inc*., 2016 WL 756541 (W.D. Okla. Feb. 25, 2016) (denying certification of Oklahoma class of royalty owners); *Seeligson v. Devon Energy Prod. Co*, 2019 WL 852060 (5th Cir. 2019) (reversing royalty class certification); *EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) (reversing certification of Virginia royalty class).

which are governed by different standards.[2]  No *contested* class certification has been ordered in any "interest" case under the PRSA.  This Court should not be the first to do so.

## II.    BACKGROUND

### A.    Sunoco's Payments of Oil and Gas Proceeds.

#### 1.    Sunoco Purchases from Producers and Makes Payments to Producers and Royalty Owners of Some Producers.

Sunoco is in the business of buying and selling crude oil.  Ex. C at ¶ 4.  Sunoco primarily purchases crude oil produced in the field from oil and gas producers, collects and transports the oil to downstream locations, and then resells the oil to refineries and others.  *Id.*  Sunoco is not itself an oil and gas producer, but rather contracts with producers to purchase oil.  *Id.*  Sunoco has contracts with thousands of producers in Oklahoma.  *Id.*

Sunoco's payment of the proceeds for the purchase of the oil is accomplished in a variety of ways.  Sometimes Sunoco pays 100% of the proceeds to the producer/operator, which in turn distributes the proceeds to its partners (other working interest owners) and to overriding royalty

---

[2] Federal courts recognize that an agreed settlement class is much easier to approve than a contested class where the claims of all class members will ultimately be tried.  For example, "manageability" under Rule 23(b)(3) is quite different for a settlement class where all that is done is mail out checks, compared to a class where each claim is tried.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("[A] district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); *In re Am. Intern. Group, Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012) ("[W]ith a settlement class, the manageability concerns posed by numerous individual questions of reliance disappear."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (Scirica, J., concurring) ("[S]ome inquiries essential to litigation class certification are no longer problematic in the settlement context.  A key question in a litigation class action is manageability—how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof.  But the settlement class presents no management problems because the case will not be tried."); 2 *Newberg on Class Actions* § 4:63 (5th ed.) ("[I]n settlement class actions, because manageability need not be a concern, predominance—the main focus of manageability—recedes in importance as well. . . .  Courts therefore regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.").

and royalty interest owners. *Id.* at ¶ 5. At other times, Sunoco agrees in its oil purchase contract to distribute the proceeds to all interest owners in the wells covered by the contract, including all working interest owners and all royalty owners. *Id.* Sunoco has a record of 23,172 unique Oklahoma properties since 2007 from which it purchased oil, and Sunoco managed approximately 164,310 payees on Oklahoma properties during the same time. *Id.* Sunoco maintains a division order file on almost every property, or well/tank, from which it purchases oil, which consists of scanned hard copy documents. *Id.*

### 2. Sunoco Uses Division Orders to Ensure the Right Payee Is Paid Properly.

Sunoco follows industry practice in the use of division orders to confirm the accuracy of payments. Ex. C at ¶ 7. In the typical situation, when a producer drills a new well, the producer will provide a Division Order Title Opinion ("DOTO") to Sunoco to identify all interest owners in a well to which Sunoco will distribute payment. *Id.* When Sunoco starts buying oil from an already-producing well, the producer usually provides its current "paydeck" for the well. *Id.* Sunoco is dependent upon the producer to provide that information before it can make any payments. *Id.* But often the paydecks are outdated or the title information incomplete. *Id.* So Sunoco, like virtually every other payor in the industry in Oklahoma and in every state, sends division orders to every interest owner to confirm the correct name, address, and decimal interest of the payee, and to confirm (or in many cases obtain) the correct Social Security number or tax ID number of the payee. *Id.* Sunoco's goal, like all payors, is to ensure that the right person at the right address receives the right percentage share of the oil and gas production. *Id.*

Although Sunoco does not require payees to sign a Division Order as a prerequisite to payment, Sunoco does prefer to get some confirmation from the interest owner of the information provided to Sunoco by the operator of the well. Ex. A at ¶ 3. Most payees sign the division order

and return it to Sunoco, confirming the accuracy of that information as to that payee (or making any necessary corrections). Ex. C at ¶ 8. However, some division orders are returned by the U.S.P.S. as "addressee undeliverable" or the like. *Id.* Some division orders are never returned without any explanation from the payee. In a few instances, such as Plaintiff Perry Cline, a payee will ignore the initial division orders sent to him, but at some point in time may state that he refuses to sign a division order for one reason or another. *Id.* When Sunoco does not have a signed division order, it sometimes places that particular payee's interest in "suspense" until the problem can be identified and resolved. *Id.* But Sunoco places an owner in a pay status of "pay without division order" any time the payee declines to sign a division order and informs Sunoco of such. *Id.* Sunoco may also place an owner in pay status without a division order if there is enough information provided by a paydeck, although actual confirmation is preferred. *Id.* In such an instance, Sunoco pays even without a signed division order if it has at least minimal information necessary to make the payment, including a tax ID number. *Id.*

Until Sunoco has verified complete and correct information for each property and each payee, the proceeds are placed in suspense either for the entire property or for a specific payee or both. *Id.* at ¶ 9. Sunoco utilizes various codes that in general describe the reasons why a property or an individual payee is in suspense. *Id.*

### 3. The *Hull* Decision Does Not Render Sunoco's Use of Division Orders Illegal.

Plaintiff cites *Hull v. Sun Refining & Mktg. Co.*, 1989 OK 168, ¶ 9, 789 P.2d 1272, 1277, claiming that it makes it illegal for Sunoco to suspend royalty payments to owners that do not sign division orders. Motion at 9. Plaintiff is entirely wrong. First, the court in *Hull* was applying a 1985 statute that preceded the PRSA. Crucially, this statute was amended in 1989 to approve first purchasers asking payees to execute division orders prior to receiving proceeds payments. *This*

*amendment necessarily limited the application of* Hull *to the time period 1985-1989.* 789 P.2d at 1277 n.7. This was expressly recognized in the dissenting opinion, which recognized that the majority opinion would not apply after July 1, 1989, when the "[t]he new 1989 amendment to § 540, 52 O.S. Supp. 1989, § 540(B)," which "explicitly provides for the execution of division orders as a prerequisite for payment to royalty owners," took effect. *See id.* at 1281 (Simms, J., dissenting). Notably, § 540(B) is still the law of Oklahoma, now codified as 52 O.S. § 570.11. Thus, Plaintiff's reliance on *Hull* is entirely misplaced.

Second, Plaintiff misstates Sunoco's actual practice. As discussed above, although Sunoco often places owner payments in suspense until a signed and completed division order is returned, if the owner advises Sunoco that he simply refuses to sign a division order, Sunoco will remove the owner from suspense and commence payments with the information available (which is exactly what occurred in the case of Cline, although he did not advise Sunoco of his refusal until after the initial proceeds were "late" under the PRSA). Ex. A at ¶ 4; Ex. C at ¶ 8. Moreover, in most cases where division orders are unsigned and payments suspended, the cause is some title-related issue not initially known, such as the wrong payee as a result of assignment or death (resulting in the later change of the suspense code from unsigned division order to other codes). *See* Ex. C at ¶ 21.

### B.  The PRSA.

The PRSA was first enacted in 1992 and subsequently amended in 1993, 1995, 2010, and 2018. Prior to its enactment in 1992, the same subject matter regarding payment of oil and gas proceeds and interest was covered by predecessor statutes initially enacted in 1980 and amended in 1985 and 1989 at 52 O.S. § 540, whose terms were significantly different from the PRSA.

Although Plaintiff's Original Petition and Motion to Certify do not indicate a start date for the proposed class, Plaintiff's discovery requests in this case defined a "relevant time period" as commencing July 1, 1995. Ex. B at ¶ 5. The version of the statute in effect for most of the time

- 6 -

period at issue (and within the five years preceding the filing of this suit in 2017) is the version of the PRSA that will be addressed in most cases in this Response.  Ex. 35.

Although the basic payment provisions of the PRSA, 52 O.S. § 570.10, superficially appear simple, additional provisions greatly complicate matters.  The basic requirement for payment of oil and gas proceeds is as follows:

> B.  Except as otherwise provided in this section:
>
> 1.  Proceeds from the sale of oil or gas production from an oil or gas well shall be paid to persons legally entitled thereto:
>
> a.  commencing not later than six (6) months after the date of first sale, and
>
> b.  thereafter not later than the last day of the second succeeding month after the end of the month within which such production is sold.

52 O.S. § 570.10(B)(1).  This basic requirement is subject to various exceptions, including "minimum pay" provisions that excuse the two-month requirement if the amounts are small (less than $100), according to a complicated formula that, depending on the circumstances, allows payment to be made annually or sometimes even later.  *See* 52 O.S. § 570.10(B)(3).

Although the PRSA provides the specific timetables for when oil and gas *proceeds* must be "paid" or "remitted," the interest provisions of the statute do not specify a particular time for the *payment* of any interest on any late payment, or require contemporaneous payment of interest, but instead they state merely that the proceeds "shall earn interest."  52 O.S. § 570.10(D).  A 12% or 6% interest rate applies, depending on the cause of the delay.  The lower rate applies when the payment was late because title thereto is "not marketable."  52 O.S. § 570.10(D)(2).  As it turns out, title issues are often the reason why Sunoco and other companies hold proceeds in suspense, and they can take many years to resolve.  *See* Ex. C at ¶ 21.  The PRSA provides that "[m]arketability of title shall be determined in accordance with the title examination standards of the Oklahoma Bar Association."  52 O.S. § 570.10(D)(2).  These standards cover the waterfront

of title issues that may arise, particularly with respect to title to mineral interests.  The standards are Exhibit 36 in the Appendix.  The definition of marketable title is contained in § 1.1 of the Title Standards:  "A marketable title is one free from apparent defects, grave doubts and litigious uncertainty, and consist of both legal and equitable title fairly deducible of record."

Liability for interest is also allocated by the PRSA among various parties, not limited to the first purchaser (Sunoco).  Section 570.10(E)(1) provides that "[w]hen two or more persons fail to remit within such time limitations, liability for such interest shall be shared by those persons holding said proceeds in proportion to the time each person held such proceeds."  52 O.S. § 570.10(E)(1).  *See also id.* § 570.10(E)(2)(d) (same).

Finally, the PRSA expressly imposes liability on whatever party causes an incorrect royalty payment to be made, often corrected by later adjustments called prior period adjustments (PPAs).  Section 570.10(C)(4) provides as follows:  "Where royalty proceeds are paid incorrectly as a result of an error or omission, the party whose error or omission caused the incorrect royalty payments shall be liable for the additional royalty proceeds on such production and all resulting costs or damages incurred by the party making the incorrect payment."  52 O.S. § 570.10(C)(4).

## C.   Sunoco Almost Always Pays Timely, if Not *Early*.

Historically, Sunoco has been able to make almost all payments of proceeds within the two months following production and sale of oil to Sunoco.  Ex. C at ¶ 11.  In fact, Sunoco's computer systems are set up to make payments *one month* after the month the oil is sold to Sunoco.  *Id.* at ¶ 10.  Thus, Sunoco actually pays early, even though it might gain financially from waiting to pay until the second month after the month of sale, as the PRSA would allow.  52 O.S. § 570.10(B)(1).

More than **98%** of the money paid by Sunoco to interest owners on Oklahoma production from July 2007 to October 2018 (about $12 billion) has been paid to interest owners within two months after the month of production and sale to Sunoco.  Ex. C at ¶ 11. But for a variety of

- 8 -

reasons—including title issues, the minimum pay threshold, later prior period adjustments—some payments are not made within two months of the month of production and sale.  *Id.*  These relatively rare and anomalous situations are the subject of this lawsuit.

### D.   Sunoco's Interest Payment Practices Focus on Determining Whether Interest Is Due in Each Individual Circumstance.

Provisions of the PRSA provide for interest to be earned on payments of proceeds made later than the time periods set out in the PRSA.  Since the late 1980s, Sunoco has understood, consistent with the general understanding of others in the oil and gas industry, that the PRSA does not contain a specific provision regarding when interest should be paid.  Ex. C at ¶ 12.  Instead, the Oklahoma PRSA provides only that proceeds not timely paid "shall earn" interest, and that a first purchaser who fails to remit proceeds within the statutory time limitations "shall be liable to such owners for interest."  52 O.S. §§ 570.10(D)(1), (E)(1).  This language is very different from the PRSA provisions that set out the requirement that proceeds from the sale of oil "shall be paid" within certain time periods.  *See id.* §570.10(B)(1).  Sunoco was aware of nothing in the PRSA requiring interest to be paid at the same time proceeds are paid.  Ex. C at ¶ 12.

As a practical matter, it would be impossible to determine liability for interest, determine the proper statutory rate (6% or 12%), and calculate and pay interest accurately and automatically at the same time the actual proceeds are automatically distributed.  *Id.*  There are simply too many factors and considerations and exceptions that must go into the analysis of the PRSA provisions.[3] *Id.*  Therefore, it has been Sunoco's practice, consistent with the customary practice throughout

---

[3] Were Sunoco, for instance, to program its computers to calculate and pay interest automatically for every payment of proceeds that occurs more than two months after the production sales month, at 12% interest, Sunoco would be paying interest in most cases to persons who are not entitled to such interest under the various exceptions to the PRSA (including minimum pay) and would be overpaying interest to even those persons who were entitled to interest but only at the 6% rate.  Ex. C at ¶ 13.

- 9 -

**App.184**

the oil and gas industry, not to pay interest on "late" payments at the time of the "late" payment. *Id.* Instead, it has often (but not always) been Sunoco's practice to await a request for interest from any payee who believes it is entitled to it. *Id.* at ¶¶ 12-13. When a request is made, Sunoco will investigate the accounting data and division order file, attempting to determine whether interest was due and what the cause was for the delay. *Id.* at ¶ 12. If Sunoco concludes that interest is due, then it will calculate the interest earned as provided in the PRSA (making sure to apply the correct interest rate) and pay it to the requesting party. *Id.* In his declaration, Sunoco's Eric Koelling explains the many individual factors that Sunoco must investigate and consider in each instance to determine whether a payment is "late" under the PRSA, whether interest is owed, and if so, by whom and how much. *Id.* at ¶¶ 18-36.

Most payments by Sunoco are to working interest owners (including the producer operating the well), not royalty owners. *Id.* at ¶ 14. Most or all of those working interest owners are or should be familiar with the PRSA and its interest provisions. *Id.* Many royalty owners are also familiar with the PRSA, as shown by the fact that about 300 of them made a written request for interest to Sunoco during the five years preceding this suit. *Id.*

### E. The Oklahoma Supreme Court Has Not Declared Sunoco's "Business Policy" to Be "Unlawful."

Citing *Pummill v. Hancock Exploration LLC*, 2014 OK 97, 341 P.3d 69, Plaintiff claims that "the Oklahoma Supreme Court has addressed [Sunoco's] business policy [regarding interest] and declared it unlawful." Motion at 8. That is utterly false. Sunoco was not even a party to *Pummill*. Moreover, the case primarily involved the calculation and alleged underpayment of royalties. The issue of whether interest must be paid even without a demand, though technically in the case, was never contested on the merits at any level in *Pummill*, and was not even identified

as an issue on appeal to the Oklahoma Supreme Court.[4]  In fact, when it vacated the opinion of the court of appeals (which had affirmed summary judgment in the trial court on all issues), the Supreme Court specifically stated that "[t]he parties at the oral argument *affirmed that Issue IV* [regarding the trial court ruling on interest] *was not contested*."  *Pummill*, 341 P.3d 69 (Corrected Order) (emphasis added).  It is misleading for Plaintiff to claim that the Oklahoma Supreme Court "addressed" the issue, when all the Court did was affirm that the issue was not contested.  *Id*.

Plaintiff also wrongly relies on one sentence of the "Background" procedural history recitation in a second court of appeals opinion in *Pummill*, which followed remand from the Supreme Court and trial of other issues.  This second opinion has no precedential effect,[5] and did not even address interest (royalty underpayment claims were at issue in that appeal).  Moreover, the opinion expressly acknowledged that even in the trial court, the issue regarding interest "was not disputed."  *See* Ex. 10 to Motion, at 8.

Thus, the appellate decisions in *Pummill* simply do not support Plaintiff's position.  In reality, by citing *Pummill*, Plaintiff is relying on nothing more than a summary judgment holding by a county district court on an uncontested issue.  Notably, Plaintiff can cite no appellate court that has even referenced any of the *Pummill* decisions on the issue of statutory interest.

Plaintiff also fails to cite any authority for his incorrect claim that "even without *Pummill*"

---

[4] In the trial court in *Pummill*, the defendants did not challenge the plaintiff's "interest without demand" summary judgment issue IV on the merits.  Instead, the defendants argued that there was a lack of a "justiciable controversy" on the issue.  *See* Ex. 76 at 41-45.  The defendants never contested the trial court's Order as to interest (Issue 4) on appeal either.  *See* Ex. 77 (Petition in Error to Oklahoma Supreme Court) at Ex. C thereto; Ex. 78 (Petition for Writ of Certiorari in Oklahoma Supreme Court) at 1-2.  Thus, the issue of whether interest must be paid before or without a request for it was never briefed or argued in *Pummill*.

[5] The opinion was not approved for publication by the Oklahoma Supreme Court and thus has no precedential effect.  Sup. Ct. R. 1.200(d)(2).  As mentioned, the first court of appeals decision was "vacated" in its entirety by the Oklahoma Supreme Court.  *Pummill*, 2014 Ok 97, 341 P.3d 69.

**App.186**

a demand for interest requirement is in "clear derogation of the PRSA's plain language."  *See*

Motion at 8 n.3.  As discussed above, the statute does not expressly require *payment* of interest at

the time proceeds are paid late; instead, the statute merely specifies that proceeds "shall earn

interest."  *See* 52 O.S. § 570.10(D)(1).  Moreover, the drafters of the PRSA certainly understood

how to use the words "shall be paid," *see id.* § 570.10(B), but they did not use those words in

connection with the interest provision, nor specify a time for payment of interest.

## F. Sunoco's Accounting Data Is Not Capable of Identifying All Class Members, and Sunoco Did Not Admit That.

Contrary to Plaintiff's contention (Motion at 12), Defendants did not admit that their

accounting data alone provides sufficient information to identify members of the proposed class,

owners who received "Untimely Payments."  Plaintiff cites Defendant's Answer to Interrogatory

No. 2, but Defendants' Amended Answer to Plaintiff's Interrogatory No. 2 clarifies that

Defendants produced accounting data from which the answer to Interrogatory No. 2 "may *in part*

be ascertained or derived . . . ."  Ex. 3 (emphasis added).[6]  Likewise, when questioned about the

original answer to Interrogatory No. 2, Sunoco's Eric Koelling stated that "additional information

might be needed," including information concerning the "circumstances of the payment."  Ex. 6

at 176-177.  Sunoco's expert Eric Krause also testified that "the accounting data itself will not

entirely determine the answer to Interrogatory No. 2, but only in part" and that accounting data is

not "all that's necessary" to identify class members.  Ex. 15 at 209.

In any event, it is well-settled that "interrogatory responses are not binding judicial

---

[6] The Amended Interrogatory Answers indicate that they were verified and served on March 19, 2019.  Ex. 3.  Although, Plaintiff's counsel claims they "have not been able to locate a record" of the Amended Answers, Motion at 11 n.7, they were certainly aware of the amended answer to Interrogatory No. 2, as it was read into the record during questioning at the April 11, 2019 deposition of Sunoco's expert Eric Krause.  Ex. 15. at 208-209.

- 12 -

**App.187**

admissions." *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 527 n.21 (5th Cir. 2010); *accord Ray v. J.C. Penney Co.*, 274 F.2d 519, 521 (10th Cir. 1959) (refusing to allow an earlier interrogatory answer to stand because to do so "would have resulted in the perversion of the object of a trial which is, and always must be, to establish the truth."). Accordingly, Plaintiff's attempt to twist Defendants' original interrogatory answer into some type of judicial admission fails.

### G. The Unique Circumstances of Late Payments to Perry Cline and Sunoco's Payment of Interest to Him.

Sunoco is the first purchaser of oil from three Oklahoma wells in which the named Plaintiff Perry Cline owns an interest. Ex. A at ¶ 2. Sunoco has no record that Perry Cline or his representatives ever requested interest on any late payments of proceeds prior to his filing this lawsuit in 2017. *Id.* When it learned of this lawsuit, Sunoco undertook to investigate whether Cline may be owed interest. *Id.*

Sunoco determined that Cline had in fact been paid later than the six months allowed by the PRSA for new wells. *Id.* at ¶¶ 3-6. For the first two wells, Cline was paid "late" because he did not sign and return division orders or timely provide a signed W-9 form. *Id.* at ¶¶ 3-4. Sunoco did not hear from Perry Cline or his attorney at all in response to Sunoco's sending division orders to him until it was too late to meet the six-month deadline. *Id.* at ¶ 4. Perry Cline's lawyer, Tina Walker, finally contacted Sunoco by email and informed Sunoco that Perry Cline would not be signing Sunoco's division order, and requested that Perry Cline be put in pay status. *Id.*; Ex. 27. After Sunoco received a W-9 form signed by Perry Cline (Ex. 29), it paid Cline his accumulated proceeds.[7] Ex. A at ¶ 4. Had Perry Cline or his lawyer contacted Sunoco earlier, after receiving any one of the division orders sent to him, to advise he would not sign the division orders and to

---

[7] A similar scenario played out with respect to the third well, with Cline and his lawyer not responding at all to division orders sent by Sunoco. Ex. A at ¶¶ 5-6.

- 13 -

**App.188**

provide a signed W-9 form, Sunoco would have placed Perry Cline in pay status and timely paid him proceeds within six months of the first sale of production from the wells. *Id.*

On December 19, 2017, Sunoco sent Perry Cline a check for $1,886.54, representing more than the amount of interest owed to him for the proceeds from the three wells not paid prior to the end of the applicable time periods provided in the PRSA.  Ex. A at ¶¶ 7-9.  The check was accompanied by a letter explaining the calculations (and date ranges of interest payment), with a copy to Cline's counsel of record.  *Id.* at ¶ 8; Ex. 1.  As stated in the letter, the payment was and is unconditional.  Ex. 1.  Based on this payment, Sunoco has filed a motion to dismiss for lack of subject matter jurisdiction based on mootness.  Doc. 103.

If Perry Cline or his representatives had contacted Sunoco to request interest instead of filing a lawsuit, Sunoco would have investigated the circumstances and paid him.  Ex. A at ¶ 10.

### H.    Plaintiff's Proposed Class Definition.

The class definition in Plaintiff's Motion is identical to the class definition in Plaintiff's Original Petition (Doc. 2-2 at ¶21.)  The Motion proposes to certify the following class:

> All non-excluded persons or entities who: (1) received Untimely Payments from Defendants (or Defendants' designees) for O&G Proceeds from Oklahoma Wells; and (2) whose payments did not include the statutory interest.

As in his petition, Plaintiff proposes only the following exclusions from the class:  instrumentalities of the United States and the state of Oklahoma, "publically traded oil and gas companies and their affiliates," persons that Plaintiff's counsel may be prohibited by ethics rules from representing, and officers of the court.  Motion at 24.

The class definition does not on its face define the capitalized terms included in the definition.  Plaintiff presumably intends to use the definitions in his Original Petition.  The petition defines "O&G Proceeds" as "oil and gas production proceeds."  Doc. 2-2 at ¶ 1.  The petition defines "Untimely Payments" as payments not in compliance with the PRSA, and specifically

- 14 -

**App.189**

"proceeds from the sale of oil or gas production or some portion of such proceeds [that] are not paid prior to the end of the applicable time periods provided" by the PRSA.  *Id.* at ¶ 5.

Because of the many facets and exceptions in the statute, determining what payments are "untimely" in violation of the PRSA is not a simple task.  Plaintiff has retained an accountant, Barbara A. Ley, to attempt to do so using Sunoco's payment history data.  In an apparent concession of the intractable difficulty of identifying "Untimely Payments" (and thus class members), Ley has announced that certain categories of payments by Sunoco are, or will be, "exclude[ed]" from her "methodology for identifying class members and for calculating class damages." Ley Rebuttal Report (Ex. 16 to Motion) at 3 n.3.  These include:  (i) all gas purchases; (ii) minimum pay; (iii) prior period adjustments; and (iv) pass-through payments.  *Id.*  In her Rebuttal Report, Ley further stated that Plaintiff's counsel had "instructed" her to exclude these transactions, and that she understood that "Plaintiff intends to clarify the nature of his asserted class claims through and amended definition of 'Untimely Payments' and/or an amended class definition." *Id.*

Plaintiff has not actually done so.  Indeed, Plaintiff's Motion makes no changes whatsoever to the original claims and class definition contained in the Original Petition (Doc. 2.2).  Thus, Sunoco can only assume that Plaintiff's counsel changed their minds between the time of the Ley Rebuttal Report and the filing of the Motion.  Certainly, Sunoco and this Court must assess the class certification issue based upon the claims actually asserted in the live petition and the class definition contained in the petition and motion to certify.  Neither Sunoco nor the Court can rely upon the statements or predictions by Plaintiff's expert about what the claims are and what the class is, when those statements are at odds with the formal position taken by Plaintiff in his filings.

It is also possible that Plaintiff's counsel is simply engaged in litigation gamesmanship.

**App.190**

Perhaps counsel means to induce Sunoco into not addressing the claims Ley says will be dropped. Or perhaps counsel is waiting to drop those claims in the reply brief, so as to force Sunoco expend resources and space responding to them here.   This court should not countenance this gamesmanship.  Plaintiff should be estopped from attempting to drop claims and redefine the class after the filing of the Motion, upon which Sunoco must necessarily rely in preparing its response. *See, e.g.*, *Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399, 409 (M.D. Fla. 2004) (refusing to certify revised class definition proposed for first time in reply brief).

## III.    STANDARD OF REVIEW

A party seeking certification of a class must clear several hurdles.  As an initial matter, he must demonstrate that each of the class prerequisites under Rule 23(a) are satisfied:

(1)      the class is so numerous that **joinder** of all members is impracticable;

(2)      there are questions of law or fact **common** to the class;

(3)      the claims or defenses of the representative parties are **typical** of the claims or defenses of the class; and

(4)      the representative parties will fairly and **adequately** protect the interests of the class.

Fed. R. Civ. P. 23(a).

Next, he must demonstrate that the proposed class comes within at least one of the provisions of Rule 23(b).  Here, Plaintiff relies on Rule 23(b)(3), which applies when "the court finds that the questions of law or fact common to class members **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added).

A party seeking certification under Rule 23(b)(3) must also show that the class is "'currently and readily ascertainable based on objective criteria.'"  *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013).  "If class members are impossible to identify without extensive and

- 16 -
**App.191**

individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* A party cannot justify class certification based on unsupported assertions that the proposed class meets the requirements of Rule 23. *Id.* (Rule 23 is more than "a mere pleading standard"). He must instead present "evidentiary proof" demonstrating that the requirements of Rule 23(a) and (b)(3) are met. *Id.*

The United States Supreme Court "ha[s] emphasized that … certification is proper only if 'the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* (emphasis added). *See also Harper v. C.R. England, Inc.*, 746 F. App'x 712, 719 (10th Cir. 2018); *Shook v. El Paso County*, 386 F.3d 963, 971 (10th Cir. 2004) (The court must "carefully apply the requirements of Rule 23(a).").

The same principles apply to a court's consideration under Rule 23(b)(3). "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, 133 S.Ct. at 1432. Because Rule 23(b)(3) "is designed for situations in which class-action treatment is not as clearly called for," the court has a "duty to take a 'close look' at whether common questions predominate over individual ones." *Id.* (internal quotations omitted).

## IV.   ARGUMENT AND AUTHORITIES

### A.   The Court Should Deny the Motion Because the Class Members Are Not Reasonably Ascertainable.

"[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria."

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* at 593. As the Third Circuit explained, the

> ascertainability requirement serves several important objectives. First, it eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members. Second, it protects absent class members by facilitating the best notice practicable under Rule 23(c)(2) in a Rule 23(b)(3) action. Third, it protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable.

*Id.* Accordingly, "[a]scertainability mandates a rigorous approach at the outset because of the key roles it plays as part of a Rule 23(b)(3) class action lawsuit." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013). "'A critical need' of the trial court *at certification*' is to determine "how the class is to be ascertained." *Id.* at 306-07 (emphasis added).

"The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015); *accord In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig.*, 2014 WL 104964, at *2 (W.D. Okla. Jan. 9, 2014) (citing *Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). "'Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry.'" *Carrerra*, 727 F.3d at 307-08.

As shown below, Plaintiff's proposed definition fails both prongs of the ascertainability test, which by itself warrants denial of the Motion. *See Cole v. ASARCO, Inc.*, 256 F.R.D. 690, 696-97 (N.D. Okla. 2010) ("Absent a cognizable class, determining whether plaintiffs or the putative class satisfy the other Rule 23(a) and (b) requirements is unnecessary."); *Warnick* v. *Dish Network LLC,* 301 F.R.D. 551, 555 (D. Colo. 2014) (citing *Carrera* and denying class certification

for lack of ascertainability); *McKnight v. Linn Operating, Inc.*, 2016 WL 756541, at *8 (W.D. Okla. Feb. 25, 2016) ("'If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.'  That is the case here." (quoting *Marcus*)).[8]

## 1.    The Proposed Class Cannot Be Ascertained Objectively and Would Be an Impermissible Fail-Safe Class.

Plaintiff's proposed class definition would require an individualized determination of what payments were "untimely" under the PRSA, making the class not readily ascertainable. Furthermore, because a merits determination would be required to determine who is in the class, the class definition is an impermissible "fail-safe" class.  *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (defining a fail-safe class as one in which qualification as a class member depends on whether that person has a valid claim).

Plaintiff defines the putative class as persons or entities (i) who "received Untimely Payments" *as determined by the PRSA*, and (ii) whose payments did not include "the statutory interest" *allegedly due therefor under the PRSA*.  Doc. 2-2 at ¶¶ 5, 21.  Plaintiff's proposed definition does not permit determination of putative class members at the outset, but instead requires application of the PRSA to each putative class member and every alleged untimely payment.  This is improper and requires denial of the Motion.

Plaintiff's putative class definition means that class membership cannot be determined until *after* the merits of each alleged untimely payment claim is decided.  Determining whether a payment was untimely under the PRSA (the first part of Plaintiff's class definition) is a multi-step

---

[8] *See also Henderson v. Trans Union LLC*, 2016 WL 2344786 (E.D. Va. 2016) (limiting class definition to avoid "mini-trials" for ascertainability); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358-60 (4th Cir. 2014) (reversing certification of Virginia royalty class as not "sufficiently ascertainable").

inquiry which cannot occur until after each alleged untimely payment, payment history, reasons for any alleged delay, and possible defenses are scrutinized.  For example, a payment that might appear untimely under the general two-month requirement of § 570.10(B)(1) might actually be timely if the payment is a release of funds that have been held in suspense under the minimum pay provisions of § 570.10(B)(3).  But whether a minimum suspense release is timely will in turn depend upon application of the complicated formula set out in § 570.10(B)(3) to individual facts, such as whether the payee requested (or was even entitled to request) annual or monthly payment of the suspense funds.  As for "statutory interest" (the second part of Plaintiff's class definition), whether it was earned even on an untimely payment can turn on whether it was another party's "error or omission" that caused the late payment (§ 570.10(C)(4)).  And so on.  Indeed, these are just a few of the individual questions that must be answered before one can determine whether any given person is even in the class.[9]  *See* Ex. C at ¶¶ 18-36 (detailing and explaining the "[m]any individual circumstances [that] impact whether a payment was 'untimely' and whether interest is earned" under the PRSA); Ex. D (same).  *They also happen to be the exact same questions the trier of fact would have to answer to adjudicate a claim under the PRSA*.

Courts have readily denied certification under these circumstances, holding that definitions such as what Plaintiff proposes would create an improper "fail-safe" class.  *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 547 (1947) (need to identify members of the class *before* a trial on the merits); *Manual for Complex Litigation* (Fourth) § 21.222 (class definitions should not

---

[9] Plaintiff contends that his retained expert Ley has developed a methodology for identifying class members without resort to individualized inquiry.  Motion at 15-16.  But as explained in Sunoco's contemporaneously-filed Motion to Exclude the Reports and Opinions of Plaintiff's Proposed Expert, Barbara A. Ley ("Defendants' Motion to Exclude Ley"), Ley's methodology is faulty and unreliable and does not demonstrate that the proposed class is readily ascertainable.  *See also* Ex. D at ¶¶ 18-20, 66-77, 83-84; Ex. 58 at ¶¶ 14-15, 122-51.

- 20 -

include terms that depend on resolution of the merits); *Messner*, 669 F. 3d at 825 ("[A] 'fail-safe' class [is] one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.  Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.").[10]

Regardless of the label (whether "unascertainable" or "fail-safe"), because Plaintiff's putative class definition *requires* mini-trials and individualized inquiries, it cannot be certified.[11]

## 2. The Class Is Not Clearly Identifiable by Potential Class Members.

A class definition must be precise and objective.  Moore's Federal Practice, *Class Actions*, § 23.21[3][a] n.4 (definition should avoid subjective standards).  It must allow potential class members to identify themselves as members (or not) *simply by reviewing the definition*.  1 *Newberg on Class Actions* § 7:26, 139 (5th ed. 2013) ("[A clear class definition] enables potential class members to ascertain whether they are in the class.").

Plaintiff's proposed class definition fails to meet these standards.  Putative class members *cannot* simply review the class definition and determine whether they are (or are not) in the proposed class.  This is true because the putative class definition does not even define "Untimely Payment."  But even if it were assumed to be a payment violating the PRSA, a putative class

---

[10] *See also In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015); *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011); *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010); *Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015).

[11] Ascertaining the composition of Plaintiff's proposed putative class is additionally complicated by its unascertainable exclusions.  The putative class definition excludes (1) agencies or instrumentalities of the United States or Oklahoma, (2) publicly traded oil and gas companies, and their affiliates, (3) persons Plaintiff's counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct, and (4) officers of the court. Doc. 2-2 at ¶ 21. Even identifying those who should be excluded is an individualized, time-consuming proposition for which Plaintiff has not identified a solution. Ex. 4 at Resp. No. 3; Ex. 51 (list of "probable" exclusions).

member would be unable to determine whether an alleged payment was untimely (and whether he

was entitled to "statutory interest," the other part of Plaintiff's proposed definition) absent the kind

of in-depth factual and merits analysis just discussed.[12]   Thus, Plaintiff has not properly defined

the putative class, and the Motion should be denied due to lack of ascertainability.

## B.   Common Questions Do Not Predominate Over Individual Questions of Law and Fact, as Required For Certification Under Rule 23(b)(3).

Besides the requirements of Rule 23(a), the key question on this class motion is whether

the plaintiff can satisfy the Rule 23(b)(3) requirement that "questions of law or fact common to

class members **predominate** over any questions affecting only individual class members." Fed.

R. Civ. P. 23(b)(3) (emphasis added).  According to the Supreme Court, the predominance criterion

"is even more demanding than [the] Rule 23(a)" prerequisites for class certification, and it

obligates courts to take "a 'close look' at whether common questions predominate over individual

ones." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *accord Amchem Prods., Inc. v.

Windsor*, 521 U.S. 591, 623-24 (1997) (the predominance criterion is "far more demanding" than

Rule 23(a)'s commonality requirement).  The predominance requirement focuses "on whether

essential elements of the class's claims can be proven at trial with common, as opposed to

individualized, evidence." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013).  Rule

23(b)(3)'s predominance requirement "regularly presents the greatest obstacle to class

---

[12] Changing the class definition to include every individual or entity that allegedly received a *facially* untimely payment (more than 60 days after the end of the month of sale), but without properly applying the PRSA, would not solve Plaintiff's problem.  Indeed, that sort of class could not be certified because it would include a multitude of individuals who have *no claim and no standing*.  *Messner* v. *Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir.) ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant."); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf. Each class member must have standing . . . .").

certification." *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

### 1. Individual Rather Than Common Questions Predominate as to PRSA Liability.

Plaintiff greatly oversimplifies the task of determining liability under the PRSA.  In truth, the many provisions, exceptions, and cross-references within the PRSA require consideration of myriad individualized factors with respect to any given claim for interest.  Sunoco's witnesses who have experience handling such claims have uniformly attested to this, as has Sunoco's expert Eric Krause.  *See* Ex C at ¶¶ 18-36 (declaration by Sunoco's Eric Koelling explaining the many individual circumstances that Sunoco analysts consider when handling a request for interest); Ex. 7 at 229-30 (Koelling corporate representative deposition explaining same); Ex. D (declaration of Krause explaining same); Exs. 6-8, 10-13, 15 (deposition excerpts).  Below is a list of some of the individualized issues the Court would need to sort through in order to resolve a claim for interest as to any particular payment.

### i. Six Month Grace Period.

The Court would need to determine whether a payment made more than 60 days after the end of the month of sale of production was for a "first sale" from a well, in which case Sunoco had *six months* to pay proceeds, not two months.  52 O.S. § 570.10 (B)(1)(a).  This information is not necessarily available in Sunoco's computer system because Sunoco is not always the first purchaser from a well.  Ex. C at ¶ 19.  It would require manual research and a possible inquiry to the Oklahoma Corporation Commission to determine whether any particular payment was subject to the six month grace period.  *Id.*

### ii. Unmarketable Title – 6% Interest.

The Court would need to determine whether proceeds were suspended because the title was not marketable, in which case proceeds earn interest at a rate of 6%, not 12%.  52 O.S. § 570.10(D)(2)(a).  This determination would also require an individualized inquiry.  Ex. C at ¶¶ 20-21.  While Plaintiff's retained accountant Ley has

speculated that Sunoco's suspense codes could easily be used to identify 6% payees, they cannot. *Id.* at ¶ 21. The codes were not designed for that purpose, they are too general, and at most they serve only as possible indicators of title issues. *Id.* Sometimes they even mask title issues, since only one code can be used at a time and often there are multiple reasons a payee is in suspense. *See id.* The only way to determine conclusively whether a given payment was delayed "because the title thereto [was] not marketable" would involve a manual review of the pertinent division order file, including any relevant emails, correspondence, title opinions, division orders, and other documents, and possibly further investigation. *See id.* at ¶¶ 16, 20.

    **iii.**    **Minimum Suspense.** The Court would need to individually determine whether any payment made more than two months after the production is sold (or six months after first sale) falls within the minimum pay provisions of the PRSA, in which case interest would not be owed. Section 570.10(B)(3) has a complex set of requirements allowing proceeds to be paid annually or sometimes even later if the amounts are less than $100. Sunoco places such small amounts in "minimum suspense" until they accumulate sufficiently. Ex. C at ¶ 24. When proceeds are paid, Sunoco's computer systems do not then reflect whether the proceeds were, to that point, being held in minimum suspense. *Id.* Although Plaintiff's accountant Ley has acknowledged the need to identify and exclude these "minimum suspense" payments in her damages model, she has been unable to do so. *See* Defendants' Motion to Exclude Ley (filed contemporaneously herewith).

    **iv.**    **Waiver of Interest.** The Court would need to individually determine if there is a signed division order that expressly exempts the duty to pay interest in the event there is a marketable title issue or if a payee has otherwise agreed verbally or in writing (in a lease, division order, joint operating agreement, or oil purchase contract) that Sunoco does not have to pay interest or can pay by a different deadline. Ex. C at ¶ 25.

**v.** **Pass-Through Payments.** The Court would need to individually determine if a royalty payment made more than two months after the sale (or six months after first sale) is actually the result of another party holding the proceeds during the delay. 52 O.S. § 570.10 (E)(2)(d) (when two or more persons fail to remit, liability shall be shared by such persons in proportion to the time each person held such proceeds). For example, producers sometimes have Sunoco distribute proceeds of payments by natural gas purchasers who purchase gas from the same wells that Sunoco purchases the oil. Ex. C ¶ 26. Gas purchasers often provide Sunoco proceeds to pay royalty interest owners late, and even though Sunoco distributes those funds the same month received, the payments may be more than two months after the month the natural gas is produced and sold. *Id.*

**vi.** **Prior Period Adjustments.** The Court would need to individually determine if a royalty payment made more than two months after the sale (or six months after first sale) is actually the result of having to correct an incorrect payment caused by another's "error or omission," in which case Sunoco would not be liable for interest. 52 O.S. § 570.10(C)(4) (when royalty proceeds are paid incorrectly as a result of an error or omission, the party whose error or omission caused the incorrect payment shall be liable). In his declaration, Sunoco's Eric Koelling provides detailed examples of such payments, which are often called "prior period adjustments." Ex. C at ¶¶ 27-34.

> **2. Damages Are Individualized and Not Capable of Classwide Determination Using Any Classwide Methodology.**

The United States Supreme Court has held that a class should not be certified under Rule 23(b)(3) unless "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133. S. Ct. 1426, 1433 (2013). If a party seeking certification cannot show that damages are capable of measurement on a classwide basis, then certification should be denied because "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.*; *see also NBL Flooring, Inc. v. Trumbull Ins. Co.*, 2014 WL 615967, at *5-6 (E.D.

Pa. Feb. 12, 2014) (denying a motion to certify a class where "damages [we]re not capable of measurement on a class-wide basis"); *Folks v. State Farm Mut. Auto. Ins. Co.*, 281 F.R.D. 608, 620 (D. Colo. 2012) (denying certification of class action involving breach of contract claims when calculating damages may have required individualized analysis).

Here, with respect to damages, Plaintiff relies exclusively on his retained accountant Barbara A. Ley.  Motion at 22.  By separate motion filed contemporaneously herewith, Sunoco is moving to exclude the reports and opinions of Ley, which are irrelevant, incomplete, and unreliable.  *See* Defendants' Motion to Exclude Ley.  As shown in that motion, Ley's damages methodology is incomplete, faulty, and unreliable.  *See also* Ex. D at ¶¶ 66-77; Ex. 58 at ¶¶ 122-51.  The simple truth is that numerous individualized questions—e.g., was title unmarketable, is liability for interest to be proportionately shared with another—will impact the calculation of any damages, rendering class certification improper.  *See O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 744-45 (5th Cir. 2003) ("Where the plaintiffs' damage claims 'focus almost entirely on facts and issues specific to individuals rather than the class as a whole,' the potential exists that the class action may 'degenerate in practice into multiple lawsuits separately tried.'  In such cases, class certification is inappropriate." (internal citations omitted).

> **3.** **Sunoco's Pleaded Defenses Create Individual Questions of Law and Fact That Will Predominate.**

Sunoco has pleaded numerous defenses to liability and damages that must be decided by the Court, likely individual to each class member's claim, that will overwhelm any common questions of law and fact.  *See* Doc. 23 at ¶¶ 73-118.  Although Plaintiff may have the burden of proof on some of those issues, Sunoco will have the burden on others.  In either event, the pleaded issues create numerous individual issues of law and fact.  *See, e.g.*, Ex. 7 at 187-303.

For example, waiver and estoppel are among the defenses pleaded by Sunoco.  In *In re*

*Tulsa Energy, Inc*., 111 F.3d 88 (10th Cir. 1997), the Tenth Circuit, applying the pre-PRSA payment statute, 52 O.S. § 540, held that a division order provision that waived interest for suspended proceeds "in event of title dispute" was not against Oklahoma public policy or contrary to the Oklahoma statute.  Here, each division order with each payee in the putative class and each contract between Sunoco and the operator/producer/working interest owner must be examined for similar waiver provisions.  In fact, most of Sunoco's purchase contracts with producers, which form the basis for Sunoco's payments to those producers (which are included in the putative class and receive the lion's share of the payments) have various provisions that impose information obligations on the producer and protective terms for Sunoco in connection with distribution of oil proceeds to the producer and other payees.  *See, e.g*., Ex. C at ¶ 36; Ex. D. at ¶¶ 28-29; Ex. 58 at ¶¶ 28-34.

In addition, because the PRSA, as well as Sunoco's contracts with producers, create the likelihood of third-party liability to members of the putative class, the need to determine the liability of third parties creates numerous individual questions that threaten to overwhelm the litigation.  For instance, if the class is certified, Sunoco will have the right to bring third-party actions against hundreds and perhaps thousands of individual producers whose contracts with Sunoco require those producers to indemnify Sunoco for any liabilities Sunoco incurs in paying the royalty owners of those producers.  Ex. C at ¶ 36.  A determination of those third-party actions will require individualized inquiry into the terms of the oil purchase contracts between Sunoco and each producer (whose terms vary from producer to producer).  *Id.*  Further, the circumstances that may have resulted in a "late" payment will have to be determined royalty owner by royalty owner to assess whether the third-party producer may be required to assume or share in any liability by the terms of the PRSA, or pursuant to the contractual terms between Sunoco and the producers.

### 4.   The Fraud Claim Should Not Be Certified Because of Individual Questions Including Knowledge and Reliance.

Plaintiff purports to plead a fraud claim.  Doc. 2-2 at ¶¶ 51-56.  Plaintiff does not actually plead any misstatements or omissions by Sunoco, but his retained accountant Ley has opined that Sunoco's check stubs did not "directly alert" owners that interest was owed (even though the check stubs do contain the underlying sales date, which would permit anyone to conclude that interest might be owed).  Ex. 15 to Motion, at ¶ 19; Ex. 14 at 152-54.

The fraud claim should not be certified for all of the reasons that the PRSA statutory claims should not be certified, including individual questions as to whether a given payment was "untimely" and whether interest was owed and at what rate.  In addition, the fraud claim should not be certified because individual questions of knowledge and reliance will necessarily predominate.  The element of reliance means that fraud claims are "seldom amenable to class certification." *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 247 (W.D. Pa. 2008); *accord In re St. Jude Med., Inc.*, 522 F.3d 836, 838 (8th Cir. 2008) ("Because proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment."); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) ("[A] fraud class action cannot be certified when individual reliance will be an issue."); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 n.6 (2011).

In Oklahoma, "both actual fraud and constructive fraud require detrimental reliance by the person complaining." *Howell v. Texaco Inc.*, 2004 OK 92, ¶ 32, 112 P.3d 1154, 1161.  This reliance element is fatal to class certification.  Plaintiff alleges that Sunoco "suppressed the fact that interest was owed to Plaintiff and the Class members" (presumably through its check stubs) Doc. 2-2 at ¶ 54.  But whether the putative class members actually relied on any Sunoco check

stub to conclude that no interest was owed is necessarily an individual question.  Many payees are producers or working interest owners who are familiar with the PRSA and could readily perceive from Sunoco's check stubs—which, again, display the underlying sales date—whether the payment might be late and interest owed.  *See* Ex. C at ¶ 14; Ex. 14 at 152-54.  Many royalty owners are also familiar with the PRSA, as shown by the fact that over 300 of them made written request for interest to Sunoco during the five years preceding suit.  Ex. C at ¶ 14.  Plaintiff Perry Cline himself made a written request for interest to the payor of gas proceeds to him, DCP, in March 2016.  Ex. 5.  In short, the proposed class members' reliance on Sunoco's alleged fraud of not affirmatively announcing that "interest was owed" is an individual question that will turn on each person or entity's knowledge of the PRSA and the right to interest, rendering certification inappropriate.

> **5.    The Equitable Claims for Accounting and Disgorgement and Injunctive Relief Create Innumerable Individual Questions of Balancing the Equities as to Each Putative Class Member.**

Plaintiff also asserts an equitable claim for "accounting and disgorgement" and a claim for "injunctive relief."  Doc. 2-2 at ¶¶ 58-70.  Both of these claims are equitable in nature, and as such, raise issues of equity and balancing of equities that are necessarily individual as to each member of the class and Sunoco's treatment of each member of the putative class.

For Plaintiff's claims for an accounting and an injunction, success on both claims is contingent upon there being no adequate remedy at law.  *See TMBRS Prop. Holdings, LLC v. Conte*, 2018 WL 2988663, at *1 (N.D. Okla. May 7, 2018) (accounting); *Securities and Exchange Commission v. Gilder*, 2014 WL 1628474, at *3 (D. Colo. 2014) (injunction).  Because Plaintiff has an adequate remedy at law under the PRSA, he cannot pursue a claim for an accounting or injunction. 52 Okla. Stat. § 903 (PRSA is exclusive and adequate remedy).  Thus, the Court should decline to exercise its equitable jurisdiction here, just as it did recently in another royalty class

action where PRSA and breach of contract claims provided an adequate remedy at law. *See Reirdon v. Cimarex Energy Co.*, 2019 WL 2610115 (E.D. Okla. June 25, 2019).

But if these equitable claims somehow survive a motion for summary judgment, they cannot be tried on a classwide basis because of the individual factual circumstances—i.e., the reasons for each late payment and whether it was the fault of Sunoco—the Court would have to consider in order to weigh the equities of requiring an accounting or issuing an injunction.

### 6.      Individual Questions Should Preclude Certifying a Class Prior to the Five-Year PRSA Statute Of Limitations.

In all events, no class should be certified for "Untimely Payments" received more than five years prior to suit because of the PRSA's five-year statute of limitations and the individual questions necessary to determine whether limitations was tolled as to each putative class member. The PRSA expressly limits recovery to the five-year period prior to the filing of the action. 52 O.S. § 570.14(D). This suit was filed on July 7, 2017, and no class can be certified for "Untimely Payments" of oil and gas proceeds made prior to July 7, 2012. Sunoco has pleaded limitations as a defense. Doc. 23 at ¶ 76. In answers to contention interrogatories, Plaintiff stated that he sought to certify a class for claims from July 1, 1995, to the present. Ex. 4 at Resp. No. 1. Plaintiff stated that "the doctrines of equitable estoppel or tolling, the discovery rule, and/or other theories may apply to toll the running of any statute of limitations." *Id.* at Resp. No. 2.

To toll limitations, Plaintiff must show lack of knowledge and reasonable diligence by payees for the discovery rule, and reliance for fraudulent concealment.[13]   Individual inquiry of each class member would be required to establish whether each person knew of the "lateness" of

---

[13] "Oklahoma courts follow the discovery rule, which 'allow[s] limitations in tort cases to be tolled until the injured party knows, or in the exercise of reasonable diligence, should have known of the injury.'" *Chieftain Royalty Co. v. BP Am. Prod. Co.*, 2017 WL 5012586, at *7 (E.D. Okla. Nov. 2, 2017). "Reasonable diligence" is "a fact-based question." *Id.*

- 30 -

proceeds payments from the face of the check stub information and whether each person could see that no interest was included, and whether they were aware of the interest provisions of the PRSA. The knowledge of each payee is an individual question of fact that should defeat certification.  In a post-production deduction royalty class action, Judge Heaton in the Western District of Oklahoma would only certify a class conditional on plaintiffs agreeing to limit the class to payments in the five years before suit.  The court explained:

> If, for example, the court is required to determine when particular class members discovered, or should have discovered, their potential basis for their claim, that may impact the determinations as to predominance of common questions or of the superiority of a class action as a means of resolving these disputes.

*See* Order, Doc. 174, *Naylor Farms v. Chaparral Energy*, No. CIV-11-0634-HE (March 30, 2017). This class certification limited to five years was recently affirmed.  *Naylor Farms v. Chaparral Energy, LLC*, 923 F.3d 779 (10th Cir. 2019).  Other courts have declined to certify classes when tolling of limitations based on the discovery rule or fraudulent concealment is alleged.[14]

### C.   The Class Action Is Not "Superior" to Individual Resolutions of the Controversy, as Required by Rule 23(b)(3).

Rule 23(b)(3) also requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "The rule asks us to balance, in terms of fairness and efficiency, the merits of a class action against those of

---

[14] *See Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 339 (5th Cir. 2019) ("The district court did not consider the statute of limitations and tolling question in its predominance analysis, so it abused its discretion when it determined that common questions would predominate over individual issues and certified the class."); *Hall v. Burger King Corp.*, 1992 WL 372354, at *9 (S.D. Fla. Oct. 26, 1992) (denying the plaintiff's motion for class certification / "The defense of the statute of limitations raises a plethora of yet additional individual issues . . . .") & n.8 (collecting cases / "Claims of fraudulent concealment involve highly individualized questions of fact and at a minimum, the questions of exercise of due diligence and success of concealment would have to be answered on an individual basis for each class member.  Accordingly, claims of fraudulent concealment cannot properly be tried on a class-wide basis." (internal quotation marks and citations omitted)).

'alternative available methods' of adjudication." *Georgine v. Amchem Prods.*, 83 F.3d 610, 632 (3d Cir. 1996) *aff'd sub nom.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

The recipients of the largest payments from Sunoco are producers, working interest owners, or very large royalty owners, all of which are capable of representing their own interests and resolving any claims they have directly with Sunoco through requests for payment, negotiation, or litigation. *See* Ex. C at ¶¶ 6, 14; Ex. D at ¶ 31 (90% of money paid by Sunoco is to working interest owners), 27 n.43 (in Ley's damages estimate, about 10% of the owners would receive 90% of the alleged damages). Thus, for most of the money at stake, individual actions would be superior to any class action. A class action has the additional drawback that any individual recoveries will be burdened by the substantial attorney's fee reduction that Plaintiff's lawyers are likely to seek in this case (likely between 20% and 40% of any recovery).

An important factor in determining superiority is "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). For all of the reasons described in detail above, this case is not manageable on a classwide basis without trampling on the due process rights of the defendants. A classwide trial would necessarily degenerate into countless individual mini-trials focusing on the various individual questions applicable to each class member, making the case unmanageable.

### D.   The Prerequisites of Rule 23(a) for a Class Certification Have Not Been Satisfied.

#### 1.   The Claimed "Common" Questions of Law or Fact Will Not Generate Common Answers for All Members of the Putative Class.

To show that class certification is warranted, Plaintiff must prove that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Proving commonality requires more than simply identifying common questions, since "'[a]ny competently crafted class complaint literally raises common 'questions.'" *Wal-Mart, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "'What matters to class certification . . . is not the raising of common 'questions'—even in

droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (emphasis original).

Here, the alleged "common" questions at the center of this case—whether each class member received "Untimely Payments" and is entitled to "statutory interest"—cannot be resolved on a class-wide basis through common proof, because those questions necessarily turn on the many individualized factors discussed above. Accordingly, Plaintiff has not and cannot satisfy the commonality requirement.

### 2. The Claims and Defenses for the Named Plaintiff Perry Cline Are Not "Typical of the Claims or Defenses of the Class."

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." In considering typicality, a court evaluates "whether 'the named plaintiff[s'] individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 185 (3d Cir. 2001).

Here, Plaintiff offers nothing but a bare assertion that he satisfies typicality. In reality, he does not. The many individualized questions that predominate as to liability and damages necessarily preclude a finding of typicality. Moreover, Plaintiff Perry Cline differs in another very important respect from the members of the putative class he purports to represent: he is not one of them. This is so because Plaintiff's proposed class definition covers only persons who did not receive payment of statutory interest. Motion at 24. As explained above, following the filing of this suit, Sunoco investigated the circumstances of the payments to Perry Cline, calculated interest, and paid Cline. *See supra* at 13-14. Cline has admitted that the amount paid to him, $1,886.54, is what he claims in damages in this lawsuit. *See* Ex. 2. Thus, Cline, *unlike* the persons he purports to represent, has received full payment. He is thus hardly "typical." *Gen. Tel. Co. of Sw. v. Falcon*,

457 U.S. 147, 156 (1982) ("We have repeatedly held that 'a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.'").

Sunoco has filed a motion to dismiss Cline's individual claims, as well as the class claims, on the ground that Cline has no standing because his own claim is moot.  Doc. 103.  If the Court grants that motion, then this case will be at an end, and it will be unnecessary for the Court to rule on Plaintiff's Motion to Certify.  But if the court denies Sunoco's motion, then it should in any event find that Cline's claim is not "typical" of the claims of other putative class members who have *not* been paid interest for any late payments.  "A representative's individual claim must be typical of the claims of the class members he seeks to represent.  By definition, **class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23**."  *Rector v. City & County of Denver*, 348 F.3d 935, 949-50 (10th Cir. 2003) (emphasis added).

As to typicality, the Court must also consider whether the representative's interest or claims are antagonistic or adverse to those of the class.  *Cherokee Nation of Okla. v. United States*, 199 F.R.D. 357, 364 (E.D. Okla. 2001).  Here, there is a deep and significant adversity between Cline as a royalty owner and other members of the putative class who are working interest owners.  For example, Cline's class claims could trigger an obligation on behalf of many of those same working interest owners to indemnify Sunoco.  Ex. C at ¶ 36.  As a royalty owner, Cline could also have a claim for breach of lease against his own lessee, Husky Ventures, who is in the putative class.  Ex. 42.  This is the type of adversity that caused the court in *Cherokee Nation* to deny class certification.

### 3.    The Named Plaintiff Perry Cline Is Not an "Adequate" Class Representative.

Rule 23(a)(4) requires Plaintiff to prove that "the representative parties will fairly and

adequately protect the interests of the class." This factor requires that both the named plaintiffs and their attorneys show that they "will competently, responsibly and vigorously prosecute the suit." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977).

As explained above in the section on typicality, Perry Cline, as a royalty owner, also has an unavoidable intra-class conflict with the producers/working interest owners/lessees in his own wells and in wells of other putative class members. "Numerous courts have held that intraclass conflicts may negate adequacy under Rule 23(a)(4)." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007). The reasoning behind that rule is straightforward: "It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent." 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1768 at 326 (2nd ed. 1986).

## V.   CONCLUSION

For all of the foregoing reasons, if the Court does not grant Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 103), then Defendants request that the court deny Plaintiff's Motion to Certify Class (Doc. 91). Per the Court's Pretrial Order (Doc. 102), Sunoco believes that at an evidentiary certification hearing is not necessary because the exhibits submitted by the parties contain the necessary evidence and an evidentiary hearing would be largely duplicative. However, Sunoco believes that a class certification hearing consisting of oral argument of counsel would be of assistance to the Court, given the complexity of the issues.[15]

---

[15] Sunoco requests that no hearing be scheduled during the timeframe of September 3-18, 2019, because of the unavailability of Sunoco's counsel.

Dated: August 14, 2019

Mark D. Christiansen OBA # 1675
**EDINGER LEONARD & BLAKLEY PLLC**
6301 N. Western Avenue, Suite 250
Oklahoma City, OK 73118
Telephone: (405) 702-9900
Fax:  (405) 605-8381
mchristiansen@elbattorneys.com


*/s/ Daniel M. McClure*
Daniel M. McClure OBA #20414
dan.mcclure@nortonrosefulbright.com
Kevin Yankowsky (*pro hac vice*)
kevin.yankowsky@nortonrosefulbright.com
Rebecca J. Cole (*pro hac vice*)
rebecca.cole@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone (713) 651-5151
Fax (713) 651-5246

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August, 2019, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to all counsel of record, including the following:

Michael Burrage
WHITTEN BURRAGE
mburrage@whittenburragelaw.com

Bradley E. Beckworth
Jeffrey J. Angelovich
Lisa P. Baldwin
Andrew G. Pate
Trey Duck
Brooke A. Churchman
NIX, PATTERSON, LLP
bbeckworth@nixlaw.com
jangelovich@npraustin.com
lbaldwin@nixlaw.com
dpate@nixlaw.com
tduck@nixlaw.com
codyhill@nixlaw.com

Susan R. Whatley
NIX, PATTERSON, L.P.
swhatley@nixlaw.com

Patrick M. Ryan
Philip G. Whaley
Jason A. Ryan
Paula M. Jantzen
RYAN WHALEY COLDIRON JANTZEN
    PETERS & WEBBER PLLC
pryan@ryanwhaley.com
pwhaley@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Lawrence R. Murphy, Jr.
LAWRENCE R. MURPHY, JR., P.C.
lmurphy@richardsconnor.com

Robert N. Barnes
Patranell Lewis
Emily Nash Kitch
BARNES & LEWIS, LLP
208 NW 60th Street
Oklahoma City, OK 73118
rbarnes@barneslewis.com

/s/ Daniel M. McClure
Daniel M. McClure

- 37 -

**App.212**

# EXHIBIT C

TO APPENDIX OF EXHIBITS TO SUNOCO'S RESPONSE TO PLAINTIFF'S  MOTION TO CERTIFY CLASS AND TO SUNOCO'S MOTION TO EXCLUDE PLAINTIFF'S  EXPERT LEY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself, and all )
others similarly situated, )
           )
           Plaintiff, )
           )
v. )       Case No: 6:17-cv-313-JAG
           )
SUNOCO, INC. (R&M); and )
SUNOCO PARTNERS )
MARKETING & TERMINALS, L.P., )
           )
           Defendants. )

## DECLARATION OF ERIC KOELLING

1.      My name is Eric Koelling, Senior Manager, Lease Administration, Sunoco Partners

Marketing & Terminals L.P.  Defendants Sunoco Partners Marketing & Terminals, L.P. and

Sunoco Inc. (R&M), now Sunoco (R&M), LLC are collectively or individually referred to herein

as "Sunoco" or "Defendants."  I am competent to make this declaration, and the statements herein

are based on my personal knowledge and review of Sunoco files and records.

2.      I was the senior manager of Lease Administration at Sunoco primarily responsible

for the Division Order group since I was hired by Sunoco in 1988.  When first hired, I directly

managed the Division Order group, and the Contracts group, consisting of supervisors,  division

order analysts and others. Alice Holland and other supervisors worked under me until Ms. Holland

was made the manager of Division Order in 2006 with supervisors reporting directly to her, and

Ms. Holland then reported to me.  Beginning in July 2019, after reaching the age of 67, I went on

part-time status with Sunoco as a consultant to the Division Order group.  Prior to Sunoco, I

worked in the oil and gas business since my graduation from the University of Colorado in 1973,

including working as a landman with Mobil Oil and Reading & Bates for about 15 years.  While

**App.214**

at Sunoco, I have worked both in Tulsa, Oklahoma and Houston, Texas. I officed in Houston from January 2006 until 2018, and in Tulsa since 2018.

3.  In my role as senior manager of Lease Administration with Sunoco for more than 30 years, I have become knowledgeable about all aspects of Sunoco's payments of oil and gas proceeds in Oklahoma and other states. My responsibilities have included management of oil and gas proceeds payments and the Division Order group in approximately 10 states, including Oklahoma. Through my experience at Sunoco and participation in various industry groups, including the National Association of Division Order Analysts, I have become familiar with industry custom and practices regarding payment of oil and gas proceeds, division orders, and payment of interest. I have also become knowledgeable about the various statutes in each state that govern payments of oil and gas proceeds, including the Oklahoma Production Revenue Standards Act ("PRSA").

**Sunoco's Payment of Oil and Gas Proceeds**

**Sunoco purchases from producers and makes payments to producers and royalty owners of some producers.**

4.  While other Sunoco-affiliated entities were primarily responsible for refining and marketing, the Sunoco entities for which I worked were involved in the business of buying and selling crude oil. Sunoco purchases crude oil produced in the field from oil and gas producers, collects and transports the oil to downstream locations, and then resells the oil to refineries and others. Sunoco operates or contracts with trucking companies to pick up oil that it has purchased from tank batteries near oil and gas wells. Sunoco may also purchase oil transported by oil pipelines connected to tank batteries in the field. Sunoco is not itself an oil and gas producer. Sunoco has oil and gas purchase contracts with the producers from which it purchases oil, listing the wells or tanks associated with each contract, the pricing terms, and any other terms covering

the purchase and payment for the oil.  An example of one such contract, applicable to wells in which Perry Cline had a royalty interest, is Ex. 40 , the 1998 Crude Oil Purchase Agreement ("COPA") No. 502379 between Husky Ventures Inc. and Sunoco, subsequently amended multiple times to add additional wells and terms (Ex. 41).  Sunoco has contracts with thousands of producers covering production in the state of Oklahoma and has separate contracts with each producer.  Those crude oil purchase agreements are not identical, and each is separately negotiated and has different terms.  *See, e.g.,* Exs. 39, 45.  (Exhibit references are to Sunoco's Index of Exhibits).

5.      Sunoco's payment of the proceeds for the purchase of the oil is accomplished in a variety of ways.  Sometimes Sunoco pays 100% of the proceeds to the producer/operator, which in turn distributes the proceeds to its partners (other working interest owners in the wells) and to overriding royalty and royalty interest owners in the wells, according to their percentage ownership interest in each property.  The producers enter oil and gas leases with royalty owners, but Sunoco does not enter into oil and gas lease agreements with royalty owners.  Where Sunoco does not agree to distribute 100% of the proceeds to the producer/operator, Sunoco may agree in its oil purchase contracts with the producers to make distribution of the proceeds to all interest owners in the wells covered by the contract, including all working interest owners and all royalty owners.  Sunoco has a record of 23,172 unique Oklahoma properties since 2007 from which it purchased oil, and Sunoco managed approximately 164,310 payees on Oklahoma properties during the same time.  Those payees reside not just in Oklahoma but in virtually every state in the United States and many foreign countries.  Since 1995, Sunoco has purchased oil from approximately 32,671 Oklahoma properties.  Sunoco maintains a division order file on almost every property, or well/tank, from which it purchases oil, which consist of scanned TIFF copies of hard copy documents.

6.     The recipients of the largest payments from Sunoco are producers and working interest owners, not royalty owners.  This is because the working interest owners are entitled to the predominant share of the proceeds of payments from each well.  Royalty owners typically may be entitled to receive only 1/8 or 3/16 share of the proceeds of production, depending on the agreed share in their individual oil and gas leases with the working interest owners.  The working interest owners will receive the balance of payments from each well less the royalty owner's share.  Very often the owner of the largest working interest percentage in a well will become the operator of the well under the terms of joint operating agreements among all of the working interest owners (partners) who have invested in the well and typically share in the costs of drilling and production. (Overriding royalty owners typically do not have oil and gas leases, but their interests are carved out of the mineral interest of the working interest owners.)  The operators/producers in Oklahoma that Sunoco purchased oil from are active in oil and gas exploration and production and knowledgeable about industry customs and practices, particularly the customs and practices followed by Sunoco with respect to identifying and confirming the appropriate payees through the use of division orders, the reasons why payments may sometimes be delayed or corrected after the initial payments, and whether interest is customarily paid or requested.  Both in my experience working for two producers (Mobil and Reading & Bates) previously and in my experience dealing with producers while working at Sunoco, I know that most operators/producers are familiar with industry custom and practices regarding proceeds payments and state statutes such as the PRSA, and are willing to assert their rights when they believe it is appropriate and consistent with industry customs and practices.

7.     **Sunoco uses division orders to make sure the right payee is paid the right amount at the right address and with the right tax ID number.**  Sunoco follows industry

practice in the use of division orders to confirm ownership and the accuracy of payments. In a typical situation, when a producer drills a new well, the producer will provide a Division Order Title Opinion ("DOTO") to Sunoco to identify all interest owners in a well to which Sunoco will distribute payment for monies owed for the purchase of oil and other monies that Sunoco is asked to pass through to payees. *See, e.g.* Ex. 31. When Sunoco starts buying oil from a well already producing, the producer usually provides its current paydeck for the well listing names, addresses and ownership interests of all owners in a well, which can vary from fewer than 10 to more than 100 per well. *See, e.g.,* Ex. 31, SUN-CL-00000322. Sunoco is dependent upon the producer to provide that information before it can make any payments, which the producer is contractually obligated to do in the usual case. But often the paydecks are outdated or the title information incomplete or the address is outdated. Also, a title opinion will not normally have address information, or social security numbers and will have various title requirements that may need to be confirmed by the presumptive owner. So Sunoco, as does virtually every other payor in the oil and gas industry in Oklahoma and in every state, sends division orders to every single interest owner to confirm the correct name of the payee, the correct decimal interest of the payee, the correct address of the payee, and to confirm or in many cases obtain the correct Social Security number or tax ID number ("TIN") of the payee, which are not usually included in the "Division Order Title Opinion." An example of a division order form used in 2015 is Ex. 22, mailed with instructions to owners (Ex. 23). Sunoco's goal, like all payors, is to ensure that the right person at the right address receives the right percentage share of the oil and gas production, and that the payee certifies he is the owner of the mineral interest.

8.     Most payees sign the division order, make any necessary corrections to the name, address, and decimal interest, fill in the TIN, and return it to Sunoco, confirming the accuracy of

that information as to that payee and certifying ownership.  However, some division orders are returned by the U.S.P.S. as addressee undeliverable or the like.  Some division orders are delivered but never returned, without any explanation from the payee.  In a few instances, such as Perry Cline, a payee will ignore the initial division orders sent to him, but at some point in time may state that he refuses to sign a division order for one reason or another.  When Sunoco does not have a signed division order, it sometimes places that particular payee's interest in "suspense" until the problem can be identified and resolved.  But Sunoco places an owner in a pay status of "pay without division order" in any instance when the payee declines to sign a division order and informs Sunoco that he is refusing to sign the division order.  Sunoco may also place an owner in pay without a division order if there is enough information provided by a paydeck, although actual confirmation by the owner is preferred.  In such an instance, Sunoco pays even without a signed division order if it has at least minimal information necessary to make the payment, including a TIN.

9.      Until Sunoco has verified complete and correct information for each property and each payee, the proceeds are placed in suspense either for the entire property or for a specific payee or both.  Sunoco utilizes suspense codes that describe one of potentially numerous reasons why a given property or an individual payee may be in suspense.  But these codes are not input for purposes of applying provisions of the PRSA or to help determine the proper interest rate under the PRSA.  Exhibit 16 (Dep. Ex. 2) is a list of the 23 suspense codes at the payee ("business associate") level and the 27 suspense codes used at the property level.  For example, suspense codes at the property level include D4 ("Div Order unsigned; need docs"), I3 ("IRS 668W lien"), T3 ("title requirement"), T6 ("signed DO, open title"), and so forth.  Suspense codes at the owner level include C2 ("insufficient address"), D6 ("deceased owner"), NT ("no tax ID"), T5 ("owner

transferred interest"), U2 ("uncashed checks"), and so forth.  For persons who remain unlocateable for several years, and after a letter notice is mailed to the last known address, the person is placed in suspense code E8 ("escheated") either automatically due to the nature of the code or manually depending on the information available, and the funds are paid to the treasuries of the states of residence of the payees as required by each state's unclaimed property statute.  Payees for Oklahoma wells have addresses in all or almost all 50 states.

10.    Most state statutes require the party that is making distribution of oil and gas proceeds to do so within a certain amount of time, with various and numerous statutory exceptions. I am generally knowledgeable about the Oklahoma PRSA requirements.  Generally speaking, I understand that the PRSA requires proceeds payments to be made to owners by a first purchaser such as Sunoco "not later than the last day of the second succeeding month after the end of the month within which such production is sold." PRSA §570.10(B)(2), but with numerous exceptions and qualifications depending on individual circumstances.  The timing of payments required vary from one state to the next, but I am not aware of any state that requires a payment sooner than the second month after the month in which the production is sold.  In other words, for production that is produced and sold to Sunoco at any time in January, payments must be distributed by the last day of March (unless one of the various other exceptions apply).  Sunoco's computer systems are set up to make payments one month after the month that the oil is sold to Sunoco.  In other words, for production that is sold to Sunoco in January, Sunoco routinely distributes payments before the end of February, whether by mailing checks, wire transfers, or by direct bank deposits where agreed.  So, rather than waiting two months after the production month to make payments as the PRSA and most statutes provide, Sunoco makes payments a month earlier, even though Sunoco might financially gain from waiting an additional month to make the payments.  Sunoco does this

in an effort to provide the best service to its producer customers, royalty owners, and get the producers and other working interest and royalty owners their money as soon as possible.

11.     Historically, Sunoco has been able to make almost all payments of proceeds within the two months following production and sale of oil to Sunoco, both in Oklahoma and in other states.  More than 98% of the money paid to interest owners on Oklahoma production from July 2007 to October 2018 (about $12 billion) has been paid to interest owners within two months after the month of production and sale to Sunoco.  But for a variety of reasons discussed elsewhere in this declaration, some payments are not made within two months of the month of production and sale, including monies held in suspense, monies not meeting the minimum payment threshold, and later prior period adjustments.

**Sunoco's Interest Payment Practices Focus on Determining Whether Interest is Due in Each Individual Circumstance.**

12.     I am generally familiar with the provisions of the Oklahoma PRSA, and some other state statutes that provide for interest to accrue or be earned on payments of proceeds made later than the time periods set out in the PRSA or the other state's statutes.  I became aware of the predecessor statute to the PRSA  soon after I began working at Sunoco in 1988.  I was also aware of the PRSA in the 1990s and certain amendments.  It was my understanding, and the general understanding of others in the oil and gas industry, that the Oklahoma PRSA provisions on interest did not contain a specific provision regarding the payment of interest and when interest should be paid.  Instead, the Oklahoma PRSA simply provided that proceeds "not timely paid shall earn interest" and that a first purchaser who fails to remit proceeds within the statutory time limitations "shall be liable to such owners for interest."  PRSA §570.10 (D)(1) and (E)(1).  This language was very different from the PRSA provisions that set out the requirement that proceeds from the sale of oil "shall be paid to persons legally entitled thereto" within certain time periods.  See PRSA

§570.10 (B)(1). I have been aware of nothing in the PRSA that requires that interest be paid at the same time that proceeds are paid outside of the time limits of the PRSA. Further, as a practical matter, it would be impossible to automatically and accurately determine untimeliness, liability for interest, the proper statutory rate (6% or 12%) and calculate and pay interest at the same time that the actual proceeds are automatically distributed monthly to tens of thousands of Oklahoma payees. As explained below, there are simply too many factors and considerations and exceptions that must go into the analysis of the PRSA provisions and the particular circumstances of each "late" payment to accomplish interest payment at the very same time that proceeds may be paid "late." I explained some of these various complications at my depositions in this case, and as summarized in more detail below. Therefore, it has been Sunoco's practice, consistent with the customary practice throughout the oil and gas industry, to not pay interest on "late" payments at the same time that the proceeds may be paid "late." Instead, it has often been Sunoco's practice to await a request for payment of interest from any payee who believes that a payment is later than the PRSA time periods and not subject to any of the various exceptions in the statute for both the time period and the liability for interest. When such a request for interest is made, Sunoco division order analysts typically analyze the request, investigate the accounting data and the scanned division order file information, attempt to determine whether the interest was due and whether the cause for the delay was unmarketable title to determine whether the interest rate would be 6% or 12% under the PRSA, A request and recommendation would then be made by the analyst to Alice Holland, Division Order Manager, to assess the validity of the request for the payment of interest and determine whether the appropriate rate was 6% or 12%, and then Ms. Holland would calculate the interest earned as provided in the PRSA and appropriately authorize and effect the interest

payment to the requesting party, subject to my final approval if 12% was determined to be appropriate

13.     **The inability to pay interest in an automated way based on computer accounting data**.  For the reasons described in more detail below, I do not believe that there is any feasible way to automatically and accurately determine whether a specific payment is untimely under the PRSA, whether Sunoco is liable for such interest, and whether the proper rate of interest is either 6% or 12% depending on whether the delay was due to marketable title issue.  There are too many factors, including the subjective analysis required to determine whether a title is unmarketable under the Oklahoma Title Examination Standards, for the calculation and payment of interest to be accurately paid through any automated computer-based process.  Were Sunoco, for instance, to program its computers to automatically calculate and pay interest for every payment of proceeds that occurs more than two months after the production sales month, at 12% interest, Sunoco would be paying interest in most cases to persons who are not entitled to such interest under the various exceptions to the PRSA and would be overpaying interest to those persons who were entitled to interest but only at the 6% rate. Similarly, if Sunoco just programmed to pay 6% interest, we  would potentially underpay interest to many persons per the PRSA, or overpay persons paid late for title-related reasons paid after  the recent 2018 revision to the PRSA that requires the WSJ prime rate to be used that creates a moving target.  Sometimes Sunoco will initiate and make a payment of interest on late proceeds on Oklahoma production even in the absence of any request for interest from an interest owner.  That may occur when a division order analyst or supervisor sees that a particular payment was obviously made late due to the fault or mistake of Sunoco and that interest would obviously be due.  In such a case, the analyst may request Ms. Holland to review the circumstances and make a decision regarding the payment of

interest and the proper interest rate subject to my approval if the determination is made that 12% is appropriate. This situation has arisen most commonly in the course of the suspense clean-up project that has been ongoing for several years in which division order analysts are assigned to re-investigate suspense amounts that have been held in suspense for many years to try to clear up the suspense reasons.

14.     **When interest is requested by a payee, Sunoco investigates the individual circumstance and pays interest if owed**. Most payments by Sunoco are to working interest owners, not royalty owners, and those working interest owners include the oil and gas producers operating the wells and their partners who own other working interests. Most or all of those working interest owners are or should be familiar with the PRSA and its provisions regarding interest on late payments. I know that based on my many years of working with producers. Many royalty owners are also familiar with the interest provisions of the PRSA, as shown by the fact that about 300 of them made a written request for interest to Sunoco during the 5 years preceding this suit.

15.     **Sunoco's Accounting Data is Not Sufficient to Identify All Class Members**. Sunoco's accounting data alone does not provide sufficient information to identify members of the proposed class described in the Petition, owners who received "Untimely Payments" in violation of the PRSA. Defendants' Amended Answer to Plaintiff's Interrogatory No. 2, which I signed, clarifies that Defendants produced accounting data from which the answer to Interrogatory No. 2 "may **in part** be ascertained or derived …." Exhibit 3 (emphasis added).. I explained this at my deposition, when questioned about the original answer to Interrogatory No. 2, that "additional information might be needed" than just accounting data, including the "circumstances of the payment." Ex. 6, Koelling Depo. (March 1, 2018) at 176-177. At a minimum, information from

individual division order and contract files would have to be individually investigated to determine whether an owner shown in the accounting data to have been paid more than 2 months after the production month falls within other exceptions in the PRSA and was delayed due to unmarketable title.

16.     In addition to portions of some division order files that have been produced in discovery in this case, Sunoco has also produced accounting data for the ten year period preceding the lawsuit through October 2018, which details royalty payments made to all payees. Sunoco's accounting database, PLADS, is a complex system managed by active and professional programmers. PLADS has certain information but not all information related to the properties, owners and the payments. Relevant emails, correspondence, title opinions, division orders, and other documents are scanned to TIFF and saved in one or more of Sunoco's division order files, which is our customary method for maintaining records related to properties and payees. For Sunoco's division order files, their search capability is not advanced, and manually searching Sunoco's division order files is a time-intensive process.

17.     For example, one type of information not maintained historically by Sunoco in PLADS or in any database is the API well number, a unique number assigned to every well in the United States and used by producers. An API well number is not necessary for Sunoco to have for purposes of accomplishing payment, so the addition of an API number is not subject to a set of controls to ensure accuracy, and up until about two years ago, Sunoco received and kept API numbers only sporadically in PLADS. In the last two years or so, Sunoco has tried to get an API number when setting up a new property in its system, and updated many older properties as part of a system implementation effort, but this number is generally inputted for only one well for the common sale point (which may be a tank commingling oil from more than one well), and does not

necessarily match to all wells at the purchase point. Therefore, Sunoco does not have a unique API number for each and every well in Oklahoma from which it has purchased and paid proceeds or maintain a database containing a comprehensive list of API numbers for all properties from which it has purchased oil.

**Individual circumstances affecting interest determinations**

18.    Many individual circumstances impact whether a payment was "untimely" and whether interest is earned, and those need to be individually researched to determine whether a payment is late within the meaning of the PRSA, and if so who is "liable" for the interest, and the correct interest rate. I describe some of those individual circumstances below.

19.    **Six-month grace period.** To determine whether a payment was untimely and interest is due in each instance, Sunoco would need to determine whether a payment made more than 60 days after the end of the month of sale of production may have been a "first sale," in which case the Sunoco has 6 months after the date of the first sale, not 2 months. PRSA, §570.10 (B)(1)(a) (proceeds from the sale of production shall be paid commencing not later than 6 months after the date of first sale). This information is not necessarily available in Sunoco's computer system because Sunoco is not always the first purchaser of oil from a well. Producers may sell to a competitor of Sunoco when a well is first drilled and produced, and then later switch to selling to Sunoco. To determine this information, a division order analyst would have to search for information in division order files or consult contract files, and if unavailable there, obtain the information from the Oklahoma Corporation Commission. Because this 6-month grace period following first sale could potentially excuse any payment more than 60 days after each production month, it is something that needs to be investigated in each instance to determine if a payment was "untimely" and accrues interest. Sunoco's accounting database, PLADS, only reflects the months that Sunoco purchased oil from each well, not any information about prior purchasers of oil or

whether Sunoco was the first purchaser of oil when the well first began production.   Although Sunoco is one of the largest purchasers of oil in the field in Oklahoma, there have been other large competitors such as Plains All-American, Phillips 66, and Koch Industries, as well as smaller companies, that have purchased oil from producers and compete with Sunoco.   Depending on the terms of the producer's contract with the purchaser, the producer may purchase from Plains one month and from Sunoco the next month, and that will often occur.   Therefore, the data in the accounting database may indicate, for example, that Sunoco has commenced payments within five months of its first purchase of oil, even though that could be more than six months after the first sale of oil in that well to another purchaser.

20.   **Unmarketable title – 6% interest.**   To determine what interest rate is required by the PRSA, in each instance, Sunoco would need to determine whether proceeds were suspended because the title was not marketable, in which case proceeds earn interest at a rate of 6%, not 12%, and that determination would require an individualized inquiry, not limited to reviewing the many suspense codes used by Sunoco, any of which may or may not implicate a title issue (each circumstance would need to be investigated, and the division order files and title opinions would need to be studied to determine whether title was in fact not marketable, even if a code like "title requirement" suggested that was likely).   Under the PRSA §570.10(D)(2)(a), where proceeds are not paid timely because title is not marketable, such proceeds earn interest at a rate of 6% (and since 11-1-18, at the prime rate published in the Wall Street Journal).   The PRSA provides that marketability of title would be determined in accordance with "then current title examination standards of the Oklahoma Bar Association."   Ex. 36 are the current Title Examination Standards of the Oklahoma Bar Association.   Determining whether a delay in payment is due to unmarketable title is therefore a matter of judgment, and in each case in which interest is requested or paid by

Sunoco, an individual determination is made in each case as to whether Sunoco believes the delay is due to unmarketable title. That judgment is made initially by our division order analysts and then ultimately by the division order manager, Alice Holland and myself. We make that judgment based on a review of the information in the division order file, and not by rate application of suspense codes, which only serve as a possible indicator of unmarketable title issues.

21.     Sunoco utilized at least 50 codes for reasons why funds were held in suspense, and no single code or any combination of codes would precisely match the "unmarketable title" standard for 6% interest under the PRSA. While the plaintiff's expert, Barbara Ley, has opined that codes could be easily utilized to identify payees entitled to 6% interest, the codes are too general and non-specific to allow for such an automated approach. Sunoco has no strict guidelines to be used by division order analysts as to which codes should be inserted for different types of suspense, they are expected to use their judgment, and there is no set of definitions or instructions as to which code should be used in a particular situation other than the few words that describe generally what each code means. See Ex. 16, Depo. Ex. 2. The codes are designed merely as system flags and are limited to a two-character code that is only designed to prevent improper payment by the system for a payee who should be in suspense, but the codes are only a starting point for research when an analyst sees that particular code. Sometimes the codes are initially inherited from the paydecks of operators who have certain persons or properties in suspense.. Further, the codes for a particular property or payee often are changed over time as the reasons for suspense change. Initially, a payee might be in suspense for no signed division order, but then is later in suspense for no tax ID number, and then later in suspense because a tax lien is filed on the person, and so forth. The system only allows one suspense code to be in effect for a particular owner or property at any point in time, even though several codes might be applicable. So, the

code entered in PLADS might be N4 for "unsigned division order" even though other codes could theoretically be equally applicable if investigated further, such as T3 for "title requirement." A substantial number of payees initially given codes that do not necessarily appear to implicate title problems (like C2 for "insufficient address" and NT for "no tax ID" and N4 for "unsigned division order") later are determined to have unmarketable title, possibly because of death, wrong owner, or assignment of ownership. Therefore, while some codes are more likely to involve unmarketable title such as T3 for "title requirement" and D6 for "deceased owner," virtually all the suspense codes could involve owners with unmarketable title. Again, the primary purpose of the codes, actually system flags, is to prevent payment that should be in suspense for *any* reason. As long as improper payment is prevented, even an erroneous code has served its purpose, if there is any valid reason for the suspense. That is also why we don't need to use more than one code for all the possible situations that might affect a property or owner, as one code is enough to stop an improper payment. The PLADS payment accounting database that Sunoco produced in discovery in this case only showed what owners were in suspense when that data was extracted (a single point in time), but the payment accounting data does not show the historical suspense codes that had been associated with each owner or property that had been in suspense during any time in the past or what the suspense code had been before the "late" payment was made.

22.     Further to the above issue regarding 6% or 12% interest rate, Sunoco would further need to determine at what point in time a title issue is resolved, in which case after that 12% would possibly be owed as opposed to 6%, which would require an individualized inquiry into *when* a payee's marketable title issue was resolved (*e.g.*, the date a final decree of probate was entered by the court, or the date Sunoco receives notice of it). Also, with more recent payments after 11-1-

2018, the determination of timing would need to be made as to determine whether Sunoco is required to use the prime rate of interest, per the 2018 amendment to the PRSA.

23.    **Interpleader funds**. To determine whether a payment was untimely and interest is due in each instance, Sunoco would need to determine if certain proceeds that are being withheld due to a marketable title issue have been interplead in court, with accumulated interest. PRSA, §570.10(D)(2)(b) (releasing the holder of any further liability for interest). Sunoco has sometimes interplead funds into court when title is in dispute between two or more claimants.

24.    **Minimum suspense.** To determine whether a payment was untimely and interest is due in each instance, Sunoco would need to individually determine whether any payment made more than two months after the production is sold (or 6 months after first sale) is because of the minimum suspense provisions of the PRSA, in which case interest would not be owed. PRSA 570.10(B)(3) has a complex set of requirements to allow proceeds to be distributed later than the second month after sales if the amounts are too small, less than $100. Sunoco places in "minimum suspense" such small amounts until they aggregate to the minimum amounts that the PRSA require to be distributed annually. Sunoco's computer systems do not then reflect whether the over-$100 sum when paid is one that had been held in minimum suspense prior to that date of payment. So, a payment of, for example, $105, may appear on its face to be late if only the sales date and the payment date are compared, when in fact the amounts accruing were less than $100 for the preceding months.

25.    **Waiver of interest**. To determine whether a payment was untimely and interest is due in each instance, Sunoco would need to individually determine if there is a signed division order or other contract that expressly exempts the duty to pay any interest in the event there is a marketable title issue or if a payee has otherwise agreed verbally or in writing (in a lease, division

order, JOA, or oil purchase contract) that Sunoco does not have to pay interest or can pay by a different deadline (which is sometimes the case). Sunoco's contracts with producers often vary from producer to producer in their content on those issues.

26.   **Pass through payments**.  To determine whether a payment was untimely and interest is due in each instance, Sunoco would need to individually determine whether a late payment is attributable to another party holding the proceeds during the delay.  PRSA §570.10 (E)(2)(d) provides that liability for interest shall be borne by the person failing to remit the royalty proceeds within the time limitations; when 2 or more persons fail to remit, liability shall be shared by such persons *in proportion to the time each person held such proceeds*.  For example, producers sometimes have Sunoco distribute proceeds of payments by natural gas purchasers who purchase gas from the same wells that Sunoco purchases the oil. Gas  purchasers often provide Sunoco proceeds to pay royalty interest owners late, and even though Sunoco distributes those funds the same month received, the payments may be more than 2 months after the month the natural gas is produced and sold.  In addition, other companies purchase tank-bottoms (oil sludge at the bottom of tanks) and pay the producer who then sends those proceeds to Sunoco to distribute, often more than two months after sale. Sunoco is also sometimes asked to distribute royalty litigation settlements by producers or distribute insurance payments, which are often far after the actual sale date.  In the Semcrude bankruptcy litigation, for example, we were asked to distribute funds obtained from the settlement which was years after the sale of crude oil.

27.   **Prior period adjustments.**  To determine whether a payment was untimely and interest is due in each instance, Sunoco would need to individually determine if a royalty payment made more than 2 months after the sale (or 6 months after first sale) is the result of having to correct an incorrect payment that is a result of another's error or omission, in which case Sunoco

might not be liable for some or all of the interest owed.  PRSA §570.10(C)(4) provides that when royalty proceeds are paid incorrectly as a result of an error or omission, ***the party whose error or omission caused the incorrect payment shall be liable***.  Examples that may fall into one or more of these categories are listed below, many of which are called "prior period adjustments."

28.     Prior period adjustments are often made to correct an error due to incorrect information provided by another party, such as a producer or working interest owner, or a royalty owner, such as incorrect ownership interest decimals, an incorrect paydeck, or incorrect title opinions, incorrect owners, and incorrect addresses. Producers often provide such inaccurate information to Sunoco, particularly for new wells, which will result in the wrong person being paid, or the check sent to the wrong address, or the percentage interest ownership decimals being wrong, all of which will require a prior period adjustment in which the additional payment to the correct owner at the correct decimal may appear to be a "late" payment under the PRSA. Royalty owners often provide incorrect information or fail to notify Sunoco of the need to correct information when circumstances change, such as a change in ownership or a change of address, and the later corrected payment or reissued check may appear "late" under the PRSA. In these cases the error or omission is not Sunoco's, but the payee's or third party's.  The initial payment for the sales month is timely made by Sunoco within two months of the sales month, but the corrected payment may appear to be "late."

29.     Late severance tax exemptions are often granted by the State of Oklahoma to producers many months after the actual production sales months, resulting in tax credits being reimbursed by the State to Sunoco, and by Sunoco to payees, long after the time periods for paying proceeds under the PRSA. An example is the gross production tax refund received by Petrohawk Energy in 2009 for production in 2007-2008 and sent to Sunoco to distribute to payees, Ex. 63.

30. Reissued checks would need to be investigated because that may be a result of payee omission, such as a payee providing Sunoco the wrong address, or not advising Sunoco of a new address, or failing to cash the check, and the check then gets reissued either automatically or at payee's request. So the issue is whether the first check sent "timely paid" the proceeds, and therefore interest is not owed on the reissued check for the additional time delay to reissue the check. The reissued "late" payment in those cases is the result of errors or omissions of the payee, not Sunoco.

31. Payment of refunds "late" that were originally back-up withheld under Oklahoma or U.S. tax laws because the royalty owner did not timely provide a S.S. number or Tax Id. number often occur.

32. Payments for corrected amounts due to volume or price errors by third parties, such as purchasers of oil from Sunoco, sometimes occur. Sometimes Sunoco and the producer/operator agree on contractual price adjustments that are retroactive, resulting in a prior period adjustment.

33. Payments for corrected amounts may be due to a third-party trucking company that picked up the oil in the field mis-identifying a property and assigning the oil volume to the wrong property in the system.

34. Payments for corrected amounts may be due to a volume adjustment or mismeasurement by a third-party trucking company responsible for picking up the oil in the field.

35. Some, but not all prior period adjustments are identifiable in the PLADS accounting payment database of Sunoco by use of codes called "adjustment reason codes" and those are listed in Ex. 56 (Dep. Ex. 125). Examples of those codes are 5A ("IRS withholding"), 8A ("pricing correction") CR ("COPA reversal") and CH ("third party fee"). Many of those PPA's are performed by the revenue accountants, such as volume and pricing corrections, and are assigned

codes without the involvement of the division order group and analysts. But not all PPA's are assigned these "adjustment reason" codes, including most of the instances of reissued checks and corrected checks due to bad information from operators or payees about owner identities, addresses, ownership percentage shares or decimals, and changes in ownership, all of which are manually performed by the division order group at Sunoco. In short, prior period adjustments cannot all be identified by use of Sunoco codes in the PLADS accounting database.

36.    **Contractual assumption of liability**.    A payee may have waived interest or assumed responsibility for interest in the contracts Sunoco has with them or in subsequent communications, particularly with producers. For instance, a producer may agree to be responsible for any liability, including interest, incurred by Sunoco in making payments using the paydeck provided by the producer to Sunoco. *See, e.g.,* Exs. 39, 42, 44. Sunoco may also have the right to seek contribution or indemnity for interest payments from hundreds and perhaps thousands of individual producers whose contracts with Sunoco require those producers to indemnify Sunoco for any liabilities Sunoco incurs in paying the royalty owners of those producers. *See, e.g.,* Exs. 39, 42-45, 65. A determination of the liability of those parties will require individualized inquiry into the terms of the oil purchase contracts between Sunoco and each producer (whose terms vary from producer to producer). Further, the circumstances that may have resulted in a "late" payment will have to be determined royalty owner by royalty owner to then assess whether the producer may be required to fully assume or to share in any liability by the terms of the PRSA or pursuant to the contractual terms between Sunoco and the producers. There are numerous differences among the purchase contracts between Sunoco and the producers, such that a common determination of these issues as to all working interest and royalty owners would be impossible.

Pursuant to 28 U.S.C. § 1746: I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 14 day of August, 2019.

Eric Koelling

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself
and all others similarly situated,
                    Plaintiff,

v.                                          Civil Action No. 6:17-cv-313-JAG

SUNOCO, INC. (R&M), and,
SUNOCO PARTNERS MARKETING
& TERMINALS, L.P.,
                    Defendants.

## OPINION

Perry Cline owns a royalty interest in one or more oil wells in Oklahoma. Sunoco, Inc. (R&M), and Sunoco Partners Marketing & Terminals, L.P. ("Sunoco"), purchase and resell oil from Cline's wells. Oklahoma law requires Sunoco to pay proceeds from the oil to Cline. If Sunoco pays the proceeds late, it must pay Cline interest on the payment at a rate set forth in Oklahoma's Production Revenue Standards Act ("PRSA"). *See* Okla. Stat. tit. 52, § 570, *et seq.*

Cline has sued Sunoco for paying his production proceeds late without paying the required interest. Cline seeks to maintain a class action on behalf of other owners[1] whom Sunoco paid late and did not pay interest.

Because Cline meets the requirements for class certification under Federal Rule of Civil Procedure 23, the Court will grant the motion and certify the class.

---

[1] The PRSA defines an "owner" as a "person or governmental entity with a legal interest in the mineral acreage under a well which entitles that person or entity to oil or gas production or the proceeds or revenues" from that production. Okla. Stat. tit. 52, § 570.2. Sunoco's argument distinguishes between owners who have a "royalty interest" in a well, which means an interest in a percentage of the production or the proceeds from the production, and those who have a "working interest," which "entitle[s] the owner . . . to drill for and produce oil and gas." *Id.*

## I. BACKGROUND

The PRSA governs the payment of proceeds for oil and gas production from Oklahoma wells. *See* Okla. Stat. tit. 52, § 570, *et seq.* The PRSA requires the first person who buys oil or gas from an interest owner ("first purchaser") or the person holding the proceeds from the sale of the oil and gas ("holder of proceeds") to pay the wells' interest owners their proceeds within specific times. The first purchaser or holder of proceeds must keep the funds "separate and distinct from all other funds." *Id.* § 570.10(A). With some exceptions, the first purchaser or holder of proceeds must pay statutory interest if it does not pay the proceeds on time. The payor must pay 6 percent or 12 percent interest, depending on the cause of the delay in payment.

Sunoco buys crude oil from oil and gas producers, collects and transports the oil, and resells the oil. It contracts with thousands of oil and gas producers in Oklahoma to purchase their oil. Sunoco has paid over 100,000 well owners royalty proceeds for oil and gas production from over 20,000 properties since 2006. It maintains a division order[2] for each property. Sunoco sends division orders to owners and suspends payment until the owner returns a signed and completed division order. If an owner does not want to sign a division order, Sunoco says that it will remove the account from suspension and pay the owner, but that the owner must first tell Sunoco that he or she refuses to sign the division order. When Sunoco pays proceeds late, it often waits until an owner makes a request for interest before investigating the request and paying any necessary interest.

Cline contends that Sunoco has engaged in an ongoing scheme to avoid making the required interest payments.

---

[2] A "division order" documents the division of each owner's interest in the well and the owner's name, address, and tax identification number. Okla. Stat. tit. 52, § 570.11. The division order helps the first purchaser or holder of proceeds pay the proceeds directly to the owner. *Id.*

**App.237**

The proposed class comprises owners of wells in Oklahoma who allege that Sunoco paid them oil proceeds late and without the statutory interest.[3]  Specifically, Cline seeks to represent the following class[4]:

> All non-excluded persons or entities who: (1) received Untimely Payments from Defendants (or Defendants' designees) for oil proceeds from Oklahoma wells and (2) who have not already been paid statutory interest on the Untimely Payments. An "Untimely Payment" for purposes of this class definition means payment of proceeds from the sale of oil production from an oil and gas well after the statutory periods identified in O[kla]. S[tat]. tit 52, §570.10(B)(1) (i.e., commencing not later than six (6) months after the date of first sale, and thereafter not later than the last day of the second succeeding month after the end of the month within which such production is sold). Untimely Payments do not include: (a) payments of proceeds to an owner under O[kla]. S[tat]. tit 52, §570.10(B)(3) (minimum pay); (b) prior period adjustments; or (c) pass-through payments.

> The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (2) publicly traded oil and gas companies and their affiliates; (3) persons or entities that Plaintiff's counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; and (4) officers of the court.

(Dk. No. 91, at 30; Dk. No. 114, at 13.)

---

[3] Cline relies on the expert reports of Barbara Ley, a certified public accountant, to establish that Cline can identify the putative class members and calculate damages class-wide with common proof.  For the reasons stated in a separate opinion, the Court will deny Sunoco's motion to exclude Ley's expert report and testimony (Dk. No. 107) and has considered her conclusions to decide the instant motion.

[4] This includes the revised definition proposed in Cline's reply.  The revisions provide a more narrow and manageable definition, and the Court analyzes whether Cline satisfies the Rule 23 requirements accordingly.  The Court will, however, grant Sunoco's motion for leave to file a sur-reply (Dk. No. 119), and it will direct the Clerk to docket the sur-reply.

3

**App.238**

## II. **DISCUSSION**[5]

Federal Rule of Civil Procedure 23 governs class actions, including class certification. The party seeking certification must first satisfy the requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a). In addition to the requirements of Rule 23(a), the proposed class must fall within at least one of the three types of class actions listed in Rule 23(b). Rule 23(b)(3), the relevant type of class action in this case, requires (5) predominance and (6) superiority. Fed. R. Civ. P. 23(b)(3). Although the Tenth Circuit does not require a separate ascertainability analysis, the Court will consider (7) ascertainability as a separate factor. The Court addresses each requirement in turn.

### A. *Numerosity*

The proposed class representative must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The plaintiff must present "some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirements. There is, however, no set

---

[5] The party seeking class certification bears the burden of proof. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Soseeah v. Sentry Ins.*, 808 F.3d 800, 808 (10th Cir. 2015). "[A]t the class certification stage a district court must generally accept the substantive, non-conclusory allegations of the complaint as true." *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009). Additionally, "'the trial court [must be] satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 350-51 (internal citations omitted) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "[A] district court 'may not evaluate the *strength* of a cause of action at the class certification stage,' but it must determine, 'without passing judgment on whether plaintiffs will prevail on the merits,' whether a plaintiff has satisfied the provisions of Rule 23." *Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009) (quoting *Shook, et al. v. Bd. of Cty. Comm'rs, et al.*, 543 F.3d 597, 612 (10th Cir. 2008)); *see also Amgen Inc., et al. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquires at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

formula to determine if the class is so numerous that it should be so certified." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). The Court must consider "the particular circumstances of the case." *Id.*; *see also Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.").

Here, the proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1). *See Rex*, 585 F.2d at 436 (citing certified classes comprising 17 to 358 members).

### B. Commonality

The proposed class meets the commonality requirement because it presents "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Even a single [common] question" satisfies this requirement. *Wal-Mart*, 564 U.S. at 359. Cline must show that "the class members have suffered the same injury," and that the "common contention . . . is capable of classwide resolution . . . [and] will resolve an issue that is central to the validity of each . . . claim[] in one stroke." *Id.* at 350; *see also Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013). Furthermore, "every member of the class need not be in a situation identical to that of the named plaintiff," and "[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). A common question of law requires the putative class to "share a discrete legal question of some kind." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999).

Cline sets forth four questions of law and fact that he argues satisfy the commonality requirement:

**App.240**

(1) whether, under Oklahoma law, Sunoco owed interest to Plaintiff and the Class on any and all Untimely Payments;

(2) whether owners must make a demand prior to being entitled to receive statutory interest;

(3) whether Sunoco's failure to pay interest to Plaintiff and the putative class on any Untimely Payments constitutes a violation of the PRSA; and

(4) whether Sunoco defrauded Plaintiff and the putative class by knowingly withholding statutory interest [as applied to Count II (fraud) of the original petition].

(Dk. No. 91, at 22-23.)   Cline argues that Sunoco's business records and employee testimony will confirm its "uniform policy of not paying statutory interest unless requested by an owner." (*Id.* at 23.)   Cline says that the proposed class will use common evidence of Sunoco's unlawful actions, and that if the Court finds Sunoco had a duty to pay that interest without a request and Sunoco breached that duty, every class member will prevail.

The case presents common questions of law and fact "capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350.   Sunoco relies on "myriad individualized factors" to argue that the "'common' questions at the center of this case . . . cannot be resolved on a class-wide basis through common proof."   (Dk. No. 105, at 31, 41.)   Sunoco's challenge to commonality, however, reads more like a challenge to predominance.   While factual differences may exist between the individual class members, these differences do not defeat the commonality prong under Rule 23(a)(2).   Rather than "broadly conflat[ing] a variety of claims to establish commonality via an allegation of 'systematic failures,'" Cline alleges that Sunoco did not pay statutory interest on late payments to the proposed class members based on Sunoco's single, uniform practice. *J.B.*, 186 F.3d at 1289.   Essentially, Cline presents discrete legal questions both about whether Sunoco violated the PRSA pursuant to its policy and about the injuries the proposed class members suffered as a result. *Id.*   If the Court holds Sunoco liable, all the class members prevail.   Cline has satisfied the Rule 23(a)(2) commonality requirement.

## *C. Typicality*

In this case, "the claims or defenses of [Cline] are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "limit[s] the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of the Nw.*, 446 U.S. at 330. "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also DG ex rel. Stricklin, et al. v. Devaughn, et al.*, 594 F.3d 1188, 1198-99 (10th Cir. 2010).

To succeed on his PRSA claims, Cline must show that Sunoco (1) owed Cline payments; (2) made the payments to Cline late; and (3) did not pay the interest on the late payments. *See Chieftain Royalty Co. v. Marathon Oil Co.*, No. Civ-17-334-SPS, 2018 WL 2745906, at *2 (E.D. Okla. June 7, 2018). To succeed on his fraud claim, Cline must show that Sunoco made "1) a material misrepresentation, 2) knowingly or recklessly . . . , 3) with intent that it be relied upon, and 4) the party relying on the false statement suffer[ed] damages." *Silver v. Slusher*, 770 P.2d 878, 881 n.8 (Okla. 1988).[6]

Cline plans to rely on facts related to Sunoco's process for paying statutory interest to prove his PRSA claim. Cline also plans to rely on facts related to Sunoco's check stubs to show that Sunoco concealed the interest it owed to him. Those same facts would also prove—or disprove—the PRSA and fraud claims of the absent class members. Sunoco admits to using the same process for remitting most payments during the class period, and Sunoco used the same check stub format across the class.

---

[6] The accounting, disgorgement, and injunctive relief claims "necessarily flow out of the base claims." *Chieftain Royalty Co.*, 2018 WL 2745906, at *4; *see also Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1258 (W.D. Okla. 2012).

7

**App.242**

Sunoco tries to defeat the typicality prong by arguing that Cline (1) does not have standing to bring claims on behalf of either himself or the class, and (2) has interests adverse to the other putative class members.  Sunoco fails on both arguments.

### i. *Standing*

In the midst of briefing this motion, Sunoco filed a motion to dismiss for lack of subject matter jurisdiction, alleging that it paid Cline the amount he seeks in interest.  Sunoco thus challenges Cline's standing to bring this action individually or on behalf of the class.  The Court will issue a separate opinion and order denying the motion to dismiss and explaining its reasoning.  That ruling renders Sunoco's standing argument moot.

### ii. *Adversity*

Sunoco argues that "deep and significant adversity" exists between Cline, a royalty owner, and the working interest owners also included in the class because the class claims "could trigger an obligation on behalf of many of those same working interest owners to indemnify Sunoco." (Dk. No. 105, at 42.)  Cline responds that the PRSA only contemplates claims against the entities who paid the proceeds late, not third parties.

To support its argument on adversity, Sunoco relies on *Cherokee Nation of Oklahoma v. United States*, 199 F.R.D. 357 (E.D. Okla. 2001).  *Cherokee*, however, differs in important ways from this case.  In *Cherokee*, the plaintiffs, "two Indian tribes that operate various Indian Health Services programs pursuant to contracts entered into under the Indian Self–Determination Act," received project support costs from the federal government.  *Id.* at 359.  They performed their contracts separately, and the contracts did not have standard language or specify a particular "full funding" amount.  Every year, the Indian Health Services calculated the full contract amount for each contract according to various government circulars.  The plaintiffs sued because they had

8

**App.243**

not received full payment and sought class certification for 329 tribes in 35 states, of which 296 had experienced contract payment shortfalls.

The court declined to certify the class partly because the named plaintiffs were not "typical" of the class. *Id.* at 364. It concluded that each tribe's contract "is individual and specific to it, . . . [and] negotiated separately from the other tribes," resulting in different definitions of "full funding." *Id.* Additionally, the court held that "the plaintiffs' interests are antagonistic to those of the members of the proposed class" because the Indian Health Services had a finite budget. *Id.* at 364-65. The damage payments would come from the Indian Health Services' budget, meaning one plaintiff's claim would decrease the funds available to pay the remaining plaintiffs.

In *Cherokee*, the central, substantive issue related to separately-negotiated contract rights that pulled from a common, finite budget. In contrast, this Court need only decide whether Sunoco violated its statutory obligations under the PRSA.[7] The PRSA clearly states that "a *first purchaser or holder of proceeds* who fails to remit proceeds from the sale of oil or gas production to owners legally entitled thereto within the time limitations . . . of this section shall be liable to such owners for interest . . . on that portion of the proceeds not timely paid." Okla. Stat. tit. 52, § 570.10(E)(1) (emphasis added).

Sunoco has not demonstrated that the putative class members do not have the same statutory rights as Cline, or that the putative class does not have sufficiently similar financial interests in pursuing these claims against Sunoco. The contracts between Sunoco and working interest owners, or between Cline and his lessees, do not affect Sunoco's obligations under the

---

[7] Sunoco says that working interest owners receive 90 percent of all money paid but has not addressed Ley's observation that Sunoco owes the majority of damages in this action to royalty owners.

PRSA. (Dk. No. 105, at 42); *see* 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1768 (3d ed. 2019) ("[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.").[8]  Further, the class members do not seek to tap a designated and limited fund, but rather simply seek damages (and equitable relief) against Sunoco.

Simply put, this is not a case in which "[t]he court cannot be assured that the plaintiff[], as [the] representative class member[], will aggressively pursue the claims of all proposed class members because of [his] own possible financial interest." *Cherokee*, 199 F.R.D. at 365.

Accordingly, Cline's claims satisfy the typicality requirement under Rule 23(a)(3).  Fed. R. Civ. P. 23(a)(3).

### D. Adequacy

Turning to adequacy, Cline must prove that both the representative parties and class counsel will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4), (g)(4).  "It is axiomatic that a plaintiff cannot maintain a class action when his interests are antagonistic to, or in conflict with, the interests of the persons he would seek to represent." *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463 (10th Cir. 1974).  The Court must "stringently appl[y]" this requirement. *Id.*

Sunoco repeats its argument regarding Cline's intra-class conflict in an effort to defeat the adequacy prong.  As already explained, Cline has suffered the same injuries and has the same interests and incentives as the putative class to "fairly and adequately" protect the class'

---

[8] *Cf. Pueblo of Zuni v. United States*, 243 F.R.D. 436, 449 (D.N.M. 2007) ("Plaintiff challenges th[e] conclusion [that the plaintiffs' interest are antagonistic for the reasons in *Cherokee Nation*] by noting that IHS has never reimbursed the Judgment Fund.  Whether or not the IHS has ever actually reimbursed the Fund. . . does not vitiate the mandate that reimbursement is required [by statute].")

interests. Fed. R. Civ. P. 23(a)(4); *cf. Rhea v. Apache Corp.*, No. CIV-14-0433-JH, 2019 WL 1548909, at *6 (E.D. Okla. Feb. 15, 2019) ("Given the nature of plaintiff's claim, coupled with the evidence of the uniform process being employed by defendant in how it paid royalties, the court concludes the theoretical potential for conflict, without more, is insufficient to disqualify plaintiff as an adequate class representative."). The Court also finds that class counsel qualifies as experienced in class actions and other complex civil litigation, and Sunoco does not argue otherwise. Thus, Cline and class counsel meets Rule 23's adequacy requirement.

### E. Predominance

Next, Sunoco's challenge to the predominance requirement fails because "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). While similar to the commonality inquiry, "the predominance criterion is far more demanding." *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). It "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." *CGC Holding Co., et al. v. Broad & Cassell, et al.*, 773 F.3d 1076, 1087 (10th Cir. 2014). Instead, a court must first "*characterize* the issues in the case as common or not, and then *weigh* which issues predominate." *Naylor Farms, Inc., et al. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019).

A court "should consider the extent to which material differences in damages determinations will require individualized inquiries." *Roderick*, 725 F.3d at 1220. An "individualized monetary claim[]" may not defeat a finding that common questions exist, but "predominance may be destroyed if individualized issues will overwhelm those questions

11

**App.246**

commons to the class." *Id.* Even so, "there are ways to preserve the class action model in the face of individualized damages." *Id.* (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 41 n.* (2013) (Ginsburg, J., and Breyer, J., dissenting) ("A class may be divided into subclasses for adjudication of damages. . . .  Or, at the outset, a class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings.")).  As long as "at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." *Naylor Farms*, 923 F.3d at 789.

Common questions of law and fact predominate.  The Court must evaluate Sunoco's practice for paying interest and determine (1) whether Sunoco owed interest to the class for making late payments, (2) whether Sunoco could wait for owners to make a demand before paying that interest, (3) whether Sunoco's failure to pay the interest or delays in paying interest pursuant to its practice violates the PRSA, and (4) whether Sunoco defrauded the class by knowingly withholding that interest.  The claims will rise or fall on common evidence. *See CGC Holding*, 773 F.3d at 1088 (explaining that the predominance analysis requires a court to evaluate the elements of the underlying causes of action).  If the Court finds liability, it must fashion an appropriate remedy, guided by the objective criteria set forth in the PRSA.

Sunoco points to a number of individual questions that the Court must consider to decide liability and to calculate damages, but the Court does not find them persuasive.  For example, Sunoco's argument that "myriad individualized factors" predominate falls short because the Court adopts Cline's modified class definition and accepts Ley's methodology for identifying the class members and calculating damages.  Sunoco may vigorously contest Ley's conclusions, but Ley's model can determine damages on a class-wide basis sufficient for this stage of the

12

**App.247**

proceedings.[9]   The revised definition excludes payments falling into four categories (the six month grace period, minimum suspense payments, pass-through payments, and prior period adjustments). Ley has said that she can exclude those payments from her model. Ley has also explained the method by which she intends to identify marketable title issues using Sunoco's codes, even if Sunoco contends its own coding system is unreliable for these purposes.

Sunoco also challenges Cline's fraud claim as too individualized. Fraud claims do not always warrant class treatment, particularly "if there was material variation in the representation made or in the kinds or degrees of reliance by the persons to whom they were addressed." Fed. R. Civ. P. 23 advisory committee notes to 1966 amendment. Courts will certify fraud claims, though, when the law of one state applies to the majority of the claims and the check stubs sent to royalty owners "presented . . . a 'standardized, written representation.'" *Rhea*, 2019 WL 1548909, at \*9. Cline intends to establish fraud through the check stubs Sunoco issued uniformly to the putative class members. Cline has adequately refuted Sunoco's challenge to the fraud claim and established that the fraud claim "is 'susceptible to general and classwide proof." *Naylor Farms, Inc., et al. v. Chaparral Energy, LLC*, No. Civ-11-0634-HE, 2017 WL 187542, at \*8 (W.D. Okla. Jan. 17, 2017) (quoting *CGC Holding*, 773 F.3d at 1089).

Sunoco points to various other individual questions as well, including questions regarding contracts between Sunoco and various well owners, the marketability of title, indemnification agreements, waivers, potential third-party litigation, Sunoco's proposed defenses, and equitable remedies. Notwithstanding those individual inquiries, the class is "sufficiently cohesive to

---

[9] The Court can later divide the class into subclasses to determine damages, or amend or alter its class certification order, if necessary. *See Naylor Farms*, 923 F.3d at 798 ("[T]he district court correctly noted that if necessary, it can later divide the class into subclasses for purposes of determining damages."); Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

13

**App.248**

warrant adjudication by representation." *Amchen*, 521 U.S. at 623. Moreover, many of these challenges to class certification are overexaggerated and largely incredible.

Finally, Sunoco asks the Court to apply the five-year statute of limitations and limit the class period to claims arising after July, 2012.[10] *See* Okla. Stat. tit. 52, § 570.14(D). Cline has not adequately rebutted Sunoco's statute of limitations argument. "Oklahoma follows the discovery rule allowing limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." *Resolution Tr. Corp. v. Grant, et al.*, 901 P.2d 807, 813. To toll the statute of limitations, the Court would need to perform individual inquiries into the reasonable diligence of each class member that would defeat the predominance requirement under Rule 23(b)(3). Because Cline has not adequately rebutted that conclusion and has not defined the class period, the Court will limit the class claims to those arising on or after July 7, 2012.

Accordingly, Cline meets the predominance requirement, but the Court limits the class to claims arising on or after July 7, 2012.

### F. Superiority

Cline must also show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To evaluate this requirement, a court should consider

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

---

[10] Notably, Cline's class definition does not specify a time period.

14

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Amchen*, 521 U.S. at 615-16 (describing the factors as "nonexhaustive").  "It is enough that class treatment is superior because it will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding*, 773 F.3d at 1096 (quoting *Amchen*, 521 U.S. at 615).

A class action is superior in this case.  This case involves proceeds from Oklahoma wells paid pursuant to the requirements of an Oklahoma statute, and it centers on issues that the Court can resolve class wide.  The parties have engaged in extensive discovery and have been litigating the case for over two years.  No other litigation is currently pending, and the Court does not foresee any difficulty in managing this case as a class action.  Sunoco speculates that the attorneys' fee award will be unduly burdensome but presents no evidence to support that claim. Sunoco also argues that some interest owners "are capable of representing their own interests and resolving any claims they have directly with Sunoco."  (Dk. No. 105, at 40.)  Sunoco's emphasis on the class members' options to recoup money owed ignores the putative class' interest in a uniform judgment about whether Sunoco's business practice violates the PRSA.  Litigating the claims together serves the interests of economy, efficiency, and uniformity of decisions, so Cline meets the superiority requirement.

### E.  Ascertainability

Although the Tenth Circuit does not enumerate ascertainability as a separate factor in the class certification analysis, class actions must present "some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement."  *Rex*, 585 F.2d at 436; *Shook, et al. v. El Paso County, et al.*, 386 F.3d 963, 972 (10th Cir. 2004) ("[T]he lack of identifiability is a factor that

15

may defeat Rule 23(b)(3) class certification."). The plaintiff does not need to identify every potential class member at the outset of the litigation, but "the class description [must be] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1760 (3d ed. 2019); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 306-07 (3d Cir. 2013).

To determine ascertainability, courts within the Tenth Circuit require "first, that the class be defined with reference to objective criteria; and second, a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Braver v. Northstar Alarm Servs. LLC., et al.*, 329 F.R.D. 320, 334 (W.D. Okla. 2018). Cline's class definition aligns with the exceptions outlined in the PRSA, establishing that "the class [can] be defined with reference to objective criteria." *Id.* Ley's proposed model provides a reliable and administratively feasible mechanism for determining class membership. *Id.* The Court can therefore ascertain the proposed class.

Curiously, Sunoco simultaneously touts the interest owners' sophistication and understanding of the PRSA with regard to some factors, and argues that the class members, Sunoco, and this Court cannot reasonably determine who fits into exceptions to a class definition that tracks the language of the statute. Sunoco cannot have it both ways. Ley's model uses Sunoco's business records to specifically identify class members, assuring the Court that, even if the sophisticated interest owners cannot figure out whether they fall within the class, Ley's model can. Moreover, Sunoco's own conduct belies its argument, since, when required to do so, Sunoco itself determines whether putative owners should receive interest, and in what amount.

Accordingly, Cline has demonstrated that the proposed class definition will not present an ascertainability problem.

### III. CONCLUSION

Because Cline meets the requirements for class certification, the Court will grant the motion. The Court declines to hold a hearing because it will not aid in the decisional process.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 3 October 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

17

**App.252**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

PERRY CLINE, on behalf of himself and all )
others similarly situated,                 )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )          Case No: 6:17-cv-313-JAG
                                           )
SUNOCO, INC. (R&M); and                    )
SUNOCO PARTNERS                            )
MARKETING & TERMINALS, L.P.,               )
                                           )
                    Defendants.            )

**SUNOCO DEFENDANTS' RESPONSE TO CLASS REPRESENTATIVE'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Mark D. Christiansen OBA # 1675
**EDINGER LEONARD & BLAKLEY PLLC**
6301 N. Western Avenue, Suite 250
Oklahoma City, OK 73118
Telephone: (405) 702-9900
Fax:  (405) 605-8381
mchristiansen@elbattorneys.com

Daniel M. McClure OBA # 20414
dan.mcclure@nortonrosefulbright.com
Kevin Yankowsky (*pro hac vice*)
kevin.yankowsky@nortonrosefulbright.com
Rebecca J. Cole (*pro hac vice*)
rebecca.cole@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone (713) 651-5151
Fax (713) 651-5246

**ATTORNEYS FOR DEFENDANTS**

**App.253**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................... 1

INTRODUCTION ............................................................................................................... 2

RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS ............................ 2

STATEMENT OF ADDITIONAL FACTS ............................................................................ 7

ARGUMENT AND AUTHORITIES.................................................................................... 8

      I.      Summary Judgment Standard. ................................................................ 8

      II.     The Court Should Deny Plaintiff's Motion Because It Seeks an
Impermissible Advisory Opinion............................................................ 8

      III.    Plaintiff's Motion Also Fails on the Merits. ......................................... 9

            A.      The Court Cannot Re-Write the PRSA to Include a Payment
Obligation the Legislature Did Not Prescribe............................ 9

            B.      Plaintiff's Reliance on *Pummill* Is Misplaced. ........................ 13

CONCLUSION................................................................................................................... 16

- i -

**App.254**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Electric Storage Battery Co. v. Shimadzu,*
307 U.S. 5 (1939) ..............................................................................................11, 13

*Joseph E. Seagrams & Sons, Inc. v. Oklahoma Alcoholic Beverage Control Bd.,*
1981 OK 135, 637 P.2d 88................................................................................11, 12, 13

*L.E. Jones Drilling Co. v. Hodge,*
2013 OK CIV APP 111, 315 P.3d 1025 ..........................................................11, 13

*Pummill v. Hancock Exploration LLC,*
2014 OK 97, 341 P.3d 69....................................................................................14, 15

*Toxic Waste Impact Group, Inc. v. Leavitt,*
1988 OK 20, 755 P.2d 626....................................................................................16

*Zamora v. Elite Logistics, Inc.,*
449 F.3d 1106 (10th Cir. 2006) ...........................................................................8

**Rules and Statutes**

52 O.S. § 540 ...........................................................................................................9

52 O.S. § 570.10(B)(1) ...........................................................................................10

Fed. R. Civ. P. 56(c) ...............................................................................................8

Okla. Sup. Ct. R. 1.200(d)(2)..................................................................................15

Defendants Sunoco Partners Marketing & Terminals, L.P. and Sunoco Inc. (R&M), now Sunoco (R&M), LLC (collectively "Sunoco" or "Defendants"), file this response to Class Representative's Motion for Partial Summary Judgment (Doc. 142) ("Motion") and in support hereof would respectfully show the Court the following:

## PRELIMINARY STATEMENT

As explained in Sunoco Defendants' Motion to Strike or Continue Class Representative's Motion for Partial Summary Judgment ("Motion to Strike") (Doc. 146), which is incorporated herein by reference, the Class Representative's Motion is premature. Under the rule against "one-way intervention," the Court cannot rule on the Motion until class members have received notice and the opt-out period has expired, which has not yet occurred here. For this reason, Defendants have urged the Court to strike or deny the Motion without prejudice, or alternatively, to continue consideration of it and extend Defendants' response date. *See* Motion to Strike, Doc. 146. Because the Court has denied those requests, Doc. 153, Defendants are compelled to file this response. But Defendants do so subject to the positions stated in the Motion to Strike, and without waiving the protections of the rule against "one-way intervention." Defendants object to the Court's determination of the merits of the Motion before the opt-out period has expired.

In addition, Defendants object to being required to respond to the Motion at a time when the composition of the class on whose behalf the Motion is brought is unknown. Indeed, the class could not possibly be known until notice has been issued and the period for opting out has expired, neither of which has yet occurred.[1]

---

[1] Defendants further submit that the ascertainability issues raised in their Response to Plaintiff's Motion to Certify and in their Rule 23(f) Petition to the Tenth Circuit render the identity of the class members uncertain.

**App.256**

## INTRODUCTION

In his Motion, the Class Representative, i.e., Plaintiff, asks the Court to issue a "holding" on what he describes as a "purely a legal question," namely, whether Oklahoma's Production Revenue Standards Act ("PRSA"), 52 O.S. § 570.10, requires payers to pay interest "automatically" at the time any proceeds are paid late under the statute. Motion at 1, 2. Plaintiff, however, cannot point to any statutory language obligating payers to "pay" interest in this manner. The absence of such language is particularly striking given that the Legislature elsewhere in the PRSA specifically imposed obligations to "pay" or "remit" monies by certain deadlines. Essentially, Plaintiff asks this Court to re-write the PRSA interest provisions so that they operate in the way *he* would prefer, not as the Legislature has prescribed. But the Court cannot do this, and *Pummill*, a case in which interest was never contested on the merits but which Plaintiff falsely touts as some kind of definitive precedent, provides no cover for it to do so.

There are other defects in the Motion. For one thing, the Motion is procedurally improper in that it seeks an impermissible advisory opinion on an issue that is not material to the class's claims for interest. Indeed, Sunoco has not argued that the lack of a deadline for paying interest in the event of an untimely payment is a defense to liability for interest when a claim is made. Plaintiff also manages to mischaracterize the facts, wrongly asserting that Sunoco has a "uniform policy" of not paying statutory interest on late payments until and unless an owner demands it.

The Court should deny the Motion.

### RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

1.     Whether "owners are entitled to interest on late payments without first making a demand" is a question of law. Defendants do not dispute that Ms. Holland is Sunoco's manager of Sunoco's Division Order Department, or that this is the department that receives owner requests for interest and is responsible for submitting requests to Mr. Koelling. Sunoco disputes the alleged

admission because it does not accurately represent all the testimony in the record.  Doc. 106-3, Ex.

C, Declaration of Eric Koelling, at ¶ 12 ("It was my understanding, and the general understanding

of others in the oil and gas industry, that the Oklahoma PRSA provisions on interest did not contain

a specific provision regarding the payment of interest and when interest should be paid.  Instead,

the Oklahoma PRSA simply provided that proceeds 'not timely paid shall earn interest' and that a

first purchaser who fails to remit proceeds within the statutory time limitations 'shall be liable to

such owners for interest.'  This language was very different from the PRSA provisions that set out

the requirement that proceeds from the sale of oil 'shall be paid to persons legally entitled thereto'

within certain time periods.  I have been aware of nothing in the PRSA that requires that interest

be paid at the same time that proceeds are paid outside of the time limits of the PRSA." (citations

omitted)) (hereinafter "Koelling Dec."); 30(b)(6) Depo. of Eric Koelling, Ex. 82 attached hereto,

at Erratum p.3 ("[T]he statute does not provide that interest must be included with the royalty

payments.").

2.  Whether a demand is a requirement under the PRSA is a question of law.

Defendants dispute that Mr. Koelling agreed to the legal proposition that a demand is not a

requirement under the PRSA; indeed, he merely stated that he did not believe certain language was

in the PRSA.  Doc. 91-15, Ex. 3, Depo. of Eric Koelling at 148:17 (hereinafter "Koelling Depo.").

Q:  And if you -- and if you have the information and you don't do it, then
you're willfully disobeying the law; right?

A:  Well, no. I would disagree with that –

Q:  Why not?

A.  -- characterization.

*Id.* at 151:1-6; *see also* Disputed Fact ¶ 1, *supra*.

3.      Disputed.   Sometimes Sunoco makes statutory interest payments even when the owner does not make a demand.  Koelling Dec. ¶ 13 ("Sometimes Sunoco will initiate and make a payment of interest on late proceeds on Oklahoma production even in the absence of any request for interest from an interest owner."); Doc. 91-15, Ex. 4, Depo. of Alice Holland, at 128:22-129:25, 130:17-131:4 (discussing how Sunoco would pay without a demand from an owner) (hereinafter "Holland Depo."); *see also* Doc. 91-15, Ex. 5, Depo. Kathy Warren at 118:16 -119:1 ("[W]e pay them without being asked for interest.") (hereinafter "Warren Depo.").

4.      Defendants admit that Plaintiff has accurately quoted Defendant's Response to the Plaintiff's Motion to Certify the Class.

5.      Disputed.  Sunoco does not have a policy of only paying interest when there is a demand from an owner.  Koelling Depo. at 148:22-149:10 (denying that there is such a policy). Defendants do not have a company policy of only paying interest when there is a demand, and dispute the characterization of the email. Doc. 142-5, Ex. 5 Depo. of Patricia Redding at 129:13-14 (discussing the email in question and stating "I don't think you can say it's our policy").  The purpose of asking for the request in writing is to create a paper trail and ensure that payments actually get made.  *See* 30(b)(6) Depo. of Eric Koelling, Ex. 82 attached hereto, at 327:16-328:18 (stating that there was no policy of requiring a formal request but that "getting something in writing is generally preferable in terms of making sure it gets handled. . . .").

6.      Disputed.  Defendants do not have a "policy" to pay statutory interest only after a demand from the owner is received.  *E.g.*, Koelling Dec. ¶ 13; Holland Depo. at 128:22-129:25, 130:17-131:4; Koelling Depo. at 149:4.   Furthermore, Plaintiff has misstated Mr. Koelling's testimony.  *See* Motion at 5.  Plaintiff claims that "Defendants' employee's confirmed" that

"Defendants only pay statutory interest after a demand and Sunoco has followed this policy 100% of the time." *Id.* That is not true. Here is what the cited testimony actually states:

> Q:   . . . I think you've told me, that the company's policy is **when there's a request or demand** made by a royalty owner to pay statutory interest the company does so?
>
> A.   Yes.  After a review and evaluation.
>
> Q:   Well, if it feels it's due?
>
> A.   Yes, if it feels it's due.  That's correct.
>
> Q.   And that's 100 percent?
>
> A.   Yes.
>
> Q.   Without exception you do it.  You've done it **every time you've ever received a request** that you thought was valid?
>
> A.   Yeah, I believe so.

Koelling Depo. at 128:2-14 (emphasis added).  The testimony is that every time Defendants received a request they believe is valid, they paid interest; the testimony is *not* that Defendants pay interest only after receiving a request.  *See id.*; *see also* Koelling Depo. at 70:13-15.

7.      Disputed.  *See* Koelling Depo. at 131:14-134:9 (stating that Sunoco does not train on the PRSA); Warren Depo. at 124:24-125:1 ("A: . . . I was taught that you try to pay things as timely as possible to avoid having to pay interest.").  Other employees have testified that Sunoco sometimes pays interest without a demand from the owner.  *See, e.g.*, Koelling Dec. ¶ 13 ("Sometimes Sunoco will initiate and make a payment of interest on late proceeds on Oklahoma production even in the absence of any request for interest from an interest owner."); Doc. 91-15 Ex. 7, Depo. of Demi Lanceslin at 39:13-16 ("A: I believe that Sunoco is proactive.  If there is a situation that we see and an interest owner needs to be paid interest, that -- in my opinion, that's what we've done.") (hereinafter "Lanceslin Depo.").

8.     Defendants admit only that in a 2016 email, Warren mentioned payments in connection with one well; otherwise, disputed.

9.     Disputed.  *See* Lanceslin Depo. at 39: 13-16 ("A: I believe that Sunoco is proactive. If there is a situation that we see and an interest owner needs to be paid interest, that -- in my opinion, that's what we've done."); Warren Depo. at 118:16-119:1 ("A. They don't necessarily have to ask for it to get it.  I mean, we pay them without being asked for interest.  We've—we have found—we have found instances where we have noted it and proactively paid the interest without having to have a request.").

10.    Disputed.  Mr. Koelling merely stated that he is not aware of such discussions.  *See* Doc. 142-3, Ex. 3, Depo. of Eric Koelling at 161:8-14.

11.    Disputed.   The testimony is of one witness about her personal knowledge of conversations and about her plans to recommend a course of action to her superior; not about the future plans of Sunoco.

12.    Admitted.

13.    Defendants admit that Sunoco Partners Marketing & Terminals, L.P commenced paying royalty proceeds to Mr. Cline on three wells more than six months after the date of first sale from those wells; otherwise, disputed.

14.    Defendants admit they did not pay interest to Mr. Cline at the time they paid him the proceeds; otherwise, disputed, because Defendants later paid Mr. Cline the interest.

15.    Defendants admit they did not pay interest to Mr. Cline before this lawsuit commenced; otherwise disputed.

16.    Disputed.  The quoted testimony does not "confirm" that Cline was not paid interest because he had not requested interest payments.

## STATEMENT OF ADDITIONAL FACTS

1.      The PRSA does not state when the late interest must be paid.  Koelling Dec. ¶ 12 ("It was my understanding, and the general understanding of others in the oil and gas industry, that the Oklahoma PRSA provisions on interest did not contain a specific provision regarding the payment of interest and when interest should be paid."); 30(b)(6) Depo. of Eric Koelling, Ex. 82 attached hereto, at Erratum p.3 ("[T]he statute does not provide that interest must be included with the royalty payments.").

2.      Defendants sometimes pay interest without a demand from the owner.  *See, e.g.*, Koelling Dec. ¶ 13; Holland Depo. at 128:22-129:25; Lanceslin Depo. at 39: 13-16 ("A: I believe that Sunoco is proactive.  If there is a situation that we see and an interest owner needs to be paid interest, that -- in my opinion, that's what we've done."); Warren Depo. at 118:16-119:1.

3.      Sunoco has almost always been able to pay oil proceeds within the two months following production and sale to Sunoco.  Koelling Dec. at ¶ 11.

4.      Sunoco's computer systems are set up to make payments one month after the month the oil is sold to Sunoco.  *Id.* at ¶ 10.

5.      More than 98% of the money paid by Sunoco to interest owners on Oklahoma production from July 2007 to October 2018 has been paid to interest owners within two months after the month of production and sale to Sunoco.  *Id.* at ¶ 11.

6.      Sometimes title issues, the minimum payment threshold, and later prior period adjustments cause Sunoco to make payments more than two months from the month of production and sale.  *Id.*

7.      The purpose of requesting a demand for interest in writing is to create a paper trail to ensure that payments actually get made.  Ex. 82 attached hereto, at 328:4-18.

## ARGUMENT AND AUTHORITIES

### I.      Summary Judgment Standard.

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.*

### II.     The Court Should Deny Plaintiff's Motion Because It Seeks an Impermissible Advisory Opinion.

The Court should deny the Motion because it seeks an impermissible advisory opinion on a nonmaterial issue. Indeed, the question whether the PRSA requires payers to pay interest automatically and at the same time any proceeds are paid late has no bearing on the liability issues before the Court. Indeed, Plaintiff's claim is a claim for interest on past payments that were allegedly untimely under the PRSA. Sunoco has not argued that the lack of a deadline for paying interest in the event of an untimely payment is a defense to liability for interest when a claim is made.[2]

Plaintiff does not seek a determination that Sunoco is liable to any particular member of the class, much less the class as a whole. The Motion does not establish that any class member was untimely paid and has not received interest. In his own words, Plaintiff seeks the Court's view on "purely a legal question." Motion at 1. To be sure, Plaintiff is wrong on the merits of that legal

---

[2] Plaintiff might argue that this issue is somehow relevant to his claim for injunctive relief. But the injunctive relief claim is plainly meritless, for reasons Sunoco has outlined elsewhere, including that there is an adequate remedy at law. Doc. 117 at 6-8. The Court has acknowledged that "[u]ltimately, Sunoco may prevail" on the injunctive relief claim. Doc. 122 at 10.

question, as will be shown below.  But in no event can the Court grant "partial judgment on the issue of liability," Motion at 15.

Finally, even if it were in some way material, the "purely … legal question" Plaintiff poses could not be answered in a vacuum.  Because the class definition excludes categories of payments like prior period adjustments and minimum pay, the "holding" Plaintiff seeks could not in any event be applied to those categories of payments.  Indeed, the Court cannot opine about interest obligations with respect to those types payments not even at issue here.  Thus, Plaintiff does not appropriately limit his requested declaration.

## III.   Plaintiff's Motion Also Fails on the Merits.

In his Motion, Plaintiff asks the Court to hold that the PRSA requires payers like Sunoco to include statutory interest automatically at the time they pay proceeds late.  Motion at 2.  The plain terms of the statute do not require this, however, and Plaintiff identifies no Oklahoma law that would allow the Court to re-write the statute as he urges.  Thus, if the Court considers the Motion on the merits at all, it should readily reject it.

### A.   The Court Cannot Re-Write the PRSA to Include a Payment Obligation the Legislature Did Not Prescribe.

For decades in Oklahoma after passage of the PRSA in 1992 (and before that under 52 O.S. § 540), neither Sunoco nor any other company attempted to calculate and make interest payments contemporaneously with the payment of "late" proceeds.  Doc. 106-3 at ¶ 12.  Sunoco is not an outlier, and has simply followed industry custom and practice in this respect.  *Id.*  This raises the questions:  Did the whole industry misread the PRSA?  And if it were really so clear that it is illegal not to pay interest automatically at the time proceeds are paid, then why did no one challenge the practice for decades?

In reality, the industry custom regarding payment of interest is wholly consistent with the plain language of the PRSA, which does have firm deadlines for when to "pay" or "remit" oil and gas proceeds, but *no* deadline for paying interest on untimely proceeds payments.  For example, the PRSA's basic requirement for payment of oil and gas proceeds states that proceeds "shall be paid" to persons legally entitled to them not later than six months after the date of first sale or, thereafter, not later than the last day of the second succeeding month after the end of the month in which the production is sold.  52 O.S. § 570.10(B)(1).  Section 570.10(B)(2) contains a similar formulation as to when the proceeds covered by that provision "shall be paid," and the minimum pay provisions of the PRSA provide instructions as to when proceeds can or should "be remitted" to the persons entitled to them.  *Id.* §§ 570.10(B)(2), (B)(3).  With respect to interest, however, the PRSA states only that proceeds not timely paid "shall earn interest" and that a first purchaser like Sunoco "shall be liable" for such interest unless an exception applies.  *Id.* §§ 570.10(D)(1), (D)(2)(a), E(1).  Nothing in the PRSA requires the interest to be paid on any particular time schedule or to be volunteered without the payee making a claim for it.

In the face of the other payment provisions in the very same statutory scheme, the Legislature's failure to include a directive or deadline for ***paying*** interest cannot be presumed to have been a mistake.  Moreover, the legislative "intent" should be determined by the statutory language, not the after-the-fact hearsay pronouncements by a few commentators and Plaintiff's counsel about what they think the Legislature must have intended.  Motion at 7-8, 14 (theorizing as to why the PRSA was enacted).[3]  Notably, no "legislative history" is available from the

---

[3] As support for his assertions regarding the origins of the PRSA, Plaintiff relies almost entirely on a 2006 article in the Oklahoma City University Law Review.  Motion at 7-8.  But the factual assertions in the article are hearsay, and Defendants hereby **object** to it.  The article is not admissible to prove the facts that supposedly existed at the time the Legislature enacted the PRSA.

Oklahoma Legislature that provides any guidance as to the meaning of the PRSA.  Thus, the Court is left solely with the language of the statute.  The Court should not re-write the statute to add a requirement—that interest be paid automatically and on a certain time schedule—that the Legislature could have included, but did not.  *Electric Storage Battery Co. v. Shimadzu*, 307 U.S. 5, 14 (1939) (court cannot "rewrite the statute" by "read[ing] into the law words which plainly are missing"); *L.E. Jones Drilling Co. v. Hodge*, 2013 OK CIV APP 111, ¶ 10, 315 P.3d 1025, 1029 ("We are not free under the guise of construction to rewrite the statute, or to add to, subtract from, delete or distort the language of the statute.").

Relying on *Joseph E. Seagrams & Sons, Inc. v. Oklahoma Alcoholic Beverage Control Bd.*, 1981 OK 135, 637 P.2d 88, Plaintiff claims it is "absurd" to interpret the PRSA as not requiring that interest be paid simultaneously with the late proceeds.  Motion at 14.  But the PRSA provides that late proceeds "shall earn interest" and that payers, with some exceptions, "shall be liable" for such interest.  The Legislature has thus provided a remedy for late payment, and it is there for the claiming **even if** it need not be paid automatically or at a specific time.  Contrary to Plaintiff's bare assertions, there is nothing unreasonable about this.  Indeed, it is possible that the complexities of applying the interest provisions of the PRSA—the issues as to what rate applies, whether there is an exception to liability, and so on—led the Legislature to forgo an automatic payment provision and leave it to payees to claim interest on an individual basis.  In short, just because the interest provision does not operate in the manner Plaintiff would prefer does not render it "absurd" or allow this Court to amend the statute to add requirements that do not exist among its plain terms.

*Seagrams* provides no support for Plaintiff's position.  At issue in *Seagrams* was an alcoholic beverage pricing statute that applied to "distillers."  The court ruled it would be "absurd" to read the statute as applying only to **in-state** distillers given the fact that when the statute was

enacted, there was only one in-state distiller, which occupied just one-tenth of one percent of the market. 637 P.2d at 92. Thus, unless the statute also applied to out-of-state distillers, it was largely, if not completely, meaningless. Here, Plaintiff has not presented any factual evidence to show that the PRSA and its timing provisions are meaningless absent some requirement to pay interest automatically at the time proceeds are paid late. Again, even without such a requirement, the interest provisions are still operative and the payer is "liable" for interest when sought by the payee (unless an exception applies).

It is also significant that what the court rejected as "absurd" in *Seagrams* was one party's proposal to *limit* the statutory term "distiller" as applying to only some distillers and not others, which was a construction that was not dictated by the plain terms of the statute. When the Attorney General suggested reading "distiller" *broadly*, as referring to all suppliers, the court also refused, explaining that were it to do so, "we would be writing a price affirmation law, not construing one." 637 P.2d at 92. In both instances, the court hewed closely to the plain terms of the statute, neither narrowing nor expanding the statute beyond what the Legislature had plainly prescribed. This Court should take the same approach with respect to the PRSA. *Seagrams* does not support simply adding terms to a statute as Plaintiff urges.

Plaintiff states that "the PRSA does not say anything about requiring a request" for interest to be paid. Motion at 14. ***But the PRSA also "does not say anything" about the*** <u>***payment***</u> ***of interest.*** It "does not say anything" about *paying* interest *contemporaneously* with the late payment of proceeds. It "does not say anything" about *paying* interest *automatically*. And it "does not say anything" about *including* interest with late-paid proceeds. The Legislature simply did not elect to include any of these sorts of provisions in the PRSA.

The Court should apply the PRSA as written, not re-write it as Plaintiff would prefer. *Electric Storage Battery Co.*, 307 U.S. at 14 (court cannot "rewrite the statute" by "read[ing] into the law words which plainly are missing"); *Seagrams*, 637 P.2d at 92 ("Were we to adopt the reasoning of the Attorney General's considered opinion, however, we would be writing a price affirmation law, not construing one."); *L.E. Jones Drilling Co.*, 315 P.3d at 1029 ("We are not free under the guise of construction to rewrite the statute, or to add to, subtract from, delete or distort the language of the statute.").

### B.   Plaintiff's Reliance on *Pummill* Is Misplaced.

In arguing that Sunoco is obliged under the PRSA to include interest on late payments automatically and contemporaneously with late payments of proceeds, Plaintiff also relies heavily on *Pummill v. Hancock Exploration LLC*.  Plaintiff's reliance on this case is misplaced.

*Pummill* primarily involved the calculation and alleged underpayment of royalties.  *See generally* Doc. 106-80 (*Pummill* Defendants' Response in Opposition to Plaintiffs' Amended Motion for Summary Judgment).  Significantly, the issue of whether interest must be paid even without a demand, though technically in the case, was never contested on the merits at any level in *Pummill*.  In the trial court, for instance, the defendants argued only that there was a lack of a "justiciable controversy" as to the "interest without demand" issue.  *See* Doc. 106-80 at 41-45. Thus, the truth that Plaintiff never acknowledges is that the trial court issued its ruling as to interest (just one part of a much broader grant of summary judgment) without the benefit of contested briefing on the merits of that issue.

The *Pummill* defendants never contested the trial court's Order as to interest (Issue 4) on appeal either.  After the Court of Appeals affirmed the trial court's summary judgment, the defendants petitioned the Oklahoma Supreme Court for review.  In doing so, however, they never raised the interest issue.  *See* Doc. 106-81 (Petition in Error to Oklahoma Supreme Court) at Ex.

**App.268**

C thereto (ECF pp. 50-53) (no mention of any appeal issue as to interest); Doc. 106-82 (Petition

for Writ of Certiorari in Oklahoma Supreme Court) at 1-2 (same).  Ultimately, the Supreme Court

granted review, vacated the opinion of the court of appeals, and reversed the trial court's judgment

in part.  The following is the entirety of the Supreme Court's pronouncement in *Pummill*:

<div style="text-align:center">

*CORRECTED ORDER*

</div>

> The appellants, Hancock Exploration L.L.C., Yale Oil Association, Inc., Cimarex
> Energy Co., and Cimarex Energy Co. of Colorado, petitioned for certiorari after the
> Court of Civil Appeals affirmed a judgment from the District Court of Grady
> County.  The summary declaratory judgment consisted of four orders on four
> separate issues that the district court titled Exhibits I–IV and attached to its Journal
> Entry of Judgment filed September 4, 2012.  These orders carried subtitles:
> "Summary Judgment Issue 1—Lease Language;" Summary Judgment Issue II—
> Form of Contract; Summary Judgment Issue III—Fuel Gas; and Summary
> Judgment Issue IV—Interest.

> The appellants identified four issues in their appeal of the judgment of the district
> court: Issue 1. The express language of their leases does not abrogate or negate the
> implied covenant to market in any way; Issue 2: The current or future use of a POP,
> POI or any other form of contract, instead of a fee based agreement with Enogex,
> does not change the amount of royalties due under the leases; Issue 3. Appellants
> are entitled to receive royalties on gas used off the lease or in the manufacture of
> products at the gas plant; and Issue 4. Appellants owe interest on royalties not
> timely paid without prior demand from the royalty owners.

> The briefs filed and the oral argument held before this Court on November 5, 2014,
> reveal that facts which could affect the resolution of the district court Issues I
> through III need to be addressed before the fact-finder, the district court.  ***The
> parties at the oral argument affirmed that Issue IV was not contested.***

> Accordingly, certiorari is granted.  The opinion of the Court of Civil Appeals is
> vacated.  The judgment of the district court is affirmed in part and reversed in part
> and remanded with instructions to hear and decide the disputed fact issues.

> DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 17TH
> DAY OF NOVEMBER, 2014.

*Pummill*, 2014 OK 97, 341 P.3d 69 (Corrected Order) (emphasis added).  As is obvious, the

Oklahoma Supreme Court did ***not*** address the merits of the interest issue ("Issue IV").  It is

misleading for Plaintiff to claim that the Oklahoma Supreme Court has "addressed" the interest

issue, Motion at 10, when all the Court did was affirm the issue was "not contested."  *Pummill*, 341 P.3d 69 (Corrected Order).

In touting *Pummill*, Plaintiff also wrongly relies on one sentence in the "Background" procedural history recitation in a second court of appeals opinion in Pummill, which followed remand from the Supreme Court and trial of Issues I-III.  Motion at 10 (citing *Pummill v. Hancock Exploration LLC*, No. 114,703 (Okla. Civ. App. Jan. 5, 2018)).  This second opinion has no precedential effect,[4] and did not even address interest (the royalty underpayment claims were at issue in that appeal).  Moreover, the opinion expressly acknowledged that even in the trial court, the issue regarding interest "was not disputed."  *See* Ex. 11 to Motion, at 8.

Thus, the appellate decisions in *Pummill* do not support Plaintiff's position.  The first Court of Appeals decision was vacated by the Supreme Court; the second is of no precedential value and does not itself address the merits of any interest issue.  As for the Supreme Court, it merely affirmed the interest issue was "not contested."  Thus, by citing *Pummill*, Plaintiff is really relying on nothing more than a summary judgment order by a county district court—on an issue uncontested on the merits.  Notably, Plaintiff can cite no appellate court that has even referenced any of the *Pummill* decisions on the issue of statutory interest.

Plaintiff asserts that the Court is bound to apply the state law "with the objective of obtaining the result that would be reached in state court."  Motion at 11.  This does not mean, however, that this Court is bound to apply the *Pummill* trial court decision.  As just one trial court decision on an uncontested issue, it is not dispositive—or any indication at all—as to what the

---

[4] The opinion was not approved for publication by the Oklahoma Supreme Court and thus has no precedential effect.  Okla. Sup. Ct. R. 1.200(d)(2).  As mentioned, the first court of appeals decision was "vacated" in its entirety by the Oklahoma Supreme Court.  *Pummill*, 2014 OK 97, 341 P.3d 69.

Oklahoma Supreme Court would hold with respect to interest.  *See* Motion at 12 (conceding that the "highest court of the state" is the "final arbiter of what is state law").  And for the reasons discussed above, the Oklahoma Supreme Court, were it to actually consider the issue, would not rewrite the statute as Plaintiff urges.  *Toxic Waste Impact Group, Inc. v. Leavitt*, 1988 OK 20, 755 P.2d 626, 629–30 ("Although the legislature was aware of the characteristics of injection well disposal, nowhere in the Act did the legislature include the sub-surface storage area as part of the boundary of the disposal site.  Had the legislature intended to include the sub-surface storage area, they could have done so in clear language.  It is the duty of a court to give effect to legislative acts, not to amend, repeal or circumvent them, and a court is not justified in ignoring the plain words of a statute.  Neither the Supreme Court nor a district court may expand the plain wording of a statute by construction where the legislature has expressed its intention in the statute as enacted.  This Court does not sit as a council of revision, empowered to rewrite legislation in accord with its own conception of prudent public policy.").

## CONCLUSION

Defendants object to any determination of the merits of the Motion until after the period for class members to opt out of the class has expired.  But at the appropriate time, and for the reasons discussed above, the Court should deny Class Representative's Motion for Partial Summary Judgment (Doc. 142).

Dated: November 1, 2019                    Mark D. Christiansen OBA # 1675
                                           **EDINGER LEONARD & BLAKLEY PLLC**
                                           6301 N. Western Avenue, Suite 250
                                           Oklahoma City, OK 73118
                                           Telephone: (405) 702-9900
                                           Fax:  (405) 605-8381
                                           mchristiansen@elbattorneys.com


                                           */s/ Daniel M. McClure*
                                           Daniel M. McClure OBA # 20414
                                           dan.mcclure@nortonrosefulbright.com
                                           Kevin Yankowsky (*pro hac vice*)
                                           kevin.yankowsky@nortonrosefulbright.com
                                           Rebecca J. Cole (*pro hac vice*)
                                           rebecca.cole@nortonrosefulbright.com
                                           **NORTON ROSE FULBRIGHT US LLP**
                                           1301 McKinney, Suite 5100
                                           Houston, TX  77010-3095
                                           Telephone (713) 651-5151
                                           Fax (713) 651-5246

                                           **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2019, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to all counsel of record, including the following:

Michael Burrage
WHITTEN BURRAGE
mburrage@whittenburragelaw.com

Bradley E. Beckworth
Jeffrey J. Angelovich
Lisa P. Baldwin
Andrew G. Pate
Trey Duck
Cody L. Hill
NIX PATTERSON, LLP
bbeckworth@nixlaw.com
jangelovich@npraustin.com
lbaldwin@nixlaw.com
dpate@nixlaw.com
tduck@nixlaw.com
codyhill@nixlaw.com
bchurchman@nixlaw.com

Susan R. Whatley
NIX PATTERSON, LLP.
swhatley@nixlaw.com

Patrick M. Ryan
Philip G. Whaley
Jason A. Ryan
Paula M. Jantzen
RYAN WHALEY COLDIRON JANTZEN
    PETERS & WEBBER PLLC
pryan@ryanwhaley.com
pwhaley@ryanwhaley.com
jryan@ryanwhaley.com
pjantzen@ryanwhaley.com

Lawrence R. Murphy, Jr.
LAWRENCE R. MURPHY, JR., P.C.
larrymurphy999@gmail.com

Robert N. Barnes
Patranell Lewis
Emily Nash Kitch
BARNES & LEWIS, LLP
208 NW 60th Street
Oklahoma City, OK 73118
rbarnes@barneslewis.com
plewis@barneslewis.com
ekitch@barneslewis.com

_/s/ Daniel M. McClure_
Daniel M. McClure

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Paul D. Clement
Paul D. Clement