No. 23-7090

## In the

# United States Court of Appeals

## For the Tenth Circuit

———————————

PERRY CLINE, on behalf of himself and all others similarly situated,

*Plaintiff -Appellee,*

v.

SUNOCO, INC. (R&M) AND SUNOCO PARTNERS MARKETING & TERMINALS L.P.,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the Eastern District of Oklahoma
Judge John A. Gibney, Jr.
Civil Action No. 6:17-cv-313-JAG

———————————

## BRIEF OF *AMICUS CURIAE* THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF APPELLANTS

———————————

Jennifer B. Dickey
U.S. CHAMBER
LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
T: (202) 463-5337

Michael Francisco
Francis J. Aul
MCGUIREWOODS LLP
888 16th St. N.W., Suite 500
Washington, DC 20006
T: (202) 857-1722
mfrancisco@mcguirewoods.com

*Counsel for* Amicus Curiae

March 21, 2024

## TABLE OF CONTENTS

Page

STATEMENT OF IDENTITY AND INTEREST ..................................... 1

INTRODUCTION .................................................................................. 2

ARGUMENT ......................................................................................... 4

I.   The class certified here fails to comply with Rule 23's
     predominance requirement. .............................................................. 4

II.  Trial by spreadsheet violates fundamental
     due process rights. ........................................................................ 11

III. Improper class actions impose substantial costs on the
     business community. ..................................................................... 15

CONCLUSION ................................................................................... 18

CERTIFICATE OF COMPLIANCE ..................................................... 19

CERTIFICATE OF SERVICE .............................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ..................................................... 3, 5

*American Surety Co. v. Baldwin,*
  287 U.S. 156 (1932) ........................................................ 12

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ........................................................ 16

*Brecher v. Republic of Argentina,*
  806 F.3d 22 (2d Cir. 2015) ............................................... 9

*Carrera v. Bayer Corp.,*
  727 F.3d 300 (3d Cir. 2013) ............................................ 12

*Cline v. Sunoco, Inc. (R&M),*
  479 F. Supp. 3d 1148 (E.D. Okla. 2020) ........................... 8

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013) ................................................... 2-3, 5, 7

*Coopers & Lybrand v. Livesay,*
  437 U.S. 463 (1978) ........................................................ 16

*Dalton v. Lee Publications, Inc.,*
  No. 3:08-cv-01072-GPC-NLS, 2013 WL 2181219
  (S.D. Cal. May 20, 2013) ............................................. 13-14

*Davoll v. Webb,*
  194 F.3d 1116 (10th Cir. 1999) ......................................... 9

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982) ..................................................... 5, 15

*Gorss Motels, Inc. v. Brigadoon Fitness, Inc.,*
  29 F.4th 839 (7th Cir. 2022) ............................................. 6

*Hansberry v. Lee*,
   311 U.S. 32 (1940) ................................................................ 11

*Lindsey v. Normet*,
   405 U.S. 56 (1972) ................................................................ 12

*Monreal v. Potter*,
   367 F.3d 1224 (10th Cir. 2004) ............................................. 5

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) .............................................................. 11

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007) .............................................................. 12

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare*
   *Servs., Inc.*,
   601 F.3d 1159 (11th Cir. 2010) .............................................. 8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) (Ginsburg, J., dissenting) .................... 16

*Shook v. Bd. of Cty. Commissioners of Cty. of El Paso*,
   543 F.3d 597 (10th Cir. 2008) ............................................. 5-6

*Steering Comm. v. Exxon Mobil Corp.*,
   461 F.3d 598 (5th Cir. 2006) .................................................. 9

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) .............................................................. 11

*In re Tulsa Energy, Inc.*,
   111 F.3d 88 (10th Cir. 1997) ................................................... 7

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ........................................................... 2, 6

*United States v. Armour & Co.*,
   402 U.S. 673 (1971) .............................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................... 2, 10, 13

## Statutes

28 U.S.C. § 2072(b) ...............................................................................2, 10

Production Revenue Standards Act ("PRSA"),
  Okla. Stat. tit. 52, § 570, *et seq.* ...........................................................2

Okla. Stat. tit. 52, § 570.10(D) .................................................................7

## Rules

Fed. R. Civ. P. 23(a) ................................................................................4

Fed. R. Civ. P. 23(b) ..............................................................................4-5

## Other Authorities

2020 Carlton Fields Class Action Survey (2020) ....................................17

2024 Carlton Fields Class Action Survey (2024) .............................15, 17

2 W. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012) ..........6

7A Charles Alan Wright & Arthur R. Miller et al.,
  Federal Practice & Procedure § 1760 (4th ed. 2021) ...........................9

Adeola Adele, *Dukes v. Wal-Mart: Implications for
  Employment Practices Liability Insurance* (July 2011) ...................17

Henry J. Friendly, *Federal Jurisdiction: A General View* (1973) ..........16

U.S. Chamber Institute for Legal Reform, *Do Class Actions
  Benefit Class Members? An Empirical Analysis of Class
  Actions* (Dec. 2013)...............................................................................16

## STATEMENT OF IDENTITY AND INTEREST[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the nation's business community.

The Chamber's members have a strong interest in promoting fair and predictable legal standards. They are particularly likely to be defendants in putative class actions. The Chamber's members thus have a strong interest in ensuring that courts comply with the Supreme Court's class action precedents, including undertaking the rigorous analysis required by Federal Rule of Civil Procedure 23. The Chamber

---

[1] Both parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part, and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

has filed *amicus curiae* briefs in several recent Rule 23 class action cases, including *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016); *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

## INTRODUCTION

The class certification requirements of Federal Rule of Civil Procedure 23 are not mere paper requirements that can be brushed aside to streamline litigation. Instead, they are crucial safeguards grounded in fundamental due process concepts which are essential to protecting the rights of both defendants and absent class members. *See* 28 U.S.C. § 2072(b). The court nevertheless permitted the 53,000-person class in this case to try 1.5 million different claims for alleged failure to pay statutory interest under Oklahoma's Production Revenue Standards Act, Okla. Stat. tit. 52, § 570, *et seq.* ("PRSA"). It did so despite the significant individualized defenses that Sunoco had to these claims. That approach ran afoul of Rule 23 and the due process principles its requirements are meant to protect.

Here, as with any class action, before the named plaintiff could take advantage of the Rule 23(b)(3) class-action device, he was required to

establish that common questions of the class "predominate" over individual ones. *Comcast Corp.*, 569 U.S. at 33-34; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). He fell well short of the mark. Plaintiff could not establish that any common questions would predominate over the many individualized inquiries in the case, including whether the class members had the marketable title that they must prove to be entitled to 12% interest. Class-action plaintiffs must offer "a theory of liability that is … capable of classwide proof." *Comcast Corp.*, 569 U.S. at 37-38. It is not enough for a class to propose "any method[ology] … so long as it can be applied classwide." *Id.* at 35-36. Yet that is essentially the approach taken in this case. The court permitted the plaintiff to establish liability with a 20,000-page spreadsheet that the court never reviewed and that Sunoco had no realistic opportunity to challenge at an individual level.

If not corrected, the decision below will encourage courts to bypass the rigorous analysis required by Rule 23(b)(3). And of necessity, when faced with thousands of claims involving individualized questions that predominate over common ones, district courts will find themselves "innovating" new procedures. But as shown by the peculiar method of

litigation by massive spreadsheet in this case, such innovation poses serious due process concerns. That is why Rule 23 prohibits class adjudication of divergent and individualized class claims— like those at issue here— and why the judgment should be reversed.

## ARGUMENT

I. **The class certified here fails to comply with Rule 23's predominance requirement.**

Class actions are an exception to the normal way of adjudicating claims on an individual-by-individual basis. To justify this exception, the Federal Rules of Civil Procedure have specific requirements that must be met for class-based litigation. Rule 23(a) sets forth four prerequisites, commonly referred to as numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Rule 23(b) then establishes additional requirements for each of the three types of class actions that may be maintained. Fed. R. Civ. P. 23(b).

A Rule 23(b)(3) class action, as was certified here, may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.

Civ. P. 23(b)(3). That is because Rule 23(b)(3) is an "adventuresome innovation … designed for situations in which class-action treatment is not as clearly called for." *Comcast Corp.*, 569 U.S. at 34. Plaintiffs bear the burden of establishing Rule 23 compliance throughout the litigation. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains, however, indispensable."). Not just any assortment of vaguely related plaintiffs can be combined as a Rule 23(b)(3) class.

The trial court certified the class at issue here under Rule 23(b)(3), but gave short shrift to the predominance requirement. This "demanding" requirement requires courts to ask "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *see also Comcast Corp.*, 569 U.S. at 34-35. To answer that question, a court must begin by looking for "legal or factual questions that qualify each class member's case as a genuine controversy" and determining whether those questions are individual or common to the class. *Amchem Prods.*, 521 U.S. at 623; *Monreal v. Potter*, 367 F.3d 1224, 1237-38 (10th Cir. 2004) (dismissing class for failure to establish predominance); *Shook v. Bd. of Cty.*

5

*Commissioners of Cty. of El Paso*, 543 F.3d 597, 605 (10th Cir. 2008) (Gorsuch, J.) (affirming dismissal of class that lacked a "cohesive injury suffered by the class").

An individual question is "one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc.*, 577 U.S. at 453 (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-197 (5th ed. 2012)). The court must then assess "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.*; *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843-44 (7th Cir. 2022) ("An individual question is one where members of a proposed class will need to present evidence that varies from member to member; a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof."). Here, plaintiffs failed to show that any

common questions in the case predominated over the significant individualized questions in their cases.

*Comcast Corp v. Behrend* is a good example of the predominance flaw present here. There, the Supreme Court reversed class certification in large part because the class members had failed to provide a method to properly measure and quantify damages on a classwide basis—questions of individual damage calculations would "inevitably overwhelm questions common to the class." 569 U.S. at 34. Indeed, the method of damages calculation that the plaintiffs had proffered included damages that were "not the result of the wrong." *Id.* at 37.

The same could be said here. Consider the issue of marketable title: Before any class member can prove a legal right to 12% interest, the class member must prove that during the delay in paying proceeds, the class member had marketable title to the mineral interest underlying the disputed late payment. Okla. Stat. tit. 52, § 570.10(D); *In re Tulsa Energy, Inc.*, 111 F.3d 88, 90 (10th Cir. 1997) ("Section 570.10(D)(2)(a), the 'six percent' provision, recognizes the operator's *right* to withhold proceeds in the absence of marketable title. It is the interest owner's responsibility to establish marketable title so that he can receive

7

proceeds.") (internal citation omitted). Marketable title cannot be, and was not, proven by reference to the plaintiffs' expert witness or her accompanying spreadsheet. *See* Trial Tr. Vol. 1 at 138, 167-71, App.350-51, 214-16, App.359-60; Vol. 4 at 783 (discussing title opinions and related records needed to establish marketable title). It requires an individualized assessment of each class member's record. In the absence of such evidence, plaintiffs' expert witness simply assumed damages of 12% interest for each class member, regardless of the implausibility that all the 53,000 class members had marketable title during the delay in paying proceeds. And the district court accepted this approach, placing the burden on Sunoco, in order to apply 6% rather than 12% interest, to come forward with evidence that each of the 53,000 class members did not have marketable title during the delay in paying proceeds. *See Cline v. Sunoco, Inc. (R&M)*, 479 F. Supp. 3d 1148, 1171 (E.D. Okla. 2020) (discussing burden to show unmarketable tile falling on defendants). In these circumstances requiring highly individualized proof, courts regularly reject certification on predominance grounds. *See, e.g., Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1171-72 (11th Cir. 2010) (finding no predominance among a

proposed class of hospitals because there was no way "to homogenize the variant contracts" to establish their rights to payment); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (holding that certification was inappropriate because "separate types of proof would be necessary" to calculate damages on an individual basis and "cannot be determined by reference to a mathematical or formulaic calculation").[2]

Even assuming that the district court correctly viewed the question of marketability as an affirmative defense rather than an element of the class claims, this approach abridged Sunoco's substantive rights.

---

[2] For similar reasons, class certification should have been denied for lack of ascertainability. Rule 23(b) contains an "implied requirement of ascertainability" that asks "whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting 7A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 1760 (4th ed. 2021)); *see Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999) (affirming denial of class certification on ascertainability grounds because "it was within the district court's discretion to decide that determining class membership under the proposed definition would be administratively infeasible"). Here, the district court's decision to vastly expand the class to include well owners who have not been located, confirmed, or identified runs head long into precisely this obstacle. The district court's class determination includes claimants who are literally unknown (account numbers are not people) presenting an objectively *un*ascertainable set of class claimants. This flaw alone should have been fatal to class certification.

Sunoco's unrebutted expert testimony established that Sunoco's only potential database indicator of unmarketable title was but a crude surrogate of marketability. Trial Tr. Vol. 4 at 707:9-16, 715:5-6. And a database indicator is the only reasonable type of evidence that Sunoco could look to in class litigation involving 53,000 unnamed plaintiffs. No court would tolerate the delay that 53,000 individualized inquiries to assess marketable title would engender for this litigation. By contrast, the ordinary delays associated with litigating 53,000 individual cases would have afforded Sunoco the time to conduct those inquiries. Thus, the class action vehicle effectively abridged Sunoco's substantive rights, in direct contravention of the Rules Enabling Act, which "forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right." *Wal-Mart*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)). The district court should never have certified the class under these circumstances. If it had properly considered the individualized questions at issue in the case, it would have had to conclude that they predominate, making class litigation inappropriate.

## II.    Trial by spreadsheet violates fundamental due process rights.

Proper compliance with Rule 23 was not the only legal principle at stake in this case. The Constitution guarantees basic due process rights that apply with equal force to individualized and class-action based adjudication. It is beyond cavil that the "fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (quotation omitted). The right to be heard includes the defendant's ability "to litigate the issues raised." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). America has a "deep-rooted historic tradition that everyone should have his own day in court." *Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) (quotation and citation omitted). Without appropriate limits, class adjudication can run afoul of these rights.

Improperly certified class actions threaten the due process rights of both defendants and class members who are bound by decisions made on behalf of the entire class. For class members, due process requires that the class representative "fairly insures the protection of the interests of absent parties who are to be bound by" the outcome of the litigation. *Hansberry v. Lee*, 311 U.S. 32, 42 (1940).

11

For defendants, due process requires that they be allowed to press their individualized defenses. As the Supreme Court has long affirmed in the context of Rule 23, "[d]ue process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *American Surety Co. v. Baldwin*, 287 U.S. 156, 168 (1932)); *see also Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) ("[T]he Due Process Clause prohibits a State from punishing an individual without first providing that individual with an opportunity to present every available defense."). As the Third Circuit held in a Rule 23 class action dispute, a "defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013). This "due process right" includes both the right "to challenge the elements of a plaintiff's claim" and the "right to challenge the proof used to demonstrate class membership." *Id.*

The due process right to present a defense cuts against the use of statistical reporting, formulas, or similar shortcuts in allowing class members to prove claims. In particular, the Supreme Court has cast

doubt upon the use of sweeping formulas as a substitute for individualized proof of liability. In *Wal-Mart*, the Supreme Court deemed "Trial by Formula" impermissible. 564 U.S. at 367. In that class action on behalf of a putative class of 1,500,000 Wal-Mart employees alleging sex-discrimination claims under Title VII, the plaintiffs sought to establish liability by looking at a sample set of class members under the supervision of a special master. With this tool, the plaintiffs proposed that the "percentage of claims determined to be valid would then be applied to the entire remaining class…." *Id.* The Court bluntly "disapprove[d] that novel project." *Id.*

This case involved a similarly novel project. The named plaintiff submitted a spreadsheet prepared by a hired expert (not even a Special Master) for 1.5 million claims on behalf of 53,000 plaintiffs. This formulaic spreadsheet ran some 20,000 pages and, to the surprise of nobody, the trial court admitted it could not possibly look at the substance and details of the proof by formulaic spreadsheet. The Court commented that "no one will ever look at [that spreadsheet]" and "I [the Court] can't look at it." Trial Tr. Vol. 3 at 559. This approach bears little resemblance to the fact-finding that due process demands of a court. *Cf.*

13

*Dalton v. Lee Publications, Inc.*, No. 3:08-cv-01072-GPC-NLS, 2013 WL 2181219, at *8–9 (S.D. Cal. May 20, 2013) (explaining that individualized inquires were necessary and thus precluded class certification because a spreadsheet's "methodology [wa]s inaccurate and over inclusive").

A traditional approach would have looked quite different, for both the parties and the court. If the PRSA claims in this case had been tried on an individual basis the court could have expected the following:

- Class member testimony about the late payment, including the dates of the delay and the circumstances causing the delay.
- Marketable title property records and evidence, subject to cross examination.
- Defense evidence about any potential defenses, such as causation, estoppel, and potential plaintiff failure to cash checks or notify defendant of a change in address.
- The fact-finder would have determined individual damages, including marketability of title during the entire period of time a payment was late and the applicable interest (6% or 12%) during that time.

That did not happen here. Instead, the trial court allowed classwide adjudication of 1.5 million claims, eliding all individualized aspects of the claims and unsurprisingly resulting in a large judgment for the class. The Constitution requires more.

The named plaintiff may attempt to defend the court's process by pointing to Sunoco's opportunity to present a counter-spreadsheet. But that would have only compounded the due process problems. Trial by formula, multiplied, is still trial by formula. The super-sized spreadsheet here was an inadequate substitute for the individualized liability determinations to which the defendant was entitled. Encouraging defendants to add their own voluminous spreadsheet to the pile does little more than flip the burden under Rule 23 for plaintiffs to prove their case. *See Gen. Tel. Co. of S.W.*, 457 U.S. at 160 ("[A]ctual, not presumed, conformance" with Rule 23's requirements is "indispensable"). The serious due process concerns at issue here only underscore that this class judgment warrants reversal.

## III. Improper class actions impose substantial costs on the business community.

The failure to rigorously police class actions imposes substantial harms on the business community and the public more broadly. Class-action litigation costs in the United States are huge. They totaled a staggering $3.9 billion in 2023, continuing a rising trend that started in 2015. *See* 2024 Carlton Fields Class Action Survey, at 6 (2024), *available at* https://ClassActionSurvey.com. Moreover, defendants in class actions

15

face tremendous pressure to capitulate to what Judge Friendly termed "blackmail settlements." Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973). As the Supreme Court long ago explained, "[c]ertification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense*." Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978), superseded in part by Fed. R. Civ. P. 23(f); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (noting "the risk of 'in terrorem' settlements that class actions entail"); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 445 n.3 (2010) (Ginsburg, J., dissenting) ("[A] class action can result in 'potentially ruinous liability.'") (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23)).

The litigation costs associated with class actions continue to be substantial for the business community. Class actions can drag on for years even before a court takes up the question of class certification. *See* U.S. Chamber Institute for Legal Reform, *Do Class Actions Benefit Class Members? An Empirical Analysis of Class Actions*, at 1, 5 (Dec. 2013), *available at* http://bit.ly/3rrHd29. ("Approximately 14% of all class action

cases remained pending four years after they were filed, without resolution or even a determination of whether the case could go forward on a class-wide basis."). The cost to defend a single large class action can run into nine figures. *See* Adeola Adele, *Dukes v. Wal-Mart: Implications for Employment Practices Liability Insurance* 1 (July 2011) (noting defense cost of $100 million). Indeed, class-action litigation costs in the United States totaled a staggering $4.21 billion projected in 2024, continuing a rising trend that started in 2015. *See* 2024 Carlton Fields Class Action Survey, *supra*, at 7.

With these high stakes, it is not surprising that businesses often elect to settle class actions, even those that lack merit. In 2019, companies reported settling 60.3 percent of class actions, and they settled an even higher 73 percent of class actions the year before. *See* 2020 Carlton Fields Class Action Survey, at 35 (2020), *available at* https://bit.ly/492M7aY. The rare trial that occurred in this case only underscores why so many defendants choose to settle. The trial permitted some 1.5 million claims to be adjudicated, for a substantial number of absent class members, leading to a verdict of more than $155 million dollars.

If not corrected by this court, the decision below will exacerbate the costs posed by class litigation. The watered-down predominance requirement will encourage the sort of trial-by-spreadsheet that we saw in this case. It will make it harder for businesses to present their defenses and have their day in court that the Constitution guarantees for all parties. And in the meantime, the verdict will only ratchet up the coercive settlement pressure on future class action defendants who have individualized defenses that a class-action vehicle will not allow them to present.

## CONCLUSION

The judgment of the district court should be reversed.

Dated: March 21, 2024

Respectfully submitted,

/s/ *Michael Francisco*

Jennifer B. Dickey
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
T: (202) 463-5337

Michael Francisco
Francis J. Aul
MCGUIREWOODS LLP
888 16th Street N.W., Suite 500
Washington, DC 20006
T: (202) 857-1722
F: (202) 828-3345
mfrancisco@mcguirewoods.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type style requirements of Fed. R. App. P. 32(a)(6), and the type-volume limitations of Fed. R. App. P. 29(a)(5) because it is proportionally spaced, has a typeface of 14-point Century font, and contains 3,573 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I also certify that pursuant to this Court's guidelines on the use of the CM/ECF system:

a) all required privacy redactions have been made per 10th Cir. R. 25.5 and Fed. R. App. P. 25(a)(5);

b) the hard copies that will be submitted to the Clerk's Office are exact copies of the ECF filing; and

c) the ECF submission was scanned for viruses using CrowdStrike Windows Sensor, version 7.04.17605.0, and no viruses were detected.

*/s/ Michael Francisco*
Michael Francisco

*Counsel for* Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2024, the foregoing was electronically filed with the Clerk for the United States Court of Appeals for the Tenth Circuit using the CM/ECF system. The system will serve all counsel of record.

*/s/ Michael Francisco*
Michael Francisco

*Counsel for* Amicus Curiae

20